Alan J. Lipkin
Shaunna D. Jones
Jack M. Tracy II
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re                                        :    Chapter 11
                                             :
Interfaith Medical Center, Inc.,[1]          :    Case No. 12-_____ (        )
                                             :
                        Debtor.              :
-------------------------------------------------------x

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING:
(A) CONTINUED USE OF THE DEBTOR'S CASH MANAGEMENT
SYSTEM AND PROCEDURES; (B) MAINTENANCE AND CONTINUED
USE OF EXISTING BANK ACCOUNTS; (C) WAIVER OF CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS; AND (D) INTERIM WAIVER
OF THE REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

            Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-

captioned case (the "**Debtor**" or "**IMC**") hereby moves for entry of an interim order (the

"**Interim Order**") and final order (the "**Final Order**"), both pursuant to sections 105(a), and 345

of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing: (a) the continued use of

the Debtor's cash management system and procedures (the "**Cash Management System**"); (b)

the maintenance and continued use of its existing bank accounts (the "**Bank Accounts**") located

at the banks (the "**Banks**") listed on Exhibit A annexed hereto; (c) a waiver of certain operating

---

[1]    The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is
       1545 Atlantic Avenue, Brooklyn, New York 11213.

guidelines relating to bank accounts set forth in the U.S. Department of Justice, Office of the

U.S. Trustee, Eastern District of New York (the "**U.S. Trustee**"), Operating Guidelines for

Chapter 11 Cases (the "**U.S. Trustee Guidelines**"); and (d) an interim waiver of the

requirements of section 345(b) of the Bankruptcy Code.  In support of the motion, the Debtor

relies upon and incorporates by reference the Declaration of Luis A. Hernandez, President and

Chief Executive Officer of Interfaith Medical Center, Inc., In Support of Chapter 11 Petition and

First Day Pleadings (the "**Hernandez Declaration**"), which is being filed with the Court

concurrently herewith.  In further support of this motion, the Debtor, by and through its

undersigned proposed counsel, respectfully represents:

### JURISDICTION

1.          This Court has jurisdiction to consider this motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case

and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief requested herein are sections 105(a) and 345 of the Bankruptcy Code,

and Bankruptcy Rule 6003.

### BACKGROUND

2.          On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is a non-profit health

care provider, comprised of a 287-bed teaching hospital and an ambulatory care network of 8

clinics located in central Brooklyn, New York.  The Debtor intends to continue in possession of

its property and management of its business as a debtor in possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured

creditors has been appointed.

3.    The events leading to the Debtor's chapter 11 filing and the facts and circumstances supporting the relief requested herein are further described in the Hernandez Declaration.

## RELIEF REQUESTED

4.    By this motion, the Debtor seeks entry of the Interim Order and Final Order, pursuant to sections 105(a), 345, 364, and 503 of the Bankruptcy Code and Bankruptcy Rule 6003, authorizing:  (a) the continued use of the Debtor's Cash Management System; (b) maintenance and continued use of its existing Bank Accounts; (c) a waiver of certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; and (d) a forty-five (45) day waiver of the requirements of section 345(b) of the Bankruptcy Code.

5.    The relief requested herein will help ensure the Debtor's orderly entry into chapter 11 and will avoid many of the possible disruptions and distractions that could divert the Debtor's attention from more pressing matters during the initial days of this case.

## THE DEBTOR'S EXISTING BANK
## ACCOUNTS AND CASH MANAGEMENT SYSTEM

6.    In the ordinary course of business prior to the Petition Date, the Debtor used the Cash Management System, which is similar to centralized cash management systems used by other comparably-sized companies, to efficiently collect, concentrate, and disburse the funds generated by the Debtor's business operations.  The Cash Management System also enables the Debtor to monitor the collection and disbursement of funds and control the administration of its Bank Accounts.  Although some aspects of the Cash Management System are automated, the Debtor's employees are required to monitor the system and manage the proper collection and disbursement of funds.

A.    Cash Management System Accounts

7.    The Cash Management System has two main components: (a) cash collection; and (b) cash disbursements.  A chart illustrating the general flow of funds through the Cash Management System is attached as Exhibit B hereto.  The two main components of the Cash Management System are described below.

(i)    Cash Collections

8.    The Debtor's main receipts are comprised of payments for health care services from third-party payors such as Medicare, Medicaid, commercial insurance and managed care companies, as well as individuals.  Receipts are primarily in the form of cash, checks or credit card payments, which are remitted directly to the Debtor's main operating account (the "**Main Deposit Account**") maintained at TD Bank, N.A. ("**TD Bank**").[2]  Certain receipts related to billings for physician-related services are collected and stored in two separate lockbox accounts (the "**Lockbox Accounts**," and together with the Main Deposit Account, the "**Collection Accounts**") one maintained at TD Bank and the other at JPMorgan Chase Bank, N.A. ("**Chase**").  On a weekly basis, funds collected in the Lockbox Account at TD Bank are transferred into the Main Deposit Account by wire transfer.[3]

---

[2]    Interfaith Emergency Medicine, P.C., Interfaith Professional Physician Services, P.C., and Interfaith Psychiatry Services, P.C. (collectively, the "**PCs**") provide certain health care services to IMC's patients.  The Debtor and the PCs are parties to service contract arrangements (the "**PC Contracts**") which provide for each PC to lease certain IMC employees and supply the Debtor with specified full time medical physician and related staff coverage (the "**PC Staff**").  The Debtor pays the costs and expenses of the PC Staff for each PC and in turn is entitled to certain payments from that PC.  In practice, the PCs' payments to the Debtor have been the related patient service revenue.  When such revenue is collected by each PC, the applicable PC remits such revenue to the Main Deposit Account.  The PCs have not sought relief under the Bankruptcy Code and are not subsidiaries of the Debtor.

[3]    The Lockbox Account maintained at Chase collects historical billings in an aggregate nominal amount, which the Debtor allows to accumulate in the account.

(ii)        Cash Disbursements

9.        The Debtor pays its payroll and certain associated withholdings and taxes by transferring funds from the Main Deposit Account to a payroll account maintained at TD Bank (the "**Payroll Account**").  Funds are debited in advance of each payroll from the Payroll Account through automatic clearing house ("**ACH**") transfers into an account maintained by Automatic Data Processing, Inc. ("**ADP**").  ADP then issues checks to the Debtor's employees or makes direct deposits to such employees' accounts.  Funds are also debited from the Payroll Account to fund an account maintained by Diversified that holds employees' contributions to their retirement plans (the "**403(b) Payments**").  Commensurate with the transfers to the Payroll Account, the Debtor also transfers funds from the Main Deposit Account (the "**FSA Payments**") to fund an account maintained at TD Bank and administered by PNA Group, Inc. that holds employees' contributions to their flexible spending accounts (the "**FSA Benefit Account**").[4]

10.        Generally, the Debtor makes payments to third parties (other than related to employees) directly from the Main Deposit Account.  Thus, the Debtor issues checks, ACH transfers and wires to vendors and service providers directly from the Main Deposit Account.

11.        The Debtor formerly maintained a checking account with Citibank for payments owed pursuant to medical malpractice claim settlements (the "**Resolved Claims Account**").  Although the Debtor no longer utilizes the Resolved Claims Account, it remains open and, as of the Petition Date, holds $55,788.80 to cover checks against the Resolved Claims Account that are currently outstanding.

---

[4]    The 403(b) Payments and FSA Payments are funds withheld from the Debtor's employees' compensation, and, therefore, the Debtor believes such funds are not property of the Debtor's estate.

B.    Other Accounts

12.    The Debtor maintains a money market account with Chase that holds restricted funds (the "**Endowment Account**").  Such restricted funds consist of charitable donations received over the years by a multitude of donors.  While the interest generated from the Endowment Account is directed to fund the operations of IMC, the funds in the Endowment Account are restricted for purposes described in the terms of each specific donation.  The Endowment Account is isolated from the Cash Management System, and IMC directly allocates the funds from such account for the purposes delineated by the specific charitable donation.

13.    Additionally, the Debtor maintains an account at Chase that receives donations on account of the Debtor's fundraising activities (the "**Fundraising Account**").  The Fundraising Account is isolated from the Cash Management System, receives funds from fundraising activities and uses such funds to pay related expenses.

14.    The Debtor also maintains an account with Chase that is used for the operation of IMC's gift shop (the "**Gift Shop Account**").  The Gift Shop Account is isolated from the Cash Management System, receives funds through the operation of the gift shop and uses such funds to pay related expenses.

15.    Further, the Debtor maintains certain accounts of limited activity.  The Debtor maintains a special savings account with TD Bank (the "**Special Savings Account**").  Funds are periodically transferred between the Main Deposit Account and the Special Savings Account by wire transfer in order to take advantage of a higher interest rate.  The Debtor also maintains an account at Chase to pay for costs associated with employee-attended seminars and related written professional materials, which is funded quarterly by a donation received from the New York State Nurses Association pension plan (the "**Nurses Pension Plan Account**").

6

16.     Additionally, the Debtor currently maintains certain inactive accounts with TD Bank, Citibank and Chase, which hold, as of the Petition Date, approximately $5,000 in the aggregate, but are otherwise isolated from the other Bank Accounts (the "**Inactive Accounts**").[5] The Debtor does not anticipate using the Inactive Accounts in the future.

## U.S. TRUSTEE GUIDELINES

17.     The U.S. Trustee Guidelines were adopted to assist the U.S. Trustee in supervising the administration of chapter 11 cases.  The U.S. Trustee Guidelines require chapter 11 debtors to, among other things:

     (a)    close all existing bank accounts and open new accounts which must be designated debtor in possession bank accounts;

     (b)    establish and maintain separate debtor in possession accounts for the payment of taxes and separate debtor in possession accounts for cash collateral; and

     (c)    obtain and utilize new checks for all debtor in possession accounts which bear the designation "Debtor in Possession" and contain certain other information related to the chapter 11 case.

18.     The Debtor's continued use of the Bank Accounts is essential to its smooth and orderly transition into chapter 11.  All parties in interest would be best served by the Debtor's continued use of such Bank Accounts as such will minimize disruption of the Debtor's business.  Moreover, a changeover to new accounts is unnecessary because the Cash Management System allows the Debtor to differentiate between pre- and postpetition transactions, account balances, and obligations.  To ensure that the maintenance of the current Cash Management System does not prejudice parties in interest, the Debtor will separately record the balances of each of its Bank Accounts as of the Petition Date so as to distinguish

---

[5]     Certain Inactive Accounts might hold funds belonging to third-parties, which the Debtor submits would not be property of the estate.

postpetition transfers and ensure that such transactions are adequately and promptly documented in the Debtor's books and records.  Accordingly, the Debtor requests a waiver of the U.S. Trustee Guidelines requiring that it close all existing Bank Accounts and open new debtor in possession accounts.

19.    The Debtor further requests that all Banks where the Debtor holds Bank Accounts be authorized to:  (a) continue to administer the Bank Accounts in the manner maintained prior to the Petition Date, without interruption, in the usual and ordinary course; and (b) receive, process, honor, and pay any and all checks, drafts, wires or ACH transfers issued or initiated by the Debtor, and drawn on the Bank Accounts by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtor before the Petition Date may be honored by any Bank only if specifically authorized by order of this Court.

20.    The Debtor also requests that, except for those checks that may be honored and paid to comply with any order of this Court authorizing payment of certain prepetition claims (the "**Authorized Checks**"),[6] no checks or drafts issued on the Bank Accounts before the Petition Date, but presented for payment after the Petition Date, shall be honored or paid.  In order to minimize confusion, the Debtor will provide the Banks with a list of outstanding prepetition checks with respect to the Authorized Checks within two (2) business days of the entry of the order authorizing payment of the Authorized Checks.

21.    The Debtor also seeks a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtor believes its tax obligations can be paid most

---

[6]    The Debtor has filed the following motions seeking relief to pay prepetition amounts owed:  (i) Debtor's Motion for Interim and Final Orders: (I) Authorizing, But Not Requiring,  Debtor to (A) Pay Prepetition Wages, Salaries and Other Compensation, (B) Maintain Benefits Programs, and (C) Pay Obligations Relating to Medical Providers; and (II) Authorizing and Directing Banks to Honor All Related Checks and Electronic Payment Requests; and (ii) Debtor's Motion for Order Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of Bankruptcy Code Authorizing Debtor to Pay Prepetition Claims of Critical Vendors.

efficiently out of its existing Bank Accounts, the U.S. Trustee can adequately monitor the flow of

funds into, among, and out of such accounts, and the creation of new debtor in possession

accounts designated solely for tax obligations would be unnecessary and inefficient.

## **BASIS FOR RELIEF**

C.  <u>Section 345 Deposit and Investment Requirements</u>

22.    Section 345 of the Bankruptcy Code governs a debtor's deposit and

investment of cash during a chapter 11 case and authorizes the deposits or investments of money

as "will yield the maximum reasonable net return on such money, taking into account the safety

of such deposit on investment."  11 U.S.C. § 345(a).

23.    Section 345(b) of the Bankruptcy Code provides:

Except with respect to a deposit or investment that is insured or
guaranteed by the United States or by a department, agency, or
instrumentality of the United States or backed by the full faith and credit
of the United States, the trustee shall require from an entity with which
such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety
approved by the United States trustee for the district in
which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested
and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31;

<u>unless the court for cause orders otherwise</u>.

11 U.S.C. § 345(b) (emphasis added).

9

24.     The purpose of section 345(b) is to protect creditors of an estate against a loss of funds of the estate through deposit or investment.  See 3 COLLIER ON BANKRUPTCY ¶345.04 (Lawrence P. King, 15th ed. rev'd 2008).  However, in 1994, in order to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," the Bankruptcy Code was amended to allow bankruptcy courts to waive or modify the stringent requirements of section 345(b).  See 140 Cong. Rec. H10,767 (daily ed. October 4, 1994).

D.     Substantially All of the Debtor's Bank Accounts Are in
       Compliance with Section 345(b) of the Bankruptcy Code

25.     The Debtor believes it is in compliance with section 345(b) with respect to all of the Bank Accounts except the Endowment Account, which is addressed below.  The Debtor has its primary accounts at TD Bank and also maintains accounts at Citibank and Chase.  All of such banks have been approved by the U.S. Trustee as authorized bank depositories (the "**Authorized Depositories**").  Accordingly, the Debtor believes that any funds deposited in its Bank Accounts with the Authorized Depositories are secure and subject to little or no market risk.  Thus, the Debtor is in compliance with section 345(b) of the Bankruptcy Code with respect to such Bank Accounts.

E.     The Debtor Seeks an Interim Waiver of the Requirements of
       Section 345(b) of the Bankruptcy Code With Respect to Certain Bank Accounts

26.     As money market accounts are an exception to the U.S. Trustee's requirements, the Debtor believes the Endowment Account is the only Bank Account that does not comply with the requirements of section 345(b).  The Debtor requests that the Court enter an order temporarily waiving such requirements while it discusses with the U.S. Trustee any additional arrangements potentially necessary to adequately protect those estate funds.

27.     The Debtor submits that its utilization of the Endowment Account is commercially reasonable and appropriate and consistent with the intent of section 345(b).  In

10

addition, the funds in the Endowment Account consist of charitable donations received over the years from a multitude of donors.  The Debtor's use of such funds is restricted for the purposes described in the terms of each specific donation.  Therefore, the Debtor submits that cause exists for an interim waiver of the investment and deposit restrictions of section 345(b).

F.    Cause Exists to Waive Certain of the U.S. Trustee Guidelines

28.    The Debtor's cash management procedures constitute ordinary course, essential business practices for the Debtor.  The Cash Management System provides significant benefits to the Debtor including, inter alia, the ability to:  (a) efficiently control corporate funds; (b) ensure the maximum availability of funds when necessary; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance information.

29.    The Debtor's business operations require that the existing Cash Management System continue, as any serious disruption could have a severe and adverse impact upon the restructuring efforts of the Debtor.  The Debtor will take reasonable steps to ensure that maintaining the present system will not result in any prejudice to any party in interest.

30.    Courts in this District have granted requests to approve similar relief as requested herein.  See, e.g., In re Global Aviation Holdings Inc., et al., Case No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 8, 2012); In re The Brown Publishing Co., et al., Case No. 10-73295 (DTE) (Bankr. E.D.N.Y. May 7, 2010); In re D-A-M Liquidating Corp., Case No. 09-41966 (JBR) (Bankr. E.D.N.Y. Mar. 27, 2009); In re Caritas Health Care, Inc. et al., Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. Feb. 10, 2009); In re Victory Memorial Hospital, et al., Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. Nov. 16, 2006); In re The Brunswick Hospital Center Inc., Case No. 05-88168 (MLC) (Bankr. E.D.N.Y. Jan. 9, 2006); In re Brooklyn Hospital Center, Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. Sept. 30, 2005).

31.      Based on the foregoing, the relief requested herein is necessary and appropriate, is in the best interests of the Debtor's estate and all other interested parties, and should be granted in all respects.

32.      As the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## NOTICE

33.      Notice of this motion will be given to: (a) the U.S. Trustee; (b) Dormitory Authority of the State of New York and counsel thereto; (c) TD Bank and, if known, counsel to TD Bank; (d) Citibank and, if known, counsel to Citibank; (e) Chase and, if known, counsel to Chase; and (f) the Debtor's twenty (20) largest unsecured creditors.  The Debtor submits that, under the circumstances, no other or further notice is required.

34.      No previous motion for the relief sought herein has been made to this or any other Court.

35.      As the authorities relied upon herein are set forth above, the Debtor respectfully submits that this motion satisfies the requirements of Rule 9013-1(a) of the Local Bankruptcy Rules of the Eastern District of New York regarding the submission of a memorandum of law.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms annexed hereto as <u>Exhibit C</u> and <u>Exhibit D</u>, granting the relief requested in this motion and granting the debtor such other and further relief as may be just and proper.

Dated: December 2, 2012

WILLKIE FARR & GALLAGHER LLP

By:  /s/ Alan J. Lipkin
  Alan J. Lipkin
  Shaunna D. Jones
  Jack M. Tracy II
  787 Seventh Avenue
  New York, New York 10019
  Tel:  (212) 728-8000
  Fax:  (212) 728-8111

*Proposed Counsel to Debtor and*
  *Debtor in Possession*

## EXHIBIT A

### Debtor's Bank Accounts

| Bank | Last Four Digits of Account # | Account Description |
|---|---|---|
| TD Bank, N.A. | 7044 | Main Deposit Account |
| | 4629 | Physician Billings Lockbox |
| | 6526 | Payroll Account |
| | 7075 | FSA Benefit Account |
| | 5887 | Special Savings Account |
| | 8332 | Inactive Account |
| | 0181 | Inactive Account |
| | 1402 | Inactive Account |
| | 3021 | Inactive Account |
| | 8301 | Inactive Account |
| Citibank | 0468 | Resolved Claims Account |
| | 4558 | Inactive Account |
| JP Morgan Chase Bank, N.A. | 6839 | Money Market Restricted Asset Funds Account |
| | 6865 | Gift Shop Account |
| | 0129 | Physician Billings Lockbox |
| | 0565 | Nurses Pension Plan Account |
| | 9965 | Fundraising Account |
| | 2365 | Inactive Account |
| | 1265 | Inactive Account |

**EXHIBIT B**

**Interfaith Medical Center Cash Management System**



Legend

= Debtor Account

= Third Party Account

**<u>EXHIBIT C</u>**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                              :          Chapter 11
                                                   :
Interfaith Medical Center, Inc.,[1]                :          Case No. 12-_____ (        )
                                                   :
                        Debtor.                    :
-------------------------------------------------------x

**INTERIM ORDER AUTHORIZING: (A) CONTINUED USE OF THE
DEBTOR'S CASH MANAGEMENT SYSTEM AND PROCEDURES;
(B) MAINTENANCE AND CONTINUED USE OF EXISTING
BANK ACCOUNTS; (C) WAIVER OF CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS; AND (D) INTERIM WAIVER
OF THE REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE**

Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and

debtor in possession in the above-captioned case (the "**Debtor**"), requesting entry of an interim

order, pursuant to sections 105(a), 345, 364 and 503 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), authorizing: (a) the continued use of the Debtor's cash management

system and procedures (the "**Cash Management System**"); (b) maintenance and continued use

of its existing bank accounts; (c) a waiver of certain operating guidelines relating to bank

accounts; and (d) a forty-five (45) day waiver of the requirements of section 345(b) of the

Bankruptcy Code; and upon the Declaration of Luis A. Hernandez, President and Chief

Executive Officer of Interfaith Medical Center, Inc., in Support of Chapter 11 Petition and First

Day Pleadings; and due and sufficient notice of the Motion having been given; and it appearing

that no other or further notice need be provided; and it appearing that the relief requested by the

Motion is in the best interests of the Debtor, its patients, its estate, its creditors, its community

---

[1]     The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is
1545 Atlantic Avenue, Brooklyn, New York 11213.

and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it

is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.    The Motion is granted on an interim basis to the extent set forth herein.

2.    Capitalized terms not otherwise defined herein shall have the meanings ascribed to

such terms in the Motion.

3.    The Debtor is authorized and empowered to continue to manage its cash pursuant

to the Cash Management System the Debtor maintained prior to the Petition Date, and to collect

and disburse cash in accordance with the Cash Management System.

4.    The requirements of the U.S. Trustee Guidelines that the Debtor close all existing

Bank Accounts and open new debtor in possession accounts are hereby waived.  Further, the

requirements of the U.S. Trustee Guidelines that the Debtor establish specific bank accounts for

tax payments are hereby waived.

5.    The Debtor may disburse funds from the Bank Accounts by checks, drafts, wires,

debits, ACH transfers or by any other means.

6.    The Debtor is authorized to continue to deposit funds in the Bank Accounts in

accordance with its prepetition practices, without the need for a bond or other collateral as

required by section 345(b) of the Bankruptcy Code, for forty-five (45) days from the date of this

Interim Order.  This Interim Order is without prejudice to the Debtor's right to seek a further

interim waiver or final waiver, which may be mutually agreed upon in writing by the U.S.

Trustee, the Debtor, and the Dormitory Authority of the State of New York ("**<u>DASNY</u>**") without

further order of this Court.

7.    The Banks where the Debtor maintains the Bank Accounts are authorized and directed to: (a) continue to service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course; (b) continue to deduct, without further order of this Court, from the appropriate Bank Accounts the Banks' customary fees and expenses associated with the nature of the deposit or cash management or custodial services rendered to the Debtor; and (c) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers issued or initiated by the Debtor, and drawn on the Bank Accounts, by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtor before the Petition Date may be honored by any bank only if specifically authorized by order of this Court.

8.    Except for those checks that may be honored and paid in compliance with any order of this Court authorizing payment of certain prepetition claims (the "**Authorized Checks**"), and the Banks having received a list of such Authorized Checks from the Debtor, in writing, within two (2) business days of the entry of the order authorizing such Authorized Checks, no checks or drafts issued on the Bank Accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid.

9.    Notwithstanding any other provision of this Interim Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order: (a) at the direction of the Debtor; (b) in a good faith belief that the Court has authorized such prepetition check or item; or (c) as the result of a good faith error made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtor or its estate or otherwise in violation of this Interim Order.

10.    Any Bank that is also a creditor of the Debtor is hereby barred from offsetting any outstanding prepetition obligations against the funds held in the Bank Accounts without the authorization of the Court.

11.    The Debtor shall record the consolidated balances of each of its Bank Accounts so that all postpetition transfers and transactions respecting such Bank Accounts shall be adequately and promptly documented in, and readily ascertainable from, its books and records, to the same extent maintained by the Debtor prior to the commencement of this case.

12.    As soon as practicable, the Debtor shall begin stamping or printing its check stock with "Debtor in Possession" and the case number under which this case is being administered.

13.    Nothing contained herein shall prevent the Debtor from opening any additional bank accounts, or closing any existing Bank Accounts, as the Debtor may deem necessary and appropriate; provided, however, that the opening or closing of any Bank Account shall be without prejudice to the liens, if any, granted to DASNY under the Debtor's prepetition credit agreement whether such liens were granted prior to or after the Petition Date and any new bank accounts opened by the Debtor shall be at an Authorized Depository.  The Banks are authorized to honor the Debtor's request to open or close, as applicable, such Bank Accounts or other bank accounts.  The Debtor shall notify the U.S. Trustee and DASNY of the opening of any new Bank Accounts or closing of any existing Bank Accounts by providing information regarding any such new or closed account in the Debtor's monthly operating reports.

14.    As promptly as possible, but in no event later than five (5) business days after entry of this Interim Order, the Debtor shall serve a copy of this Interim Order on all Banks whose Bank Accounts are listed on Exhibit A to the Motion.

15.    Notwithstanding anything to the contrary contained in this order, any payment made pursuant to or  payment authorization contained in this order shall be subject to any requirements imposed on the Debtor under any then operative order of this Court regarding the Debtor's  use of cash collateral or approving the Debtor's entry into and performance under a debtor in possession financing agreement.

16.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied with respect to the relief granted by this Interim Order.

17.    Notwithstanding any Bankruptcy Rule to the contrary, this Interim Order shall be immediately effective and enforceable upon its entry.

18.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

19.    Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. prevailing Eastern time on [_____], 2012 (the "**Objection Deadline**") and (b) served so as to be actually received by the following parties by the Objection Deadline:  (i) Interfaith Medical Center, 1545 Atlantic Avenue, Brooklyn, NY 11213 (Attn.: Robert Mariani); (ii) counsel for the Debtor, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Alan J. Lipkin, Esq. and Shaunna D. Jones, Esq.); (iii) the Office of the United States Trustee, 271 Cadman Plaza East, Suite 4529, Brooklyn, NY 11201 (Attn: William E. Curtin and Susan D. Golden); (iv) counsel to DASNY; and (v) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis.

20.    Any objections or responses to the Motion shall be filed and served on parties-in-interest as required by the Local Rules.

21.     A hearing shall be held to consider the relief granted herein on a final basis on

_____, 2012, at __.m., before the Honorable _____, United States Bankruptcy Judge,

in Courtroom _____, 271 Cadman Plaza East, Suite 1595, Brooklyn, NY 11201-1800

(the "**Final Hearing**") and, pending entry of an order following the conclusion of the Final

Hearing, the relief granted herein shall remain in effect on an interim basis.

Dated: Brooklyn, New York
       _____ __, 2012

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT D**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                              :        Chapter 11
                                                   :
Interfaith Medical Center, Inc.,[1]                :        Case No. 12-_____ (        )
                                                   :
                          Debtor.                  :
--------------------------------------------------------x

## FINAL ORDER AUTHORIZING: (A) CONTINUED USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM AND PROCEDURES; (B) MAINTENANCE AND CONTINUED USE OF EXISTING BANK ACCOUNTS; (C) WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; AND (D) INTERIM WAIVER OF THE REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE

Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and

debtor in possession in the above-captioned case (the "**Debtor**"), requesting entry of a final

order, pursuant to sections 105(a), 345, 364 and 503 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), authorizing: (a) the continued use of the Debtor's cash management

system and procedures (the "**Cash Management System**"); (b) maintenance and continued use

of its existing bank accounts; (c) a waiver of certain operating guidelines relating to bank

accounts; and (d) a forty-five (45) day waiver of the requirements of section 345(b) of the

Bankruptcy Code; and upon the Declaration of Luis A. Hernandez, President and Chief

Executive Officer of Interfaith Medical Center, Inc., in Support of Chapter 11 Petition and First

Day Pleadings; and due and sufficient notice of the Motion having been given; and it appearing

that no other or further notice need be provided; and it appearing that the relief requested by the

Motion is in the best interests of the Debtor, its patients, its estate, its creditors, its community,

---

[1] The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it

is hereby

ORDERED, ADJUDGED, AND DECREED that:

1. The Motion is granted on a final basis to the extent set forth herein.

2. Capitalized terms not otherwise defined herein shall have the meanings

ascribed to such terms in the Motion.

3. The Debtor is authorized and empowered to continue to manage its cash

pursuant to the Cash Management System the Debtor maintained prior to the Petition Date, and

to collect and disburse cash in accordance with the Cash Management System.

4. The requirements of the U.S. Trustee Guidelines that the Debtor close all

existing Bank Accounts and open new debtor in possession accounts are hereby waived.  Further,

the requirements of the U.S. Trustee Guidelines that the Debtor establish specific bank accounts

for tax payments are hereby waived.

5. The Debtor may disburse funds from the Bank Accounts by checks, drafts,

wires, debits, ACH transfers or by any other means.

6. The requirements of section 345(b) of the Bankruptcy Code are deemed

waived and the Debtor is authorized to continue to deposit funds in the Bank Accounts in

accordance with their prepetition practices, without the need for a bond or other collateral.  This

Final Order is without prejudice to the Debtor's right to seek a further waiver of the requirements

set forth in section 345(b) of the Bankruptcy Code respecting any new or other bank accounts,

which may be mutually agreed upon in writing by the U.S. Trustee, the Debtor, and DASNY

without further order of this Court.

7.      The Banks where the Debtor maintains the Bank Accounts are authorized and directed to: (a) continue to service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course; (b) continue to deduct, without further order of this Court, from the appropriate Bank Accounts the Banks' customary fees and expenses associated with the nature of the deposit or cash management or custodial services rendered to the Debtor; and (c) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers issued or initiated by the Debtor, and drawn on the Bank Accounts, by the holders or makers thereof, as the case may be; <u>provided</u>, <u>however</u>, that any check drawn or issued by the Debtor before the Petition Date may be honored by any bank only if specifically authorized by order of this Court.

8.      Except for those checks that may be honored and paid in compliance with any order of this Court authorizing payment of certain prepetition claims (the "**<u>Authorized</u> <u>Checks</u>**"), and the Banks having received a list of such Authorized Checks from the Debtor, in writing, within two (2) business days of the entry of the order authorizing such Authorized Checks, no checks or drafts issued on the Bank Accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid.

9.      Notwithstanding any other provision of this Final Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order: (a) at the direction of the Debtor; (b) in a good faith belief that the Court has authorized such prepetition check or item; or (c) as the result of a good faith error made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtor or its estate or otherwise in violation of this Final Order.

10.     Any Bank that is also a creditor of the Debtor is hereby barred from offsetting any outstanding prepetition obligations against the funds held in the Bank Accounts without the authorization of the Court.

11.     The Debtor shall record the consolidated balances of each of its Bank Accounts so that all postpetition transfers and transactions respecting such Bank Accounts shall be adequately and promptly documented in, and readily ascertainable from, its books and records, to the same extent maintained by the Debtor prior to the commencement of this case.

12.     As soon as practicable, the Debtor shall begin stamping or printing its check stock with "Debtor in Possession" and the case number under which this case is being administered.

13.     Nothing contained herein shall prevent the Debtor from opening any additional bank accounts, or closing any existing Bank Accounts, as the Debtor may deem necessary and appropriate; provided, however, that the opening or closing of any Bank Account shall be without prejudice to the liens, if any, granted to DASNY under the Debtor's prepetition credit agreement whether such liens were granted prior to or after the Petition Date and any new bank accounts opened by the Debtor shall be at an Authorized Depository.  The Banks are authorized to honor the Debtor's request to open or close, as applicable, such Bank Accounts or other bank accounts.  The Debtor shall notify the U.S. Trustee and DASNY of the opening of any new Bank Accounts or closing of any existing Bank Accounts by providing information regarding any such new or closed account in the Debtor's monthly operating reports.

14.     As promptly as possible, but in no event later than five (5) business days after entry of this Final Order, the Debtor shall serve a copy of this Final Order on all Banks whose Bank Accounts are listed on Exhibit A to the Motion.

15.     Notwithstanding anything to the contrary contained in this order, any payment made pursuant to or payment authorization contained in this order shall be subject to any requirements imposed on the Debtor under any then operative order of this Court regarding the Debtor's use of cash collateral or approving the Debtor's entry into and performance under a debtor in possession financing agreement.

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied with respect to the relief granted by this Final Order.

17.     Notwithstanding any Bankruptcy Rule to the contrary, this Final Order shall be immediately effective and enforceable upon its entry.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Final Order.

Dated: Brooklyn, New York
        _____ __, 2012


_____
UNITED STATES BANKRUPTCY JUDGE