Alan J. Lipkin
Shaunna D. Jones
Jack M. Tracy II
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-_____ (      ) |
| | : | |
| Debtor. | : | |

-------------------------------------------------------x

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a) AND 363(b) OF BANKRUPTCY CODE AUTHORIZING DEBTOR TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**") hereby moves for entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**"), both pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to pay prepetition claims of critical vendors.  In support of the motion, the Debtor relies upon and incorporates by reference the Declaration of Luis A. Hernandez, President and Chief Executive Officer of Interfaith Medical Center, Inc., In Support of Chapter 11 Petitions and First Day Pleadings (the "**Hernandez**

---

[1] The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

**Declaration**"), which is being filed with the Court concurrently herewith.  In further support of this motion, the Debtor, by and through its undersigned proposed counsel, respectfully represents:

## BACKGROUND

1.     On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is a non-profit health care provider, comprised of a 287-bed teaching hospital and an ambulatory care network of 8 clinics located in central Brooklyn, New York.  The Debtor intends to continue in possession of its property and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured creditors has been appointed.

2.     The events leading to the Debtor's chapter 11 filing and the facts and circumstances supporting the relief requested herein are further described in the Hernandez Declaration.

## JURISDICTION

3.     This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## RELIEF REQUESTED

4.     In the ordinary course of operations, the Debtor relies on certain vendors for the delivery of certain goods, services, and supplies.  By this motion, the Debtor seeks entry of the Interim Order and Final Order, authorizing the Debtor, in its sole discretion, to pay

prepetition amounts (the "**Critical Vendor Claims**") due to certain vendors that are essential to the Debtor's business operations (the "**Critical Vendors**").

## CRITICAL VENDORS

A.    Identification of Critical Vendors.

5.    The Debtor utilizes certain specialty vendors to supply essential medical supplies and services necessary to the Debtor's operations as an acute care hospital.  These vendors include, without limitation, (i) an agency providing nurses, (ii) suppliers of blood products, (iii) suppliers of specialized medical equipment, (iv) suppliers of pharmaceutical stock, and (v) a supplier of various medical and surgical supplies.  Certain of these vendors are either the sole source of critical supplies or services, or even if alternative sources are available, the transition process to such alternative sources would likely result in a lengthy disruption of essential services and medical supplies, and an incremental cost to the Debtor.  Any interruption in the goods and services provided by the Critical Vendors would have a detrimental effect on the Debtor's operations and its ability to restructure its affairs.  Moreover, any such interruption could potentially have a devastating effect on the health and welfare of the Debtor's patients.

6.    The Debtor's viability as a health care provider is dependent upon the Debtor's uninterrupted access to the goods and services provided by the Critical Vendors.  In some cases, however, the Debtor believes that failure to pay a portion of certain Critical Vendor Claims may result in, among other things, such Critical Vendors: (i) refusing to deliver goods and services; (ii) refusing to deliver good and services on reasonable credit terms; or (iii) suffering significant financial hardship that they would be unable to continue to provide goods an services to the Debtor postpetition.

7.    Consequently, to ensure that only those vendors that provide goods and services that are actually essential to the Debtor's business are the subject of the relief requested

herein, the Debtor conducted an extensive analysis and review of its immediate trade and

service needs and supplier base.  In doing so, the Debtor evaluated the following criteria:  (a)

whether the vendor in question is a sole source provider; (b) whether the Debtor receives

advantageous pricing or other terms from a vendor such that replacing the vendor postpetition

would result in significantly higher costs to the Debtor; (c) whether quality requirements or

other specifications prevent the Debtor from obtaining a vendor's products or services from

alternative sources within a reasonable timeframe; (d) whether, if a vendor is not a sole source

provider, the Debtor has sufficient product inventory or in-house capabilities to continue

operations while a replacement vendor is found and put in place; (e) whether a vendor is

otherwise contractually obligated to continue to provide goods or services to the Debtor; (f)

whether a vendor meeting the aforementioned standards is likely to refuse to ship product or

provide services to the Debtor postpetition if its prepetition balances are not paid; and (g)

whether any resultant delay or interruption in replacing the goods or services provided by the

vendor postpetition would pose a significant disruption of the Debtor's operations and risk the

health and safety of the Debtor's patients.  The Debtor is confident that this process has

appropriately identified only those vendors that are critical to the estate.[2]

8.      Based on the foregoing considerations, the Debtor identified 5 Critical

Vendors whose cessation of services or provision of goods could cripple the Debtor's business

---

[2]      As the Debtor believes that keeping the Critical Vendor list confidential may assist them in reducing the number of prepetition claims of Critical Vendors that they must pay now in order to continue receiving the key services described below, a schedule of the Critical Vendors has not been filed with this motion.  Instead, a schedule has been or will be provided on a confidential basis to:  (a) the United States Trustee for the Eastern District of New York (the "**U.S. Trustee**"); (b) Dormitory Authority of the State of New York ("**DASNY**"), and counsel to DASNY; and (c) upon request, the chambers of the United States Bankruptcy Judge assigned to this case.  In addition, upon request, a copy of this schedule will be provided to counsel to the official committee of unsecured creditors that may be appointed in this case (the "**Committee**").  Due to the sensitivity of the list, the copy provided to counsel for the Committee shall be transmitted for "Professional Eyes Only."

and, therefore, result in irreparable harm to the Debtor and its patients. Such Critical Vendors account for only a handful of the total number of vendors the Debtor utilizes in the ordinary course of its business. As of the Petition Date, the Debtor estimates that the Critical Vendor Claims total approximately $2.4 million.[3]

B.    Proposed Terms and Conditions of Payment of Critical Vendor Claims

9.    The Debtor respectfully requests that the Court authorize the Debtor to pay those Critical Vendor Claims which the Debtor, in its sole discretion, determines must be paid in order to continue receiving the goods and services provided by the Critical Vendors. Subject to the terms set forth below, the Debtor proposes to condition the payment of Critical Vendor Claims on the agreement of individual Critical Vendors to supply goods and services to the Debtor on the most favorable trade terms that such Critical Vendor offered to the Debtor in the twelve months prior to the Petition Date (the "**Customary Trade Terms**"). The Debtor reserves the right to negotiate new trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim.

10.    To ensure that the Critical Vendors continue to deal with the Debtor on the Customary Trade Terms, the Debtor proposes that a letter agreement (a "**Trade Agreement**")[4] substantially in the form attached hereto as Exhibit A be sent to the Critical Vendors for

---

[3]    Further, approximately $440,000 of the Critical Vendor Claims represent obligations owed in respect of goods that the Debtor received in the ordinary course of business within twenty (20) days prior to the Petition Date. Undisputed obligations for such goods received by the Debtor in the ordinary course of business in the twenty (20) days prior to the Petition Date would result in claims entitled to administrative priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code and, therefore, the relief requested proposes to merely alter the timing of payment of such obligations.

[4]    The Debtor's entry into a Trade Agreement shall not change the nature or priority of the underlying Critical Vendor Claims, and shall not constitute an assumption or rejection of any executory contract or unexpired lease between a Debtor and a Critical Vendor.

execution, together with a copy of the Interim Order or Final Order granting this motion (the "**Order**").

11.    The Debtor proposes that each Trade Agreement include, without limitation:

(a)    the amount of the relevant Critical Vendor's estimated Critical Vendor Claims, accounting for any setoffs, other credits and discounts thereto; provided, however, such amount shall be used only for the purposes of determining such Critical Vendor's claim under the Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of this Court;

(b)    the Customary Trade Terms applicable to such Critical Vendor, or such other terms as the Critical Vendor and the Debtor may agree on that are at least as favorable as those that were in effect immediately prior to the Petition Date, and the Critical Vendor's agreement to provide goods and/or services to the Debtor pursuant to such terms during the pendency of the Debtor's bankruptcy case, unless the Debtor fails to make timely payments under the agreed-upon terms;

(c)    the Critical Vendor's agreement not to file or otherwise assert against any or all of the Debtor, its estate or any other person or entity or any of their respective assets or property (real or personal) any lien (a "**Lien**"), claim for reclamation (a "**Reclamation Claim**"), or a claim for priority under section 503(b)(9) of the Bankruptcy Code (a "**503(b)(9) Claim**") regardless of the statute or other legal authority upon which such Lien, Reclamation Claim or 503(b)(9) Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtor arising from agreements or other arrangements entered into prior to the Petition Date and, to the extent the Critical Vendor has already obtained or otherwise asserted such a Lien, Reclamation Claim or 503(b)(9) Claim, the Critical Vendor shall take whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim or 503(b)(9) Claim;

(d)    the Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the Order sought hereby and is bound thereby; and

(e)    the Critical Vendor's agreement that it will not separately seek payment for Reclamation Claims outside the terms of the Order

6

sought hereby unless the Critical Vendor's participation in the program to pay Critical Vendor Claims pursuant to such Order is terminated.

12.    By this motion, the Debtor seeks only the authority to enter into Trade Agreements when the Debtor determines, in its sole discretion, that payment of such Critical Vendor Claims in the ordinary course is necessary and that such agreements are advisable.  The Debtor also hereby seeks authority to make payments in the ordinary course on account of Critical Vendor Claims, even in the absence of a Trade Agreement, if the Debtor determines, in its business judgment, that failure to pay such Critical Vendor Claims in the ordinary course is likely to result in irreparable harm to the Debtor's business operations and that it is not reasonably likely to be able to achieve a Trade Agreement with the relevant Critical Vendor.[5]

13.    In the event a Critical Vendor refuses to supply goods and services to the Debtor on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Vendor Claim, or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtor, then the Debtor hereby seeks authority, in its discretion and without further order of the Court:  (a) to declare that any Trade Agreement between the Debtor and such Critical Vendor is terminated (if applicable); (b) to declare that payments made to such Critical Vendor on account of its Critical Vendor Claims be deemed to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of such Critical Vendor without further order of this Court or action by any person or entity; and (c) to recover any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision for payment of

---

[5]    Nothing in this motion should be construed as a waiver by any of the Debtor of its rights to contest any claim of a Critical Vendor under applicable law.

reclamation or trust fund claims, or other defense.  In sum, if a Trade Agreement is terminated or a Critical Vendor refuses to supply goods or services to the Debtor on Customary Trade Terms (or such other terms as have been agreed by the parties) following receipt of payment on its Critical Vendor Claim, the Debtor seeks authority to return the parties to the positions they held immediately prior to the entry of the Interim Order approving this motion with respect to all prepetition claims.  The Debtor will provide notice of such refusal to DASNY and counsel to DASNY.  In addition, the Debtor reserves the right to seek damages or other appropriate remedies against any breaching Critical Vendor.

14.    The Debtor further proposes that any Trade Agreement terminated as a result of a Critical Vendor's refusal to comply with the terms thereof may be reinstated in the Debtor's sole discretion if:

(a)    the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtor's notification to the Critical Vendor of such a default; or

(b)    the Debtor, in its discretion, reaches a favorable alternative agreement with the Critical Vendor.

15.    Some of the Critical Vendors also may have obtained mechanics' liens, possessory liens, or other similar state law trade liens ("**Trade Liens**") on the Debtor's (or other parties') assets, based upon Critical Vendor Claims held by such vendors.  As a further condition of receiving payment on a Critical Vendor Claim, a Critical Vendor must agree to take whatever action is necessary to remove any such Trade Lien, at such Critical Vendor's sole cost and expense.

## BASIS FOR RELIEF

16.    The relief requested in this motion is supported by several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations in certain

8

circumstances.  Courts have recognized each of these statutory provisions as valid authority for such payments.

A.    This Court May Authorize Payment of the Critical Vendor Claims
       Pursuant to Sections 105 and 363 of the Bankruptcy Code

       17.    The relief requested in this motion is authorized pursuant to sections 105 and 363 of the Bankruptcy Code.  See In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon section 363 of the Bankruptcy Code is "completely consistent with the Bankruptcy Code").  Section 363(b)(1) of the Bankruptcy Code authorizes the trustee to use property of the estate other than in the ordinary course of business after notice and a hearing.  Furthermore, the debtor's decision to use property of the estate outside the ordinary course of business must be based upon the sound business judgment.  See In re Chateaugay Corp., 973 F.2d 141, 143 (2d. Cir. 1992); Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d. Cir. 1983).  Such relief contemplates payments to be made to Critical Vendors who agree to extend postpetition credit or other valuable consideration in exchange for such payment.  As a result, the payment of such Critical Vendor Claims is consistent with and appropriate under sections 105 and 363 of the Bankruptcy Code.

       18.    Pursuant to Bankruptcy Rule 6003(b), authorization to utilize property of the estate, "including a motion to pay all or part of a claim that arose before the filing of the petition . . .[,]" may not be granted in the first twenty days of a bankruptcy case, except "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ."  Fed. R. Bankr. P. 6003(b).  As detailed above, the goods and services that the Critical Vendors provide are integral to the Debtor's uninterrupted operations, and the ability to pay the Critical Vendor Claims during the first twenty (20) days of this case is necessary to avoid immediate and

irreparable harm to the Debtor.  For the reasons set forth herein, the Debtor submits that the requirements of Bankruptcy Rule 6003 have been satisfied.

19.    Courts in this and other jurisdictions have granted similar critical vendor relief in other bankruptcy cases.  See, e.g., In re Global Aviation Holdings Inc., et al., Case No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 8, 2012); In re The Brown Publishing Co., Case No. 10-73295 (DTE) (Bankr. E.D.N.Y. May 27, 2010); In re The Brooklyn Hospital Center and Caledonian Health Center, Inc., Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. Nov. 3, 2005); Lyondell Chemical Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009); In re Bally Total Fitness of Greater New York, Inc., Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. Jan. 7, 2009); In re Frontier Airlines Holdings, Inc., Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 15, 2008); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005); In re Delta Air Lines, Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005).

B.    The Court May Rely on the "Necessity of Payment"
       Doctrine and its General Equitable Powers to Grant The Motion

20.    The "doctrine of necessity" or "necessity of payment" rule "is a well-settled doctrine that recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Financial News Network, Inc., 134 Bankr. 732, 736 (Bankr. S.D.N.Y. 1991) (to invoke the doctrine, debtor must show that the payment is "critical to the debtor's reorganization").  This doctrine is consistent with the paramount goal of chapter 11 — "facilitating the continued operation and rehabilitation of the debtor."  In re Ionosphere Clubs, 98 B.R. at 176.

21.     The court's general equitable powers are codified in section 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. at 175. Under section 105(a) of the Bankruptcy Code, a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); see also In re Chateaugay Corp., 80 B.R. 279, 285-86 (S.D.N.Y. 1987). Maintaining access to the goods and services supplied by the Critical Vendors is absolutely critical to the Debtor's successful reorganization and is in the best interests of the Debtor's estate, its patients, and its creditors. Hence, granting the Debtor the authority to pay the Critical Vendor Claims is essential to assure that the Debtor continues to receive the goods and services required for operations. This Court should therefore exercise its equitable powers to grant the relief requested in this motion.

22.     To successfully implement the requested relief, the Debtor respectfully seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

23.     Accordingly, for all of the foregoing reasons, the Debtor submits that cause exists for granting the relief requested herein.

## NOTICE

24.     Notice of this motion will be given to: (a) the U.S. Trustee; (b) DASNY and counsel to DASNY; and (c) the Debtor's twenty (20) largest unsecured creditors. The Debtor submits that, under the circumstances, no other or further notice is required.

25.    No previous motion for the relief sought herein has been made to this or any other Court.

26.    As the authorities relied upon herein are set forth above, the Debtor respectfully submits that this motion satisfies the requirements of Rule 9013-1(a) of the Local Bankruptcy Rules of the Eastern District of New York regarding the submission of a memorandum of law.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms annexed hereto as <u>Exhibit B</u> and <u>Exhibit C</u>, granting the relief requested in the motion and granting the Debtor such other and further relief as may be just and proper.

Dated: December 2, 2012

WILLKIE FARR & GALLAGHER LLP

By:  /s/ Alan J. Lipkin                              
     Alan J. Lipkin
     Shaunna D. Jones
     Jack M. Tracy II
     787 Seventh Avenue
     New York, New York 10019
     Tel:  (212) 728-8000
     Fax:  (212) 728-8111

*Proposed Counsel to Debtor and*
     *Debtor in Possession*

**<u>EXHIBIT A</u>**

**Trade Agreement**

_____, 2012

TO:    [Critical Vendor]
        [Name]
        [Address]

Dear Valued Supplier:

        As you may be aware, on [_____ __, 2012] (the "**<u>Petition Date</u>**"), Interfaith Medical Center, Inc. (the "**<u>Debtor</u>**"), filed a voluntary petition under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York (the "**<u>Bankruptcy Case</u>**" and the "**<u>Bankruptcy Court</u>**," respectively).  On the Petition Date, we requested the Bankruptcy Court's authority to pay certain critical service providers and suppliers (the "**<u>Critical Vendors</u>**") in recognition of the importance of our relationship with them and our desire that the Bankruptcy Case have as little effect on them as possible.  On [_____ __], 2012, the Bankruptcy Court entered an order (the "**<u>Order</u>**") authorizing us, under certain conditions, to pay pre-bankruptcy claims of Critical Vendors that agree to the terms set forth below and to be bound by the terms of the Order.  A copy of the Order is enclosed.

        To receive payment on pre-bankruptcy claims, we require each Critical Vendor to agree to continue supplying goods to the Debtor based on "Customary Trade Terms."  In the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowance, rebates and availability and other applicable terms and programs) in effect between such Critical Vendor and the Debtor on a historical basis prior to the Petition Date (the "**<u>Prepetition Trade Terms</u>**") or such other trade terms, practices and programs that are at least as favorable to the Debtor as the Prepetition Trade Terms.

        For purposes of administration of this trade program as authorized by the Bankruptcy Court, the Debtor and you agree as follows:

1.      The estimated balance of the prepetition trade claim (net of any setoffs, credits or discounts) is $_____ (the "**<u>Trade Claim</u>**").  **Your Trade Claim does not constitute a claim allowed by the Bankruptcy Court in the Bankruptcy Case.  Furthermore, signing this Trade Agreement does not excuse you from any requirement of filing a proof of claim in the Bankruptcy Case on account of prepetition amounts that may remain unpaid.**

2.      The open trade balance or credit line that you will extend to the Debtor for shipment of postpetition goods is $_____ (which shall not be less than the greater of the open trade balance outstanding:  (a) on _____, 2012, or (b) the most favorable trade terms offered to the Debtor in the twelve months prior to the Petition Date).

3.      In consideration for the payment described herein, you agree not to file or otherwise assert against the Debtor, its estate or any other person or entity or any of its respective assets or property (real or personal) any lien (a "**Lien**"), claim for reclamation ("**Reclamation Claim**") or claim under section 503(b)(9) of the Bankruptcy Code (a "**503(b)(9) Claim**"), regardless of the statute or other legal authority upon which such Lien, Reclamation Claim or 503(b)(9) Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtor arising from agreements or other arrangements entered into prior to the Petition Date and, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim or 503(b)(9) Claim, you shall (at your own expense) take whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim or 503(b)(9) Claim.

4.      You will hereafter extend to the Debtor all Customary Trade Terms, which are:

[ADD INDIVIDUALIZED SET OF CUSTOMARY TRADE TERMS]

Payment of your Trade Claim in the manner set forth in the Order may occur upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtor.  Your execution of this letter agreement and the return of the same to the Debtor constitutes an agreement between you and the Debtor:

(a)      to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Trade Claim set forth above;

(b)      that, during the pendency of the Bankruptcy Case, you will continue to supply the Debtor with goods and/or services, pursuant to the terms hereof and that the Debtor will pay for such goods in accordance with the terms hereof;

(c)      that you have reviewed the terms and provisions of the Order and acknowledge that you are bound by such terms;

(d)      that you will not separately seek payment for Reclamation Claims, 503(b)(9) Claims or similar claims outside of the terms of the Order unless your participation in the trade payment program authorized by the Order (the "**Trade Payment Program**") is terminated; and

(e)      that if either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Trade Claim will be deemed to have been in payment of postpetition obligations owed to you and you

2

will immediately repay to the Debtor any payments made to you on account of your Trade Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense.

The Debtor and you also hereby agree that any dispute with respect to this agreement, the Order and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call [Name] at (___)_____ or [Name] (___)_____.

Sincerely,

Interfaith Medical Center, Inc.

By:

Its:

Agreed and Accepted by:
[Name of Critical Vendor]

By:

Its:

Dated:

**EXHIBIT B**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                            :        Chapter 11
                                                 :
Interfaith Medical Center, Inc.,[1]              :        Case No. 12-_____ (        )
                                                 :
                              Debtor.            :
-------------------------------------------------------x

### INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF BANKRUPTCY CODE AUTHORIZING DEBTOR TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS

      Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**"), for an interim order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to pay prepetition claims of critical vendors; and upon the Declaration of Luis A. Hernandez, President and Chief Executive Officer of Interfaith Medical Center, Inc., In Support of Chapter 11 Petitions and First Day Pleadings; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interest of the estate, its patients, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

      ORDERED, ADJUDGED, AND DECREED that:

      1.     The Motion is granted to the extent set forth herein.

      2.     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

---

[1]    The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

3.      The Debtor is authorized, but not directed, in its sole discretion, to pay in the ordinary course of its business, the Critical Vendor Claims in amounts not to exceed $2.5 million in the aggregate.

4.      The Debtor is authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtor substantially similar to that annexed as Exhibit A to the Motion, as a condition of payment of each such Critical Vendor's Critical Vendor Claims.

5.      The Debtor is authorized, in its discretion, to make payments on account of a Critical Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement, if the Debtor determines, in its business judgment, that failure to pay such Critical Vendor Claim is likely to harm the Debtor's business operations.

6.      If a Critical Vendor refuses to supply goods to the Debtor on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Vendor Claim (regardless of whether such Critical Vendor has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtor, then the Debtor may, in its discretion and without further order of the Court: (a) declare that any Trade Agreement between the Debtor and such Critical Vendor is terminated; (b) declare that payments made to such Critical Vendors on account of its Critical Vendor Claims shall be deemed to have been in payment of then-outstanding or subsequently accruing postpetition claims of such Critical Vendor; and (c) recover any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision of payment of reclamation or trust fund claims or other defense.

Nothing herein shall constitute a waiver of the Debtor of its rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

7.    Notwithstanding the foregoing, the Debtor may, in its sole discretion, reinstate a Trade Agreement if:

(a)    the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtor's notification to the Critical Vendor of such default had occurred; or

(b)    the Debtor, in its sole discretion, reach a favorable alternative agreement with the Critical Vendor.

8.    Nothing herein shall be construed to limit, or in any way affect, the Debtor's ability to dispute any Critical Vendor Claim.

9.    Nothing contained in this Interim Order shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease between the Debtor and a Critical Vendor or to require the Debtor to make any of the payments authorized herein.

10.    The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtor or its officers, directors, attorneys or agents to pay the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtor not to pay a Critical Vendor Claim and nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

11.    The amount of any Critical Vendor Claim set forth in a Trade Agreement shall be used only for purposes of determining a Critical Vendor's claim under this Interim Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court.  Further,

signing a Trade Agreement containing a claim amount for purposes of this Interim Order shall

not excuse such Critical Vendor from filing a proof of claim in this case on account of

prepetition amounts that may remain unpaid.

12.      No claimant who receives payment on account of a Critical Vendor Claim

(whether or not such claimant signs a Trade Agreement) is permitted to:  (a) file or perfect a

Lien on account of such claim, and any such claimant shall take all necessary action to remove

any existing Lien relating to such claim, even if the Lien is against property of a non-Debtor; or

(b) seek payment for a Reclamation Claim, 503(b)(9) Claim or similar claim outside of the

terms of this Interim Order.

13.      Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained herein shall create, nor is it intended to create, any rights in favor of, or

enhance the status of any claim held by, any person.

14.      Nothing in this Interim Order shall prohibit the Debtor from seeking Court

approval to increase the prepetition amounts authorized to be paid hereunder.

15.      The execution of a Trade Agreement by the Debtor shall not be declared a

waiver of any other cause of action, including avoidance actions, which may be held by the

Debtor.

16.      Notwithstanding anything to the contrary contained in this order, any

payment made pursuant to or payment authorization contained in this order shall be subject to

any requirements imposed on the Debtor under any then operative order of this Court regarding

the Debtor's use of cash collateral or approving the Debtor's entry into and performance under

a debtor in possession financing agreement.

4

17.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor.

18.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

20.     Any objections to entry of a final order on the Motion must be (a) filed with the Court no later than 4:00 p.m. prevailing Eastern time on [_____], 2012 (the "**Objection Deadline**") and (b) served so as to be actually received by the following parties by the Objection Deadline:  (i) Interfaith Medical Center, 1545 Atlantic Avenue, Brooklyn, NY 11213, Attn.: Robert Mariani; (ii) counsel for the Debtor, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Alan J. Lipkin, Esq. and Shaunna D. Jones, Esq.); (iii) the Office of the United States Trustee, 271 Cadman Plaza East, Suite 4529, Brooklyn, NY 11201 (Attn: William E. Curtin and Susan D. Golden); (iv) counsel to DASNY; and (v) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis.

21.     Any objections or responses to the Motion shall be filed and served on parties-in-interest as required by the Local Rules.

22.     A hearing shall be held to consider the relief granted herein on a final

basis on _____, 2012, at __.m., before the Honorable _____, United States

Bankruptcy Judge, in Courtroom _____, 271 Cadman Plaza East, Suite 1595, Brooklyn,

NY 11201-1800 (the "**Final Hearing**") and, pending entry of an order following the conclusion

of the Final Hearing, the relief granted herein shall remain in effect on an interim basis.

Dated: Brooklyn, New York
          _____ __, 2012

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT D</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re                                          :        Chapter 11

                                               :

Interfaith Medical Center, Inc.,[1]            :        Case No. 12-_____ (      )

                                               :

                        Debtor.                :

--------------------------------------------------------x

### FINAL ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF BANKRUPTCY CODE AUTHORIZING DEBTOR TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS

Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**"), for a final order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to pay prepetition claims of critical vendors; and upon the Declaration of Luis A. Hernandez, President and Chief Executive Officer of Interfaith Medical Center, Inc., In Support of Chapter 11 Petitions and First Day Pleadings; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interest of the estate, its patients, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.      The Motion is granted to the extent set forth herein.

2.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

---

[1]     The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

3.      The Debtor is authorized, but not directed, in its sole discretion, to pay in the ordinary course of its business, the Critical Vendor Claims in amounts not to exceed $2.5 million in the aggregate.

4.      The Debtor is authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtor substantially similar to that annexed as Exhibit A to the Motion, as a condition of payment of each such Critical Vendor's Critical Vendor Claims.

5.      The Debtor is authorized, in its discretion, to make payments on account of a Critical Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement, if the Debtor determines, in its business judgment, that failure to pay such Critical Vendor Claim is likely to harm the Debtor's business operations.

6.      If a Critical Vendor refuses to supply goods to the Debtor on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Vendor Claim (regardless of whether such Critical Vendor has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtor, then the Debtor may, in its discretion and without further order of the Court: (a) declare that any Trade Agreement between the Debtor and such Critical Vendor is terminated; (b) declare that payments made to such Critical Vendors on account of its Critical Vendor Claims shall be deemed to have been in payment of then-outstanding or subsequently accruing postpetition claims of such Critical Vendor; and (c) recover any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision of payment of reclamation or trust fund claims or other defense.

2

Nothing herein shall constitute a waiver of the Debtor of its rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

7.      Notwithstanding the foregoing, the Debtor may, in its sole discretion, reinstate a Trade Agreement if:

(a)      the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtor's notification to the Critical Vendor of such default had occurred; or

(b)      the Debtor, in its sole discretion, reach a favorable alternative agreement with the Critical Vendor.

8.      Nothing herein shall be construed to limit, or in any way affect, the Debtor's ability to dispute any Critical Vendor Claim.

9.      Nothing contained in this Final Order shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease between the Debtor and a Critical Vendor or to require the Debtor to make any of the payments authorized herein.

10.      The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtor or its officers, directors, attorneys or agents to pay the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtor not to pay a Critical Vendor Claim and nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

11.      The amount of any Critical Vendor Claim set forth in a Trade Agreement shall be used only for purposes of determining a Critical Vendor's claim under this Final Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court.  Further, signing a

Trade Agreement containing a claim amount for purposes of this Final Order shall not excuse such Critical Vendor from filing a proof of claim in this case on account of prepetition amounts that may remain unpaid.

12.     No claimant who receives payment on account of a Critical Vendor Claim (whether or not such claimant signs a Trade Agreement) is permitted to:  (a) file or perfect a Lien on account of such claim, and any such claimant shall take all necessary action to remove any existing Lien relating to such claim, even if the Lien is against property of a non-Debtor; or (b) seek payment for a Reclamation Claim, 503(b)(9) Claim or similar claim outside of the terms of this Final Order.

13.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

14.     Nothing in this Final Order shall prohibit the Debtor from seeking Court approval to increase the prepetition amounts authorized to be paid hereunder.

15.     The execution of a Trade Agreement by the Debtor shall not be declared a waiver of any other cause of action, including avoidance actions, which may be held by the Debtor.

16.     Notwithstanding anything to the contrary contained in this order, any payment made pursuant to or payment authorization contained in this order shall be subject to any requirements imposed on the Debtor under any then operative order of this Court regarding the Debtor's use of cash collateral or approving the Debtor's entry into and performance under a debtor in possession financing agreement.

17.    Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor.

18.    Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

19.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.

Dated: Brooklyn, New York
_____ __, 2012

_____
UNITED STATES BANKRUPTCY JUDGE