Alan J. Lipkin
Shaunna D. Jones
Jack M. Tracy II
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-48226 (    ) |
| | : | |
| Debtor. | : | |

------------------------------------------------------x

## DEBTOR'S MOTION FOR ORDER, PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AUTHORIZING DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE DEBTOR'S SENIOR MANAGEMENT, NUNC PRO TUNC TO THE PETITION DATE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor** or **IMC**"), hereby files this motion for entry of an order, pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing the Debtor to employ and retain: (a) Kurron Shares of America, Inc. ("**Kurron**") as manager for the Debtor; (b) Kurron personnel as the Debtor's senior management; and (c) related relief, *nunc pro tunc* to the commencement of this case.[2]  In support of this motion, the Debtor relies upon and incorporates by reference the Declaration of Corbett Price, in Support of the Debtor's Motion for

---

[1]  The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

[2]  Technically, the Kurron personnel are retained through the Debtor's retention of Kurron.

Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing Debtor to Employ and Retain Kurron Shares of America, Inc. as Manager for the Debtor and Kurron Personnel as the Debtor's Senior Management, *Nunc Pro Tunc* to the Petition Date (the "**Price Declaration**") attached hereto as <u>Exhibit A</u>.  In further support of this motion, the Debtor respectfully represents as follows:

## <u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue of this case and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 363 of the Bankruptcy Code.

## <u>BACKGROUND</u>

2.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is a non-profit health care provider, comprised of a 287-bed teaching hospital and an ambulatory care network of 8 clinics located in central Brooklyn, New York.  The Debtor intends to continue in possession of its property and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured creditors has been appointed.

3.      The events leading to the Debtor's chapter 11 filing and the facts and circumstances supporting the relief requested herein are further described in the Declaration of Luis A. Hernandez, President and Chief Executive Officer of Interfaith Medical Center, Inc., in Support of Chapter 11 Petition and First Day Pleadings, which was filed with the Court on the Petition Date.

## RELIEF REQUESTED

4. By this motion, the Debtor seeks entry of an order, pursuant to section 363 of the Bankruptcy Code, authorizing and approving the Debtor's employment and retention of Kurron as manager for the Debtor and Kurron personnel to serve in the roles of President and Chief Executive Officer ("**CEO**"), Chief Restructuring Officer ("**CRO**"), Chief Financial Officer ("**CFO**"), Chief Operating Officer ("**COO**"), and Special Counsel, *nunc pro tunc* to the Petition Date. The Debtor proposes that such employment and retention be on the terms and conditions set forth in the letter agreement between the Debtor and Kurron, dated [November _, 2012] (the "**Engagement Letter**"), a copy of which is annexed hereto as <u>Exhibit B</u> and incorporated herein by reference.

## QUALIFICATIONS OF KURRON

5. Kurron was founded in 1990 by an experienced team of former hospital executives who had operated some of the most efficient and effectively-managed hospitals in the United States. Since Kurron's founding, its team has grown to include some of the most well-known and well-respected professionals in the field of health care. Kurron has managed numerous hospitals and health care facilities and provides a full range of management, consulting, strategic advisory, and restructuring services to a wide range of businesses within the health care sector. Kurron specializes in crisis management for financially troubled health care entities.

6. The Debtor originally engaged Kurron in 1991 to provide management services and to address the Debtor's operating performance. Since then, Kurron has provided the Debtor's senior management and related services.

7.     Kurron's most recent prepetition services for the Debtor were provided pursuant to a management agreement between the Debtor and Kurron, dated September 1, 2009 (the "**Management Agreement**"), which was submitted to the New York Department of Health. Under the Management Agreement, certain Kurron employees served as executives of the Debtor during periods prior to the Petition Date (collectively, the "**Kurron Officers**").

- Mr. Corbett Price, the Chairman and CEO of Kurron, previously served as the CEO of the Debtor. Mr. Price served as a director of the Debtor until 2011 and currently serves as the Debtor's Chief Restructuring Officer.

- Mr. Luis Hernandez has served as the President and CEO since November 2011, and has intermittently provided consulting services to the Debtor since 1998. Mr. Hernandez also held the position of Interim CEO of the Debtor from June 2008 through February 2010.

- Mr. Robert Mariani has served as the Debtor's CFO since October 2011, Mr. Patrick Sullivan has served as the Debtor's COO since December 2010, and Ms. Pamela Bradshaw has served as Special Counsel since November 2011.

In addition, other Kurron personnel will provide services to the Debtor as needed and mutually agreed.

8.     Kurron and the Kurron Officers have extensive experience in providing management services to health care facilities in reorganization proceedings and have a reputation for providing excellent services on behalf of debtors and creditors in reorganization cases nationwide. The Debtor's President and CEO has over thirty-five years of experience in hospital executive management, of which twenty-eight years have been served in the capacity of chief restructuring officer or chief executive officer. He has an extensive background in financial and operational restructuring of health care facilities and nursing homes and has successfully repositioned several financially distressed and underperforming health care facilities in New

4

York State. The Debtor's CFO has over twenty years of experience in the financial and health care fields. His experience includes financial administration and public accounting, and he has significant experience in the management of a financially distressed company as well as in other financial and operational turnaround situations. The Debtor's COO is a healthcare networks specialist with over 25 years of experience in the health care industry. Prior to joining Kurron, the Debtor's Special Counsel was a corporate attorney at the law firm of Debevoise & Plimpton LLP. The Kurron Officers are highly qualified to work for the Debtor in this case.

9.     Based on the foregoing, the Debtor believes the continued engagement of Kurron and the Kurron Officers is essential to the success of the Debtor's restructuring efforts. As noted, the Kurron Officers have a longstanding relationship with the Debtor and, as a result, possess invaluable in-depth knowledge of the Debtor's operations and financial condition as well as the circumstances that led the Debtor to commence this case. As such, the Kurron Officers are integral to the Debtor's business.

10.     Kurron's prepetition services for the Debtor have also included guiding the daily implementation of the Debtor's recent restructuring efforts. In that regard, Kurron personnel have led efforts to assist the Board in its examination of strategic alternatives for the Debtor, analysis of the Debtor's current financial outlook, and exploration of alternative means to meet the Debtor's near-term liquidity needs. Additionally, Kurron personnel have been integral in negotiations regarding potential business affiliation or integration with another hospital. It is anticipated that such negotiations shall continue during and be central to the chapter 11 process.

11.     The experience concerning the Debtor that the Kurron Officers gained prior to the Petition Date will facilitate and enhance their provision of management services the

Debtor requires postpetition. The Debtor believes the Kurron Officers are both well-qualified and uniquely able to provide effective and efficient services to the Debtor during this case. Therefore, the Debtor's retention of Kurron and the Kurron Officers is in the best interests of the Debtor and its estate, patients, creditors and other parties in interest.

## **SCOPE OF SERVICES**

12.     Pursuant to the Engagement Letter, the CRO provided by Kurron will report to and be subject to the direct supervision of the Debtor's board of trustees (the "**Board**"), and will oversee the Debtor's restructuring as detailed in the Engagement Letter. In addition, pursuant to the Engagement Letter, the CRO will provide oversight and support to the Debtor's other professionals in connection with the Debtor's reorganization efforts and administration of the Debtor's chapter 11 case.

13.     More generally, in accordance with the Engagement Letter, the Kurron Officers will perform the following services, among others, in connection with this case as requested by and mutually agreed with the Debtor:[3]

> (a) assist in the preparation and evaluation of the Debtor's financial forecasts and budgets;
>
> (b) review and provide advice to the Debtor on its current and prospective business plans (including detailed financial projections);
>
> (c) assist the Debtor in its negotiations with the Debtor's creditors, including the Dormitory Authority of the State of New York ("**DASNY**"), and provide periodic reports to DASNY on the progress of the Debtor's restructuring efforts;
>
> (d) participate in meetings of the Debtor's Board as appropriate, and provide reports and advice to the Board as requested;

---

[3]     The description of the Engagement Letter is a summary. To the extent that this motion and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter control.

(e) assist in the performance of cost/benefit analyses related to executory contracts and the assumption/rejection of each;

(f) assist in the evaluation and reconciliation of claims asserted against the Debtor in this case;

(g) assist in the Debtor's overall financial reporting and addressing the administrative requirements of the Bankruptcy Code, including post-petition reporting requirements and claims reconciliation efforts; and

(h) perform such other services as Kurron and the Debtor mutually agree.

14.     All of the services that Kurron and the Kurron Officers will provide to the Debtor will be undertaken at the request of the Debtor and will be under the ultimate direction of the Board.

## DISINTERESTEDNESS

15.     To the best of the Debtor's knowledge, information and belief, Kurron and the Kurron Officers do not have any connection, have not represented and have no relationship with: (a) the Debtor; (b) the Debtor's creditors; (c) any other potential parties in interest in this case; (d) the respective attorneys and accountants of any of the foregoing; or (e) the United States Trustee for the Eastern District of New York (the "**U.S. Trustee**") or any person employed in the Office of the U.S. Trustee, in any matter relating to this case, except to the extent set forth in the Price Affidavit and herein.  Mr. Price served on the Board from about 2002 (after Kurron had been engaged by the Debtor for several years) until October 2011, and as CEO of the Debtor from about 1993 to January 2002.  Further, as previously noted, prior to commencement of this case, Kurron and the Kurron Officers rendered management services to the Debtor.

16.     The Kurron personnel that currently serve as the Kurron Officers have been intimately involved with the Debtor's debt restructuring process.  Considering their

experience with the Debtor and their expertise, these professionals and Kurron are by far the most qualified parties to provide management services to the Debtor and serve as officers of the Debtor during this case. Given the exigencies of the chapter 11 process, the Debtor's retention of new management would be difficult, time-consuming, expensive, and impractical. Absent the Debtor's ability to continue to engage the Kurron Officers, the Debtor's ongoing restructuring efforts, including negotiations with significant creditors and with another hospital regarding a proposed business affiliation or integration could be impacted negatively as the Debtor's attention instead would be focused on replacing its entire senior management team. Thus, the Debtor respectfully submits that granting this motion is in the best interests of the Debtor, its estate, its creditors, its patients, its community, and other parties in interest.

**COMPENSATION**

17. The terms of Kurron's proposed compensation are fully set forth in the Engagement Letter. The Debtor proposes to compensate Kurron for services to be performed by the Kurron Officers in this case by a weekly payment of $62,500, as further set forth on Exhibit A to the Engagement Letter. Notably, Kurron will pay all salaries and benefits to which the Kurron Officers are entitled. Pursuant to the prior Management Agreement, Kurron has been historically paid in advance for its services, and no amounts are outstanding on account of Kurron's prepetition services to the Debtor. For the services of any Kurron personnel in addition to the Kurron Officers, Kurron shall be compensated by IMC according to Kurron's hourly consultant rates, which are outlined in Exhibit A to the Engagement Letter. Such hourly rates will be updated on an annualized basis.

18. Further, the Debtor has agreed to reimburse Kurron for its reasonable expenses incurred in connection with the provision of services, such as travel and other

reasonable out-of-pocket expenses (as further set forth in the Engagement Letter).  Kurron will

maintain records in support of any actual and necessary costs and expenses incurred in

connection with the rendering of its services in this case.

19.     The compensation arrangement reflected in the Engagement Letter is

consistent with, and typical of, arrangements entered into by Kurron and other crisis

management firms rendering similar services for clients such as the Debtor.

20.     In the 90 days prior to the Petition Date, Kurron received payments

totaling $724,205.40 for services performed for the Debtor.  Kurron has applied these funds to

amounts due for services rendered and expenses incurred prior to the Petition Date.  In addition,

on November 28, 2012, Kurron received payment of a retainer in the amount of $250,000.

Kurron will apply the retainer to invoices for services rendered for the month of December 2012

and, to the extent amounts remain, subsequent postpetition periods.

21.     If the Court approves the relief requested herein, Kurron will be employed

and retained as manager for the Debtor pursuant to section 363 of the Bankruptcy Code, rather

than as a professional under section 327 of the Bankruptcy Code.  Accordingly, Kurron would

not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy

Code.  Instead, Kurron would file with the Court, and provide notice to the U.S. Trustee and all

official committees, reports of compensation earned and expenses incurred on at least a quarterly

basis.  Such compensation reports and expenses shall be subject to Court review in the event an

objection is filed.

22.     Kurron has agreed not to share with any person or firm the compensation

that will be paid for professional services rendered in connection with this case, other than to the

extent permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION AND LIMITATION OF LIABILITY

23.     Pursuant to the Engagement Letter, if the motion is granted, the Debtor will indemnify and hold harmless Kurron personnel who are serving as officers of the Debtor (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**") against liabilities arising out of or in connection with Kurron's engagement by the Debtor, on the same terms as provided to the Debtor's other officers under the Debtor's corporate bylaws and applicable state law.  Hence, after the Petition Date,  each of the Kurron personnel that serve as CRO, President and CEO, CFO, and COO (or any other officer role) of the Debtor will be named as a covered individual on the Debtor's directors and officers insurance policy and on any employment practices rider to such policies.

24.     The Debtor submits that: (a) such indemnification provisions are standard in the health care management services industry, both out-of-court and in other chapter 11 cases; and (b) the Debtor's provision of such indemnification is fair and reasonable considering Kurron's qualifications and the expectations of other crisis management firms in connection with engagements of this scope and size.  The indemnification provisions are similar to other indemnification provisions that have been approved by other bankruptcy courts.  See, e.g.,  In re Alexander Gallo Holdings, LLC, et. al., Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 13, 2011); In re Blockbuster, Inc., et. al., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Oct. 17, 2010); In re Saint Vincents Catholic Medical Centers of New York, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. July 2, 2010); In re General Motors Corp., et.al., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); In re New York United Hospital Medical Center, Case No. 04-23889 (ASH) (Bankr. S.D.N.Y. Jan. 27, 2005).

25.     The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Debtor and Kurron at arm's length and in good faith.  The Debtor respectfully submits that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Kurron's proposed retention, are reasonable and in the best interests of the Debtor, its estate, its patients and its creditors.  Accordingly, the Debtor respectfully requests that the Court approve the indemnification provisions.

**BASIS FOR RELIEF REQUESTED**

26.     The Debtor seeks authority to enter into the Engagement Letter pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date.  Although the Debtor submits that Kurron's engagement is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Price Declaration as <u>Exhibit A</u> hereto in support of this motion, in which Mr. Price describes Kurron's connections with parties in interest in this case.

27.     Section 363(b) provides in pertinent part:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate."  11 U.S.C. § 363(b).

28.     Courts recognize the applicability of section 363(b) to the use of estate property to compensate individuals employed outside the ordinary course of business to act as interim officers or managers.  <u>See</u>, <u>e.g.</u>, <u>In re Borders Group, Inc., et. al.</u>, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. March 16, 2011); <u>In re Blockbuster, Inc., et. al.</u>, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Oct. 17, 2010); <u>In re Saint Vincents Catholic Medical Centers of New York</u>, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. July 2, 2010); <u>In re General Motors Corp., et.al.</u>, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009); <u>In re Caritas Health Care,</u>

Inc., Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. Mar. 20, 2009); In re Lehman Brothers Holdings Inc., et. al., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2007); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008); In re Bally Total Fitness of Greater N.Y., Inc., Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); In re New York United Hospital Medical Center, Case No. 04-23889 (ASH) (Bankr. S.D.N.Y. Jan. 27, 2005).

29.     Notwithstanding the many years during which Kurron has been employed by the Debtor on terms similar to those proposed here, the Debtor's agreement to the Engagement Letter and employment of Kurron and Kurron personnel as officers might be considered actions outside the ordinary course of business.  For the reasons set forth above, the Debtor has determined in the exercise of its business judgment that the approval of the Engagement Letter is in the best interests of the Debtor, its estate, its patients, its creditors, its community, and other parties in interest.  The Debtor believes the continued retention of Kurron and the Kurron Officers is critical to the Debtor's ability to reorganize.

30.     Accordingly, this motion should be granted under section 363.

## NOTICE

31.     Notice of this motion will be given to: (a) the U.S. Trustee; (b) DASNY and counsel to DASNY; and (c) the Debtor's twenty (20) largest unsecured creditors.  The Debtor submits that, under the circumstances, no other or further notice is required.

32.     No previous motion for the relief sought herein has been made to this or any other Court.

As the authorities relied upon herein are set forth above, the Debtor respectfully submits that this motion satisfies the requirements of Rule 9013-1(a) of the Local Bankruptcy Rules of the Eastern District of New York regarding the submission of a memorandum of law.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as <u>Exhibit C</u>, granting the relief requested in this motion and granting the Debtor such other and further relief as may be just or proper.

Dated: December 2, 2012

WILLKIE FARR & GALLAGHER LLP

By: /s/ Alan J. Lipkin
      Alan J. Lipkin
      Shaunna D. Jones
      Jack M. Tracy II
      787 Seventh Avenue
      New York, New York 10019
      Tel: (212) 728-8000
      Fax: (212) 728-8111

*Proposed Counsel to Debtor and
    Debtor in Possession*

## EXHIBIT A

## Price Declaration

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                              :       Chapter 11
                                                   :
Interfaith Medical Center, Inc.,[1]                :       Case No. 12-48226 (        )
                                                   :
                          Debtor.                  :
-------------------------------------------------------x

## DECLARATION OF CORBETT PRICE, IN SUPPORT OF DEBTOR'S MOTION FOR ORDER, PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AUTHORIZING DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE <u>DEBTOR'S SENIOR MANAGEMENT, NUNC PRO TUNC TO THE PETITION DATE</u>

I, Corbett Price, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am the Chairman and Chief Executive Officer of Kurron Shares of America, Inc. (the "**<u>Kurron</u>**"), which provides management services to health care providers, and has provided such management services to Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**<u>Debtor</u>**") since 1991.  Kurron is headquartered at 885 Third Avenue, 24th Floor, New York, NY 10022.

2.      On the date hereof (the "**<u>Petition Date</u>**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**").  The Debtor intends to continue in possession of its property and management of its business as a debtor in possession.  I am duly authorized to make and submit this affidavit on behalf of Kurron in support of the Debtor's Motion for Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing Debtor to Employ and Retain Kurron Shares of America, Inc. as

---

[1]    The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

Manager for the Debtor and Kurron Personnel as the Debtor's Senior Management, *Nunc Pro Tunc* to the Petition Date (the "**Motion**").[2]  The Debtor proposes that such employment and retention be on the terms and conditions set forth in the Motion and the letter agreement between the Debtor and Kurron, dated November 29, 2012 (the "**Engagement Letter**") attached to the Motion as Exhibit B.  Unless otherwise stated, I have personal knowledge of the matters set forth herein or have been informed of such matters by professionals of Kurron, and, if called as a witness, I would testify thereto.

## QUALIFICATIONS

3.      Kurron personnel are well-qualified to provide management services to the Debtor in this chapter 11 case.  Kurron has considerable expertise in assisting the restructuring activities of companies outside of chapter 11 cases.  I have an extensive background in financial and operational restructuring of health care facilities and have successfully repositioned several financially distressed and underperforming facilities in New York State.  My experience includes previously serving as the Chief Executive Officer ("**CEO**") of the Debtor, and providing restructuring services to Episcopal Health Services, among other health care institutions.  Further, I have been named a distinguished trustee by the United Hospital Fund.

4.      In addition to my and Kurron's experience with other companies operating in chapter 11, I and other professionals of Kurron are intimately familiar with the Debtor's business.  Kurron has provided management services to the Debtor since 1991, and, as a result,

---

[2]      Technically, the Kurron personnel are retained by IMC through its retention of Kurron.

possesses invaluable in-depth knowledge of the Debtor's operations, financial condition, and circumstances that led the Debtor to commence this case.

## SCOPE OF SERVICES

5.      Subject to an order of this Court, Kurron will provide restructuring management services as requested by the Debtor and described in the Engagement letter, including, but not limited to the following:

(a) assist in the preparation and evaluation of the Debtor's financial forecasts and budgets;

(b) review and provide advice to the Debtor on its current and prospective business plans (including detailed financial projections);

(c) assist the Debtor in its negotiations with the Debtor's creditors, including the Dormitory Authority of the State of New York, and provide periodic reports to DASNY on the progress of the Debtor's restructuring efforts;

(d) participate in meetings of the Debtor's board of trustees (the "**Board**") as appropriate, and provide reports and advice to the Board as requested;

(e) assist in the performance of cost/benefit analyses related to executory contracts and the assumption/rejection of each;

(f) assist in the evaluation and reconciliation of claims asserted against the Debtor in this case;

(g) assist in the overall financial reporting division in managing the administrative requirements of the Bankruptcy Code, including post-petition reporting requirements and claim reconciliation efforts; and

(h) perform such other services as Kurron and the Debtor hereto mutually agree.

6.      To address and handle the above responsibilities on behalf of the Debtor, I will serve as the Debtor's Chief Restructuring Officer ("**CRO**") and will be assisted by certain personnel from Kurron pursuant to the terms of the Engagement Letter.  Further, Kurron personnel will continue to serve in the following officer roles for the Debtor:  President and

CEO, Chief Financial Officer ("**CFO**"), Chief Operating Officer ("**COO**"), and Special Counsel. All of the services that Kurron will provide to the Debtor will be undertaken at the request of the Debtor and will be directed by the Debtor and the Board.

## DISCLOSURE OF CONNECTIONS

7.      To the best of my information, knowledge and belief, neither I, Kurron, nor any member or other employee of Kurron has any connection with the Debtor, its creditors, the United States Trustee for the Eastern District of New York (the "**U.S. Trustee**") or any of its employees, any other parties in interest herein, or their respective attorneys or accountants, except as stated herein.

8.      I served on the Board from about 2002 (after Kurron had been engaged by the Debtor for several years) until October 2011, and  I was the CEO of the Debtor from about 1993 to January 2002.[3]

9.      In connection with its proposed retention by the Debtor in this case, Kurron undertook to determine whether Kurron had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor. Specifically, Kurron obtained from the Debtor and/or its representatives the names of individuals and entities that may be parties-in-interest in this case (the "**Potential Parties-in-Interest**") and such parties are listed on Schedule 1 annexed hereto.  Kurron has researched its electronic client files and records to determine its connections with the Potential Parties-in-Interest.  Based on our inquiries, it appears Kurron has not worked for any of the Potential Parties-in-Interest in the past three years.  Fees for these engagements represent less than 1% of Kurron's annual revenues.  I

---

[3]      I also served on the board of trustees of IM Foundation at its inception, but I no longer serve in that role.

am unaware of any engagements of Kurron by the Potential Parties-in-Interest within the last three years.

10.     Kurron might also have worked for certain Potential Parties-in-Interest over three years ago; further, Kurron might have worked with, may continue to work with and/or may have mutual clients with, certain accounting and law firms who appear on the Potential Parties-in-Interest list.

11.     Given the size of the firm and the breadth of Kurron's client base, it is possible that Kurron might now or in the future be retained by one or more of the Potential Parties-in-Interest in matters unrelated to the Debtor or this case without my knowledge.  In addition, the Debtor has numerous creditors and other parties with whom the Debtor maintains business relationships and some may not be included as Potential Parties-in-Interest.  To the extent that Kurron discovers any, or enters into any new relationship with Potential Parties-in-Interest, it will supplement this disclosure to the Court promptly.  Other than as disclosed herein, Kurron has no relationship with the Debtor of which I am aware after due inquiry.

12.     Certain of Kurron's present and future employees might have, or might in the future have, personal investments in funds or other investment vehicles, over whose investment decisions such employees have no input or control.  Such entities might have made, or might in the future make, investments in the Debtor's securities, or those of its creditors or other parties-in-interest in this case.

13.     As previously stated, I served on the Debtor's Board from about 2002 until October 2011, and as CEO from about 1993 to January 2002.  Further, certain other Kurron Officers serve as executives of the Debtor.  Neither I, Kurron, nor any member or employee of

Kurron, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor or its estate. Kurron is not a prepetition creditor of any of the Debtor.

14.     To the best of my knowledge, Kurron has neither rendered nor is currently rendering management services to any of the Debtor's creditors.

## COMPENSATION

15.     Kurron shall perform for the Debtor the services set forth in the Engagement Letter and provide individuals to serve as officers of the Debtor. In this regard, the Debtor proposes that I will be employed and retained as CRO of the Debtor. In addition, the Debtor proposes that Mr. Luis A. Hernandez, Mr. Robert F. Mariani, Mr. Patrick J. Sullivan, and Ms. Pamela Bradshaw continue to serve as President and CEO , CFO, COO, and Special Counsel, respectively, as of the Petition Date. Other Kurron personnel will provide services to the Debtor as needed and mutually agreed.

16.     The terms of Kurron's employment and compensation, as described in the Engagement Letter, are consistent with employment and compensation arrangements typically entered into by Kurron when providing such management services. Kurron's employment and compensation arrangements are competitive with those entered into by other firms when rendering comparable services.

(i)     In the 90 days prior to the Petition Date, Kurron received payments totaling $724,205.40 for services performed for the Debtor. In addition, on November 28, 2012, Kurron received payment of a retainer in the amount of $250,000. Kurron has applied these funds (other than the retainer) to amounts due for services rendered and expenses incurred prior to the Petition Date in the following manner:

| Invoice Date | Invoiced Amount | Amount Received | Date Received | Retainer Balance |
|---|---|---|---|---|
| 8/1/2012 | $241,401.80 | $241,401.80 | 8/1/2012 | $0 |
| 9/4/2012 | $241,401.80 | $241,401.80 | 9/5/2012 | $0 |
| 10/2/2012 | $241,401.80 | $241,401.80 | 10/3/2012 | $0 |
| 11/2/2012 | $241,401.80 | $241,401.80 | 11/2/2012 | $0 |
| 11/26/2012 | $250,000.00 | $250,000.00 | 11/28/2012 | $250,000.00 |

17.     Kurron will file with the Court, and provide notice to the U.S. Trustee and all official committees, reports: (a) of compensation earned and expenses incurred on at least a quarterly basis; and (b) on staffing on the engagement for the previous month.  Such reports, expenses and staffing shall be subject to Court review in the event that an objection is filed.

18.     Notwithstanding anything contained in the Engagement Letter to the contrary, Kurron personnel serving as officers of the Debtor shall be entitled to indemnification in the event of certain losses arising out of or in connection with its retention by the Debtor. Kurron has not shared or agreed to share any of its compensation from the Debtor with any other person, other than a principal or employee of Kurron as permitted by section 504 of the Bankruptcy Code.

19.     By reason of the foregoing, I believe Kurron and Kurron personnel that will serve as officers of the Debtor are eligible for retention by the Debtor pursuant to section 363 of the Bankruptcy Code.

Dated: December 2, 2012

  /s/ Corbett Price
Corbett Price

## Schedule 1

## Potential Parties-in-Interest

# Interfaith Medical Center, Inc.
## Schedule of Parties-in-Interest

| Non-Debtor Related Parties | |
|---|---|
| I M Foundation | Interfaith Professional Physician Services |
| Interfaith Emergency Medicine | Interfaith Psychiatry Services |

| Current Officers | |
|---|---|
| Denise McLellan | Patrick J. Sullivan |
| Farooq Ajmal | Predeep Chandra, M.D. |
| Luis A. Hernandez | Robert Mariani |
| Patricia Cahill | Sandra Dwyer |

| Board of Trustees | |
|---|---|
| Albert Wiltshire | Charles Grannum, DMD |
| Brenda A. Bennett, MD | James Philips |
| Canon Diane M. Porter | Nathan M. Barotz, Esq. |

| Insurers & Brokers | |
|---|---|
| AFCO Premium Credit LLC | Navigators Insurance Company |
| Allied World Assurance Company | Risk Specialists Companies |
| American Guarantee & Liability Company | The Hartford Insurance Group |
| Darwin National Assurance Company | Twin City Fire Insurance Company |
| EG Bowman | Willis Group Holdings |
| Lexington Insurance Company | Zurich American Insurance Company |
| Marsh Inc. | |

| Banks | |
|---|---|
| Citibank, N.A. | JP Morgan Chase Bank, N.A. |

| Employee Unions | |
|---|---|
| 1199SEIU United Healthcare Workers East | The New York State Federation of Physicians and Dentists |
| The Committee of Interns and Residents | The New York State Nurses Association |

| Material Contract Parties | |
|---|---|
| B. Braun Medical Inc. | GE Healthcare |
| Baxter Healthcare Corporation | Konica Minolta Imaging USA, Inc. |
| Beckman Coulter, Inc. | New York City Department of Health and Mental Hygiene |
| Covidien | TD Bank, N.A. |
| Dade Behring Finance Co. LLC | |

| Professionals | |
|---|---|
| Advanced Care Staffing | JZanus, Ltd |
| Arent Fox LLP | Kranz & Company LLP |
| Brown & Weinraub, PLLC | Kurron Shares of America, Inc. |
| Campbell & Associates P.C. | Nixon Peabody LLP |
| Carlucci & Giardina, LLP | Putney, Twombly, Hall & Hirson LLP |
| Charles A. Barragato & Co. LLP | Plunkett & Jaffee |
| Creative Health Concepts Ltd. | Schiavetti, Corgan, DiEdwards, Weinberg & Nicholson LLP |
| Data Marshall Inc. | Securitas Security Services USA, Inc. |

| Diane Porter | Sodexho Inc. & Affiliates |
| Donlin Recano & Company Inc. | USI Consulting Group |
| Ernst & Young LLP | White Glove Placement |
| Gotham Per Diem Inc. | Windels Marx |

| Significant Unsecured Creditors & Counsel Thereto | |
| --- | --- |
| Advanced Medical Staffing | Leonard & Tia Burnett |
| Clarick Gueron Reisbaum LLP | Lilith James |
| Con Edison | Local 1199 National Benefit Fund |
| Deloitte Consulting LLP | Medline Industries, Inc. |
| Drita Manuka | New York EM-I Medical Services, P.C. |
| Empire Health Choice Assurance Inc. | Pacific Life & Annuity Services, Inc. |
| Fox Rothschild LLP | Rudolph Fagan |
| Health Services Retirement Plan | Sanocki Newman & Turret, LLP |
| Interfaith Medical Center Nurses Pension Health Services Retirement Plan | Silberstein Awad & Miklos, PC |
| Jean Benoit | Silverstein & Bast |
| Kiyanna Cush | Stephen H. Frankel, Esq. |
| Kramer, Dillof, Livingston & Moore | The Law Offices of Craig M. Rothenberg |
| Law Offices of Albert Kalter, P.C. | |

| Parties to Litigation | |
| --- | --- |
| Abraham Phillip | Leeman Wilkins |
| Agatha Duncan | Leo McArthur |
| Alan Bittleman | Letonya Jordan |
| Alfie Jackson-Neville | Linda Sherman |
| Alfred Watson | Mack Lewis |
| Allison Ince | Marcia Simpson |
| Alma James | Margaret Hansley |
| Amelia D. Cooper | Margaret Votucka |
| American Transit Insurance Co. | Marlene Docteur |
| Angel Ortega | Mary O'Leary |
| Angelina Worthington | Maynor Oregon |
| Ann Umegbolu | MDP, Inc. |
| Annie Webster | Michael Hairston |
| Arnold Ellis | Mildred Eans |
| Board of Health Services Retirement Plan | Monique Barbour |
| Cannetta Soloman | Mozell Purnell |
| Carol Reddick | Nathaniel Hancle |
| Center for Nursing & Rehabilitation | Nationwide General Ins. |
| Chaim S. Finkel | Nicole Whidbee |
| Chandroutie Ramnauth | Nya Walker |
| Chara Hansford-Gitau | Nyere Pride |
| Charlene Ingram | Paul Fitzpatrick |
| Charles Winston | Paul Walton |
| Claudette Miller | Quinnell Bryant |
| Dexter Edwards | R. Bruce Joyne |
| Diane Lawrence | Reggie Mcleod |
| Duke Daniels | Robert Samse |
| Edith Williams | Samuel Edwards |
| Elijah Booker | Sandra Sanabria |
| Ernest Anderson | Sandra Smith |
| Eugene Wilson | Santano Martinez |
| Evelyn Brown | SBLM Architects SPC |
| Franciso Peguero | Shayne Roberts |

| Helena Green | Shirell Harrell |
|---|---|
| Herbert Anderson | Simona Gupton |
| Herelene Adams | Stacey Green |
| Hope Chisholm | Tarrie McQueen |
| Howard Robinson | Tanesia Cephus |
| Hubert Burgess | The Max Group, LLC |
| James T. Francis | Thelma Williams |
| Janet Cunningham | Thomas Holley |
| Janice Robertson | Trustees of the Interfaith Medical Center Nurses Pension Plan |
| Jean Alcindor | Tytia Tucker |
| Jessileena McCoy | Vadim Orlik |
| Jesus Benitez | Vernett Lee |
| Jonah Parsoff | Vera Henderson |
| Joseph Montgomery | Vivian Ajilo |
| Juan and Phillip Rodriguez | Walter Caldwell |
| Karlene Kirton | Winston Samuel |
| Kevin Jones | Vivian Ajilo |
| Lars Lieberman | |

| Secured Parties & Counsel Thereto | |
|---|---|
| Corey Lovett | Isaiah Holmes |
| Fitzgerald & Fitzgerald, PC | The Dormitory Authority of the State of New York |

| United States Trustee Employees (Eastern District of New York) | |
|---|---|
| Alfred M. Dimino | Leiden Czarniecki |
| Alicia M. Leonhard | Linda Kmiotek |
| Chevonne Ducille | Lynda A. Rettagliata |
| Christine H. Black | Marylou Martin |
| Daniel McCarthy | Mona Mazile |
| Daniel McCarthy | Robert Stavis |
| Deborah Scheff | Rudolph C. Fusco |
| George Drapan | Stan Yang |
| Janease Clarke | William E. Curtin |
| Joann Lomangino | |

## EXHIBIT B

## Engagement Letter

November 29, 2012

Via E-mail

Mr. Nathan M. Barotz
Interfaith Medical Center, Inc.
1545 Atlantic Avenue
Brooklyn, New York 11213

> Re: *Interim Management and Restructuring Advisory Services*

Dear Mr. Barotz:

This letter outlines the understanding ("**Agreement**") between Kurron Shares of America, Inc. ("**Kurron**") and Interfaith Medical Center, Inc. ("**IMC**") (together, the "**Parties**") regarding IMC's engagement of Kurron to provide certain services and temporary employees to IMC to guide it in its day-to-day operations and restructuring as described below.

The engagement of Kurron, including the retention of a Chief Restructuring Officer ("**CRO**"), shall be under the approval and the direct supervision of IMC's Board of Trustees (the "**Board**"). We will commence operating under this engagement letter, and our prior management agreement, dated September 1, 2009 (the "**Management Agreement**") shall be terminated, immediately upon receipt of an executed original of this Agreement and delivery of a consent resolution of the Board.

## Management Services

Kurron will provide Mr. Corbett Price to serve as IMC's Chief Restructuring Officer ("**CRO**"). In his capacity as CRO, Mr. Price will report to and be subject to the direct supervision of IMC's Board. In addition to Mr. Price, Kurron agrees to continue to provide the individuals set forth on Exhibit A hereto as interim management of IMC, subject to the terms and conditions of this Agreement with the titles set forth therein.

As the manager of IMC, Kurron shall continue to have authority and responsibility to conduct, supervise and effectively manage the day-to-day operation of IMC on the terms set forth in this Agreement, similar to those terms embodied in the Management Agreement. Further, Kurron shall provide a CRO, and shall continue to provide a Chief Executive Officer, a Chief Financial Officer, a Chief Operating Officer and such other management executives as may be necessary to fulfill its obligations under this Agreement (the "**Kurron Personnel**"). Such management executives shall at all times be employees of Kurron. Subject to any conditions imposed by the Board, Kurron shall have the power to manage IMC in an efficient manner. Any powers not specifically provided to Kurron will remain with the Board. Under the direction of the Board, Kurron shall have the responsibility and authority commensurate with its position as manager of IMC, for the following activities:

*Charges.* The establishment, maintenance, revision, and administration of the overall charge structure of IMC pursuant to pertinent regulations, including, but not limited to, patient room charges, charges for all ancillary services, charges for supplies, medication and special services.

*Personnel Administration.*

A. The hiring, discharge, supervision and management of all employees of IMC, including the determination from time to time of the numbers and qualifications of employees needed in the various departments

and services of IMC.

B.      The establishment, revision and administration of wage scales, rates of compensation, employee benefits, rates and conditions of employment, in-service training, attendance at seminars or conferences, staffing schedules, and job and position descriptions with respect to all employees of IMC. Wage scales shall be established in consultation with the Board.

C.      Kurron shall hire and discharge the staff of IMC, including physician employees, for misconduct of such employees or pursuant to staffing requirements of IMC necessary for quality patient care. Prior to the discharge of a physician-employee of the Medical Staff, the Board or its Designated representative shall be apprised. Notwithstanding the foregoing, the Board shall retain authority for credentialing medical staff and ultimate authority to dismiss such staff or limit their privileges.

D.      Prior to the employment or discharge of senior management personnel (Vice President level or above), Kurron or IMC's senior management executive shall inform the Board. Further, Kurron, through its senior management executives, shall inform the Board on any major changes to IMC's organization.

*Collection of Accounts.* The issuance of bills for services and materials furnished by IMC, the collection of accounts and monies owed to IMC, including the responsibility to enforce the rights of IMC as creditor under any contract or in connection with the rendering of any service. All billing and collection work shall be conducted in the name of, on behalf of and for the benefit of IMC.

*Purchases and Leases.* The management of all purchases and leases of equipment, drugs, supplies and all materials and services which Kurron shall deem to be necessary in the day-to-day operation of IMC. Any purchase agreement which will obligate IMC beyond the term of this Agreement, and any purchase or lease of capital equipment, shall be subject to approval of the Board.

*Contracts for Services.* Kurron shall be empowered to negotiate, enter into, terminate and administer on behalf of IMC, contracts for maintenance and repair of the physical plant of IMC, subject to review and approval of the Board and certificate of need requirements.

*Contracts for Professional Services.* Kurron shall be empowered to negotiate, enter into, terminate and administer on behalf of IMC, contracts for services by medical, paramedical and other persons and organizations. Contracts with physicians who provide independent contract services in areas such as, but not limited to, anesthesiology, pathology, radiology and emergency rooms shall be subject to approval of the Board.

## Duties

Kurron's management duties shall be those duties customarily performed by a hospital management contractor, including but not limited to:

A.      Conduct, supervise and effectively manage the day-to-day operation of IMC.

B.      Develop and implement a business plan, subject to the approval of the Board, to rehabilitate IMC's business through, among other things, the design and implementation of programs to manage or divest assets, improve operations, reduce costs, and restructure;

C.      Interface with regulatory authorities, community leaders, and organizations;

D.      Represent IMC in dealings with statutory committees, their constituencies, and their professionals;

2

E.     Have general supervision and control of the records, accounts and buildings of IMC and all internal affairs, and maintain discipline therein, and enforce compliance with, and obedience to, all rules, bylaws, and regulations adopted by the Board for the government, discipline and management of IMC, and the employees thereof. Kurron shall make and enforce such further rules, regulation and orders as Kurron may deem necessary, not inconsistent with the law, or with the rules, regulations and directions of the Board;

F.     Appoint such employees as Kurron may think proper and necessary for the efficient performance of the business of IMC, and prescribe their duties, and discharge any such employee pursuant to the provisions of the Board's policies;

G.     Supervise the preparation of proper books and records of the business and operations of IMC, consistent with state and federal laws, with generally accepted accounting practices, and in full compliance with all requisite state and federal accounting standards, and see that such accounts and records are correctly made up for the annual report to the Board, and present the same to the Board, who shall incorporate them in their annual report, if such annual report is required by state and federal laws;

H.     Cause to be received into IMC, under the rules established by the Board, any person in the service area who is sick or maimed or injured and who is in urgent need of hospital care, subject to all state statutes and regulations, irrespective of whether such person is able to pay for his or her care, and may also receive persons provided there is a vacancy in IMC and consistent with the facility's capabilities as a referral hospital;

I.     Cause to be kept proper records of the admission of all patients, their name, age, sex, color, marital condition, residence, occupation, place of last employment and the names and addresses of their nearest relatives or friends. Kurron shall also cause a careful examination to be made of the physical condition of all persons admitted to IMC, and shall cause a record to be kept of the condition of each patient when admitted, and from time to time thereafter;

J.     Maintain hospital staff supervision to assure the discharge from IMC, subject to all state statutes and regulations, of any patient who is found, by his attending physician or the department chief, to have recovered from his illness sufficiently to be no longer in need of hospital care, or who shall willfully or habitually violate the rules thereof, or who for any other reason is no longer a suitable patient for treatment therein, and shall make a full report at the next meeting of the Board; and

K.     Administer the rules established by the Board to cause IMC staff to collect and receive in the name of, on behalf of and for the benefit of IMC for the services in question, all money due, and keep an accurate account of the same.

Kurron shall provide such on-site management executives as may be necessary to carry out its duties, all of whom shall be employees of Kurron, including a Chief Executive Officer, a Chief Financial Officer, a Chief Operating Officer and such other management executives as may be necessary to fulfill its obligations under this Agreement. In addition, Kurron shall provide a broad range of support and operating services to assist IMC and, when deemed necessary by Kurron, upon consultation with the Board, shall access consultants who have a wide range of skills and abilities related to the needs of IMC. Such consultants shall be compensated by IMC according to Kurron's hourly consultant rates, which are outlined in Exhibit A to this Agreement. Such consultant rates will be updated on an annualized basis.

## Restructuring Advisory Services

The restructuring advisory duties of Kurron and the Kurron Personnel shall include working with IMC to perform the following to the extent IMC commences a case under the U.S. Bankruptcy Code:

A.     Assist IMC's Board and its professionals specifically assigned to sourcing, negotiating and implementing any financing, including debtor-in-possession and exit financing facilities, in conjunction with any plan of reorganization and the overall restructuring;

B.     Assist the Board of IMC in the design and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the unique interests of all constituencies;

C.     Assist in negotiations with stakeholders and their representatives;

D.     Assist in communication and/or negotiation with outside constituents including the lenders and their advisors;

E.     Assist in managing the "working group" professionals who are assisting IMC in the reorganization process or who are working for IMC's various stakeholders to improve coordination of their effort and individual work product to be consistent with IMC's overall restructuring goals;

F.     Assist with the preparation of pleadings required in connection with any case for IMC before the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within Kurron's areas of expertise;

G.     Assist as requested in analyzing preferences and other avoidance actions;

H.     Manage the claims and claims reconciliation processes; and

I.     Perform other tasks as agreed to among Kurron and the Board.

## Dispute Resolution

*The Board.* The Board shall retain all authority placed in it by law and its bylaws, as may be amended from time to time, and shall retain such other authority as shall not have been specifically delegated by it to Kurron pursuant to the terms of this Agreement. The Board shall represent IMC in matters pertaining to the interpretation of this Agreement; provided, that in any situation in which, pursuant to the terms hereof, the Board shall be required or permitted to take any action, to give any approval, or to receive any report, Kurron shall be entitled to rely upon the written statement of the Chairman of the Board or other representative thereof, who shall be designated in writing by the Board to act on its behalf under this Agreement (the Chairman or other designated representative from the Board being referred to herein as the "**Designated Representative**") to the effect that any such action or approval has been taken or given. Delivery of any such report to the Designated Representative shall constitute delivery to the Board. Whenever any action shall be subject to the approval of the Board, Kurron shall be entitled to receive a decision of the Board within thirty (30) days after notification of the proposed action shall have been delivered in writing to the Designated Representative.

*Medical Staff, Medical and Professional Matters.* The medical staff of IMC (the "**Medical Staff**") shall be organized and function according to its bylaws and the laws and regulations of the State of New York (10NYCRR part 405), as they may be amended from time to time, and Kurron shall consult with the Medical Staff and the Board, as may from time to time be appropriate. All medical and professional matters shall be the responsibility of the Board and Medical Staff of IMC, but Kurron may make recommendations to the Board concerning the Medical Staff organization at such times and in such manner as Kurron deems appropriate according to the utilization needs of the IMC community and the professional conduct of the Medical Staff members.

*Non-Delegable Duties of the Board.* Notwithstanding any other provision of this Agreement, the Board of Directors of IMC shall retain the following authority under this Agreement and shall not delegate such authority to Kurron, provided that Kurron may make recommendations to the Board regarding the following matters:

A.     Direct independent authority to appoint and discharge the chief executive officer or any key management executives employed by Kurron or IMC in fulfilling the obligations of this Agreement;

B.     Independent control of the books and records. The Board will review and accept an independent audit and review of books and records of IMC. At all times, notwithstanding this contract, the books and records will be maintained by Kurron on behalf of the Board. The Board will have the authority to appoint the auditors.

C.     Authority over the disposition of assets and the authority to incur on behalf of the facility liabilities not normally associated with the day-to-day operation of a facility; and

D.     Independent adoption of policies affecting the delivery of healthcare services.

Notwithstanding any other provisions in this Agreement, IMC remains responsible for ensuring compliance with all pertinent provisions of Federal, State and local statutes, rules and regulations.

## Communications and Reports - Confidentiality

*Communications and Reports.* Kurron shall from time to time deliver to the Board written reports and analysis worksheets to support its actions and effectiveness in meeting stated goals and objectives. Kurron shall also be available to reply to and consult with the Board or its Designated Representative on such matters and at such times as the Board shall reasonably request.

*Framework of Agreement.* Kurron's services pursuant to this Agreement shall not constitute an audit review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA or other such state and national professional bodies.

*Access to IMC.* Kurron shall, during the term hereof, be given complete access to IMC, its records, offices, and facilities, in order that it may carry out its obligations hereunder, subject to confidential requirements of patient medical records as established by the Board, and as required by law. Kurron shall use its best efforts to maintain the confidentiality of all files and records, including patient records of IMC, disclosing the same only as directed by law or by the Board in any particular instance.

*Confidentiality.* Kurron agrees to keep confidential all information obtained from IMC. Kurron agrees that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any information pertaining to IMC or any affiliate thereof which is either non-public, confidential or proprietary in nature ("**Information**"") which it obtains or is given access to during the performance of the services provided hereunder. Kurron may make reasonable disclosures of information to third parties in connection with their performance of their obligations and assignments hereunder. In addition, Kurron will have the right to disclose to others in the normal course of business its involvement with IMC. Information shall be made available to regulatory authorities as required by law.

## Compensation

*Fee.* IMC shall pay Kurron a weekly fee of $62,500 for the services of the specific individuals set forth on Exhibit A hereto as interim management of IMC. Additional personnel retained pursuant to this Agreement shall be compensated by IMC according to Kurron's hourly consultant rates, which are outlined in Exhibit A hereto. Such hourly rates will be updated on an annualized basis.

*Compensation.* Kurron shall provide for the compensation, including all benefits, paid to management executives employed by Kurron to fulfill its obligations pursuant to this Agreement.

*Reasonableness of Compensation.* IMC acknowledges and agrees that the management fee being paid to Kurron is reasonable for the provision of the services described herein, and IMC further agrees that without the payment of such fee, it could not obtain these necessary services.

## Term of Agreement

Either Kurron or IMC may terminate this Agreement upon thirty (30) days written notice to the other party and for any reason whatsoever provided that, if terminated by either party, all professional fees and expenses due, both billed and unbilled, up through the time and date of termination shall become immediately due and payable.

## Default

*Events of Default.* With respect to IMC, it shall be an event of default hereunder ("**Event of Default**") if:

A.     IMC shall fail to make or cause to be made any payment to Kurron required to be made hereunder and such failure shall continue for as much as sixty (60) days after notice thereof shall have been given to the Board;

B.     IMC shall fail to keep, observe or perform any material agreement, term or provision of this Agreement required to be kept, observed or performed by IMC, and such default shall continue for a period of sixty (60) days after notice thereof by Kurron to the Board;

C.     IMC shall fail to make payments, or keep any covenants, owing to any third party that would cause IMC to lose possession of IMC buildings, equipment or property;

D.     If as much as thirty-three percent (33%) of IMC's total bed capacity equipped and in operation, or if any material service of IMC shall be rendered incapable of normal operation because of fire or other casualty, and shall not be repaired, restored, rebuilt or replaced within twelve (12) months after such fire or other casualty;

E.     Through no fault of Kurron, the licenses required for the operation of IMC are at any time suspended, terminated or revoked, and such suspension, termination or revocation shall continue unstayed and in effect for a period of sixty (60) days consecutively.

With respect to Kurron, it shall be an Event of Default hereunder if Kurron shall fail to keep, observe or perform any material agreement, term or provision hereof required to be kept, observed or performed by it, and such failure shall continue for as much as sixty (60) days after notice thereof shall have been given to Kurron by the Board.

*Remedies Upon Default.*

A.     If any Event of Default by IMC shall occur and be continuing, Kurron may, in addition to any other remedy available to it in law or equity on account of such Event of Default, forthwith terminate this Agreement, and remove from IMC the persons employed by it pursuant to the section titled "Duties" above, and neither Party shall have any further obligations whatever under this Agreement, except pursuant to the indemnity provisions herein, but Kurron shall immediately be entitled to receive payment of all amounts theretofore unpaid but earned to date, which shall be due to Kurron pursuant to the terms hereof, with interest, at the prime rates established by Citibank, N.A., New York.

B.     If any Event of Default by Kurron shall occur and be continuing, IMC may, in addition to any other remedy available to it in law or equity on account of such Event of Default, forthwith terminate this Agreement, whereupon Kurron shall remove from IMC the persons employed by it pursuant to the section titled "Duties" above, and neither Party shall have any further obligations whatever under this Agreement, except pursuant to the indemnity provisions herein, provided Kurron shall immediately be entitled to receive payment of all amounts theretofore unpaid which shall be earned and due to Kurron to date of termination pursuant to the terms hereof.

C.      If either Party hereto brings an action because of any Event of Default hereunder, the non-prevailing Party agrees to pay all reasonable costs and reasonable attorney's fees incurred by the prevailing Party in connection with such action.

D.      If any disputed item under the Agreement cannot be agreed upon by and between the Parties, prior to the initiation of litigation, the matter shall be submitted to an arbitration panel selected by the American Arbitration Association. The parties agree that such arbitration shall result in a final and binding judgment in the State of New York. The Party that is determined to owe the judgment awarded by the arbitration panel shall also be liable for attorney's and witnesses' expense and fees of the other Parties.

*Rights Cumulative; No Waiver.* No right or remedy herein conferred upon or reserved to either of the Parties hereto is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given hereunder, or now or hereafter legally existing upon the occurrence of an Event of Default hereunder. The failure of either Party hereto to insist at any time upon the strict observance or performance of any of the provisions of this Agreement or to exercise any right or remedy as provided in this Agreement, shall not impair such right or remedy or be construed as a waiver or relinquishment thereof with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties hereof may be exercised from time to time and as often as may be deemed expedient by the Parties hereto; as the case may be.

## Retention Application

In the event IMC files for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), IMC agrees to file an appropriate motion prepared in consultation with Kurron as to matters relating to our retention by IMC and provision of services as contemplated hereunder as promptly as practicable, which seeks the approval of the retention of Kurron and the Kurron Personnel pursuant to the terms set forth herein.

## Miscellaneous

*Disclaimer of Employment of IMC Employees.* Except for persons employed in offices pursuant to the section titled "Duties" above, no person employed by IMC will be an employee of Kurron, and Kurron will have no liability for payment of their wages, payroll taxes, and other expenses of employment, except that Kurron shall have the obligation to exercise reasonable care in its management of IMC property to apply available IMC funds to the payment of such wage and payroll taxes. All such persons will be employees of IMC, or, pursuant to the section titled "Contracts for Services" above, independent contractors or the employees of independent contractors.

*Non-Assumption of Liabilities.* Kurron shall not by entering into and performing this Agreement become liable for, and IMC shall indemnify it against any of the existing or future obligations, liabilities or debts of IMC, and will in its role as manager have only an obligation to exercise reasonable care in the management and handling of funds generated from the operation of IMC. IMC shall indemnify and hold harmless Kurron from and against any liability asserted against Kurron arising out of the Hill-Burton law and regulations, provided that Kurron will use its best efforts to keep IMC in compliance with IMC's obligations relative to indigent care and nondiscrimination.

*Indemnification and Hold Harmless.*

A.      Indemnification by IMC. IMC agrees to indemnify, hold harmless, and defend Kurron, including its principals, employees and agents, ("**Kurron Indemnified Party**") from and against any and all losses, claims, damages, liabilities, costs, and expenses, including reasonable attorney's fees and expenses related to the defense of any claims, joint or several, which may be assessed against any of the Kurron Indemnified Parties or for which they may now or hereafter become subject arising in connection with the activity of IMC ("**Kurron Claim**"), including but not limited to: (i) alleged or actual failure by the Board to perform any of its duties hereunder; (ii) any pending or threatened medical malpractice or other tort claims asserted against any Kurron Indemnified Party; (iii) any

action against Kurron brought by any of IMC's employees; (iv) any act or omission by any IMC employee, Medical Staff member, or other personnel; and (v) any violation of any requirement applicable to IMC under any federal, state or local environmental, hazardous waste or similar law or regulation; provided that such claims have not been caused either by the gross negligence or willful or wanton misconduct of the Kurron Indemnified Party seeking indemnification pursuant to this Agreement or by a negligent act or omission by Kurron or a Key Person beyond the scope of Kurron's authority under this Agreement. Kurron, its principals, employees and agents may, but are not required to engage a single firm or separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates. This indemnification agreement does not apply to actions taken or omitted to be taken by Kurron in bad faith or due to its gross negligence or willful misconduct.

B.    Indemnification of Officers.  In addition to the foregoing indemnification, Kurron personnel who may serve as officers of IMC, shall be individually covered by the same indemnification and directors' and officers' liability insurance as is and to the extent applicable to other officers and directors of IMC.

C.    Notice and Defense of Claims.  IMC and Kurron agree to notify each other promptly of commencement of or indication that any claim may be asserted against any Indemnified Party or of any litigation or proceedings against it or any of its officers, directors, or trustees, as appropriate, of which it may be advised which could give rise to a claim by an Indemnified Party.  The indemnitor shall be entitled to participate in the defense of any such action at indemnitor's own expense, but such defense shall be conducted by counsel of recognized standing and satisfactory to the Indemnified Party.  Unless the indemnitor timely assumes the defense thereof, the Indemnified Party may through its own or independent counsel defend such claim(s).  Each indemnitor agrees that no settlement of any claim involving its Indemnified Party will be made without the consent of such Indemnified Party.  The indemnitor will furnish to the Indemnified Party copies of all pleadings in any action hereunder, permit the Indemnified Party to be an observer therein, and apprise the Indemnified Party of all developments therein, all at the indemnitor's expense.

*Relationship of Parties.*  The Parties intend that an independent contractor relationship will be created by this Agreement.  Kurron is not to be considered an employee or agent of IMC.  IMC agrees not to solicit or recruit any employees or agents of Kurron for a period of two (2) years subsequent to the completion and/or termination of this Agreement.

*Absence of Conflicts of Interest.*  While this Agreement shall remain in effect, any person who serves as a member of the Board or the Medical Staff of IMC and who shall have a "conflict of interest" shall be required to disclose the same to Kurron.  For the purposes hereof, a "conflict of interest" shall be defined as any financial interest or investment, direct or indirect, in IMC, or any department of service thereof, or as being a party to any contract for the providing of any goods or services to IMC.

*Restriction on Assignment.*  Neither party hereto may assign its interest in or delegate the performance of its obligations under this Agreement to any other person without obtaining the prior written consent of the other party or prior establishment approval pursuant to state law, except that Kurron may assign its interest or delegate the performance of its obligations to a wholly-owned subsidiary thereof, and IMC may assign its interest to a duly authorized successor in interest.

*Successors.*  All the provisions herein contained shall be binding upon and inure to the benefit of the respective successors and assigns of Kurron and IMC; to the same extent as if each successor and assign were in each case named as a party to this Agreement.

*Headings.*  The headings to the various sections of this Agreement have been inserted for convenience of reference only and shall not modify, define, limit or expand the expressed provisions of this Agreement.

*Counterparts.*  This Agreement may be executed in any number of counterparts, each of which shall be an original, and each such counterpart shall together constitute but one and the same Agreement.

8

*Notices.* All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given, if mailed by certified or registered mail, postage prepaid, on the date specified on the return receipt; overnight mail or facsimile. Any notice shall be deemed to be given only upon actual receipt

To Kurron:

KURRON SHARES OF AMERICA, INC.
885 Third Avenue - 24th Floor
New York, NY 10022
Attn: Mr. Corbett Price

To IMC:

INTERFAITH MEDICAL CENTER
1545 Atlantic Avenue
Brooklyn, NY 11213
Attn: Mr. Nathan Barotz

or to such other person and address as either party may designate in writing.

*Severability.* Should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated.

*Amendments.* Any amendments to this Agreement shall be in writing and signed by Kurron and the Board.

*Authorization for Agreement.* The execution and performance of this Agreement by the Board and Kurron have been duly authorized by all necessary laws, resolutions or corporate action, and this Agreement constitutes the valid and enforceable obligations of IMC and Kurron in accordance with its terms.

If you are in agreement with the foregoing terms of our engagement, please sign and date in acknowledgment in the space provided below and return via overnight mail one executed original of this Agreement.

We appreciate this opportunity to be of assistance to IMC and look forward to working with you on this important matter.

Very truly yours,

**Kurron Shares of America, Inc.**

*Pamela M. Bradshaw*
Pamela M. Bradshaw
General Counsel

*Above Terms Agreed to and Accepted:*

Interfaith Medical Center, Inc.

By: _____

Its: _____

## **Compensation**

The following Kurron Personnel shall be retained as interim management of IMC.

| Name | Description |
| --- | --- |
| Corbett Price | Chief Restructuring Officer |
| Luis Hernandez | President and Chief Executive Officer |
| Robert F. Mariani | Chief Financial Officer |
| Patrick J. Sullivan | Chief Operating Officer |
| Pamela Bradshaw | Special Counsel to IMC |

The following are standard hourly rates for professional services of Kurron, effective January 1, 2012, subject to annual modification, which shall be charged for other personnel that may become interim management for IMC from time to time under this Agreement.

| Description | Hourly Rate |
| --- | --- |
| Principal | $475-650 |
| Physician Advisor | $575 |
| Senior Consultant | $395-475 |
| Consultant | $295-395 |
| Administrative | $90 |

It is our policy to bill at cost for expenses and other charges directly related to the performance of an engagement. These expenses include airfare, car rental or ground transportation, lodging, meals, mileage (at the prevailing IRS rate at the time of billing), photocopies, delivery services, communication costs and any other reasonable direct expenses that may be incurred in the course of providing services under this Agreement.

# Exhibit C

## Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                               :     Chapter 11
                                     :

Interfaith Medical Center, Inc.,[1]     :     Case No. 12-48226 (     )
                                     :

                   Debtor.     :

---------------------------------------------------------x

### ORDER, PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AUTHORIZING DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE <u>DEBTOR'S SENIOR MANAGEMENT, NUNC PRO TUNC TO THE PETITION DATE</u>

Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**"), for an order, pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing the Debtor to employ and retain: (a) Kurron Shares of America, Inc. ("**Kurron**") as manager for the Debtor; (b) Kurron personnel as the Debtor's senior management; and (c) related relief, *nunc pro tunc* to the commencement of this case; and upon consideration of the Motion and all pleadings related thereto, including the Declaration of Corbett Price, in Support of the Debtor's Motion for Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing Debtor to Employ and Retain Kurron Shares of America, Inc. as Manager for the Debtor and Kurron Personnel as the Debtor's Senior Management, *Nunc Pro Tunc* to the Petition Date (the "**Price Declaration**"), attached to the Motion as <u>Exhibit A</u>; and due and sufficient notice of the Motion having been given; and no other or further notice being necessary; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its patients, its creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[1]   The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

ORDERED, ADJUDGED AND DECREED that:

1.      The Motion is granted.

2.      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

3.      Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to employ and retain Kurron as manager in this case, pursuant to the terms of the Engagement Letter, *nunc pro tunc* to the Petition Date

4.      The Debtor is authorized to employ Corbett Price as CRO the Debtor on the terms set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date.

5.      The Debtor is authorized to continue to employ Kurron personnel as President and CEO, CFO, COO and Special Counsel of the Debtor on the terms set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date.

6.      The Debtor is authorized to pay Kurron, pursuant to the terms of the Engagement Letter, for services rendered to the Debtor, and shall reimburse Kurron for reasonable out of pocket expenses incurred in connection with such services.

7.      Kurron shall apply its retainer to invoices for services rendered to the Debtor in December 2012 and, to the extent amounts remain, subsequent postpetition periods.

8.      All compensation and reimbursement due to Kurron shall be treated in the Debtor's case as allowed administrative expenses in accordance with section 503 of the Bankruptcy Code and shall be paid in accordance with the terms and provisions of the Engagement Letter.

9.      Kurron is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, Kurron shall file with the Court, the U.S. Trustee and all official committees, quarterly reports of compensation earned and expenses incurred.

10.     Kurron shall submit to the Court, with copies to the U.S. Trustee and all official committees contemporaneously with such filing, quarterly reports of compensation earned, and parties-in-interest in this chapter 11 case shall have the right to object to fees paid and expenses reimbursed to Kurron within 20 days after Kurron files such reports.

11.     Kurron shall file with the Court (and serve copies to the U.S. Trustee and all official committees contemporaneously with such filing) a report on staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event that an objection is filed.

12.     Notwithstanding anything in the Motion, the Price Declaration, the Hernandez Declaration or the Engagement Letter, the Debtor shall only indemnify those Kurron employees serving as executive officers of the Debtor on the same terms as provided to the Debtor's other officers and directors under the Debtor's by-laws and applicable state law, along with insurance coverage under the Debtor's directors' and officers' insurance policies, and the indemnification provisions of the Engagement Letter shall not apply to Kurron.

13.     Notwithstanding the provisions related to the potential arbitration of disputes contained in the Engagement Letter, this Court shall retain all jurisdiction to resolve disputes.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16.     This Court shall retain jurisdiction over any matters arising from or related to the implementation or interpretation of this Order.

Dated:  Brooklyn, New York
        _____ __, 2012

_____
UNITED STATES BANKRUPTCY JUDGE