ALSTON & BIRD LLP
Martin G. Bunin
Craig E. Freeman
90 Park Avenue
New York, New York 10016
Tel: (212) 210-9400
Fax: (212) 210-9444

*Proposed Counsel to the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                      :
In re:                                :    Chapter 11
                                      :
INTERFAITH MEDICAL CENTER, INC.,      :    Case No. 12-48226 (CEC)
                                      :
            Debtor.                   :
                                      :
------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AUTHORIZING DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE DEBTOR'S SENIOR MANAGEMENT, <u>NUNC PRO TUNC TO THE PETITION DATE</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Interfaith Medical Center, Inc. (the "<u>Debtor</u>" or "<u>IMC</u>") files this objection (this "<u>Objection</u>") to the *Debtor's Motion for Order Pursuant to Section 363 of Bankruptcy Code, Authorizing Debtor to Employ and Retain Kurron Shares of America, Inc. as Manager for the Debtor and Kurron Personnel as the Debtor's Senior Management, Nunc Pro Tunc to the Petition Date* (Docket No. 16; the "<u>Motion</u>"). In support of this Objection, the Committee states as follows:

## BACKGROUND

1. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 2, 2012 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

2. The Debtor is continuing in possession of its property and is operating and managing its business, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

3. On December 13, 2012, the United States Trustee, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee.

4. The Debtor first engaged Kurron Shares of America, Inc. ("Kurron") in 1991 to provide management services to the Debtor and to address the Debtor's operating performance. Motion ¶ 6. Since then, Kurron has continued to manage the Debtor. *Id.*

5. On or about November 29, 2012, prior to the Petition Date, the Debtor entered into an agreement with Kurron pursuant to which Kurron would be retained by the Debtor as interim manager and restructuring advisor. *See* Motion Ex. B (the "Engagement Letter"). The Engagement Letter requires Kurron to provide Kurron employees to serve as officers of the Debtor (the "Kurron Officers"). *Id.* at 1.

6. On December 2, 2012, the Debtor filed its Motion seeking to employ Kurron as manager for the Debtor.

7. Pursuant to the Motion, the Debtor seeks to retain Corbett Price ("Price") as Chief Restructuring Officer ("CRO"). Price is the Chairman and CEO of Kurron. Motion Ex. A ¶ 1 (the "Price Declaration"). Price submits that he has served as a director of the Debtor from about 2002 until October 2011 and previously served as Chief Executive Officer ("CEO") of the

Debtor from 1993 to January 2002. *Id.* at ¶ 8. However, Price has been listed as initially being elected to the Debtor's board in 1991.[1] Additionally, Price has served on the board of trustees of IM Foundation. Price Declaration ¶ 8 n.3. Price served in that capacity at least through 2010.[2]

8. Pursuant to the Motion, the Debtor seeks to retain Luis Hernandez ("Hernandez") as President and CEO of the Debtor. Hernandez has served in that capacity since November 2011. Previously, Hernandez has also provided intermittent consulting services to the Debtor since 1998 and acted as Interim CEO from June 2008 through February 2010. Motion ¶ 7. The Debtor refers to Hernandez as an employee of Kurron. *See id.*; Engagement Letter, at 1, 5.

9. Pursuant to the Motion, the Debtor seeks to retain Robert Mariani ("Mariani") as Chief Financial Officer ("CFO"). Mariani has served as the Debtor's CFO since October 2011. Motion ¶ 7.

10. Pursuant to the Motion, the Debtor seeks to retain Patrick Sullivan ("Sullivan") as Chief Operating Officer ("COO"). Sullivan has served as the Debtor's COO since December 2010. Motion ¶ 7.

11. Pursuant to the Motion, the Debtor seeks to retain Pamela Bradshaw ("Bradshaw") as Special Counsel. Bradshaw has served as Special Counsel to the Debtor since November 2011. Motion ¶ 7. It also appears that Bradshaw is General Counsel to Kurron. Engagement Letter, at 10.

---

[1] *See* Dormitory Authority of the State of New York, *Secured Hospital Revenue Refunding Bonds, Interfaith Medical Center, Series 2007*, at 17 (Mar. 21, 2007).

[2] As noted in its 2010 tax return, Price served as secretary and a director or trustee of I M Foundation Inc. through 2010. *See* I M Foundation Inc., *Form 990 Return of Organization Exempt from Income Tax*, at 7 (Nov. 14, 2011). I M Foundation Inc. supports the charitable, educational and scientific purposes of the Debtor by planning fundraising events for the benefit of the Debtor. *Id.* at 6.

3

## OBJECTION

12. The Motion is an attempt by the Debtor to circumvent section 327 of the Bankruptcy Code, which governs the retention of professionals in bankruptcy cases. As discussed further below, Kurron is clearly a "professional" within the meaning of section 327(a). Section 327(a) provides that professionals must be found to be "disinterested" before their retention can be approved. The Debtor plainly admits in the Motion and related Price Declaration that the Kurron Officers are insiders of the Debtor and have held their positions within two years of the date of filing. Thus, Kurron and the Kurron Officers are not disinterested and their proposed retentions cannot be approved.

13. As discussed below, section 363(b) is not a means for avoiding the disinterestedness requirement of section 327(a). While the retention of crisis managers and restructuring officers have been approved under section 363(b) in other cases, such retentions have either complied with the Jay Alix Protocol (the "<u>Alix Protocol</u>") [3] or have not been objected to. Here, the Committee does not believe that the Alix Protocol should be used to avoid section 327. Even if the Alix Protocol were applied, Kurron does not meet its requirements because an employee of Kurron, Mr. Price, has served on the Debtor's board of directors within the past two years, and Mr. Hernandez, also an employee of Kurron, has served as the Debtor's CEO within the past two years. Thus, Kurron cannot be retained under section 363(b) pursuant to the Alix Protocol.

14. The Committee also submits that the retention of Kurron and the Kurron Officers is not in the best interest of the Debtor's estate and is not supported by a sound business justification as required by section 363(b) of the Bankruptcy Code. As discussed further below,

---

[3] A copy of the Alix Protocol is attached hereto as Exhibit A. The Alix Protocol is also available on the Department of Justice's website for the Region 2 United States Trustee. *See* U.S. Dep't of Justice, *Jay Alix Protocol* (Nov. 3, 2004), http://www.justice.gov/ust/r02/manhattan/chapter11.htm.

4
LEGAL02/33841578v6

independent assessments indicate that the Debtor has been poorly managed. The Motion now seeks to retain and continue in place the same firm that has been providing management services to the Debtor since 1991. The Committee does not believe that Kurron's retention is justified and submits that the Motion must be denied.

### I. Kurron is a Professional Within the Meaning of Section 327 of the Bankruptcy Code that Cannot be Retained Because it is not Disinterested.

15. The provisions in the Bankruptcy Code for retention of professionals should be strictly construed to protect the assets of the Debtor from unnecessary and unjust diminution. *In re Renaissance Residential of Countryside, LLC*, 423 B.R. 848, 858 (Bankr. N.D. Ill. 2010). Whether a particular person is acting as a professional is a question of fact. *Stahl v. Bartley Lindsay Co. (In re Bartley Lindsay Co.)*, 137 B.R. 305, 308 (D. Minn. 1991). Kurron and the Kurron Officers are clearly professionals under section 327 of the Bankruptcy Code and thus must be disinterested before they are retained. Because Kurron fails the "disinterestedness" requirement for the retention of professionals under section 327(a), the Motion must be denied.

### A. Kurron is a Professional Within the Meaning of Section 327 of the Bankruptcy Code.

16. A review of the Debtor's own description of the services to be provided by Kurron and the role Kurron will play in the Debtor's reorganization shows that Kurron is a "professional" subject to the requirements of section 327(a) of the Bankruptcy Code. *See* Motion ¶¶ 12-13; Price Declaration ¶ 4. A professional is one who plays a central role in the reorganization of the debtor's estate. *United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd.)*, 101 F.3d 253, 257 (2d Cir. 1996); *In re Johns-Manville Corp.*, 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986). Court approval is required for the retention of such professionals. *In re Palm Coast, Matanza Shores Ltd.*, 101 F.3d at 257.

5

17. In considering whether a person is a "professional" within the meaning of section 327(a), courts have considered the following factors:

> (1) whether the employee controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;
> (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization;
> (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;
> (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;
> (5) the extent of the employee's involvement in the administration of the debtor's estate; and
> (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

*In re Am. Tissue, Inc.*, 331 B.R. 169, 173 (Bankr. D. Del. 2005). *See also In re ITG Vegas, Inc.*, No. 06-16350-BKC-PGH, 2007 WL 1087212, at *2 (Bankr. S.D. Fla. Apr. 3, 2007) ("The six-factor test discussed in *American Tissue* is designed to harmonize the *Johns-Manville* cases, which limit the definition of professionals to those occupations that play a central part in the reorganization, with those cases that define a professional as an employee that is given discretion or autonomy in some part of the debtor's estate.").

18. Specifically, an officer can be considered a professional within the meaning of section 327 of the Bankruptcy Code even if employed prepetition. *In re Madison Mgmt. Grp.*, 137 B.R. 275, 283-84 (Bankr. N.D. Ill. 1992); *In re Bartley Lindsay Co.*, 137 B.R. at 309. While officers are not always professionals, bankruptcy courts have looked to the substance of the person's retention to determine whether section 327(a) applies. *In re Madison Mgmt. Grp.*, 137 B.R. at 283 (applying twelve factors and finding that officer was a professional because his responsibilities were central to the restructuring of the debtor, he was elected within one month of filing, he received a retainer, he was not precluded from conducting business for his

LEGAL02/33841578v6

consulting business, and his background was in workouts and financially distressed companies); *see also In re Bartley Lindsay Co.*, 137 B.R. at 309 (finding that an employee of a management consulting firm that was elected as president and CEO of the debtor was a professional within the meaning of section 327 of the Bankruptcy Code). The inquiry requires an examination of the professional's duties and whether any special skills are necessary to carry out those duties. *In re Am. Tissue, Inc.*, 331 B.R. at 173-74.

19. CROs are plainly professionals within the meaning of section 327(a). *See In re Blue Stone Real Estate, Construction & Dev. Corp.*, 392 B.R. 897, 907-08 (Bankr. M.D. Fla. 2008) (finding that CRO is clearly a "professional" within the meaning of section 327(a)). As the Debtor has stated, the CRO, as a professional, will play a specific role in the Debtor's reorganization: "[P]ursuant to the Engagement Letter, the CRO will provide oversight and support to the Debtor's *other* professionals in connection with the Debtor's reorganization efforts and administration of the Debtor's chapter 11 case." Motion ¶ 12 (emphasis added).

20. Application of the *In re American Tissue* factors supports a finding that the other Kurron Officers are professionals as well within the meaning of section 327 of the Bankruptcy Code.[4] Applying the first factor, the Kurron Officers are clearly controlling, managing, and administering assets which are significant to the Debtor's reorganization. Indeed, the Engagement Letter provides for the provision of management services. *See* Engagement Letter, at 1. Among other services, Kurron is charged with administering the Debtor's personnel, collecting on the Debtor's accounts, managing all purchases and leases, contracting for

---

[4] The Debtor has included Bradshaw, proposed Special Counsel to the Debtor, within the definition of "Kurron Officers." Motion ¶ 7. Attorneys are specifically designated as a type of professional whose retention is subject to the requirements of section 327(a) of the Bankruptcy Code. *See* 11 U.S.C. § 327(a) (requiring court approval for the retention of "one or more attorneys, accountants, appraisers, auctioneers, or other professional persons"). The Committee is also concerned about the retention of Bradshaw as Special Counsel as it appears that she is both Special Counsel to the Debtor and General Counsel to Kurron, thus presenting a conflict of interest. *See* Engagement Letter, at 10. Bradshaw signed the Engagement Letter as General Counsel to Kurron. *Id.*

maintenance and repair services, and contracting for professional services. Engagement Letter, at 1-2. In fact, Kurron's duties include, but are not limited to: (1) managing the day-to-day operations of the Debtor; (2) developing and implementing a business plan to rehabilitate the Debtor; (3) interfacing with third parties; (4) representing the Debtor in dealings with statutory committees; (5) supervising and controlling the Debtor's records, accounts, buildings, internal affairs, and hospital staff; (6) appointing employees; (7) causing the Debtor to receive patients and keep proper records of such patients; and (8) administering the Board's rules on collections of money due to the Debtor. Engagement Letter, at 2-3. All of Kurron's services and duties will impact assets of the Debtor's estate.

21. Applying the second factor, the Kurron Officers will not only likely be involved in negotiating the terms of a plan of reorganization, they will be integral to the Debtor's entire restructuring effort. As set forth in the Motion, "Kurron's prepetition services for the Debtor have also included guiding the daily implementation of the Debtor's recent restructuring efforts. . . . It is anticipated that such negotiations shall continue during and be central to the chapter 11 process." Motion ¶ 10.

22. Applying the third factor, the majority of the tasks that Kurron has agreed to perform are outside the usual scope of the Debtor's business and relate to the reorganization of the Debtor or are aimed at preserving assets of the Debtor's estate. Kurron's primary employment under the Engagement Letter is as consultant and workout specialist. The Debtor specifically set forth in the Motion that "Kurron specializes in crisis management for financially troubled health care entities." Motion ¶ 5.

23. Applying the fourth factor, the Kurron Officers have been given considerable discretion and autonomy to exercise professional judgment in the administration of the Debtor's

estate. As illustrated by the Engagement Letter, the responsibilities and duties undertaken by Kurron permeate the Debtor's entire operation and restructuring efforts. *See generally* Engagement Letter. Furthermore, "the Debtor believes the continued engagement of Kurron and the Kurron Officers is essential to the success of the Debtor's restructuring efforts." Motion ¶ 9.

24. Applying the fifth factor, the Kurron Officers will be significantly involved in the administration of the Debtor's estate. For example, Kurron's restructuring advisory duties include (1) assisting the Board and its professionals in sourcing, negotiating, and implementing any financing received by the Debtor; (2) assisting the Debtor's Board in designing and implementing a restructuring strategy; (3) assisting in negotiations with shareholders; (4) assisting in communication and negotiations with outside constituents including lenders; (5) assisting in managing the professionals who are assisting the Debtor; (6) assisting in preparation of pleadings in the Debtor's bankruptcy; (7) possibly assisting in analyzing preference and avoidance actions; and (8) managing the claims and claims reconciliation process. Engagement Letter, at 3-4.[5]

25. Applying the sixth and final factor, regarding the degree of special knowledge or skill possessed by Kurron, the Debtor has alleged that "Kurron and the Kurron Officers have extensive experience in providing management services to health care facilities in reorganization proceedings. . . ." Motion ¶ 8.

26. Additional facts support the conclusion that Kurron and the Kurron Officers are professionals. For instance, receipt of an advancement is significant because employees, unlike professionals, generally do not receive retainers or advance payments. *See In re Madison Mgmt.*

---

[5] The Committee notes that several of these managing and restructuring advisory activities appear to be duplicative of the services being provided by the Debtor's financial advisor, CohnReznick. *See Debtor's Application to Retain and Employ CohnReznick LLP as Financial Advisor to the Debtor and Debtor in Possession Pursuant to Sections 327(a), 328, 331 and 1107(b) of the Bankruptcy Code Nunc Pro Tunc to the Petition Date* (Docket No. 14) ¶¶ 7-8.

LEGAL02/33841578v6

*Grp.*, 137 B.R. at 284. Nor do employees receive payment through an intermediary such as a firm, unlike professionals. *Id.* Kurron received a $250,000 prepetition retainer from the Debtor. Motion ¶ 20. The Debtor also acknowledges that "Kurron has historically been paid in advance for its services. . . ." Motion ¶ 17. Compensation is paid to Kurron rather than to the Kurron Officers directly. Engagement Letter, at 5. Kurron also provides benefits to the Kurron Officers rather than the Debtor providing benefits to the Kurron Officers directly. Engagement Letter, at 5.

27. Based on the services provided by Kurron, it is clear that Kurron will play a central role in the administration of the Debtor's case and will be intimately involved in the administration of the Debtor's assets. Accordingly, Kurron and all of the Kurron Officers are professionals subject to the retention requirements of section 327(a) of the Bankruptcy Code.

### B. Kurron is not Disinterested and Cannot be Retained Pursuant to Section 327(a) of the Bankruptcy Code.

28. Because Kurron and each of the Kurron Officers are professionals, their employment is governed by section 327(a) of the Bankruptcy Code, which provides that professionals must "not hold or represent an interest adverse to the estate and . . . [be] disinterested persons" before their employment can be approved. 11 U.S.C. § 327(a). The term "disinterested person" means, in relevant part "a person that . . . is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor. . . ." 11 U.S.C. § 101(14)(B). Nor can an insider be disinterested. *Id.* Section 101(31)(B) of the Bankruptcy Code provides that if a debtor is a corporation, an "insider" includes an officer, director or person in control of the debtor. 11 U.S.C. § 101(B)(i)-(iii).

29. Kurron as a firm is entirely disqualified if even one of its employees, including the Kurron Officers, fails the disinterested requirement of section 327(a) of the Bankruptcy

Code. *See Official Committee of Unsecured Creditors v. ABC Capital Mkts. Grp. (In re Capital Metals Co.)*, 228 B.R. 724, 724 (9th Cir. B.A.P. 1998) (disqualifying entire firm as financial advisor where partner in firm served as CFO of the debtor for three years prior to filing the bankruptcy petition).

30. All of the Kurron Officers clearly fail the disinterestedness test as insiders and as officers or directors of the Debtor within two years of the Petition Date. All of the Kurron Officers have held their positions since at least 2011, and they continue to hold such positions. *See* Motion ¶ 7. As set forth in the Motion, Hernandez has served as the Debtor's President and CEO since November 2011, Mariani has served as the Debtor's CFO since October 2011, Sullivan has served as the Debtor's COO since 2010, Bradshaw has served as Special Counsel to the Debtor since November 2011, and Price served as a director of the Debtor until 2011 and currently serves as the Debtor's CRO. *See* Motion ¶ 7. Thus, each of the Kurron Officers fails the disinterestedness test as insiders of the Debtor and as officers and directors of the Debtor within two years of the Petition Date.

31. Therefore, the Committee submits that Kurron is not "disinterested" and cannot be retained under section 327(a) of the Bankruptcy Code. Accordingly, the Motion must be denied.

II. **The Debtor Cannot Rely on Section 363(b) of the Bankruptcy Code to Retain Kurron.**

32. In recognition of the inability to retain Kurron as a professional under section 327, the Debtor attempts to end run the Bankruptcy Code by seeking Kurron's retention under section 363 of the Bankruptcy Code and the Alix Protocol. Section 363(b)(1) of the Bankruptcy Code states (in relevant part) that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). The

LEGAL02/33841578v6

Committee does not believe that section 363 and the Alix Protocol can be used to bypass the requirements of section 327(a), especially where the professionals at issue so glaringly fail the disinterestedness requirement. Courts have criticized the use of section 363(b) to circumvent the disinterestedness requirements of the Bankruptcy Code. *See In re Mirant Corp.*, 354 B.R. 113, 127 n.29 (Bankr. N.D. Tex. 2006) (noting dissatisfaction at the use of section 363 to retain a CRO and avoid application of the disinterestedness requirement); *In re Blue Stone Real Estate, Construction & Dev. Corp.*, 392 B.R. at 907 n.14 (noting that the Bankruptcy Code goal of ensuring conflict free professionals cannot be met when professionals are retained under section 363). However, even if the Alix Protocol were applied, Kurron fails to meet its requirements.

33. While the Debtor correctly notes that courts sometimes apply section 363(b) to retain restructuring firms outside the ordinary course of business, such retentions are typically subject to the Alix Protocol. The Alix Protocol was a negotiated settlement between the United States Trustee for the District of Delaware and Jay Alix & Associates in the *Safety-Kleen Corporation* bankruptcy case that has since been applied to the retention of similar professional firms under section 363(b). *See In re Saint Vincent Catholic Med. Ctrs. of New York*, No. 05 B 14945 (ASH), 2007 Bankr. LEXIS 3006, at *8 n.3 (Bankr. S.D.N.Y. Aug. 29, 2007).

34. Although the Motion fails to explicitly mention the Alix Protocol, it clearly attempts to meet its requirements. For example, the Price Declaration mirrors the disclosures required by the Alix Protocol. *Compare* Price Declaration ¶¶ 7-14, *with* Alix Protocol, at 2-3. Similarly, the compensation guidelines and indemnification provisions of the Engagement Letter mirror the Alix Protocol. *Compare* Engagement Letter, at 5, 7-8, *with* Protocol, at 3-4.

35. Retention in accordance with the Alix Protocol requires, among other things: (1) that the professional firm cannot act in more than one capacity in a single bankruptcy, such as

both financial advisor and crisis manager; (2) that persons furnished by the professional firm for executive officer positions will be approved by an independent board of directors and that the persons will act at the direction of the board of directors; and (3) that the professional firm will make appropriate disclosures of all conflicts of interests or material adverse interests. Alix Protocol, at 1-2. The compensation guidelines of the Alix Protocol require payment to be made directly to the professional firm rather than to individuals furnished by the professional. Alix Protocol, at 3.

36. The Alix Protocol also provides that a firm may not be retained by a debtor if an employee of such firm previously served as a director or CEO of the debtor within two years of the petition date. Alix Protocol, at 2 n.3.[6] Here, Price, the proposed CRO, served on the Debtor's board of directors from at least 2002 until October 2011, well within two years of the Petition Date. Price Declaration ¶ 8. Similarly, Hernandez has served as CEO of the Debtor since November 2011. Motion ¶ 7.

37. Additionally, even the Alix Protocol does not contemplate the retention of attorneys through section 363, as the Debtor attempts in this case by retaining Bradshaw as Special Counsel. The Committee submits that permitting retention of attorneys through section 363 rather than through section 327 could have serious unintended consequences. Thus, the proposed retention of Kurron runs afoul of even the Alix Protocol and cannot be approved.

38. The Committee also questions whether the Debtor can provide a sound business justification for the retention of Kurron under section 363 of the Bankruptcy Code. Kurron has been paid substantial sums since 1991 to provide management consulting services to the Debtor

---

[6] The Protocol provides, ". . . JA&A . . . shall not seek to be retained in any capacity in a bankruptcy proceeding for an entity where any principal, employee or independent contractor of JA&A . . . serves or has previously served as a director of the entity or an affiliate thereof within two years prior to the petition date. During such two year period . . . [no] individuals associated with JA&A . . . [shall] have served as an Executive Officer." *Id.*

rather than advising the Debtor to hire a CEO and other management employees directly. While the Debtor suggests that the continued retention of Kurron is in the best interests of the estate, an independent assessment (the "Report")[7] of the Debtor by the Brooklyn Health Systems Redesign Work Group suggests otherwise. Unlike several hospitals in Brooklyn, the Report found that the Debtor is not well-managed: "[W]hile there are several fine hospitals in Brooklyn that are well-managed and financially-stable, Interfaith Medical Center, Wyckoff Heights Medical Center and Brookdale Hospital Medical Center are experiencing financial crises." Report, at 4. The Report also found that the Debtor does not have the business model or sufficient margins to remain viable and continue to provide high quality care and that the Debtor is experiencing a financial crisis that requires aggressive action. *Id.* at 5. The Report classified the Debtor as one of the most troubled hospitals in Brooklyn, called the Debtor's financial situation "precarious" and noted that the Debtor required immediate intervention to avert financial collapse. *Id.* at 9. Furthermore, the Report found that patient satisfaction with care at the Debtor is significantly lower than at other Brooklyn hospitals. *Id.* at 34.

39. The Committee submits that, based upon the independent Report, continued management of the Debtor by Kurron is not in the best interests of the estate and the proposed retention of Kurron is not supported by a sound business justification. Accordingly, the Motion should be denied.

---

[7] Report of the Brooklyn Health Systems Redesign Work Group, *At the Brink of Transformation: Restructuring the Healthcare Delivery System in Brooklyn* (Nov. 28, 2011), http://www.health.ny.gov/health_care/medicaid/redesign/docs/brooklyn_mrt_final_report.

LEGAL02/33841578v6

WHEREFORE, the Committee respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated: January 7, 2013

        ALSTON & BIRD LLP

        By: /s/ Martin G. Bunin
        Martin G. Bunin
        Craig E. Freeman
        90 Park Avenue
        New York, NY 10016
        (212) 210-9400
        Marty.Bunin@alston.com
        Craig.Freeman@alston.com

        *Proposed Counsel for the Official Committee of Unsecured Creditors*