# EXHIBIT A

## Protocol for Engagement of Jay Alix & Associates and Affiliates

I.   Retention Guidelines

   A.   Jay Alix & Associates ("JA&A") is a firm that provides turnaround and crisis management services, financial advisory services, management consulting services, information systems services and claims management services. In some cases the firm provides these services as advisors to management, in other cases one or more of its staff serve as corporate officers and other of its staff fill positions as full time or part time temporary employees ("crisis manager"), and in still other cases the firm may serve as a claims administrator as an agent of the Bankruptcy Court. JA&A and its affiliates[1] will not act in more than one of the following capacities in any single bankruptcy case: (i) crisis manager retained under Sec. 363, (ii) financial advisor retained under Sec. 327, (iii) claims agent/claims administrator appointed pursuant to 28 U.S.C. § 156(c) and any applicable local rules or (iv) investor/acquirer; and upon confirmation of a Plan may only continue to serve in a similar capacity. Further, once JA&A or one of its affiliates is retained under one of the foregoing categories it may not switch to a different retention capacity in the same case. However, with respect to subsequent investments by Questor this prohibition is subject to the time limitations set forth in IV.B below.

   B.   Engagements involving the furnishing of interim executive officers[s2] whether prepetition or postpetition (hereinafter "crisis management" engagements) shall be provided through JA&A Services LLC ("JAS").

   C.   JAS shall seek retention under section 363 of the Bankruptcy Code. The application of JAS shall disclose the individuals identified for executive officer positions as well as the names and proposed functions of any additional staff to be furnished by JAS. In the event the Debtor or JAS seeks to assume additional or different executive officer positions, or to modify materially the functions of the persons engaged, a motion to modify the retention shall be filed. It is often not possible for JAS to know the extent to which full time or part time temporary employees will be required when beginning an engagement. In part this is because the extent of the tasks that need to be accomplished is not fully known and in

---

[1] Affiliates of JA&A presently are System Advisory Group (an organization that provides information services), JA&A Services LLC (an entity that provides temporary employees), Questor Management Company LLC, an organization that manages Questor Partners Fund, Questor Partners Fund II, and various Side-by-Side entities, which are limited partnerships that invest in underperforming and troubled companies, and ACT Two (an entity that owns and operates a private airplane). Future affiliates of JA&A, if any, will be subject to the limitations set forth herein.

[2] "Executive officers" shall include but is not necessarily limited to Chief Executive Officer, President, Chief Operating Officer, Treasurer, Chief Financial Officer, Chief Restructuring Officer, Chief Information Officer, and any other officers having similar roles, power or authority, as well as any other officers provided for in the company's bylaws.

1

part it is because JAS is not yet knowledgeable about the capability and depth of the client's existing staff. Accordingly, JAS shall file with the Court with copies to the UST and all official committees a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

D. Persons furnished by JAS for executive officer positions shall be retained in such positions upon the express approval thereof by an independent Board of Directors whose members are performing their duties and obligations as required under applicable law ("Board"), and will act under the direction, control and guidance of the Board and shall serve at the Board's pleasure (*i.e.* may be removed by majority vote of the Board).

E. The application to retain JAS shall make all appropriate disclosures of any and all facts that may have a bearing on whether JAS, its affiliates, and/or the individuals working on the engagement have any conflict of interest or material adverse interest, including but not necessarily limited to the following:

1. Connection, relationship or affiliation with secured creditors, postpetition lenders, significant unsecured lenders, equity holders, current or former officers and directors, prospective buyers, or investors.

2. Involvement as a creditor, service provider or professional of any entity with which JA&A or any affiliate has an alliance agreement, marketing agreement, joint venture, referral arrangement or similar agreement.

3. Any prepetition role as officer, director, employee or consultant,[3] but service as a pre-petition officer will not *per se* cause disqualification.

4. Any prepetition involvement in voting on the decision to engage JA&A or JAS in the bankruptcy case, and/or any prepetition role carrying the authority to decide unilaterally to engage JA&A or JAS.

---

[3] In no case shall any principal, employee or independent contractor of JA&A, JAS and affiliates serve as a director of any entity while JA&A, JAS or any affiliate is rendering services in a bankruptcy proceeding, and JA&A, JAS and their affiliates shall not seek to be retained in any capacity in a bankruptcy proceeding for an entity where any principal, employee or independent contractor of JA&A, JAS and affiliates serves or has previously served as a director of the entity or an affiliate thereof within two years prior to the petition date. During such two year period, neither JA&A, JAS or affiliates shall have provided any professional services to the entity nor shall any individuals associated with JA&A, JAS and affiliates have served as an Executive Officer.

5. Information regarding the size, membership and structure of the Board so as to enable the UST and other interested parties to determine that the Board is independent.

6. Whether the executive officers and other staff for the engagement are expected to be engaged on a full time or part time basis, and if part-time whether any simultaneous or prospective engagement exists that may be pertinent to the question of conflict or adverse interest.

7. The existence of any unpaid balances for prepetition services.

8. The existence of any asserted or threatened claims against JA&A, JAS or any person furnished by JA&A/JAS arising from any act or omission in the course of a prepetition engagement.

F. Disclosures shall be supplemented on a timely basis as needed throughout the engagement.

G. Where JA&A does not act as a crisis manager its retention will be sought as a financial advisor under section 327 of the Code or as a Court appointed claims representative.

II. Compensation

A. Compensation in crisis management engagements shall be paid to JAS.

B. The application to retain JAS shall disclose the compensation terms including hourly rates and the terms under which any success fee or back-end fee may be requested.

C. JAS shall file with the Court, and provide notice to the UST and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall summarize the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. The notice shall provide a time period for objections. All compensation shall be subject to review by the Court in the event an objection is filed (*i.e.*, a "negative notice" procedure).

D. Success fees or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and shall not be pre-approved under section 328(a). No success fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause or appointment of a trustee.

3

III.  Indemnification

   A.  Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to the debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the debtor's D&O policy.

   B.  There shall be no other indemnification of JA&A, JAS or affiliates.

IV.  Subsequent Engagements

   A.  Pursuant to the "one hat" policy as stated above, after accepting an engagement in one capacity, JA&A and affiliates shall not accept another engagement for the same or affiliated debtors in another capacity.

   B.  For a period of three years after the conclusion of the engagement, Questor shall not make any investments in the debtor or reorganized debtor where JA&A, JAS or another affiliate has been engaged.

DET_C\442365.4

4