**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re                                                          :          Case No. 12-48226 (CEC)

INTERFAITH MEDICAL CENTER, INC.                :
                                    Debtor.        :

-------------------------------------------------------------------X

### STATEMENT OF THE NEW YORK STATE DEPARTMENT OF HEALTH IN RESPONSE TO THE MOTION FOR AN ORDER PURSUANT TO SECTION 363 0F THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE DEBTOR'S SENIOR MANAGEMENT

**RICHARD J. ZAHNLEUTER**, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1.      I am employed as the Director of the Bureau of Litigation, Division of Legal Affairs, New York State Department of Health ("Department"). The Department primary mission is to protect the health of the people of the State of New York. In my capacity as the Department's Bureau of Litigation Director, my responsibilities include monitoring hospital bankruptcy proceedings, in conjunction with the Office of the Attorney General of the State of New York, and advising the Department's various program staff as to ramifications of those bankruptcy proceedings.

2.      I am aware of the December 2, 2012 motion of Interfaith Medical Center, Inc. ("Interfaith") for an order authorizing Interfaith to employ and retain Kurron Shares of America, Inc. ("Kurron") as manager of Interfaith and Kurron personnel as Interfaith's senior management.

3. The Department has promulgated extensive rules and regulations regarding the governing authority of a hospital. Pursuant to 10 NYCRR 600.9(d)(1), the governing authority or operator of a hospital is prohibited from contracting for management services, unless a management services agreement has been approved in advance by the Department pursuant to the criteria set forth in 10 NYCRR 405.3(f). Section 405.3(f) contains a series of requirements applicable to management services agreements. A copy of Section 405.3(f) is attached hereto as Exhibit A. All of the requirements set forth in Section 405.3(f) are applicable to Interfaith and Kurron. In accordance with Section 959(b), the Debtor is required to comply with State law in connection with the pending Motion. I submit this Statement to advise the Court and parties in interest of the status of the Department's review and approval process.

4. In a letter, dated December 17, 2012, the Department's Deputy Commissioner of the Offices of Primary Care and Health Systems Management informed Interfaith's Chairman of the Board that Interfaith was operating under a management contract with Kurron that was not approved, or recognized, by the Department. Interfaith was directed to submit "all required information pursuant to 10 NYCRR 405.3(f) including, but not limited to, financial documentation for both Interfaith Medical Center and Kurron, character and competence information, disclosures of conflicts of interest, and mechanism(s) for evaluation as detailed in 405.3(f)(4)," as well as "copies of any previous management contracts between Interfaith Medical Center and Kurron." A copy of the Department's Deputy Commissioner's December 17, 2012 letter is attached hereto as Exhibit B.

5.     Interfaith's counsel transmitted to me various responsive documents via e-mails on December 19, 2012, and December 24, 2012, which were in turn transmitted to the Department's program staff.

6.     The Department's Section 405.3(f) review, including pending requests by the Department's program staff for additional submissions from Interfaith, is ongoing.

DATED:        January 9, 2013
              Albany, New York

_____
RICHARD J. ZAHNLEUTER

**EXHIBIT A**

**Effective Date:** 06/02/2010
**Title:** Section 405.3 - Administration

405.3 Administration. The hospital shall be managed effectively and efficiently in accordance with hospital bylaws and policies and procedures. The daily management and operational affairs of the hospital shall be the responsibility of the chief executive officer.

(a) The chief executive officer shall be responsible for the development, submission and implementation of all plans to correct operational deficiencies identifed by regulatory agencies on a timely basis and shall report to the governing body progress in developing and carrying out plans of correction.

(b) Personnel. The chief executive officer develops and implements personnel policies and practices with regard to at least the following:

(1) the employment of personnel, without regard to sex, race, creed, sexual orientation, disability, or national origin, whose qualifications are commensurate with anticipated job responsiblities;

(2) the identification of all hospital personnel, including students and volunteers, through the use of identification name tags which are clearly visible and are worn at all times;

(3) the orientation of all new employees to the hospital and to hospital and personnel policies;

(4) the development and implementation of a written plan for inservice training, including orientation and training for the governing body;

(5) effective July 1, 1989, the provision, at all times, of intravenous services, phlebotomy services, messenger services, transporter services, nurse aides, housekeeping services and other ancillary support services in a manner sufficient to meet patient care needs and to prevent adverse impact on the delivery of medical and nursing care;

(6) the maintenance of an accurate, current, and complete personnel record for each hospital employee;

(7) the verification of all applicable current licensure/certification;

(8) a periodic performance evaluation, based on a written job description, of each employee;

(9) the provision of employee health services, in consultation with the medical staff; and

(10) the provision for a physicial examination and recorded medical history for all personnel including all employees, members of the medical staff, contract staff, students, and volunteers, whose activities are such that a health impairment would pose a potential risk to patients. The examination shall be of sufficient scope to ensure that no person shall assume his/her duties unless he/she is free from a health impairment which is of potential risk to the patient or which might interfere with the performance of his/her duties, including the habituation or addiction to depressants, stimulants, narcotics, alcohol or other drugs or substances which may alter the individual's behavior. The hospital is required to provide such examination without cost for all employees who are required to have such examination. For personnel whose activities are such that a health impairment would neither pose a risk to patients nor interfere with the performance of his/her duties, the hospital shall conduct a health status assessment in order to determine that the health and well-being of patients are not jeopardized by the condition of such individuals. The hospital shall require the following of all personnel, with the exception of those physicians who are practicing medicine from a remote location outside of New York State, as a condition of employment or affiliation:

(i) a certificate of immunization against rubella which means:

(a) a document prepared by a physician, physician's assistant, specialist's assistant, nurse practitioner, licensed midwife or a laboratory possessing a laboratory permit issued pursuant to Part 58 of this Title, demonstrating serologic evidence of rubella antibodies; or

(b) a document indicating one dose of live virus rubella vaccine was administered on or after the age of twelve months, showing the product administered and the date of administration, and prepared by the health practitioner who administered the immunization; or

(c) a copy of a document described in (a) or (b) above which comes from a previous employer or the school which the employee attended as a student; and

(ii) a certificate of immunization against measles for all personnel born on or after January 1, 1957, which means:

(a) a document prepared by a physician, physician's assistant, specialist's assistant, nurse practitioner, licensed midwife or a laboratory possessing a laboratory permit issued pursuant to Part 58 of this Title, demonstrating serologic evidence of measles antibodies; or

(b) a document indicating two doses of live virus measles vaccine were administered with the first dose administered on or after the age of 12 months and the second dose administered more than 30 days after the first dose but after 15 months of age showing the product administered and the date of administration, and prepared by the health practitioner who administered the immunization; or

(c) a document, indicating a diagnosis of the employee as having had measles disease prepared by the physician, physician's assistant, specialist's assistant, licensed midwife or nurse practitioner who diagnosed the employee's measles; or

(d) a copy of a document described in (a), (b) or (c) above which comes from a previous employer or the school which the employee attended as a student;

(iii) if any licensed physician, physician's assistant, specialist's assistant, licensed midwife or nurse practitioner certifies that immunization with measles and/or rubella vaccine may be detrimental to the employee's health, the requirements of (i) and/or (ii) above relating to measles and/or rubella immunization shall be inapplicable until such immunization is found no longer to be detrimental to such employee's health. The nature and duration of the medical exemption must be stated in the employee's employment medical record and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the American Academy of Pediatrics and the Immunization Practices Advisory Committee of the U.S. Department of Health and Human Services); and

(iv) for all personnel prior to employment or affiliation, except for personnel with no clinical or patient contact responsibilities who are located in a building or site with no patient care services, either tuberculin skin test or Food and Drug Administration (FDA) approved blood assay for the detection of latent tuberculosis infection, prior to employment or affiliation and no less than every year thereafter for negative findings. Positive findings shall require appropriate clinical follow-up but no repeat tuberculin skin test or blood assay. The medical staff shall develop and implement policies regarding positive outcomes.

(11) the reassessment of the health status of all personnel as frequently as necessary, but no less than annually, to ensure that personnel are free from health impairments which pose potential risk to patients or personnel or which may interfere with the performance of duties;

(12) the provision for emergency health care for all personnel;

(13) the maintenance of medical records for all personnel including the dates, extent and results of all health assessments and physical examinations; the results of laboratory tests and X-ray reports; and records of immunizations, illnesses or injuries;

(14) the requirement that all personnel report immediately to their supervisor any signs or symptoms of personal illness. All personnel making such report shall be referred to an appropriate health care professional for assessment of the potential risk to patients and personnel. Based on this assessment, the hospital shall authorize appropriate measures to be taken, including but not limited to removal, reassignment or return to duty;

(15) the safety and protection of all personnel and advice to personnel concerning the nature of toxic substances which they may encounter in the workplace in the course of their employment or affiliation, in accordance with article 28 of the New York State Labor Law; and

(16) a policy that no hospital employee or member of a hospital medical staff shall be required by the hospital or a member of the hospital staff to participate in an induced termination of pregnancy who has informed the hospital of his or her decision not to participate in such act or acts;

(c) The hospital shall have a written agreement which defines the respective roles and responsibilities of the hospital and any educational program which utilizes the clinical facilities of the hospital for the education of students. Such agreement shall recognize the responsibility of the hospital for activities of the educational program and students which affect the care of patients.

(d) Records and reports. Any information, records or documents provided to the department shall be subject to the applicable provisions of the Public Health Law, Mental Hygiene Law, Education Law, and the Public Officers Law in relation to disclosure. The hospital shall maintain and furnish to the Department of Health, immediately upon written request, copies of all documents, including but not limited to:

(1) all records related to patient care and services;

(2) the certificate of incorporation or the partnership agreement, and the certificate of conducting business under an assumed name as required by General Business Law, section 130;

(3) the reports of hospital inspections and surveys of outside agencies with statements attached specifying the steps taken to correct any hazards or deficiencies or to carry out the recommendations contained therein;

(4) all contracts, leases and other agreements entered into by the governing authority pertaining to the ownership of the land, building, fixtures and equipment used in connection with the operation of the hospital;

(5) all licenses, permits and certificates required by law for the operation of the hospital and also for those departments and staff members, where required;

(6) operating procedure manuals for all services or units of the hospital organization. These manuals shall be reviewed at least biennially by the hospital or more frequently as determined appropriate by each service or unit and be made available to all services and units of the hospital;

(7) all bylaws, rules and regulations of the hospital and all amendments thereto; a listing of the names and addresses and titles of offices held for all members of the governing authority and revisions thereof; a copy of the bylaws, rules and regulations of the medical staff and all amendments of the medical staff and revisions thereof; a copy of the current annual report and financial statements of the hospital;

(8) copies of complaints received regarding patient care and documentation of the follow-up actions taken as a result of the investigation of these complaints;

(9) copies of all incident reports completed pursuant to section 405.8 of this Part;

(10) a listing of the names and titles of the members of each committee of the hospital;

(11) written minutes of each committee's proceedings. These minutes shall include at least the following:

(i) attendance;

(ii) date and duration of the meeting;

(iii) synopsis of issues discussed and actions or recommendations made; and

(12) any record required to be kept by the provisions of this Part.

(e) Other reporting requirements. (1) The hospital shall report in writing to the Office of Professional Medical Conduct with a copy to the appropriate area administrator of the department's Office of Health Systems Management within 30 days of the occurrence of denial, suspension, restriction, termination or curtailment of training, employment, association or professional privileges or the denial of certification of completion of training of any physician, registered physician's assistant or registered specialist's assistant licensed/registered by the New York State Department of Education for reasons related in any way to any of the following:

(i) alleged mental or physical impairment, incompetence, malpractice, misconduct or endangerment of patient safety or welfare;

(ii) voluntary or involuntary resignation or withdrawal of association or of privileges with the hospital to avoid the imposition of disciplinary measures;

(iii) the receipt of information concerning a conviction of a misdemeanor or felony. The report shall contain:

(a) the name and address of the individual;

(b) the profession and license number;

(c) the date of the hospital's action;

(d) a description of the action taken; and

(e) the reason for the hospital's action or the nature of the action or conduct which lead to the resignation or withdrawal and the date thereof; and

(iv) the hospital shall establish policies and implement procedures to ensure compliance with these reporting requirements.

(2) The hospital shall furnish to the Department of Education within 30 days of occurrence, a written report of any denial, withholding, curtailment, restriction, suspension or termination of any membership or professional privileges in, employment by, or any type of association with a hospital relating to an individual who is a health profession student serving in a clinical clerkship, an unlicensed health professional serving in a clincial fellowship or residency, or an unlicensed health professional practicing under a limited permit or a state licensee, such as an audiologist, certified social worker, dental hygienist, dentist, nurse, occupational therapist, ophthalmic dispenser, optometrist, pharmacist, physical therapist, podiatrist, psychologist, or speech-language pathologist for reasons related in any way to any of the following reasons:

(i) alleged mental or physical impairment, incompetence, malpractice, misconduct or endangerment of patient safety or welfare;

(ii) voluntary or involuntary resignation or withdrawal of association, employment or privileges with the

hospital to avoid imposition of disciplinary measures; and

(iii) the receipt of information concerning a conviction of a misdemeanor or felony. The report shall contain:

(a) the name and address of the individual;

(b) the profession and license number;

(c) the date of the hospital's action;

(d) a description of the action taken; and

(e) the reason for the hospital's action or the nature of the action or conduct which lead to the resignation or withdrawal and the date thereof.

(3) At the time that a physician on a hospital's staff is granted admitting privileges or before or at the time the physician admits his or her first patient, each hospital shall furnish to such physician the following notice, which each physician on the hospital staff must sign and date. The signed notices shall be kept on file by the hospital. The notice to physicians shall state:

"Notice to physicians. Payment to hospitals for inpatient services is based in part on each patient's principal and secondary diagnoses and the major procedures performed on the patient, and for neonates, upon birthweight or admission weight as well. This data must be documented by the patient's medical record. Anyone who misrepresents, falsifies, or conceals this information may be subject to fine, imprisonment, or civil penalty under applicable Federal and New York State laws."

(4) at the time of discharge, for categories of patients determined by the commissioner, the chief executive officer shall provide the department information in a manner and on a form specified by the department.

(f) Hospital management contracts. (1) For the purposes of this Part, a management contract is an agreement between a hospital governing body and a contracting entity for the contracting entity to assume the primary responsibility for managing the day-to-day operations of an entire facility or a defined patient care unit of the facility. A management contract shall not include:

(i) a contract solely for the provision of professional clinical services;

(ii) an employment contract; or

(iii) a contract for the provision of administrative services to a defined patient care unit of a facility where all of the following factors are present:

(a) the hospital retains responsibility for the day-to-day operations of the defined patient care unit;

(b) the contracting entity has no authority to hire or fire any hospital employee;

(c) the contracting entity does not maintain and control the books and records of the defined patient care unit;

(d) the contracting entity has no authority to incur any liability on behalf of the facility; and

(e) the contracting entity has no authority to adopt or enforce policies regarding the operation of the defined patient care unit.

(2) Management contracts shall be effective only with the prior written consent of the commissioner and

shall include the following:

(i) a description of the proposed roles of the governing body during the period of the proposed management contract. The description shall clearly reflect retention by the governing authority of ongoing responsibility for statutory and regulatory compliance;

(ii) A provision that clearly recognizes that the responsibilities of the facility's governing body are in no way obviated by entering into a management contract and that any powers not specifically delegated to the contracting entity through the provisions of the contract remain with the governing body; and

(iii) a plan for assuring maintenance of the fiscal stability, the level of services provided and the quality of care rendered by the facility during the term of the management contract.

(3) The governing body shall retain sufficient authority and control to discharge its responsibility under this Part. The following elements of control shall not be delegated to a managing authority:

(i) direct independent authority to appoint and discharge the chief executive officer or other key management employees;

(ii) independent control of the books and records;

(iii) authority over the disposition of assets and the authority to incur on behalf of the facility liabilities not normally associated with the day-to-day operation of a facility; and

(iv) independent adoption of policies affecting the delivery of health care services.

(4) A governing body wishing to enter into a management contract shall submit a proposed written contract to the department, a least 60 days prior to the intended effective date, unless a shorter period is approved in writing by the commissioner, due to extraordinary circumstances. In addition, the governing body shall also submit, within the same time frame, the following:

(i) documentation demonstrating that the proposed managing authority holds all necessary approvals to do business in New York State;

(ii) documentation of the goals and objectives of the management contracts including a mechanism for periodic evaluation by the governing body of effectiveness of the arrangement in meeting those goals and objectives;

(iii) evidence of the managing authority's financial stability;

(iv) information necessary to determine that the character and competence of the proposed managing authority, and its principals, officers and directors, is satisfactory, including evidence that all facilities it has managed in New York State have provided a substantially consistent high level of care in accordance with section 600.2 of this Title, during the term of their management contract or operating certificate; and

(v) evidence that it is financially feasible for the facility to enter into the proposed management contract for the term of the contract and for a period of one year following expiration, recognizing that the costs of the contract are subject to all applicable provisions of Part 86 of this Title. To demonstrate evidence of financial feasibility, the facility shall submit projected operating and capital budgets for the required periods. Such budgets shall be consistent with previous certified financial statements and be subject to future audits.

(5) During the period between a facility's submission of a request for initial approval of a management contract and disposition of that request, a facility may not enter into any arrangement for management contract services other than a written interim consultative agreement with the proposed managing authority. Any interim agreement shall be consistent with the provisions of this section and shall be

submitted to the department no later than five days after its effective date.

(6) The term of a management contract shall be limited to three years and may be renewed for additional periods not to exceed three years only when authorized by the commissioner. The commissioner shall approve an application for renewal provided that compliance with this section and the following provisions can be demonstrated:

(i) that the goals and objectives of the contract have been met within specified time frames;

(ii) that the quality of care provided by the facility during the term of the contract has been maintained or has improved; and

(iii) that the level of service to meet community needs and patient access to care and services has been maintained or improved.

(7) A contract for which an application for renewal has been submitted on a timely basis to the commissioner may be extended on an interim basis until the commissioner approves or disapproves the application for renewal.

(8) A facility's governing body shall, within the terms of the contract, retain the authority to discharge the managing authority and its employees from their positions at the facility with or without cause on not more than 90 days' notice. In such event, the facility shall notify the department in writing at the time the managing authority is notified. The facility's governing body shall provide a plan for the operation of the facility subsequent to the discharge to be submitted with the notification to the department.

Volume: C

**EXHIBIT B**

**NEW YORK**
*state department of*
**HEALTH**

Nirav R. Shah, M.D., M.P.H.
Commissioner

Sue Kelly
Executive Deputy Commissioner

December 17, 2012

Mr. Nathan Barotz
Chairman of the Board
Interfaith Medical Center
1545 Atlantic Avenue
Brooklyn, New York 11213

Dear Mr. Barotz:

It has come to the attention of the Department of Health that Interfaith Medical Center is currently operating under a management contract with Kurrron Shares of America, Inc. This was reported in a recent Crain's Health Pulse Article. Hospital management contracts require Department of Health approval in accordance with 10NYCRR Section 405.3(f) which governs review and approval of hospital management contracts.

Please submit a signed and notarized copy of the contract as well as an official copy of the facility board meeting minutes approving it. Your submission should contain all required information pursuant to 10NYCRR Section 405.3(f) including, but not limited to, financial documentation for both Interfaith Medical Center and Kurron, character and competence information, disclosures of conflicts of interest, and mechanism(s) for evaluation as detailed in 405.3(f)(4). Please also include copies of any previous management contracts between Interfaith Medical Center and Kurron.

In view of the fact that Interfaith Medical Center is currently operating under a management contract not approved, or recognized, by the Department of Health, it is imperative that this information be provided to the Department of Health as soon as practicable, but in no event later than 30 days from receipt of this letter.

Please recognize that the current bankruptcy status of Interfaith does not negate, or waive, the need for the facility to be in compliance with the above referenced regulations. Questions regarding the management contract approval process should be directed to James A. Werking in the Division of Hospitals and Diagnostic & Treatment Centers. He may be reached at (518) 402-1003 or by email at jaw08@health.state.ny.us. Thank you for your prompt attention to this matter.

Sincerely,

Karen Westervelt,
Deputy Commissioner,
Offices of Primary Care and
Health Systems Management

**HEALTH**.NY.GOV
facebook.com/NYSDOH
twitter.com/HealthNYGov