Alan J. Lipkin
Shaunna D. Jones
Jack M. Tracy II
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
Interfaith Medical Center, Inc.,[1]            :    Case No. 12-48226 (CEC)
                                               :
                    Debtor.       :
--------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF CORBETT PRICE IN SUPPORT
OF DEBTOR'S MOTION FOR ORDER, PURSUANT TO
SECTION 363 OF BANKRUPTCY CODE, AUTHORIZING
DEBTOR TO EMPLOY AND RETAIN KURRON SHARES OF AMERICA, INC. AS
MANAGER FOR THE DEBTOR AND KURRON PERSONNEL AS THE
DEBTOR'S SENIOR MANAGEMENT, NUNC PRO TUNC TO THE PETITION DATE**

        I, Corbett Price, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

        1.    I am the Chairman and Chief Executive Officer of Kurron Shares of America, Inc. ("**Kurron**"), which provides management services to health care providers, and has provided such management services to Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**" or "**IMC**") since 1991. I am authorized to execute this declaration on behalf of Kurron. Unless otherwise stated in this declaration, I

---

[1] The last four digits of the Debtor's federal tax identification number are 6155. The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

have personal knowledge of the facts set forth herein. I submit this supplemental declaration in further support of the Debtor's Motion for Order Pursuant to Section 363 of Bankruptcy Code, Authorizing Debtor to Employ and Retain Kurron Shares of America, Inc. as Manager for the Debtor and Kurron Personnel as the Debtor's Senior Management, *Nunc Pro Nunc* to the Petition Date (the "**Motion**").

## KURRON

2. Since 1990, Kurron has managed numerous hospitals and health care facilities. Although the challenging economic environment for many hospitals during that time period has led to Kurron professionals gaining significant experience, Kurron is not a crisis manager for hospitals, but rather a hospital manager with experience in an industry with many financially distressed hospitals. Thus, while the Motion was somewhat overstated in suggesting Kurron specializes in crisis management for financially troubled health care entities, Kurron certainly has significant experience in that arena.

## KURRON'S SERVICES FOR IMC

3. Kurron has been providing senior management and other key personnel to IMC for over 20 years. The Kurron personnel operate under the supervision of IMC's Board of Trustees.

4. Kurron currently provides IMC with a Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer, each of whom works full time for IMC. Additionally, Kurron provides the services of Diane Kelly to IMC as a nursing quality assurance individual for nursing care at IMC. Ms. Kelly is a professor at Duke University and spends approximately 70 hours per month at IMC plus she is otherwise available for calls from IMC as and when needed. Also, Kurron provides IMC with the services of Pamela Bradshaw. Despite

her title as "Special Counsel" due to her background as a lawyer, Ms. Bradshaw does not provide legal services for IMC in this case. Instead, Ms. Bradshaw (whose title will be changed to Special Assistant) prepares board minutes, assists IMC's Risk Manager with administrative oversight of medical malpractice claims, and handles other special projects as and when another educated hand would be helpful to IMC. Ms. Bradshaw spends up to 40 hours per week on IMC matters. Additionally, I have been working long term for IMC to assist on, inter alia, debt restructuring and related senior management issues.

5. In recognition of Kurron's earlier contributions to IMC, the New York Department of Health (the "**DOH**") previously requested that I serve on IMC's Board of Trustees for a limited period. I resigned from the board in October 2011.

6. Prior to the Petition Date, Kurron has expanded its part time employees' time commitments or provided additional personnel.

**KURRON'S POSTPETITION ROLE**

7. The Kurron personnel provided to IMC postpetition are the same as the Debtor's prepetition management personnel provided to the Debtor. The Kurron personnel are providing the same services for IMC postpetition that such personnel provided to IMC prepetition.

8. Kurron's prepetition contract was revised slightly prior to IMC's chapter 11 filing to make the agreement more suitable for approval in a chapter 11 case (and somewhat less favorable to Kurron). DOH currently is reviewing that contract and has filed a statement to that effect with the Court. Kurron is cooperating with DOH in that process. In the past, it has taken DOH several months to resolve issues concerning Kurron agreements and Kurron has managed IMC throughout each of those periods without incident or objection from DOH.

9. In addition to the successful day to day management of the hospital, Kurron personnel have achieved admirable results in getting IMC to a cash break-even point for operations under extremely difficult circumstances, including the dramatic cuts in reimbursement rates for the Medicaid payments that are IMC's lifeblood. Unfortunately, those efforts have in part involved massive cuts, including cuts in payments to IMC's unions and union members.

10. Kurron personnel provide the nuts and bolts financial information, including, but not limited to, financial statements, initial drafts of schedules, projections, and budgets, that a debtor's management typically produces. CohnReznick LLP, IMC's financial advisor, reviews, supplements, and revises such materials for presentation to the Court, the IMC's Board of Trustees, the Dormitory Authority of the State of New York ("**DASNY**"), the Official Committee of Unsecured Creditors (the "**Committee**") and certain other key parties. Accordingly, Kurron personnel do <u>not</u> provide financial advisory services for IMC, but rather maintain day-to-day IMC operations. All Kurron personnel are performing executive duties and do not perform consulting duties.

11. Due to severe time pressures on IMC in this case, on behalf of IMC, Kurron personnel are (and will be) almost constantly negotiating extensions for continued postpetition cash collateral and debtor in possession financing. Kurron personnel are also actively involved in negotiating the terms of a memorandum of understanding with one or more potential sponsors acceptable to DASNY and DOH, and the failure to timely obtain such a memorandum would trigger certain events of default under IMC's proposed second interim cash collateral order.

12. Additionally, with Kurron's assistance, IMC and DASNY have negotiated a separate memorandum of understanding (about to be executed) that provides for IMC to file a

chapter 11 plan acceptable to DASNY and DOH by early March 2013 and confirm such an acceptable plan by early June 2013.  Assuming DASNY consents, there may be brief extensions of such deadlines due to the numerous challenges in this case, including the variety of parties and New York State agencies involved (and also if the Committee continues its adversarial approach).   Regardless, the length of this case will be measured in months, not years because the consent of (and funding from) New York State agencies will be critical to IMC's reorganization.  Thus, it would be catastrophic and counterproductive to replace the Debtor's entire management team at this critical juncture because the resulting disruption would preclude IMC from coming close to meeting the mandated time deadlines or otherwise achieving a successful reorganization.

13. I currently spend approximately 40 hours per week on IMC matters.  The IMC Board of Trustees determined to give me the title of Chief Restructuring Officer merely to reflect the executive level of commitment that I was bringing to Kurron's management of the hospital.

### KURRON'S COMPENSATION

14. Kurron's postpetition compensation is consistent with (or less than) its prepetition compensation.

15. Prior to the Petition Date, IMC paid Kurron in advance for Kurron's services to be provided for December 2012 as consistent with customary prepetition practice.  IMC has not paid Kurron a retainer.  While the monthly payment to Kurron for December 2012 was described as such in connection with the Motion, that was simply because that one payment was paid a few days early because at that point it was uncertain if and on what date IMC would file for chapter 11 protection.

16. Kurron is limiting its fixed compensation rate during this case to payments necessary to generate $3 million per annum (rather than the $3.25 million inherent in a weekly rate of $62,500).

17. Kurron will not charge hourly rates for the various supplemental personnel Kurron will provide to IMC.

18. Kurron will not seek to raise its fees for IMC during this case.

### **KURRON'S POST-CONFIRMATION ROLE**

19. In light of the contemplated business combination involving IMC, Kurron does not expect to be retained by IMC post-confirmation. Kurron is not seeking to work for IMC post-confirmation and agrees not to be hired for such a role.

### **THE CREDITORS' COMMITTEE**

20. Based on property appraisals in hand and other materials concerning the Debtor's asset values as well as the apparent fact that DASNY has a well over $100 million claim and a lien or security interest on or in substantially all of the Debtor's assets, it now appears that the economic interest of unsecured creditors represented by the Committee in terms of likely recoveries in this case is at best modest.

21. During this chapter 11 case, the Committee has never met with, nor, to my knowledge, asked to meet with, the Debtor's management supplied by Kurron. Further, to my knowledge, the Committee failed to advise the Debtor of any specific concern about Kurron prior to filing its objection to the Motion.

Dated: January 11, 2013

By: /s/ Corbett Price
Corbett Price