**Hearing Date: July 29, 2013**
**Time: 2:00 p.m. (ET)**

Alan J. Lipkin
Shaunna D. Jones
Anna C. Burns
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-48226 (CEC) |
| | : | |
| Debtor. | : | |

-------------------------------------------------------x

**NOTICE OF REVISED PROPOSED EIGHTH INTERIM
ORDER:  (I) AUTHORIZING THE DEBTOR TO UTILIZE
CASH COLLATERAL OF PREPETITION SECURED PARTY
PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363; (II) GRANTING A
SUPERPRIORITY CLAIM; (III) GRANTING ADEQUATE PROTECTION;
(IV) PROVIDING RELATED RELIEF; AND (V) SCHEDULING A FINAL HEARING**

        **PLEASE TAKE NOTICE** that on July 12, 2013, Interfaith Medical Center, Inc., the

debtor and debtor in possession in the above-captioned case (the "**Debtor**") filed the Notice of

Filing of Proposed Eighth Interim Order:  (I) Authorizing the Debtor to Utilize Cash Collateral

of Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105, 361 and 363; (II) Granting a

Superpriority Claim; (III) Granting Adequate Protection; (IV) Providing Related Relief; and

(V) Scheduling A Final Hearing (the "**Original Proposed Order**") [Docket No. 562].

        **PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit 1</u> is a revised

proposed cash collateral order (the "**Revised Proposed Order**").  Annexed hereto as an <u>Exhibit
2</u> is a blackline of the Revised Proposed Order showing changes to the Original Proposed Order.

---

[1]     The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is
1545 Atlantic Avenue, Brooklyn, New York 11213.

**PLEASE TAKE FURTHER NOTICE** that the Revised Proposed Order has been agreed to in form by the Debtor, the Official Committee of Unsecured Creditors (the "**Committee**") and the Dormitory Authority of the State of New York ("**DASNY**").  The Budget, attached to the Revised Proposed Order as <u>Exhibit A</u>, also has been approved by the Debtor, the Committee and DASNY.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") on the Revised Proposed Order will be held on **July 29, 2013 at 2:00 p.m. (EST)** before the Honorable Carla E. Craig, United States Bankruptcy Judge in Courtroom 3529 of the United States Bankruptcy Court, 271 Cadman Plaza East – Suite 1595, Brooklyn, New York 11201-1800.  A final hearing on the requested relief shall be scheduled at a later date.

**PLEASE TAKE FURTHER NOTICE** that if you wish to be heard with respect to the foregoing matters, you must attend the Hearing.  The Hearing may be adjourned from time to time in open court.

Dated:  July 26, 2013

WILLKIE FARR & GALLAGHER LLP

By:   /s/ Alan J. Lipkin
     Alan J. Lipkin
     Shaunna D. Jones
     Anna C. Burns
     787 Seventh Avenue
     New York, New York 10019
     Tel:  (212) 728-8000
     Fax:  (212) 728-8111

*Attorneys to Debtor and Debtor in Possession*

## **EXHIBIT 1**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-48226 (CEC) |
| | : | |
| Debtor. | : | Re: Docket Nos. 7, 38, 149, 231, 344, 394, |
| | : | 475 and 551 |

-------------------------------------------------------- x

### EIGHTH INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO UTILIZE CASH COLLATERAL OF PREPETITION SECURED PARTY PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363, (II) GRANTING A SUPERPRIORITY CLAIM, (III) GRANTING ADEQUATE PROTECTION, (IV) PROVIDING RELATED RELIEF AND (V) SCHEDULING A FINAL HEARING

THIS MATTER came before the Court on July 29, 2013, on the motion (the "**Motion**")

of Interfaith Medical Center, a New York not-for-profit corporation as chapter 11 debtor and

debtor in possession ("**IMC**" or the "**Debtor**") in the above-referenced chapter 11 case (the

"**Chapter 11 Case**"), for the entry of this Eighth Interim Order (the "**Interim Order**")  and a

final order (the "**Final Order**"), pursuant to sections 105, 361, 362 and 363(c)(2) of title 11 of

the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

and Rule 4001-5 of the Local Rules for the United States Bankruptcy Court for the Eastern

District of New York (the "**Local Rules**"), seeking this Court's authorization:

(i)      further extending, pursuant to an eighth Interim Order, the Debtor's limited use of

Cash Collateral (as defined below), on an interim basis solely for the purposes and up to the

amounts set forth in the Budget (as defined below) subject to the terms and conditions set forth

in this Interim Order to, *inter alia*:

(1)      fund the operating expenses of the Debtor during the Chapter 11 Case;

---

[1]  The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

(2)        fund postpetition allowed fees and expenses incurred by (x) the Debtor's Retained Professionals (as defined below), (y) any statutory committee, including the official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Committee**") and its Retained Professionals, and (z) any appointed Ombudsman (as defined below) and its Retained Professionals;

(3)        provide Adequate Protection Liens (as defined below, including pursuant to sections 361, 362(d), 363(e), 503(b) and 507(b) of the Bankruptcy Code) to the Dormitory Authority of the State of New York (the "**Authority**" or "**Prepetition Lender**") in respect of the Prepetition Liens (as defined below), as more fully set forth in this Interim Order;

(4)        to pay Adequate Protection Payments (as defined below) as and to the extent set forth in the Budget; and

(5)        fund the other items covered by the terms of the Budget and this Interim Order;

(ii)      for the Debtor to grant security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code) to the Prepetition Lender, for its benefit, to secure all obligations of the Debtor hereunder and with respect to the use of the Prepetition Collateral (as defined below), including the Cash Collateral;

(iii)     to modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Prepetition Lender to implement the terms of this Interim Order;

(iv)     to schedule a final hearing (the "**Final Hearing**") on the Motion no later than September 13, 2013 to consider entry of a Final Order authorizing the continued use of Cash Collateral on a final basis and, potentially, entry by the Debtor into debtor-in-possession financing, and approval of notice procedures with respect thereto; and

(v)      granting related relief;

and after due deliberation and consideration, and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:[2]

A.    <u>Notice and Hearing</u>.    Due and appropriate notice of the Motion, the relief requested therein and the interim hearing (the "**Interim Hearing**") has been given and served by the Debtor on the parties  (collectively, the "**Notice Parties**") pursuant to the *Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates*, dated as of December 4, 2012 [Docket No. 35] (the "**Notice Procedures Order**") and all applicable rules and guidelines, including section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 2002-2, and such notice is appropriate under the circumstances and sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules; the Interim Hearing and proceedings have been held before the Court, evidence has been presented in support of the Motion, the Court has noted the appearances of parties in interest at the Interim Hearing in the record of this Court, any objections to the Motion have been resolved or overruled by the Court and the relief requested in the Motion is in the best interests of the Debtor, its Estate, its community and its creditors.

B.    <u>Chapter 11 Filed</u>.    The Debtor filed its petition under chapter 11 of the Bankruptcy Code on December 2, 2012 (the "**Petition Date**"), and is presently operating as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    <u>Prepetition Loans</u>.    Subject to Challenge (as defined below) as set forth in Paragraph 17, pursuant to the following agreements, the Prepetition Lender made loans and extended other financial accommodations to IMC prior to the Petition Date and loaned the proceeds thereof to IMC (the "**Prepetition Loans**"):

---

[2]  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

(1)     that certain secured Loan Agreement by and between the Prepetition Lender and IMC, dated as of January 24, 2007 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Prepetition Loan Agreement**"), relating to the Secured Hospital Revenue Refunding Bonds, Interfaith Medical Center, Series 2007 (the "**Series 2007 Bonds**");

(2)     that certain unsecured Reimbursement Agreement between the Authority and IMC, dated as of March 29, 2005, (as amended on June 14, 2011, and as further amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Fund B Loan Agreement**"); and

(3)     that certain secured Reimbursement Agreement between the Authority and IMC, dated as of November 21, 2011 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Pool Loan Agreement**" and together with the Prepetition Loan Agreement and all security, pledge, guaranty, and other lien and loan agreements and documents in connection therewith, each as may be amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Secured Loan Documents**" and such obligations thereunder the "**Prepetition Secured Obligations**").  One or more Events of Default under the Prepetition Secured Loan Documents and the Fund B Loan Agreement has occurred and is continuing, has not been waived by the Authority, and the Authority expressly reserves all of its rights and remedies under the Prepetition Secured Loan Documents and the Fund B Loan Agreement with respect thereto.

D.      Necessity and Best Interest.

(1)      Good cause has been shown for the entry of this Interim Order.

(2)      The Debtor has an immediate and critical need to use Cash Collateral in order to, among other things, continue to provide proper care to its patients, finance the ordinary costs of its operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs.  The Debtor's access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of this Interim Order is vital (i) to satisfy the Debtor's postpetition liquidity needs, (ii) to the preservation and maintenance of the going concern value of the Debtor's Estate and (iii) to the Debtor's successful reorganization.  Without access to Cash Collateral, the Debtor will not have sufficient unencumbered cash or other available sources of working capital and financing to continue to provide proper care to its patients, to pay certain salaries and claims of its employees, utilities, and other short-term costs, and to otherwise pay the costs attendant to the Chapter 11 Case.

(3)      Authorization to use the Cash Collateral in accordance with this Interim Order is in the best interests of the Debtor, its estate, creditors, patients, community and the other parties in interest because such relief will ensure the Debtor's continued ability to care for its patients, serve its community, and preserve jobs, while also preserving and maximizing the value of the Debtor's Estate for the benefit of all creditors, the community served by IMC, and other parties in interest.

(4)      The use of Cash Collateral is fair and reasonable, reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and is supported by reasonably equivalent value and fair consideration.

(5)     The provisions of this Interim Order have been negotiated in good faith and at arms'-length between the Debtor and the Prepetition Lender, and the permission granted to the Debtor by the Prepetition Lender to use Cash Collateral pursuant to this Interim Order has been in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

(6)     The Debtor (in consultation with its advisors) has determined that (i) the Budget is reasonable and will allow the Debtor to operate in the Chapter 11 Case without the accrual of unpaid allowed administrative expenses, and (ii) the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the Budget during the pendency of the Chapter 11 Case.

(7)     The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) and 4001(d).  Absent entry of this Interim Order, the Debtor's Estate will be immediately and irreparably harmed.

The Court, having determined that good cause exists for the relief requested in the Motion,

IT IS HEREBY ORDERED as follows:

1.     <u>Jurisdiction</u>.  This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and Administrative Order No. 264, titled "The Referral of Matters to the Bankruptcy Judges, incorporating Referral Order of August 28, 1986," by the District Court of the Eastern District of New York (Weinstein, C.J.).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     <u>Notice</u>.  Under the circumstances, notice of the Motion and the third Interim Hearing on the Motion and this Interim Order constitutes due and sufficient notice thereof and complies with the Notice Procedures Order and all applicable Bankruptcy Rules, including Rules

2002, 4001(b) and (d), 5003(e) and 9014 and the local rules of this Court, including Local Rule 4001-5, and no other notice need be given.

3.      <u>Approval of Motion</u>.  The Motion is approved on the terms and conditions set forth in this Interim Order.  This Interim Order shall become effective immediately upon its entry.

4.      <u>The Budget</u>.

(a)      The amount of the Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the budget prepared by the Debtor (as amended, supplemented, extended or otherwise modified from time to time in accordance with Paragraph 4(b) below, the "**Budget**"), a copy of which is annexed hereto as Exhibit A, which Budget shall, among other things: (i) include permitted variances from the Budget as may be agreed to by the Prepetition Lender, but in no event less than 10% of aggregate cumulative expenditures in the Budget for the period from the week ending July 19, 2013 through the week ending September 13, 2013, (ii) be supplemented the fourth business day of each week with a variance report showing the variances between the projected amounts and the actual amounts of expenses and disbursements for the preceding weekly period for each line item; and (iii) be in form and substance satisfactory to the Prepetition Lender for the time period set forth therein, but in no event beyond the date that is the earliest of the following, unless such applicable date is extended in writing by the Authority (the "**Termination Date**"):  the earlier of (i) (1) September 13, 2013, or (2) the date on which this Interim Order expires, in either case, if the Final Order has not been entered prior to the expiration of such period; (ii) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (1) the effective date of such plan of reorganization or (2) the 30th day after the date of entry of the confirmation order; (iii) the closing of a sale, or the transfer, of all or substantially all of the equity or assets of the Debtor; or (iv) the date of

indefeasible prepayment in full,[3] in cash, by the Debtor of all Prepetition Secured Obligations owed to the Prepetition Lender in accordance with the terms thereof.  In addition to the Budget, the Debtor shall provide a separate report with a line item for each Retained Professional and the Patient Care Ombudsman showing the amount that is expected to accrue each week (without any deduction for any holdback) through the week ending September 13, 2013 (For the avoidance of doubt this separate report shall not be considered part of the Budget for covenant testing.).

(b)     The Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which the Debtor and the Prepetition Lender mutually agree without further order of this Court or advance notice to any Person; provided, however, the Committee shall have five (5) business days to object from the date that counsel for the Committee receives notice from the Debtor of any modification to the Budget.  The Debtor shall promptly provide any modified Budget to the Office of the United States Trustee (the "**U.S. Trustee**") and counsel for the Committee, and the Debtor shall promptly file any modified Budget with the Court; provided that the Debtor may take appropriate actions with respect to confidentiality of any portion of the Budget.  If the Committee objects to any modification of the Budget, the Committee shall seek an expedited hearing before this Court to resolve the objection, and until the hearing on that objection, the Debtor shall be permitted to operate under the Budget as modified only to the extent necessary.

(c)     With respect to certain items in the Budget that are defined in the Budget as "Restructuring Items" that require approval by this Court prior to payment, the Debtor shall provide the Prepetition Lender notice at the same time and in the same fashion as the Committee.

---

[3]   A reference herein to payment "in final," "in full," or "indefeasibly," or use of words of similar import shall include the cash collateralization of, at a minimum, 102% of the amount of any Prepetition Secured Obligations that is a contingent obligation, including any contingent indemnification obligations, and the establishment of any reserves in the discretion of the Prepetition Lender, as applicable, including, without limitation, for attorneys' fees and expenses.  This section shall not be in limitation of any rights or remedies of the Prepetition Lender under the Prepetition Secured Loan Documents with respect to contingent Prepetition Secured Obligations.

(d)    The Debtor shall not make any capital expenditures that are in excess of $10,000 per week from the date of this Interim Order unless the Authority approves such capital expenditures in writing.

(e)    The amounts set forth in the Budget annexed hereto as Exhibit A for the line item entitled "Restructuring fees" shall be placed in a reserve or escrow account (the "**Retained Professionals Fund**") established by the Debtor for the fees and expenses of the Retained Professionals (as defined below).  Funds may only be disbursed by the Debtor from the Retained Professionals Fund pursuant to an order of this Court, including, without limitation, any order entered with respect to the Debtor's Application For Administrative Order, Pursuant To Sections 105(A) And 331 of Bankruptcy Code And Local Bankruptcy Rule 2016-1, Establishing Procedures For The Interim Compensation And Reimbursement of Expenses of Professionals dated December 10, 2012 [Docket No. 55].  No other funds other than funds from the Retained Professionals Fund shall be used to compensate Retained Professionals unless otherwise ordered by this Court.  The funds in the Retained Professionals Fund shall not constitute Cash Collateral; provided, however, the Prepetition Lender shall have a residual security interest in any funds remaining in the Retained Professionals Fund after payment of all Retained Professionals pursuant to an order of this Court (the "**Residual Interest**").  For the avoidance of doubt, nothing in this Paragraph waives any Retained Professional's right to assert an administrative expense claim for any allowed fees and expenses that are not paid from the Retained Professionals Fund.

5.    Reports.  The Debtor shall deliver to the Prepetition Lender such reports, data and other information required to be delivered pursuant to the Prepetition Secured Loan Documents and the Fund B Loan Agreement, including, without limitation, the Budget and the data on Retained Professionals and the Patient Care Ombudsman.  The Debtor shall deliver to counsel to the Committee such reports, data and other information required to be delivered pursuant to the

Prepetition Secured Loan Documents and the Fund B Loan Agreement at the same time and in the same form delivered to the Prepetition Lender.  Notwithstanding the foregoing, the Debtor may take appropriate actions with respect to confidentiality of such reports, data and other information.

6.    <u>Authorization to Use Cash Collateral and the Prepetition Collateral</u>.  The Debtor is authorized to use Cash Collateral and the Prepetition Collateral, to fund working capital requirements, operating expenses, and capital expenditures of the Debtor during the Chapter 11 Case and other line items subject to and as set forth in this Interim Order and the Budget.  For purposes of this Interim Order, the term "**<u>Cash Collateral</u>**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral shall specifically include all of the cash proceeds of Prepetition Collateral in which the Prepetition Lender has an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise; <u>provided</u>, <u>however</u>, Cash Collateral of the Prepetition Lender shall not include (subject to the Prepetition Lender's rights being fully reserved to seek a determination from the Court otherwise):  (a) Avoidance Action Proceeds[4] (subject to the right of the Prepetition Lender to seek inclusion of same) (b) funds advanced to the Debtor by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same); or (d) the Retained Professionals Fund (except for any Residual Interest).  In no event shall the Debtor be authorized to use Cash

---

[4]  "**<u>Avoidance Actions</u>**" means all claims and causes of actions under chapter 5 of the Bankruptcy Code, including, without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.  "**<u>Avoidance Action Proceeds</u>**" means the proceeds of all Avoidance Actions.

Collateral and Prepetition Collateral for any purpose or under any terms other than those set forth in the Budget and this (or any prior) Interim Order or any further order of the Court.

7.    <u>Debtor Control</u>.    The Debtor hereby acknowledges, represents, stipulates and agrees, and the Court hereby finds and orders, that, in no event, shall the Prepetition Lender be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, operation or management of the Debtor or its businesses, so long as the actions of the Prepetition Lender do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by the Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of Title 42, United States Code, as may be amended from time to time, or any similar federal or state statute, at law), in equity or otherwise.

8.    <u>Interest</u>.    To the extent otherwise entitled to accrue interest under the Bankruptcy Code, the Prepetition Secured Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the Prepetition Secured Loan Documents, and be due and payable in accordance with this Interim Order and Budget, in each case without further notice, motion or application to, order of, or hearing before, this Court; <u>provided</u>, <u>however</u>, the right of the Committee and any other party-in-interest to object to the payment of any postpetition interest is expressly reserved.    In the event any payment of interest would be required to be repaid to the Debtor as a result of application of section 506(b) of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and

instead shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

9.    <u>Prepetition Lender's Fees and Expenses</u>.  The Debtor shall pay the reasonable fees and expenses of the attorneys and advisors for the Prepetition Lender as provided under the Budget, whether or not incurred prepetition or postpetition.  Invoices supporting such fees and expenses shall be submitted to counsel for the Debtor, with copies to the U.S. Trustee and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).  No attorney or advisor to the Prepetition Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. The U.S. Trustee, the Debtor, and the Committee shall have ten (10) business days in which to raise an objection to the fees and expenses of such attorneys and advisors.  In the event any such payment would be required to be repaid to the Debtor as a result of application of Bankruptcy Code section 506(b) or otherwise, any such amounts shall not be repaid and instead shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

10.    <u>Authorization to Act</u>.  The Debtor is expressly authorized and empowered to perform, and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the Debtor to perform under, make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages, and financing statements), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtor's performance under and compliance with the terms of this Interim Order,

-12-

including, <u>inter</u> <u>alia</u>: to (i) perform all of its obligations under the Prepetition Secured Loan Documents and such other agreements as may be required by the Prepetition Secured Loan Documents or as provided for in this Interim Order; (ii) pay the fees and expenses set forth in the Prepetition Secured Loan Documents or this Interim Order, including the reasonable fees and expenses of attorneys and other professionals as provided for in the Prepetition Secured Loan Documents and this Interim Order; and (iii) to perform all other acts that may be required in connection with the Prepetition Secured Loan Documents and this Interim Order.  In addition, the automatic stay, to the extent applicable, is modified to permit the Indenture Trustee and the Authority to take any action authorized in the Bond Resolutions with respect to the Series 2007 Bonds, including, without limitation, the use of funds held by the Indenture Trustee for payment of the Series 2007 Bonds.

11.    <u>Continuation of Prepetition Liens</u>.  Until the indefeasible payment in full, in cash, by the Debtor of all the Prepetition Secured Obligations and termination of the Prepetition Secured Obligations by the Prepetition Lender under the Prepetition Secured Loan Documents, and until such time as the Prepetition Secured Obligations shall have been allowed in full without the possibility of any further challenge, all liens and security interests of the Prepetition Lender (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable and with the same continuing priority as described herein and in the Prepetition Secured Loan Documents.  Notwithstanding any payment of all or any portion of the Prepetition Secured Obligations, the Prepetition Liens shall continue in full force and effect and shall be deemed to secure the full and timely indefeasible payment in cash of the Prepetition Secured Obligations (separate from and in addition to the liens granted pursuant to this Interim Order).

12.    <u>Prepetition Lender's Superpriority Claims</u>.  The Prepetition Lender, subject only to the Carve-Out, in accordance with sections 503 and 507 of the Bankruptcy Code, and to the fullest extent necessary to protect the Prepetition Lender with respect to any diminution of the value of the interest of the Prepetition Lender in the Collateral and/or any other claim secured by the Adequate Protection Liens (as defined below), shall be entitled to an allowed superpriority administrative expense claim (the "**Superpriority Claim**") with priority over any and all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a) or 726 or any other provisions of the Bankruptcy Code and of any kind or nature whatsoever, which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor except for (a) Avoidance Actions, Avoidance Action Proceeds (subject to the Prepetition Lender's rights being fully reserved to seek payment from and recourse to same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), or (d) the Retained Professionals Fund (except for any Residual Interest).  Other than payments described below in Paragraph 13 below, no cost or expense of administration under sections 105 or 503(b) of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of the Chapter 11 Case under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claim granted hereunder.

13.    <u>Carve-Out</u>.

(a)    <u>Generally</u>.  Upon the occurrence of the Carve-Out Trigger Date (as defined below), the Superpriority Claim, the Adequate Protection Liens (as defined below) and

the Prepetition Liens of the Prepetition Lender shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**") from either Cash Collateral or proceeds resulting from the liquidation of any Prepetition Collateral (and, for the avoidance of doubt, not from either cash collateral or proceeds resulting from the liquidation of any collateral of any holder of a Prior Permitted Senior Lien) (provided, however, $250,000 of any remaining Cash Collateral shall not be used for the Carve-Out and shall remain for preservation and maintenance of the Prepetition Collateral):

(ii)     (A) the reasonable fee and expense claims of the respective retained professionals of the Debtor, the Committee and any appointed ombudsman (the "**Ombudsman**"), that have been approved by this Court during the Chapter 11 Case pursuant to sections 327, 328, and 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtor, the Committee and the Ombudsman are collectively referred to as the "**Retained Professionals**"), (B) the reasonable expense claims of members of the Committee, and (C) the reasonable fee and expense claims of the Ombudsman, in each case, for unpaid fees and expenses, as applicable, which were incurred on and after the Petition Date and, in the case of any Retained Professional, which remain outstanding after application of (i) any retainer held by such Retained Professional, (ii) any payments from the Retained Professionals Fund, and (iii) any payments to Retained Professionals from any other assets of the Debtor's Estate including, without limitation, Avoidance Action Proceeds, funds advanced by the I M Foundation, Inc., and any restricted contributions, grants, gifts and bequests held or received by IMC, in an aggregate amount not exceeding $1,500,000 for all Retained Professionals, expenses of members of the Committee and the Ombudsman; provided that, in each case, such fees and expenses, as applicable of the Retained Professionals, members of the Committee and

-15-

Ombudsman are in accordance with, and not in excess of the amounts set forth in, the Budget and in each case, such fees and expenses are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 18 of this Interim Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and provided further, that (x) nothing herein shall prevent the Bankruptcy Court from determining the allocation of the Carve-Out amongst the fees and expenses of the various Retained Professionals, members of the Committee and the Ombudsman, so long as such allocation does not increase the Carve-Out, and (y) the Carve-Out shall not include any bonus, transaction, success or completion fees or any other fees of similar import for Retained Professionals without the prior written approval of the Prepetition Lender in its sole discretion;

(iii)    the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code and section 3717 of Title 31 of the United States Code.  For the avoidance of doubt, notwithstanding subparagraph (c) of this Paragraph there is no limitation on the obligations of the Debtor and its Estate with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code; and

(iv)    if one year after the liquidation of all or a portion of the Prepetition Collateral there are still insufficient funds to fund the entire Carve-Out, the Prepetition Lender shall provide sufficient funds so as to fund the entire Carve-Out.

(b)    Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Prepetition Lender provides written notice to the Debtor, the

U.S. Trustee and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default or upon the Termination Date.

(c)    <u>Reduction of Amounts</u>.    Although the Carve-Out shall not be paid until payments to Retained Professionals are made in accordance with subsection (a) of this Paragraph, the fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date shall only be reduced, dollar-for-dollar, by the aggregate amount of payments made from collateral that is subject to the liens and claims of the Prepetition Lender to applicable Retained Professionals, members of the Committee and the Ombudsman on and after the Carve-Out Trigger Date, but, for the avoidance of doubt, the fixed dollar amount of the Carve-Out shall not be reduced by any payments from:  (a) Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same); (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the Prepetition Lender's right to seek inclusion of all of such excluded amounts); (d) the Retained Professionals Fund (except for any Residual Interest); or (e) any payments from any retainers held by any Retained Professionals.

(d)    <u>Reservation of Rights</u>.    Allowed fees and expenses of Retained Professionals, members of the Committee, and the Ombudsman incurred in excess of the amounts provided therefor under the Budget, including after the occurrence of the Carve-Out Trigger Date, shall, subject to approval of the Court, constitute allowed administrative expenses of the Debtor's Estate pursuant to, *inter alia*, sections 328, 330(a), 331, and 503(b) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, the Carve-Out shall be limited to the amount set forth in Paragraph 13(a), and the Prepetition Lender reserves its right to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the

-17-

Budget.  The payment of any fees or expenses of the Retained Professionals, expenses of members of the Committee and the Ombudsman pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce the Debtor's obligations owed to the Prepetition Lender or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the Prepetition Collateral (or their respective claims against the Debtor).  The Prepetition Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Retained Professionals, members of the Committee, the Ombudsman, or any fees of the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Case or any successor case, and nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Lender in any way to pay such compensation to or to reimburse such expenses.

14.    <u>Waiver of Right to Surcharge</u>.  In light of the consent of the Prepetition Lender to the current payment of administrative expenses of the Debtor's Estate in accordance with the Budget and (i) the agreement of the Prepetition Lender to subordinate its Superpriority Claim to the Carve-Out, (ii) the agreement of the Prepetition Lender to subordinate its Liens to the Carve-Out and Permitted Prior Senior Liens, and (iii) the agreement of the Prepetition Lender to permit the Debtor to use Cash Collateral, the Prepetition Lender is entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Accordingly, subject to the entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by the Debtor or any other person or entity shall be imposed or charged against any or all of the Prepetition Collateral, the Prepetition Lender or its claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtor, on behalf

-18-

of its Estate, waives any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the Budget, this Interim Order and the Prepetition Secured Loan Documents, the Prepetition Lender has relied on the foregoing provisions of this Paragraph 14.  Notwithstanding any approval of or consent to the Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the Prepetition Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

15.    <u>Automatic Perfection</u>.  The Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Lender shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law upon entry of this Interim Order by the Court as of the Petition Date without any further action by any party.  In respect of the Adequate Protection Liens, the Prepetition Lender shall not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**<u>Perfection Documents</u>**"), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are

-19-

automatically perfected by the entry of this Interim Order. If the Prepetition Lender, independently, in its sole discretion, chooses to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of recording or filing any Perfection Documents, the Prepetition Lender may, in its sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the Prepetition Lender shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

16.    <u>Stipulations and Waivers</u>.    After consultation with its attorneys and financial advisors, subject to and without prejudice to the rights of the Committee and any other party-in-interest as set forth in Paragraph 17 below, the Debtor admits, stipulates and agrees to the following, and makes the releases and waivers set forth below, on and as of the Petition Date:

(a)    <u>Prepetition Secured Loan Documents</u>.    Prior to the Petition Date, the Debtor entered into the Prepetition Credit Agreement and other Prepetition Secured Loan Documents with the Prepetition Lender, as set forth more fully above. Pursuant to the Prepetition Secured Loan Documents, the Prepetition Lender was granted liens on, and security interests in (the "**Prepetition Liens**"), certain property and assets of IMC under the Prepetition Secured Loan Documents (all as more fully set forth in the Prepetition Secured Loan Documents, the "**Prepetition Collateral**"); and

-20-

(b)    <u>Prepetition Loans</u>.

(i)    As of the Petition Date, the Debtor was indebted and liable to the Prepetition Lender under the Prepetition Secured Loan Documents, without defense, counterclaim or offset of any kind, in the approximate aggregate principal amount of not less than $117,784,158.32 in respect of the Prepetition Loan Agreement, not less than $2,000,000.00 in respect of the Pool Loan Agreement (for a total of not less than $119,784,158.32 in respect of the Prepetition Secured Obligations) and not less than $12,181,775.25 in respect of the unsecured Fund B Loan Agreement (for a total of not less than $131,508,051.55 in respect of the Prepetition Loans), plus accrued but unpaid interest thereon and other fees, expenses and other obligations incurred in connection therewith as provided in the Prepetition Secured Loan Documents and the Fund B Loan Agreement;

(ii)    To the extent set forth in the Prepetition Secured Loan Documents, the Prepetition Liens are (x) valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral, (y) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) subject only to (A) after giving effect to this Interim Order, the Carve-Out, and (B) Permitted Prior Senior Liens;

(iii)    The Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    The Debtor does not have, and hereby forever releases and waives, any claims, objections, challenges, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Lender, or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time (and for the avoidance of doubt, as set forth above, all such releases are expressly subject to Challenge under Paragraph 17);

(v)    All of the Debtor's cash existing as of the Petition Date, including without limitation, all cash and other amounts on deposit or maintained by the Debtor in any account or accounts with the Prepetition Lender, but excluding (a) funds advanced by the I M Foundation, Inc. and (b) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the Prepetition Lender's right to seek inclusion of (a) and (b)), constitutes Cash Collateral of the Prepetition Lender; and

(vi)    The Debtor is in default with respect to its Prepetition Secured Obligations and one or more Events of Default has occurred under the Prepetition Secured Loan Documents.

17.    <u>Effect of Stipulations on Third Parties</u>.

(a)    <u>Generally</u>.    The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph of this Interim Order (collectively, the "**<u>Prepetition Lien and Claim Matters</u>**") are and shall be binding on the Debtor, any subsequent trustee, responsible person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, <u>unless</u>, and solely to the extent that, the Committee or another party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and

Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Paragraph 17 and Paragraph 18 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by (w) no later than September 30, 2013, (x) as such date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court, (y) as such date may be extended by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period, or (z) upon conversion of a chapter 11 case to chapter 7 in which case to the extent that any relevant Challenge period has not expired such period shall be automatically extended for 75 days from the date a chapter 7 trustee is appointed, as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court or by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period (collectively, the "**Challenge Deadline**").  The Challenge Deadline shall not expire if this Court rules in favor of the plaintiff or movant in any timely and properly commenced Challenge proceeding and any such ruling is not subject to any further review or appeal.

(b)      Binding Effect.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to of the Prepetition Lender file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding,

conclusive and final on the Committee and any other person, entity or party-in-interest in the Chapter 11 Case, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Estate.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Lender shall be entitled to include the related costs and expenses in its Prepetition Secured Obligations, including but not limited to reasonable attorneys' fees, incurred in defending itself in any such proceeding pursuant to, and to the extent permitted by, the Prepetition Secured Loan Documents and section 506(b) of the Bankruptcy Code.

        (c)    <u>Standing</u>.  The Committee is hereby granted standing to assert any Challenge on behalf of the Debtor or its Estate with respect to any Prepetition Lien and Claim Matters.  Nothing in this Interim Order confers or vests standing on any other party-in-interest to assert any claim on behalf of the Debtor or its Estate, or relieves any other party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of the Debtor or its Estate.

        18.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with:  (a) objecting,

contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Secured Loan Documents or any security interests, liens or claims granted under this Interim Order or the Prepetition Secured Loan Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against the Prepetition Lender or any of its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the Prepetition Collateral; or (d) seeking to amend or modify any of the rights granted to the Prepetition Lender under this Interim Order or the Prepetition Secured Loan Documents including seeking to use Cash Collateral on a contested basis; provided, however, that no more than $60,000 in the aggregate of the proceeds of the Cash Collateral and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

19.    Avoidance Action Proceeds.  Notwithstanding anything in this Interim Order or any other Prepetition Loan Document to the contrary, Avoidance Action Proceeds shall not be Cash Collateral and shall not be subject to the Prepetition Liens, Superpriority Claim and Adequate Protection Liens of the Prepetition Lender; provided, however, the Prepetition Lender reserves its right to seek such relief at the Final Hearing or thereafter.  Any liens and claims of the Prepetition Lender on Avoidance Action Proceeds shall terminate at such time as the Prepetition Secured Obligations have been indefeasibly paid in full, in cash.

20.    Adequate Protection.  This Court finds that the Adequate Protection provided in this Interim Order, including, without limitation, in this Paragraph, is reasonable and sufficient to protect the interests of the Prepetition Lender.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Lender pursuant hereto is without prejudice to the right of the Prepetition Lender, or any other party-in-interest, to seek adequate protection or to

seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party-in-interest to contest any such modification.

21.    <u>Adequate Protection Liens</u>.  As adequate protection of the Prepetition Liens of the Prepetition Lender under the applicable Prepetition Secured Loan Documents, in accordance with sections 361 and 363(e) of the Bankruptcy Code, the Prepetition Lender shall be granted valid, binding, enforceable and perfected security interests and replacement liens (the "**<u>Adequate Protection Liens</u>**") upon all property of the Debtor whether arising prepetition or postpetition of any nature whatsoever, wherever located, except for (a) Avoidance Actions, Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), or (d) the Retained Professionals Fund (except for any Residual Interest) (the "**<u>Adequate Protection Obligations</u>**") in each case to secure the Prepetition Secured Obligations of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral; and (ii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of any obligations or expenses of the Debtor other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i) and (ii) above.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the Prepetition Liens, (C) the Superpriority Claim, and (D) the Permitted Prior Senior Liens.  None of the Adequate Protection Liens or Adequate Protection Obligations shall (x) be subject to any lien or security

interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code, or (y) be subject to any intercompany claim, whether secured or unsecured, of the Debtor or any domestic or foreign subsidiary or affiliate of the Debtor.

22.    [Reserved].

23.    <u>Adequate Protection Payments</u>.  Subject to Section 506(b) of the Bankruptcy Code, the Debtor shall, in accordance with the Budget with respect to the Prepetition Lender promptly pay all reasonable fees and expenses under the Prepetition Secured Loan Documents incurred by the Prepetition Lender, whether incurred prior to or following the Petition Date in accordance with Paragraph 9 of this Interim Order.  The payments under this Paragraph shall be referred to collectively as the "**Adequate Protection Payments**."  In the event any Adequate Protection Payment would be required to be repaid to the Debtor as a result of application of section 506(b) of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and instead shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

24.    <u>Restructuring/Wind-Down Advisors; Closure Plan</u>.  It is a condition of the Authority's consent to use of Cash Collateral pursuant to this Interim Order that (i) the Debtor shall continue to employ John D. Leech as its chief restructuring officer (the "**CRO**") and Gordian-Dynamis Solutions LLC as its restructuring consultant ("**Gordian-Dynamis**"), or in each case such other chief restructuring officer, other restructuring consultant(s) or other wind-down officer that is/are acceptable to the Authority on terms acceptable to the Authority (collectively, together with the CRO and Gordian-Dynamis, the "**Restructuring/Wind-Down Advisors**"), (ii) the Restructuring/Wind-Down Advisors shall continue to provide assistance to the Debtor on that certain closure plan submitted to the New York State Department of Health ("**DOH**") by the Debtor in accordance with existing regulations set forth in the New York Codes,

-27-

Rules and Regulations, including 10 N.Y.C.R.R. §401.3 thereof (the "**Closure Plan**"), including identifying programs of great community need, assisting in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority, and identifying strategies and methods for repurposing of the Debtor's facilities, (iii) the Debtor and the Restructuring/Wind-Down Advisors shall continue to work with DOH and its sister agencies the Office of Mental Health (OMH) and the Office of Alcoholism and Substance Abuse Services (OASAS), as well as the Authority, with respect to obtaining approval of the Closure Plan, and (iv) the Debtor shall continue to cooperate with DOH and the Authority as same may request in their sole discretion with respect to the Closure Plan, including, without limitation, (a) by providing reasonable access to (x) the Debtor's facilities as well as all reasonably available records pertaining thereto, and (y) the Debtor's financial books and records, and (z) the Restructuring/Wind-Down Advisors to report to DOH and the Authority on the Debtor's operations, the Closure Plan and any other facet of their engagement with the Debtor, at such times and in such form as DOH and the Authority shall reasonably request, and (b) by working with DOH and the Authority to identify programs of great community need and assist in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority, and by working with DOH and the Authority to identify strategies and methods for repurposing of the Debtor's facilities.

25.    Notice Concerning Use of I M Foundation, Inc. Funds.  The Debtor shall provide not less than five (5) business days' notice to counsel for the Committee and the Prepetition Lender of any intent to use any funds provided or advanced to the Debtor by the I M Foundation, Inc. (the "**Noticed Foundation Funds**").  If the Committee and/or the Prepetition Lender have an objection to the Debtor's proposed use of Noticed Foundation Funds, the Committee and/or

the Prepetition Lender may file, within five (5) business days of receiving notice from the Debtor

of the Debtor's intent to use Noticed Foundation Funds, an objection to the proposed use of the

Noticed Foundation Funds (an "**Objection to Noticed Foundation Funds**").  If an Objection to

Noticed Foundation Funds is timely filed, the Court shall schedule an expedited hearing on the

matter and the Debtor shall not use the subject Noticed Foundation Funds until the Court

authorizes such use or ten (10) business days have passed since the Debtor gave its initial notice

and the Court has not yet ruled that the Debtor cannot use the subject Noticed Foundation Funds.

26.    <u>Indemnification</u>.    Nothing herein shall affect any indemnification rights or

obligations provided for the benefit of the Prepetition Lender under the Prepetition Secured Loan

Documents.

27.    <u>Remedies</u>.  Upon the occurrence of an Event of Default or upon the Termination

Date, after providing not less than seven (7) days prior notice pursuant to the Notice Procedures

Order, the Prepetition Lender shall be entitled to exercise all of its rights and remedies under this

Interim Order, including, without limitation, foreclose upon the Prepetition Collateral, including

Cash Collateral, or otherwise enforce the Prepetition Secured Obligations, Prepetition Liens and

Superpriority Claim on any or all of the Prepetition Collateral, including Cash Collateral, and/or

to exercise any other default-related remedies under the Prepetition Secured Loan Documents,

this Interim Order or applicable law in seeking to recover payment of the Prepetition Secured

Obligations.   For the avoidance of doubt, with respect to Permitted Prior Senior Liens, any

exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law

in respect of Permitted Prior Senior Liens.  During the not less than seven (7) day notice period,

the Debtor, the Committee or any other party-in-interest may seek an order of the Court staying

the Prepetition Lender's exercise of such remedies against the Prepetition Collateral, including

with respect to Cash Collateral, and, if no such stay is obtained, then the Prepetition Lender may

exercise any and all such rights and remedies without further order of the Court or notice to any party, and during the seven (7) day notice period, the Debtor shall be entitled to continue to use Cash Collateral in accordance with the Budget.  In addition to the foregoing remedies set forth in this Paragraph, if the Debtor fails to comply with Paragraph 24 of this Interim Order, the Authority may file a motion for an order of this Court directing the appointment of a Restructuring/Wind-Down Officer to implement the Closure Plan and/or directing the U.S. Trustee to appoint a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code, and the Court shall schedule an expedited hearing on the matter, and the Debtor and any other party in interest reserves all rights to oppose such a motion.

28.    Access to Prepetition Collateral.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Prepetition Lender contained in this Interim Order or the Prepetition Secured Loan Documents, or otherwise available at law or in equity, and subject to the terms of the Prepetition Secured Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the Prepetition Secured Loan Documents, and repayment under the Prepetition Loan Document is immediately due and payable in full, the Prepetition Lender may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the Prepetition Lender, enter upon any leased premises of the Debtor or any other party for the purpose of exercising any remedy with respect to Prepetition Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the Prepetition Lender shall only be obligated to pay rent of the Debtor that first accrues after the Prepetition Lender's written notice referenced above and that is payable during the period of such occupancy by the Prepetition Lender, calculated daily

-30-

on a per diem basis.  Nothing herein shall require the Prepetition Lender to assume any lease as a condition to the rights afforded to the Prepetition Lender in this Paragraph.  Furthermore, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any Prepetition Collateral of the Debtor located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the Adequate Protection Liens, and the Superpriority Claim.

29.    <u>Insurance Policies</u>.  Effective as of entry of this Interim Order, the Prepetition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtor that in any way relates to Prepetition Collateral, as applicable.

30.    <u>Successors and Assigns</u>.  This Interim Order shall be binding upon all parties in interest in the Chapter 11 Case, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

31.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent interim order or the Final Order), and the rights, remedies, powers, privileges, liens and priorities of the Prepetition Lender provided for in this Interim Order shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a Chapter 7 case, (iii) dismissing the Chapter 11 Case, or (iv) any superseding case(s) under the Bankruptcy Code. The terms and provisions of this Interim Order as well as the Prepetition Secured Obligations, Liens, Superpriority Claim, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their

priority as provided by this Interim Order to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid in full, in cash.

32.    <u>Good Faith</u>.  The use of Cash Collateral, and the other provisions of this Interim Order have been negotiated in good faith and at arm's-length among the Debtor and the Prepetition Lender, and the permission granted to the Debtor by the Prepetition Lender pursuant to this Interim Order to use Cash Collateral has been and is deemed to be extended in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

33.    <u>Subsequent Reversal or Modification</u>.  Subject to Paragraph 17, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order and the Prepetition Secured Loan Documents by the Debtor prior to the date of receipt of written notice to the Prepetition Lender of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Interim Order and the Prepetition Secured Loan Documents, including, without limitation, the Prepetition Secured Obligations, Prepetition Liens and Superpriority Claim, Adequate Protection Obligations, Adequate Protection Liens and Adequate Protection Payments.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the Prepetition Lender prior to written notice to the Prepetition Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order and the Prepetition Secured Loan Documents, and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant to this Interim Order and the Prepetition Secured Loan Documents.

34.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Lender may have to bring or be heard on any

matter brought before the Court.  Any consent, modification, declaration of default, or exercise of remedies under or in connection with this Interim Order shall require the approval in writing of the Prepetition Lender, and any non-exercise of remedies under or in connection with this Interim Order shall not be deemed a waiver or relinquishment of any of the rights of the Prepetition Lender.  Nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the Prepetition Lender, including, without limitation, the right to (a) request conversion of the Chapter 11 Case to chapter 7 (to the extent applicable for charitable entities), (b) seek to terminate the exclusive rights of the Debtor to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay.  All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

      35.    <u>Events of Default</u>.  It shall be a default hereunder (and constitute an "**Event of Default**" under this Interim Order) if

    (a)    the Debtor uses the Prepetition Collateral, including Cash Collateral, other than as set forth herein and in the Budget,

    (b)    an order is entered dismissing or converting the Chapter 11 Case under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or examiner with expanded powers,

    (c)    without the written consent of the Prepetition Lender, the Debtor applies to the Court for an order:

    (i)    authorizing the use of the Prepetition Collateral, including Cash Collateral or that seeks approval of a priming, senior or *pari passu* security interest in or lien upon Cash Collateral or the Collateral;

(ii)     seeking to challenge the Prepetition Lender's liens upon the Cash Collateral or the Collateral or otherwise asserting rights, claims or causes of action against the Prepetition Lender with respect to the Prepetition Secured Obligations;

(iii)    seeking to sell or transfer all or substantially all of the equity or assets of the Debtor while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby;

(iv)    seeking to reorganize the Debtor with another entity as its controlling, majority or sole member while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby; or

(v)     seeking to transfer the Debtor's assets to a successor while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby;

(d)    any other motion is filed by the Debtor for any relief directly or indirectly affecting the Prepetition Collateral including Cash Collateral in a material manner unless all Prepetition Secured Obligations have been indefeasibly paid in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby,

(e)    the Debtor fails to comply with any of the material terms of this Interim Order, including the Budget, or any stipulation, representation or covenant by the Debtor stated herein is materially false or misleading,

(f)    any of relief listed above in this Paragraph (a-e) is granted upon a motion of a party other than the Debtor; provided, however, for the avoidance of doubt, the mere filing (as opposed to granting) of a motion by a party other than the Debtor, including the Committee, for any of relief listed in this Paragraph shall not be an Event of Default, and/or

(g)    the Debtor fails to meet any of the following milestones (except to the extent such deadlines or milestones are extended in writing by the Authority in its sole discretion):

(i)     on or before July 29, 2013, file a closure motion to implement the Closure Plan seeking an expedited hearing to approve implementation of the Closure Plan no later than August 12, 2013, or such other date and time as fixed by the Court;

      (ii)   as soon as practicable, but no later than July 31, 2013, provide WARN notice, including, without limitation, to all affected employees; and

      (iii)  on or before October 18, 2013, complete implementation of the Closure Plan so that the hospital ceases patient and healthcare operations by such date except as permitted by the Authority in consultation with DOH.

      36.   <u>Effect of Dismissal or Conversion</u>.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the Prepetition Lender under this Interim Order and shall preserve the Carve-Out.  Unless the Authority agrees in writing otherwise, no order providing for the sale of substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale and such proceeds (but solely to the extent such proceeds are Cash Collateral or Prepetition Collateral and not the collateral of any other holder of a Permitted Prior Senior Lien) are applied to permanently and indefeasibly repay the Prepetition Secured Obligations, as applicable, in full, in cash.  If an order dismissing the Chapter 11 Case under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the Adequate Protection Liens and Superpriority Claim granted to the Prepetition Lender hereunder, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations and indebtedness owing to the Prepetition Lender shall have been indefeasibly paid in full, in cash and the Prepetition Lender's obligations and commitments under the Prepetition Secured Loan Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding

such dismissal, for purposes of enforcing the Prepetition Liens, Superpriority Claim, Adequate Protection Liens, and Adequate Protection Payments.

37.    <u>Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and any agreement, the provisions of this Interim Order shall control and govern to the extent of such conflict.

38.    <u>Right to Credit Bid</u>.  Pursuant to section 363(k) of the Bankruptcy Code, the Prepetition Lender shall have the exclusive right to use the Prepetition Secured Obligations, the Superpriority Claim, the Adequate Protection Obligations and the Adequate Protection Liens of the Prepetition Lender to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.  For the avoidance of doubt, the rights of the Prepetition Lender to credit bid with respect to its collateral does not permit the Prepetition Lender to credit bid collateral of any holder of a Prior Permitted Senior Lien.

39.    <u>No Marshaling</u>.  None of the Prepetition Lender or Prepetition Collateral shall be subject to the doctrine of marshaling.

40.    <u>United States Departments and Agencies</u>.  As to the United States, its agencies, departments or agents, nothing in this Interim Order shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

41.    <u>28 U.S.C. §959(b)</u>.  Nothing in this Interim Order shall permit the Debtor to violate 28 U.S.C. §959(b).

42.    <u>Headings</u>.  The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

43.    <u>Immediate Docketing and Effect of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Chapter 11 Case.  This Interim Order shall take effect immediately upon execution hereof,

and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Interim Order.  All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.

44.    <u>Final Hearing</u>.  The motion is set for a final hearing (the "**Final Hearing**") to be held on September 9, at 2:00 p.m. (prevailing Eastern Time), with an objection deadline of 12:00 p.m. (prevailing Eastern Time) on September 3, 2013 (the "**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtor, the U.S. Trustee, counsel for the Committee, and the Prepetition Lender so as to be actually received on or before the Objection Deadline.  The Debtor shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the Notice Parties and Committee counsel.

# EXHIBIT A

**Budget**

**INTERFAITH MEDICAL CENTER**
**WEEKLY CASH FLOW**

*($ in thousands)*

| Week Ending | 8/2/13 | 8/9/13 | 8/16/13 | 8/23/13 | 8/30/13 | 9/6/13 | 9/13/13 | Total |
|---|---|---|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | | | | |
| Patient receipts (excl. PIP) | $2,470 | $1,970 | $2,190 | $2,190 | $2,190 | $2,009 | $880 | $13,898 |
| PIP | 1,270 | 0 | 0 | 1,270 | 0 | 1,270 | 0 | 3,810 |
| Less: PIP recoupments | 0 | 0 | 0 | 0 | 0 | -330 | 0 | -330 |
| Grants | 63 | 63 | 0 | 0 | 0 | 0 | 0 | 126 |
| Other | 24 | 24 | 0 | 0 | 0 | 0 | 0 | 48 |
| Medical student receipts | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Foundation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Release of restricted funds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Cash Receipts** | 3,827 | 2,057 | 2,190 | 3,460 | 2,190 | 2,949 | 880 | 17,552 |
| **Cash Disbursements:** | | | | | | | | |
| Salaries and taxes | 2,475 | 1,883 | 1,716 | 1,832 | 1,103 | 1,240 | 528 | 10,777 |
| Union benefits | 1,456 | 0 | 0 | 0 | 0 | 1,500 | 0 | 2,956 |
| Other benefits | 0 | 0 | 0 | 313 | 0 | 0 | 0 | 313 |
| Document retention | 0 | 0 | 0 | 0 | 0 | 1,000 | 0 | 1,000 |
| Temporary labor | 70 | 70 | 18 | 18 | 18 | -37 | 0 | 156 |
| Medical supplies | 153 | 153 | 0 | 0 | 0 | 50 | 0 | 356 |
| Other | 240 | 62 | 80 | 80 | 80 | 162 | 18 | 721 |
| Purchased services | 264 | 264 | 356 | 356 | 356 | 127 | 127 | 1,849 |
| Utilities | 80 | 0 | 305 | 0 | 0 | 0 | 0 | 385 |
| Malpractice claims reserves | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 4 | 0 | 4 | 0 | 0 | 0 | 0 | 08 |
| Physicians | 19 | 19 | 0 | 0 | 0 | 0 | 0 | 38 |
| Leases | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital expenditures | 25 | 25 | 0 | 0 | 0 | 0 | 0 | 50 |
| **Total Operating Disbursements** | 4,786 | 2,476 | 2,478 | 2,598 | 1,557 | 4,043 | 673 | 18,610 |
| **Cash Flow from Operations** | **-959** | **-419** | **-288** | **861** | **633** | **-1,094** | **207** | **-1,058** |
| **Restructuring Items** | | | | | | | | |
| Restructuring fees * | 220 | 220 | 206 | 206 | 206 | 206 | 206 | 1,469 |
| Chapter 11 Exit Costs (See Sched.) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Restructuring Items** | 220 | 220 | 206 | 206 | 206 | 206 | 206 | 1,469 |
| **Net Cash Flow** | -1,179 | -639 | -494 | 655 | 427 | -1,299 | 2 | -2,526 |
| Cash, beginning | 7,735 | 6,557 | 5,918 | 5,424 | 6,080 | 6,507 | 5,208 | 7,735 |
| **Cash, ending** | $6,557 | $5,918 | $5,424 | $6,080 | $6,507 | $5,208 | $5,209 | $5,209 |

**\* Represents monies paid into a professional fee escrow account which will only be disbursed to professionals pursuant to the Interim Compensation Order or other applicable Court Order.**

## EXHIBIT 2

**Blackline**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------- x
In re                                         :      Chapter 11
                                              :
Interfaith Medical Center, Inc.,[1]           :      Case No. 12-48226 (CEC)
                                              :
                                 Debtor.      :      Re:  Docket Nos. 7, 38, 149, 231, 344, 394,
                                              :           475 and 551
------------------------------------------------------- x

### EIGHTH INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO UTILIZE CASH COLLATERAL OF PREPETITION SECURED PARTY PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363, (II) GRANTING A SUPERPRIORITY CLAIM, (III) GRANTING ADEQUATE PROTECTION, (IV) PROVIDING RELATED RELIEF AND (V) SCHEDULING A FINAL HEARING

THIS MATTER came before the Court on July ~~15~~,29, 2013, on the motion (the "**Motion**") of Interfaith Medical Center, a New York not-for-profit corporation as chapter 11 debtor and debtor in possession ("**IMC**" or the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**"), for the entry of this Eighth Interim Order (the "**Interim Order**") and a final order (the "**Final Order**"), pursuant to sections 105, 361, 362 and 363(c)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-5 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Local Rules**"), seeking this Court's authorization:

(i)      further extending, pursuant to ~~a~~an eighth Interim Order, the Debtor's limited use of Cash Collateral (as defined below), on an interim basis solely for the purposes and up to the amounts set forth in the Budget (as defined below) subject to the terms and conditions set forth in this Interim Order to, *inter alia*:

(1)      fund the operating expenses of the Debtor during the Chapter 11 Case;

---

[1] The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

9888389.4

    (2)      fund postpetition allowed fees and expenses incurred by (x) the Debtor's Retained Professionals (as defined below), (y) any statutory committee, including the official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Committee**") and its Retained Professionals, and (z) any appointed Ombudsman (as defined below) and its Retained Professionals;

    (3)      provide Adequate Protection Liens (as defined below, including pursuant to sections 361, 362(d), 363(e), 503(b) and 507(b) of the Bankruptcy Code) to the Dormitory Authority of the State of New York (the "**Authority**" or "**Prepetition Lender**") in respect of the Prepetition Liens (as defined below), as more fully set forth in this Interim Order;

    (4)      to pay Adequate Protection Payments (as defined below) as and to the extent set forth in the Budget; and

    (5)      fund the other items covered by the terms of the Budget and this Interim Order;

(ii)    for the Debtor to grant security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code) to the Prepetition Lender, for its benefit, to secure all obligations of the Debtor hereunder and with respect to the use of the Prepetition Collateral (as defined below), including the Cash Collateral;

(iii)    to modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Prepetition Lender to implement the terms of this Interim Order;

(iv)    to schedule a final hearing (the "**Final Hearing**") on the Motion no later than September 13, 2013 to consider entry of a Final Order authorizing the continued use of Cash Collateral on a final basis and, potentially, entry by the Debtor into debtor-in-possession financing, and approval of notice procedures with respect thereto; and

(v)    granting related relief;

and after due deliberation and consideration, and sufficient cause appearing therefor,

9888389.4

THE COURT HEREBY FINDS:[2]

A.    Notice and Hearing.  Due and appropriate notice of the Motion, the relief requested therein and the interim hearing (the "**Interim Hearing**") has been given and served by the Debtor on the parties  (collectively, the "**Notice Parties**") pursuant to the *Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates*, dated as of December 4, 2012 [Docket No. 35] (the "**Notice Procedures Order**") and all applicable rules and guidelines, including section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 2002-2, and such notice is appropriate under the circumstances and sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules; the Interim Hearing and proceedings have been held before the Court, evidence has been presented in support of the Motion, the Court has noted the appearances of parties in interest at the Interim Hearing in the record of this Court, any objections to the Motion have been resolved or overruled by the Court and the relief requested in the Motion is in the best interests of the Debtor, its Estate, its community and its creditors.

B.    Chapter 11 Filed.  The Debtor filed its petition under chapter 11 of the Bankruptcy Code on December 2, 2012 (the "**Petition Date**"), and is presently operating as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    Prepetition Loans.  Subject to Challenge (as defined below) as set forth in Paragraph 17, pursuant to the following agreements, the Prepetition Lender made loans and extended other financial accommodations to IMC prior to the Petition Date and loaned the proceeds thereof to IMC (the "**Prepetition Loans**"):

---

[2]  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

9888389.4

(1)      that certain secured Loan Agreement by and between the Prepetition Lender and IMC, dated as of January 24, 2007 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Prepetition Loan Agreement**"), relating to the Secured Hospital Revenue Refunding Bonds, Interfaith Medical Center, Series 2007 (the "**Series 2007 Bonds**");

(2)      that certain unsecured Reimbursement Agreement between the Authority and IMC, dated as of March 29, 2005, (as amended on June 14, 2011, and as further amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Fund B Loan Agreement**"); and

(3)      that certain secured Reimbursement Agreement between the Authority and IMC, dated as of November 21, 2011 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Pool Loan Agreement**" and together with the Prepetition Loan Agreement and all security, pledge, guaranty, and other lien and loan agreements and documents in connection therewith, each as may be amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Secured Loan Documents**" and such obligations thereunder the "**Prepetition Secured Obligations**").  One or more Events of Default under the Prepetition Secured Loan Documents and the Fund B Loan Agreement has occurred and is continuing, has not been waived by the Authority, and the Authority expressly reserves all of its rights and remedies under the Prepetition Secured Loan Documents and the Fund B Loan Agreement with respect thereto.

9888389.4

D.    Necessity and Best Interest.

(1)    Good cause has been shown for the entry of this Interim Order.

(2)    The Debtor has an immediate and critical need to use Cash Collateral in order to, among other things, continue to provide proper care to its patients, finance the ordinary costs of its operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs. The Debtor's access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of this Interim Order is vital (i) to satisfy the Debtor's postpetition liquidity needs, (ii) to the preservation and maintenance of the going concern value of the Debtor's Estate and (iii) to the Debtor's successful reorganization.  Without access to Cash Collateral, the Debtor will not have sufficient unencumbered cash or other available sources of working capital and financing to continue to provide proper care to its patients, to pay certain salaries and claims of its employees, utilities, and other short-term costs, and to otherwise pay the costs attendant to the Chapter 11 Case.

(3)    Authorization to use the Cash Collateral in accordance with this Interim Order is in the best interests of the Debtor, its estate, creditors, patients, community and the other parties in interest because such relief will ensure the Debtor's continued ability to care for its patients, serve its community, and preserve jobs, while also preserving and maximizing the value of the Debtor's Estate for the benefit of all creditors, the community served by IMC, and other parties in interest.

(4)    The use of Cash Collateral is fair and reasonable, reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and is supported by reasonably equivalent value and fair consideration.

9888389.4

(5)     The provisions of this Interim Order have been negotiated in good faith and at arms'-length between the Debtor and the Prepetition Lender, and the permission granted to the Debtor by the Prepetition Lender to use Cash Collateral pursuant to this Interim Order has been in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

(6)     The Debtor (in consultation with its advisors) has determined that (i) the Budget is reasonable and will allow the Debtor to operate in the Chapter 11 Case without the accrual of unpaid allowed administrative expenses, and (ii) the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the Budget during the pendency of the Chapter 11 Case.

(7)     The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) and 4001(d).  Absent entry of this Interim Order, the Debtor's Estate will be immediately and irreparably harmed.

The Court, having determined that good cause exists for the relief requested in the Motion,

IT IS HEREBY ORDERED as follows:

1.     Jurisdiction.  This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and Administrative Order No. 264, titled "The Referral of Matters to the Bankruptcy Judges, incorporating Referral Order of August 28, 1986," by the District Court of the Eastern District of New York (Weinstein, C.J.).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     Notice.  Under the circumstances, notice of the Motion and the third Interim Hearing on the Motion and this Interim Order constitutes due and sufficient notice thereof and complies with the Notice Procedures Order and all applicable Bankruptcy Rules, including Rules

9888389.4

2002, 4001(b) and (d), 5003(e) and 9014 and the local rules of this Court, including Local Rule 4001-5, and no other notice need be given.

3.  <u>Approval of Motion</u>.  The Motion is approved on the terms and conditions set forth in this Interim Order.  This Interim Order shall become effective immediately upon its entry.

4.  <u>The Budget</u>.

(a)  The amount of the Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the budget prepared by the Debtor (as amended, supplemented, extended or otherwise modified from time to time in accordance with Paragraph 4(b) below, the "**Budget**"), a copy of which is annexed hereto as Exhibit A, which Budget shall, among other things: (i) include permitted variances from the Budget as may be agreed to by the Prepetition Lender, but in no event less than 10% of aggregate cumulative expenditures in the Budget for the period from the week ending July 19, 2013 through the week ending September 13, 2013, (ii) be supplemented the fourth business day of each week with a variance report showing the variances between the projected amounts and the actual amounts of expenses and disbursements for the preceding weekly period for each line item; and (iii) be in form and substance satisfactory to the Prepetition Lender for the time period set forth therein, but in no event beyond the date that is the earliest of the following, unless such applicable date is extended in writing by the Authority (the "**Termination Date**"):  the earlier of (i) (1) September 13, 2013, or (2) the date on which this Interim Order expires, in either case, if the Final Order has not been entered prior to the expiration of such period; (ii) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (1) the effective date of such plan of reorganization or (2) the 30th day after the date of entry of the confirmation order; (iii) the closing of a sale, or the transfer, of all or substantially all of the equity or assets of the Debtor; or (iv) the date of

9888389.4

indefeasible prepayment in full,[3] in cash, by the Debtor of all Prepetition Secured Obligations owed to the Prepetition Lender in accordance with the terms thereof.  In addition to the Budget, the Debtor shall provide a separate report with a line item for each Retained Professional and the Patient Care Ombudsman showing the amount that is expected to accrue each week (without any deduction for any holdback) through the week ending September 13, 2013 (For the avoidance of doubt this separate report shall not be considered part of the Budget for covenant testing.).

(b)     The Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which the Debtor and the Prepetition Lender mutually agree without further order of this Court or advance notice to any Person; provided, however, the Committee shall have five (5) business days to object from the date that counsel for the Committee receives notice from the Debtor of any modification to the Budget.  The Debtor shall promptly provide any modified Budget to the Office of the United States Trustee (the "**U.S. Trustee**") and counsel for the Committee, and the Debtor shall promptly file any modified Budget with the Court; provided that the Debtor may take appropriate actions with respect to confidentiality of any portion of the Budget.  If the Committee objects to any modification of the Budget, the Committee shall seek an expedited hearing before this Court to resolve the objection, and until the hearing on that objection, the Debtor shall be permitted to operate under the Budget as modified only to the extent necessary.

(c)     With respect to certain items in the Budget that are defined in the Budget as "Restructuring Items" that require approval by this Court prior to payment, the Debtor shall provide the Prepetition Lender notice at the same time and in the same fashion as the Committee.

---

[3]  A reference herein to payment "in final," "in full," or "indefeasibly," or use of words of similar import shall include the cash collateralization of, at a minimum, 102% of the amount of any Prepetition Secured Obligations that is a contingent obligation, including any contingent indemnification obligations, and the establishment of any reserves in the discretion of the Prepetition Lender, as applicable, including, without limitation, for attorneys' fees and expenses.  This section shall not be in limitation of any rights or remedies of the Prepetition Lender under the Prepetition Secured Loan Documents with respect to contingent Prepetition Secured Obligations.

9888389.4

(d)     The Debtor shall not make any capital expenditures that are in excess of $10,000 per week from the date of this Interim Order unless the Authority approves such capital expenditures in writing.

(e)     The amounts set forth in the Budget annexed hereto as Exhibit A for the line item entitled "Restructuring fees" shall be placed in a reserve or escrow account (the "**Retained Professionals Fund**") established by the Debtor for the fees and expenses of the Retained Professionals (as defined below).  Funds may only be disbursed by the Debtor from the Retained Professionals Fund pursuant to an order of this Court, including, without limitation, any order entered with respect to the Debtor's Application For Administrative Order, Pursuant To Sections 105(A) And 331 of Bankruptcy Code And Local Bankruptcy Rule 2016-1, Establishing Procedures For The Interim Compensation And Reimbursement of Expenses of Professionals dated December 10, 2012 [Docket No. 55].  No other funds other than funds from the Retained Professionals Fund shall be used to compensate Retained Professionals unless otherwise ordered by this Court.  The funds in the Retained Professionals Fund shall not constitute Cash Collateral; provided, however, the Prepetition Lender shall have a residual security interest in any funds remaining in the Retained Professionals Fund after payment of all Retained Professionals pursuant to an order of this Court (the "**Residual Interest**").  For the avoidance of doubt, nothing in this Paragraph waives any Retained Professional's right to assert an administrative expense claim for any allowed fees and expenses that are not paid from the Retained Professionals Fund.

5.     Reports.  The Debtor shall deliver to the Prepetition Lender such reports, data and other information required to be delivered pursuant to the Prepetition Secured Loan Documents and the Fund B Loan Agreement, including, without limitation, the Budget and the data on Retained Professionals and the Patient Care Ombudsman.  The Debtor shall deliver to counsel to the Committee such reports, data and other information required to be delivered pursuant to the

9888389.4

Prepetition Secured Loan Documents and the Fund B Loan Agreement at the same time and in the same form delivered to the Prepetition Lender.  Notwithstanding the foregoing, the Debtor may take appropriate actions with respect to confidentiality of such reports, data and other information.

      6.     <u>Authorization to Use Cash Collateral and the Prepetition Collateral</u>.  The Debtor is authorized to use Cash Collateral and the Prepetition Collateral, to fund working capital requirements, operating expenses, and capital expenditures of the Debtor during the Chapter 11 Case and other line items subject to and as set forth in this Interim Order and the Budget.  For purposes of this Interim Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral shall specifically include all of the cash proceeds of Prepetition Collateral in which the Prepetition Lender has an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise; provided, however, Cash Collateral of the Prepetition Lender shall not include (subject to the Prepetition Lender's rights being fully reserved to seek a determination from the Court otherwise):  (a) Avoidance Action Proceeds[1] (subject to the right of the Prepetition Lender to seek inclusion of same) (b) funds advanced to the Debtor by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same); or (d) the Retained Professionals Fund (except for any Residual Interest).  In no event shall the Debtor be authorized to use Cash Collateral and

---

[1] "**Avoidance Actions**" means of all claims and causes of actions under chapter 5 of the Bankruptcy Code, including , without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.  "**Avoidance Action Proceeds**" means the proceeds of all Avoidance Actions.

9888389.4

Prepetition Collateral for any purpose or under any terms other than those set forth in the Budget and this (or any prior) Interim Order or any further order of the Court.

7.      <u>Debtor Control</u>.  The Debtor hereby acknowledges, represents, stipulates and agrees, and the Court hereby finds and orders, that, in no event, shall the Prepetition Lender be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, operation or management of the Debtor or its businesses, so long as the actions of the Prepetition Lender do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by the Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of Title 42, United States Code, as may be amended from time to time, or any similar federal or state statute, at law), in equity or otherwise.

8.      <u>Interest</u>.  To the extent otherwise entitled to accrue interest under the Bankruptcy Code, the Prepetition Secured Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the Prepetition Secured Loan Documents, and be due and payable in accordance with this Interim Order and Budget, in each case without further notice, motion or application to, order of, or hearing before, this Court; <u>provided</u>, <u>however</u>, the right of the Committee and any other party-in-interest to object to the payment of any postpetition interest is expressly reserved.  In the event any payment of interest would be required to be repaid to the Debtor as a result of application of section 506(b) of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and instead

9888389.4

shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

9.      <u>Prepetition Lender's Fees and Expenses</u>.  The Debtor shall pay the reasonable fees and expenses of the attorneys and advisors for the Prepetition Lender as provided under the Budget, whether or not incurred prepetition or postpetition.  Invoices supporting such fees and expenses shall be submitted to counsel for the Debtor, with copies to the U.S. Trustee and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).  No attorney or advisor to the Prepetition Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  The U.S. Trustee, the Debtor, and the Committee shall have ten (10) business days in which to raise an objection to the fees and expenses of such attorneys and advisors.  In the event any such payment would be required to be repaid to the Debtor as a result of application of Bankruptcy Code section 506(b) or otherwise, any such amounts shall not be repaid and instead shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

10.      <u>Authorization to Act</u>.  The Debtor is expressly authorized and empowered to perform, and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the Debtor to perform under, make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages, and financing statements), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtor's performance under and compliance with the terms of this Interim Order, including,

-12-

9888389.4

*inter alia*: to (i) perform all of its obligations under the Prepetition Secured Loan Documents and such other agreements as may be required by the Prepetition Secured Loan Documents or as provided for in this Interim Order; (ii) pay the fees and expenses set forth in the Prepetition Secured Loan Documents or this Interim Order, including the reasonable fees and expenses of attorneys and other professionals as provided for in the Prepetition Secured Loan Documents and this Interim Order; and (iii) to perform all other acts that may be required in connection with the Prepetition Secured Loan Documents and this Interim Order.  In addition, the automatic stay, to the extent applicable, is modified to permit the Indenture Trustee and the Authority to take any action authorized in the Bond Resolutions with respect to the Series 2007 Bonds, including, without limitation, the use of funds held by the Indenture Trustee for payment of the Series 2007 Bonds.

11.    <u>Continuation of Prepetition Liens</u>.  Until the indefeasible payment in full, in cash, by the Debtor of all the Prepetition Secured Obligations and termination of the Prepetition Secured Obligations by the Prepetition Lender under the Prepetition Secured Loan Documents, and until such time as the Prepetition Secured Obligations shall have been allowed in full without the possibility of any further challenge, all liens and security interests of the Prepetition Lender (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable and with the same continuing priority as described herein and in the Prepetition Secured Loan Documents.  Notwithstanding any payment of all or any portion of the Prepetition Secured Obligations, the Prepetition Liens shall continue in full force and effect and shall be deemed to secure the full and timely indefeasible payment in cash of the Prepetition Secured Obligations (separate from and in addition to the liens granted pursuant to this Interim Order).

12.    <u>Prepetition Lender's Superpriority Claims</u>.  The Prepetition Lender, subject only to the Carve-Out, in accordance with sections 503 and 507 of the Bankruptcy Code, and to the

9888389.4

fullest extent necessary to protect the Prepetition Lender with respect to any diminution of the value of the interest of the Prepetition Lender in the Collateral and/or any other claim secured by the Adequate Protection Liens (as defined below), shall be entitled to an allowed superpriority administrative expense claim (the "**Superpriority Claim**") with priority over any and all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a) or 726 or any other provisions of the Bankruptcy Code and of any kind or nature whatsoever, which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor except for (a) Avoidance Actions, Avoidance Action Proceeds (subject to the Prepetition Lender's rights being fully reserved to seek payment from and recourse to same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), or (d) the Retained Professionals Fund (except for any Residual Interest).  Other than payments described below in Paragraph 13 below, no cost or expense of administration under sections 105 or 503(b) of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of the Chapter 11 Case under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claim granted hereunder.

13.    <u>Carve-Out</u>.

(a)    <u>Generally</u>.  Upon the occurrence of the Carve-Out Trigger Date (as defined below), the Superpriority Claim, the Adequate Protection Liens (as defined below) and the Prepetition Liens of the Prepetition Lender shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set

9888389.4

forth therein, collectively, the "**Carve-Out**") from either Cash Collateral or proceeds resulting from the liquidation of any Prepetition Collateral (and, for the avoidance of doubt, not from either cash collateral or proceeds resulting from the liquidation of any collateral of any holder of a Prior Permitted Senior Lien) (provided, however, $250,000 of any remaining Cash Collateral shall not be used for the Carve-Out and shall remain for preservation and maintenance of the Prepetition Collateral):

(i)   (i) (A) the reasonable fee and expense claims of the respective retained professionals of the Debtor, the Committee and any appointed ombudsman (the "**Ombudsman**"), that have been approved by this Court during the Chapter 11 Case pursuant to sections 327, 328, and 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtor, the Committee and the Ombudsman are collectively referred to as the "**Retained Professionals**"), (B) the reasonable expense claims of members of the Committee, and (C) the reasonable fee and expense claims of the Ombudsman, in each case, for unpaid fees and expenses, as applicable, which were incurred on and after the Petition Date and, in the case of any Retained Professional, which remain outstanding after application of (i) any retainer held by such Retained Professional, (ii) any payments from the Retained Professionals Fund, and (iii) any payments to Retained Professionals from any other assets of the Debtor's Estate including, without limitation, Avoidance Action Proceeds, funds advanced by the I M Foundation, Inc., and any restricted contributions, grants, gifts and bequests held or received by IMC, in an aggregate amount not exceeding $1,500,000 for all Retained Professionals, expenses of members of the Committee and the Ombudsman; provided that, in each case, such fees and expenses, as applicable of the Retained Professionals, members of the Committee and Ombudsman are in accordance with, and not in excess of the amounts set forth in, the Budget and in each case, such fees and expenses are ultimately allowed on a final basis by this Court pursuant to sections 330

-15-

9888389.4

and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 18 of this Interim Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and provided further, that (x) nothing herein shall prevent the Bankruptcy Court from determining the allocation of the Carve-Out amongst the fees and expenses of the various Retained Professionals, member(s)members of the Committee and the Ombudsman, so long as such allocation does not increase the Carve-Out, and (y) the Carve-Out shall not include any bonus, transaction, success or completion fees or any other fees of similar import for Retained Professionals without the prior written approval of the Prepetition Lender in its sole discretion;

(ii)    (ii) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code and section 3717 of Title 31 of the United States Code.  For the avoidance of doubt, notwithstanding subparagraph (c) of this Paragraph there is no limitation on the obligations of the Debtor and its Estate with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code; and

(iii)    (iii) if one year after the liquidation of all or a portion of the Prepetition Collateral there are still insufficient funds to fund the entire Carve-Out, the Prepetition Lender shall provide sufficient funds so as to fund the entire Carve-Out.

(b)    Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Prepetition Lender provides written notice to the Debtor, the U.S. Trustee and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default or upon the Termination Date.

(c)    Reduction of Amounts.  Although the Carve-Out shall not be paid until

-16-

9888389.4

payments to Retained Professionals are made in accordance with subsection (a) of this Paragraph, the fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date shall only be reduced, dollar-for-dollar, by the aggregate amount of payments made from collateral that is subject to the liens and claims of the Prepetition Lender to applicable Retained Professionals, members of the Committee and the Ombudsman on and after the Carve-Out Trigger Date, but, for the avoidance of doubt, the fixed dollar amount of the Carve-Out shall not be reduced by any payments from: (a) Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same); (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the Prepetition Lender's right to seek inclusion of all of such excluded amounts); (d) the Retained Professionals Fund (except for any Residual Interest); or (e) any payments from any retainers held by any Retained Professionals.

(d)    Reservation of Rights.  Allowed fees and expenses of Retained Professionals, members of the Committee, and the Ombudsman incurred in excess of the amounts provided therefor under the Budget, including after the occurrence of the Carve-Out Trigger Date, shall, subject to approval of the Court, constitute allowed administrative expenses of the Debtor's Estate pursuant to, *inter alia*, sections 328, 330(a), 331, and 503(b) of the Bankruptcy Code; provided, however, the Carve-Out shall be limited to the amount set forth in Paragraph 13(a), and the Prepetition Lender reserves its right to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Budget.  The payment of any fees or expenses of the Retained Professionals, expenses of members of the Committee and the Ombudsman pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce the Debtor's obligations owed to the Prepetition Lender or to any

9888389.4

holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the Prepetition Collateral (or their respective claims against the Debtor).  The Prepetition Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Retained Professionals, members of the Committee, the Ombudsman, or any fees of the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Case or any successor case, and nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Lender in any way to pay such compensation to or to reimburse such expenses.

14.    _Waiver of Right to Surcharge._  In light of the consent of the Prepetition Lender to the current payment of administrative expenses of the Debtor's Estate in accordance with the Budget and (i) the agreement of the Prepetition Lender to subordinate its Superpriority Claim to the Carve-Out, (ii) the agreement of the Prepetition Lender to subordinate its Liens to the Carve-Out and Permitted Prior Senior Liens, and (iii) the agreement of the Prepetition Lender to permit the Debtor to use Cash Collateral, the Prepetition Lender is entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Accordingly, subject to the entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by the Debtor or any other person or entity shall be imposed or charged against any or all of the Prepetition Collateral, the Prepetition Lender or its claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtor, on behalf of its Estate, waives any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the Budget, this Interim Order and the Prepetition Secured Loan Documents, the Prepetition Lender has relied on the foregoing

-18-

9888389.4

provisions of this Paragraph 14.  Notwithstanding any approval of or consent to the Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the Prepetition Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

15.    Automatic Perfection.  The Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Lender shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law upon entry of this Interim Order by the Court as of the Petition Date without any further action by any party. In respect of the Adequate Protection Liens, the Prepetition Lender shall not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically perfected by the entry of this Interim Order.  If the Prepetition Lender, independently, in its sole discretion, chooses to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained,

-19-

9888389.4

entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of recording or filing any Perfection Documents, the Prepetition Lender may, in its sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the Prepetition Lender shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

16.     <u>Stipulations and Waivers</u>. After consultation with its attorneys and financial advisors, subject to and without prejudice to the rights of the Committee and any other party-in-interest as set forth in Paragraph 17 below, the Debtor admits, stipulates and agrees to the following, and makes the releases and waivers set forth below, on and as of the Petition Date:

(a)     <u>Prepetition Secured Loan Documents</u>. Prior to the Petition Date, the Debtor entered into the Prepetition Credit Agreement and other Prepetition Secured Loan Documents with the Prepetition Lender, as set forth more fully above. Pursuant to the Prepetition Secured Loan Documents, the Prepetition Lender was granted liens on, and security interests in (the "**Prepetition Liens**"), certain property and assets of IMC under the Prepetition Secured Loan Documents (all as more fully set forth in the Prepetition Secured Loan Documents, the "**Prepetition Collateral**"); and

(b)     <u>Prepetition Loans</u>.

(i)     As of the Petition Date, the Debtor was indebted and liable to the Prepetition Lender under the Prepetition Secured Loan Documents, without defense,

9888389.4

counterclaim or offset of any kind, in the approximate aggregate principal amount of not less than $117,784,158.32 in respect of the Prepetition Loan Agreement, not less than $2,000,000.00 in respect of the Pool Loan Agreement (for a total of not less than $119,784,158.32 in respect of the Prepetition Secured Obligations) and not less than $12,181,775.25 in respect of the unsecured Fund B Loan Agreement (for a total of not less than $131,508,051.55 in respect of the Prepetition Loans), plus accrued but unpaid interest thereon and other fees, expenses and other obligations incurred in connection therewith as provided in the Prepetition Secured Loan Documents and the Fund B Loan Agreement;

(ii)    To the extent set forth in the Prepetition Secured Loan Documents, the Prepetition Liens are (x) valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral, (y) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) subject only to (A) after giving effect to this Interim Order, the Carve-Out, and (B) Permitted Prior Senior Liens;

(iii)    The Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    The Debtor does not have, and hereby forever releases and waives, any claims, objections, challenges, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Lender, or any of its affiliates, agents, attorneys, advisors, professionals, officers,

9888389.4

directors, and employees from the beginning of time (and for the avoidance of doubt, as set forth above, all such releases are expressly subject to Challenge under Paragraph 17);

(v)     All of the Debtor's cash existing as of the Petition Date, including without limitation, all cash and other amounts on deposit or maintained by the Debtor in any account or accounts with the Prepetition Lender, but excluding (a) funds advanced by the I M Foundation, Inc. and (b) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the Prepetition Lender's right to seek inclusion of (a) and (b)), constitutes Cash Collateral of the Prepetition Lender; and

(vi)    The Debtor is in default with respect to its Prepetition Secured Obligations and one or more Events of Default has occurred under the Prepetition Secured Loan Documents.

17.    <u>Effect of Stipulations on Third Parties</u>.

(a)     <u>Generally</u>.  The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph of this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Debtor, any subsequent trustee, responsible person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, <u>unless</u>, and solely to the extent that, the Committee or another party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Paragraph 17 and Paragraph 18 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a

9888389.4

"**Challenge**") by (w) no later than September 30, 2013, (x) as such date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court, (y) as such date may be extended by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period, or (z) upon conversion of a chapter 11 case to chapter 7 in which case to the extent that any relevant Challenge period has not expired such period shall be automatically extended for 75 days from the date a chapter 7 trustee is appointed, as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court or by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period (collectively, the "**Challenge Deadline**").  The Challenge Deadline shall not expire if this Court rules in favor of the plaintiff or movant in any timely and properly commenced Challenge proceeding and any such ruling is not subject to any further review or appeal.

(b)      <u>Binding Effect</u>.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to of the Prepetition Lender file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive and final on the Committee and any other person, entity or party-in-interest in the Chapter 11 Case, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other

9888389.4

representative of the Estate.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Lender shall be entitled to include the related costs and expenses in its Prepetition Secured Obligations, including but not limited to reasonable attorneys' fees, incurred in defending itself in any such proceeding pursuant to, and to the extent permitted by, the Prepetition Secured Loan Documents and section 506(b) of the Bankruptcy Code.

(c)    Standing.  The Committee is hereby granted standing to assert any Challenge on behalf of the Debtor or its Estate with respect to any Prepetition Lien and Claim Matters.  Nothing in this Interim Order confers or vests standing on any other party-in-interest to assert any claim on behalf of the Debtor or its Estate, or relieves any other party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of the Debtor or its Estate.

18.    Limitation on Use of Proceeds.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with:  (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Secured Loan Documents or any security interests, liens or claims granted under this Interim Order or the Prepetition Secured Loan Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against the

9888389.4

Prepetition Lender or any of its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the Prepetition Collateral; or (d) seeking to amend or modify any of the rights granted to the Prepetition Lender under this Interim Order or the Prepetition Secured Loan Documents including seeking to use Cash Collateral on a contested basis; provided, however, that no more than $60,000 in the aggregate of the proceeds of the Cash Collateral and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

19.    Avoidance Action Proceeds.  Notwithstanding anything in this Interim Order or any other Prepetition Loan Document to the contrary, Avoidance Action Proceeds shall not be Cash Collateral and shall not be subject to the Prepetition Liens, Superpriority Claim and Adequate Protection Liens of the Prepetition Lender; provided, however, the Prepetition Lender reserves its right to seek such relief at the Final Hearing or thereafter.  Any liens and claims of the Prepetition Lender on Avoidance Action Proceeds shall terminate at such time as the Prepetition Secured Obligations have been indefeasibly paid in full, in cash.

20.    Adequate Protection.  This Court finds that the Adequate Protection provided in this Interim Order, including, without limitation, in this Paragraph, is reasonable and sufficient to protect the interests of the Prepetition Lender.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Lender pursuant hereto is without prejudice to the right of the Prepetition Lender, or any other party-in-interest, to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party-in-interest to contest any such modification.

21.    Adequate Protection Liens.  As adequate protection of the Prepetition Liens of the

9888389.4

Prepetition Lender under the applicable Prepetition Secured Loan Documents, in accordance with sections 361 and 363(e) of the Bankruptcy Code, the Prepetition Lender shall be granted valid, binding, enforceable and perfected security interests and replacement liens (the "**Adequate Protection Liens**") upon all property of the Debtor whether arising prepetition or postpetition of any nature whatsoever, wherever located, except for (a) Avoidance Actions, Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), or (d) the Retained Professionals Fund (except for any Residual Interest) (the "**Adequate Protection Obligations**") in each case to secure the Prepetition Secured Obligations of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral; and (ii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of any obligations or expenses of the Debtor other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i) and (ii) above.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the Prepetition Liens, (C) the Superpriority Claim, and (D) the Permitted Prior Senior Liens.  None of the Adequate Protection Liens or Adequate Protection Obligations shall (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code, or (y) be subject to any intercompany claim, whether secured or unsecured, of the Debtor or any domestic or foreign subsidiary or affiliate of the Debtor.

22.    [Reserved].

-26-

9888389.4

23.    <u>Adequate Protection Payments</u>.  Subject to Section 506(b) of the Bankruptcy Code, the Debtor shall, in accordance with the Budget with respect to the Prepetition Lender promptly pay all reasonable fees and expenses under the Prepetition Secured Loan Documents incurred by the Prepetition Lender, whether incurred prior to or following the Petition Date in accordance with Paragraph 9 of this Interim Order.  The payments under this Paragraph shall be referred to collectively as the "**Adequate Protection Payments**."  In the event any Adequate Protection Payment would be required to be repaid to the Debtor as a result of application of section 506(b) of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and instead shall be applied as follows:  first, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and second, to the Debtor and its Estate.

24.    <u>Restructuring/Wind-Down Advisors/Contingency Plan/Alternative Use; Closure Plan</u>.  It is a condition of the Authority's consent to use of Cash Collateral pursuant to this Interim Order that (i) the Debtor shall continue to employ John D. Leech as its chief restructuring officer (the "**CRO**") and Gordian-Dynamis Solutions LLC as its restructuring consultant ("**Gordian-Dynamis**"), or in each case such other chief restructuring officer or, other restructuring consultant(s) or other wind-down officer that is/are acceptable to the Authority on terms acceptable to the Authority (collectively, together with the CRO and Gordian-Dynamis, the "**Restructuring/Wind-Down Advisors**"), (ii) the Restructuring/Wind-Down Advisors shall continue to provide assistance to the Debtor on that certain contingencyclosure plan submitted to the New York State Department of Health ("**DOH**") by the Debtor in accordance with existing regulations set forth in the New York Codes, Rules and Regulations, including 10 N.Y.C.R.R. §401.3 thereof  (the "**Contingency Plan**") and on development of a plan with respect to any alternative uses of the Debtor's facilities as might become vacant that are acceptable to the Authority and DOH (the "**Alternative Use Plan**"), (iii**Closure Plan**"), including identifying

-27-

9888389.4

programs of great community need, assisting in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority, and identifying strategies and methods for repurposing of the Debtor's facilities, (iii) the Debtor and the Restructuring/Wind-Down Advisors shall continue to work with DOH and its sister agencies the Office of Mental Health (OMH) and the Office of Alcoholism and Substance Abuse Services (OASAS), as well as the Authority, with respect to obtaining approval of the Closure Plan, and (iv) the Debtor shall continue to cooperate with DOH and the Authority and DOH as same may request in their sole discretion, at the Debtor's expense, with respect to the Contingency Plan and Alternative UseClosure Plan, including, without limitation, (a) by providing reasonable access to (ax) the Debtor's facilities as well as all reasonably available records pertaining thereto, and (by) the Debtor's financial books and records, and (cz) the Restructuring/Wind-Down Advisors to report to DOH and the Authority on the Debtor's operations, the Contingency Plan, the Alternative UseClosure Plan and any other facet of their engagement with the Debtor, at such times and in such form as DOH and the Authority shall reasonably request, and (b) by working with DOH and the Authority to identify programs of great community need and assist in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority, and by working with DOH and the Authority to identify strategies and methods for repurposing of the Debtor's facilities.

25.    Notice Concerning Use of I M Foundation, Inc. Funds.  The Debtor shall provide not less than five (5) business days' notice to counsel for the Committee and the Prepetition Lender of any intent to use any funds provided or advanced to the Debtor by the I M Foundation, Inc. (the "**Noticed Foundation Funds**").  If the Committee and/or the Prepetition Lender have an objection to the Debtor's proposed use of Noticed Foundation Funds, the Committee and/or the

-28-

9888389.4

Prepetition Lender may file, within five (5) business days of receiving notice from the Debtor of the Debtor's intent to use Noticed Foundation Funds, an objection to the proposed use of the Noticed Foundation Funds (an "**Objection to Noticed Foundation Funds**").  If an Objection to Noticed Foundation Funds is timely filed, the Court shall schedule an expedited hearing on the matter and the Debtor shall not use the subject Noticed Foundation Funds until the Court authorizes such use or ten (10) business days have passed since the Debtor gave its initial notice and the Court has not yet ruled that the Debtor cannot use the subject Noticed Foundation Funds.

26.    Indemnification.  Nothing herein shall affect any indemnification rights or obligations provided for the benefit of the Prepetition Lender under the Prepetition Secured Loan Documents.

9888389.4

27.     Remedies.  Upon the occurrence of an Event of Default or upon the Termination Date, after providing not less than seven (7) days prior notice pursuant to the Notice Procedures Order, the Prepetition Lender shall be entitled to exercise all of its rights and remedies under this Interim Order, including, without limitation, foreclose upon the Prepetition Collateral, including Cash Collateral, or otherwise enforce the Prepetition Secured Obligations, Prepetition Liens and Superpriority Claim on any or all of the Prepetition Collateral, including Cash Collateral, and/or to exercise any other default-related remedies under the Prepetition Secured Loan Documents, this Interim Order or applicable law in seeking to recover payment of the Prepetition Secured Obligations.  For the avoidance of doubt, with respect to Permitted Prior Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law in respect of Permitted Prior Senior Liens.  During the not less than seven (7) day notice period, the Debtor, the Committee or any other party-in-interest may seek an order of the Court staying the Prepetition Lender's exercise of such remedies against the Prepetition Collateral, including with respect to Cash Collateral, and, if no such stay is obtained, then the Prepetition Lender may exercise any and all such rights and remedies without further order of the Court or notice to any party, and during the seven (7) day notice period, the Debtor shall be entitled to continue to use Cash Collateral in accordance with the Budget.  In addition to the foregoing remedies set forth in this Paragraph, if the Debtor fails to comply with Paragraph 24 of this Interim Order, the Authority may file a motion for an order of this Court directing the appointment of a Restructuring/Wind-Down Officer to implement the Closure Plan and/or directing the U.S. Trustee to appoint a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code, and the Court shall schedule an expedited hearing on the matter, and the Debtor and any other party in interest reserves all rights to oppose such a motion.

9888389.4

28. <u>Access to Prepetition Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Prepetition Lender contained in this Interim Order or the Prepetition Secured Loan Documents, or otherwise available at law or in equity, and subject to the terms of the Prepetition Secured Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the Prepetition Secured Loan Documents, and repayment under the Prepetition Loan Document is immediately due and payable in full, the Prepetition Lender may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the Prepetition Lender, enter upon any leased premises of the Debtor or any other party for the purpose of exercising any remedy with respect to Prepetition Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder, <u>provided that</u> the Prepetition Lender shall only be obligated to pay rent of the Debtor that first accrues after the Prepetition Lender's written notice referenced above and that is payable during the period of such occupancy by the Prepetition Lender, calculated daily on a per diem basis. Nothing herein shall require the Prepetition Lender to assume any lease as a condition to the rights afforded to the Prepetition Lender in this Paragraph.  Furthermore, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any Prepetition Collateral of the Debtor located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the Adequate Protection Liens, and the Superpriority Claim.

29. <u>Insurance Policies</u>. Effective as of entry of this Interim Order, the Prepetition Lender shall be, and shall be deemed to be, without any further action or notice, named as

9888389.4

additional insureds and loss payees on each insurance policy maintained by the Debtor that in any way relates to Prepetition Collateral, as applicable.

30.     <u>Successors and Assigns</u>.  This Interim Order shall be binding upon all parties in interest in the Chapter 11 Case, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

31.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent interim order or the Final Order), and the rights, remedies, powers, privileges, liens and priorities of the Prepetition Lender provided for in this Interim Order shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a Chapter 7 case, (iii) dismissing the Chapter 11 Case, or (iv) any superseding case(s) under the Bankruptcy Code. The terms and provisions of this Interim Order as well as the Prepetition Secured Obligations, Liens, Superpriority Claim, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid in full, in cash.

32.     <u>Good Faith</u>.  The use of Cash Collateral, and the other provisions of this Interim Order have been negotiated in good faith and at arm's-length among the Debtor and the Prepetition Lender, and the permission granted to the Debtor by the Prepetition Lender pursuant to this Interim Order to use Cash Collateral has been and is deemed to be extended in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

33.     <u>Subsequent Reversal or Modification</u>.  Subject to Paragraph 17, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action

9888389.4

will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order and the Prepetition Secured Loan Documents by the Debtor prior to the date of receipt of written notice to the Prepetition Lender of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Interim Order and the Prepetition Secured Loan Documents, including, without limitation, the Prepetition Secured Obligations, Prepetition Liens and Superpriority Claim, Adequate Protection Obligations, Adequate Protection Liens and Adequate Protection Payments.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the Prepetition Lender prior to written notice to the Prepetition Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order and the Prepetition Secured Loan Documents, and the Prepetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant to this Interim Order and the Prepetition Secured Loan Documents.

34.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Lender may have to bring or be heard on any matter brought before the Court.  Any consent, modification, declaration of default, or exercise of remedies under or in connection with this Interim Order shall require the approval in writing of the Prepetition Lender, and any non-exercise of remedies under or in connection with this Interim Order shall not be deemed a waiver or relinquishment of any of the rights of the Prepetition Lender.  Nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the Prepetition Lender, including, without limitation, the right to (a) request conversion of the Chapter 11 Case to chapter 7 (to the extent applicable for charitable entities), (b) seek to terminate the exclusive rights of the Debtor to file, and solicit acceptances

9888389.4

of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay.  All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

35.    <u>Events of Default</u>.  It shall be a default hereunder (and constitute an "**Event of Default**" under this Interim Order) if

(a)    the Debtor uses the Prepetition Collateral, including Cash Collateral, other than as set forth herein and in the Budget,

(b)    an order is entered dismissing or converting the Chapter 11 Case under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or examiner with expanded powers,

(c)    without the written consent of the Prepetition Lender, the Debtor applies to the Court for an order:

(i)    authorizing the use of the Prepetition Collateral, including Cash Collateral or that seeks approval of a priming, senior or *pari passu* security interest in or lien upon Cash Collateral or the Collateral;

(ii)    seeking to challenge the Prepetition Lender's liens upon the Cash Collateral or the Collateral or otherwise asserting rights, claims or causes of action against the Prepetition Lender with respect to the Prepetition Secured Obligations;

(iii)    seeking to sell or transfer all or substantially all of the equity or assets of the Debtor while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby;

(iv)    seeking to reorganize the Debtor with another entity as its controlling, majority or sole member while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby; or

(v)    seeking to transfer the Debtor's assets to a successor while not agreeing to, at the same time, indefeasibly pay the Prepetition Secured Obligations in full, in cash, and completely satisfy same

9888389.4

upon consummation of the transaction contemplated thereby;

(d)    any other motion is filed by the Debtor for any relief directly or indirectly affecting the Prepetition Collateral including Cash Collateral in a material manner unless all Prepetition Secured Obligations have been indefeasibly paid in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby;,

(e)    the Debtor fails to comply with any of the material terms of this Interim Order, including the Budget, or any stipulation, representation or covenant by the Debtor stated herein is materially false or misleading; and/or,

(f)    any of relief listed above in this Paragraph (a-e) is granted upon a motion of a party other than the Debtor; provided, however, for the avoidance of doubt, the mere filing (as opposed to granting) of a motion by a party other than the Debtor, including the Committee, for any of relief listed in this Paragraph shall not be an Event of Default., and/or

(g)    the Debtor fails to meet any of the following milestones (except to the extent such deadlines or milestones are extended in writing by the Authority in its sole discretion):

(i)    on or before July 29, 2013, file a closure motion to implement the Closure Plan seeking an expedited hearing to approve implementation of the Closure Plan no later than August 12, 2013, or such other date and time as fixed by the Court;

(ii)    as soon as practicable, but no later than July 31, 2013, provide WARN notice, including, without limitation, to all affected employees; and

(iii)    on or before October 18, 2013, complete implementation of the Closure Plan so that the hospital ceases patient and healthcare operations by such date except as permitted by the Authority in consultation with DOH.

36.    Effect of Dismissal or Conversion.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the Prepetition Lender under this Interim Order and shall preserve the Carve-Out.  Unless the Authority agrees in writing otherwise, no order providing for the sale of substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the Prepetition Secured Obligations (in their respective priority) are transferred to

-35-

9888389.4

the proceeds of such sale and such proceeds (but solely to the extent such proceeds are Cash Collateral or Prepetition Collateral and not the collateral of any other holder of a Permitted Prior Senior Lien) are applied to permanently and indefeasibly repay the Prepetition Secured Obligations, as applicable, in full, in cash.  If an order dismissing the Chapter 11 Case under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the Adequate Protection Liens and Superpriority Claim granted to the Prepetition Lender hereunder, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations and indebtedness owing to the Prepetition Lender shall have been indefeasibly paid in full, in cash and the Prepetition Lender's obligations and commitments under the Prepetition Secured Loan Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Prepetition Liens, Superpriority Claim, Adequate Protection Liens, and Adequate Protection Payments.

37.    Order Governs.  In the event of any conflict between the provisions of this Interim Order and any agreement, the provisions of this Interim Order shall control and govern to the extent of such conflict.

38.    Right to Credit Bid.  Pursuant to section 363(k) of the Bankruptcy Code, the Prepetition Lender shall have the exclusive right to use the Prepetition Secured Obligations, the Superpriority Claim, the Adequate Protection Obligations and the Adequate Protection Liens of the Prepetition Lender to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.  For the avoidance of doubt, the rights of the Prepetition Lender to credit bid with respect to its collateral does not permit the Prepetition Lender to credit bid collateral of any holder of a Prior Permitted Senior Lien.

9888389.4

39.  <u>No Marshaling</u>.  None of the Prepetition Lender or Prepetition Collateral shall be subject to the doctrine of marshaling.

40.  <u>United States Departments and Agencies</u>.  As to the United States, its agencies, departments or agents, nothing in this Interim Order shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

41.  <u>28 U.S.C. §959(b)</u>.  Nothing in this Interim Order shall permit the Debtor to violate 28 U.S.C. §959(b).

42.  <u>Headings</u>.  The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

43.  <u>Immediate Docketing and Effect of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Chapter 11 Case.  This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Interim Order.  All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.

44.  <u>Final Hearing</u>.  The motion is set for a final hearing (the "**Final Hearing**") to be held on September 9, at 2:00 p.m. (prevailing Eastern Time), with an objection deadline of 12:00 p.m. (prevailing Eastern Time) on September 3, 2013 (the "**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtor, the U.S. Trustee, counsel for the Committee, and the Prepetition Lender so as to be actually received on or before the Objection Deadline.  The Debtor shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the

9888389.4

Notice Parties and Committee counsel.