**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (csimpson@windelsmarx.com)

*Attorneys for IM Foundation, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                          :
                                                               :         Chapter 11 Case
INTERFAITH MEDICAL CENTER, INC.,          :
                                                               :         No. 12-48226 (CEC)
                                          Debtor.    :
-------------------------------------------------------------x


**MOTION OF IM FOUNDATION, INC. FOR AN ORDER PURSUANT TO
BANKRUPTCY CODE § 1121(d) TERMINATING EXCLUSIVE
PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE
AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN**


TO:    **HONORABLE CARLA E. CRAIG,
          CHIEF UNITED STATES BANKRUPTCY JUDGE:**

          IM Foundation, Inc. ("**IMF**" or the "**Foundation**"), by and through its undersigned

counsel, Windels Marx Lane & Mittendorf, LLP, hereby makes this Motion for entry of an Order

terminating the exclusive periods during which only Interfaith Medical Center, Inc., Debtor-in-

Possession ("**IMC**" or the "**Debtor**"), may file and solicit acceptances of a chapter 11 plan, and

in support, respectfully represents the following:

                      **Jurisdiction; Venue; Statutory Bases for Relief**

          1.          This Court has jurisdiction over this Motion and any hearings or orders entered

pursuant thereto under 28 U.S.C. §§ 157 and 1334 and the Order of the United States District

Court for the Eastern District of New York, dated December 5, 2012, captioned *In the Matter of*

*The Referral of Matters to the Bankruptcy Judges* (Amon, C.J.). This is a core proceeding pursuant to 28 U.S.C § 157(b). Venue of this case and Motion is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409. The relief sought in this Motion is based upon section 1121(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), as supplemented by Bankruptcy Rule 9006(c)(1).

## BACKGROUND

2.      On December 2, 2012, the Debtor filed its voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code, and has since then continued in the possession of its assets and management of its business as Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      On December 13, 2012, the United States Trustee for Region 2 appointed an Official Committee of Unsecured Creditors (the "**Committee**"). The Committee is represented by Alston & Bird, LLP.

### Current Plan-Related Deadlines

4.      Bankruptcy Code § 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Section 1121(c)(3) provides that, if a debtor files a plan of reorganization within the Exclusive Filing Period, the debtor has an initial period of 180 days after commencement of its chapter 11 case to solicit acceptances of such plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**").

5.      The Debtor's initial Exclusive Filing Period was due to expire on April 1, 2013, and the Debtor's initial Exclusive Solicitation Period was due to expire on May 31, 2013. By Order, dated March 22, 2013 (ECF Doc. No. 349), the Court extended the Debtor's initial

Exclusive Filing Period through July 1, 2013 and the Debtor's initial Exclusive Solicitation

Period through August 30, 2013.

6.        On June 26, 2013, the Court entered a second Order (ECF Doc. No. 550), further

extending the Debtor's Exclusive Filing Period through September 30, 2013 and the Debtor's

Exclusive Solicitation Period through December 2, 2013.

### Debtor's Failure to Reorganize and Plan of Closure

7.        On July 30, 2013, the Debtor filed its *Motion for Entry of an Order Pursuant to*

*Sections 105, 363 and 1108 of the Bankruptcy Code, Authorizing the Debtor to Implement, in*

*Accordance with New York State Law, a Plan of Closure for the Debtor's Hospital and Certain*

*Affiliated Outpatient Clinics and Practices* (the "**Closure Motion**") (ECF Doc. No. 602).

8.        The Debtor's first substantive statement in the Closure Motion explains why

closing the hospital will be a disaster. Paragraph 3 of the Closure Motion states:

> The local Brooklyn community's need for IMC's services is critical.
> Accordingly, IMC fulfills a vital mission in the community IMC serves.
> Indeed, in his May 7, 2013 letter to HHS Secretary Kathleen Sebelius
> seeking an 1115 Medicaid waiver amendment, Governor Cuomo referred
> to IMC and other Brooklyn hospitals in danger of closing as "essential
> components of the healthcare services system in Brooklyn". Governor
> Cuomo also stated that "the outcome will be disastrous" if those hospitals
> close because among other things, "[a]ccess to care will be compromised
> and the remaining healthcare providers in the borough will be
> destabilized." In fact, as the Debtor is the primary acute care provider to
> its community, failure of IMC to survive likely will have serious
> consequences for the provision of healthcare in that community, the extent
> of the jobs created by such services, and the value of the Debtor's estate.
> Consequently, IMC consistently has sought every means available for
> maximizing the chances of its survival.

The Debtor explains in the next nine pages of the Closure Motion its faltering finances, failed

business and reorganization opportunities, and its concession to the New York State Department

of Health ("**DOH**") to implement a closure plan "…in the best interests of the Debtor and its

creditors, employees, community, and other constituencies…". *See* Closure Motion at Para. 25.

9.      The Debtor reveals that it submitted a form of Closure Plan to DOH on July 25, 2013 for approval, and a request to the Dormitory Authority of the State of New York ("**DASNY**"), its largest secured creditor, for debtor-in-possession financing to help fund the Closure Plan. *See* Closure Motion at Para. 25. Accordingly, by the Closure Motion, the Debtor seeks entry of an order authorizing implementation of the Closure Plan in accordance with the directives of the DOH, other relevant regulatory agencies, and applicable law. Notably, the Debtor does not seek to submit a chapter 11 plan for approval by the Court, creditors and parties in interest, but rather argues that it may unilaterally cease operating and using its property under Bankruptcy Code §§ 363 and 1108. *See* Closure Motion at Paras. 48-51. Indeed, the Debtor admits that:

> In light of IMC's extensive efforts to sustain the hospital as a going concern, the Debtor respectfully submits that its inability to complete a strategic transaction or alternative business restructuring plan constitutes a "good business reason" for the closure. In fact, without access to financing to support continued operations rather than closure and without a potential third party transaction or approved stand alone business restructuring plan in hand, IMC has no choice but to close.

*See* Closure Motion at Para. 52.

### IM Foundation's Plan

10.      Contrary to the Debtor's proclamation that there is no potential third party transaction or stand alone business restructuring plan in hand, the IM Foundation, has retained the noted healthcare workout and restructuring firm of Alvarez & Marsal Healthcare Industry Group, LLC ("**A&M**") to analyze IMC's operations, finances, potential partners, alternative healthcare uses of the IMC property to continue as a healthcare facility and provider to the IMC communities of Bedford Stuyvesant, Crown Heights and others and to assist the Foundation in drafting a plan and proposal responsive to the DOH, DASNY and the IMC community.  As of today's date, IMF has a substantially completed analysis and a draft plan (the "**Foundation**

**Reorganization Plan**"), which provides in summary a re-purposing plan which (i) retains behavioral health and crisis services, while coordinating ambulatory with an ambulatory care partner, (ii) develops a leasing model for healthcare services such as a skilled nursing facility, physical rehabilitation, long-term acute care, healthcare education and other education, (iii) supports community primary care access and (iv) transitions ambulatory care operations to a federally qualified health center which will assume grants, contracts and continue clinical and AIDS housing programs. IMF is ready, willing and able to file the Foundation Reorganization Plan with a Disclosure Statement and engage in the disclosure statement approval/plan confirmation process. If IMF is permitted to file and obtain acceptance of the Foundation Reorganization Plan, the Plan will create a facility which will provide vital healthcare to an underserved community and continued employment and support for the many people and businesses that depend on it for their health and livelihood.

**The Exclusive Periods Should be Terminated**

As set forth below, there is sufficient cause to terminate the Exclusive Periods.

**A.      Cause Exists to Terminate the Exclusive Periods**

11.      Bankruptcy Code § 1121(d) provides that the Court may reduce or increase a debtor's exclusive periods for filing and soliciting acceptance of a plan of reorganization "for cause." 11 U.S.C. § 1121(d) ("the court may for cause reduce or increase the [Exclusive] period."). It is the burden of the party seeking such relief to establish that cause exists. *See In re Borders Group, Inc.*, 460 B.R. 818 (Bankr. S.D.N.Y. 2011); *In re General Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re McLean Industries, Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987); *In re Texaco*, 87 B.R. 322 (Bankr. S.D.N.Y. 1987). The longer the period of exclusivity, the heavier the burden of proof on the debtor who seeks an extension becomes. *In re Dow Corning Corp.*,

208 B.R. 661, 664 (Bankr. E.D. Mich. 1997). Bankruptcy Courts have held that it is improper to routinely extend the period of exclusivity absent a showing of cause in cases where an objection to the extension has been filed. *See, e.g., In re the Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("[t]his court will not routinely extend the exclusivity period absent a showing of cause when creditors object to such requests for extensions.").

12.    In determining whether cause exists for an extension of the exclusive periods, courts may consider whether there is an "alternate substantial plan being held off by debtor exclusivity." *In re Public Service Co. of New Hampshire*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988)  (appropriate interpretation of "for cause" language includes consideration of likelihood of imminent consensual plan if debtor retains control, no alternate substantial plan being held off by exclusivity, and general balancing analysis to avoid debtor holding creditors hostage). Courts may also consider the following factors: (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) whether the debtor is paying its debts as they come due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiating with creditors; (7) the length of time the case has been pending; (8) whether the debtor is seeking the extension to pressure creditors; and (9) whether unresolved contingencies exist. *In re Express One International, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). *See also Dow*, 208 B.R. at 664, and *In re Adelphia Communications Corporation, et al.*, 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006) (adding a tenth potentially primary overriding factor: "…whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case") ("*Adelphia*").

13.    There is sufficient cause based upon the foregoing factors to warrant termination of the Exclusive Periods in this case. The Foundation Reorganization Plan represents the best

and only means for the Debtor's emergence from Chapter 11 as a viable provider of vital healthcare services to its underprivileged community and the preservation of much-needed jobs. Such a plan would provide, among other things, the continuation by the Debtor, or a successor, of vital healthcare services and for a nominal payment to the Debtor's creditors.

14.    The Debtor has surrendered to DOH's demand to close, and the only plan that it could possibly proffer would be one of liquidation; therefore, there is no reason to continue to protect the Debtor's plan negotiation rights afforded to it by section 1121(d). Because the Foundation Reorganization Plan can be put in place promptly, there is no compelling reason for the Debtor to maintain exclusivity. Closing the Debtor's doors forever cannot possibly result in a plan more favorable to all parties, including the community, while providing for payment to creditors as soon as possible. *Cf., General Bearing Corp.*, 136 BR. at 367 (denying debtor's motion to extend exclusivity in part because extension will not enhance debtor's prospects of proposing a confirmable plan: "The debtor has not demonstrated that it has any financial ability to propose a confirmable Chapter 11 plan or that any further delay will enhance its prospects. Therefore, the playing field should be leveled <u>so that all the players</u>, including the debtor, will now have an even chance in proposing a reorganization plan which might be acceptable to the creditors in this case.") (emphasis added).

15.    In *Adelphia*, Bankruptcy Judge Gerber recognized that termination of exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific. *Adelphia* at 586. Slavish adherence to the nine (9) numerated factors is not required, and the Court may exercise its discretion under the unique circumstances of each case:

> "…the caselaw factors might not, in every case, by themselves be determinative….the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case. Certainly practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine factors."

*Id.* at 590. Here, the Debtor's Closure Plan will stop this case in its tracks, while the Foundation Plan of Reorganization provides a path through the reorganization forest. Certainly, practical considerations and the interests of justice are better served by giving parties in interest the opportunity to file a plan that would preserve the hospital and its emergency facilities and clinics for the benefit of an underserved community while preserving jobs and businesses that support and supply the hospital rather than by preserving the Debtor's exclusive right merely to file a liquidating plan.

16.     Second, although the Debtor's case might be large and complex, the size and complexity of a bankruptcy case alone is not sufficient to withstand a motion to terminate exclusivity, particularly where, as here, the case is no longer in its initial stages. *See Public Service Co. of New Hampshire*, 88 B.R. 521, at 537 ("size and complexity alone cannot suffice as 'cause' for a continuation of a debtor's plan exclusivity right in a chapter 11 reorganization."). *See also In re Sharon Steel*, 78 B.R. 762, 765 (W.D. Pa. 1987) (denying motion to extend exclusivity where successful reorganization required speedier progress than had been accomplished by debtor to date). The size and complexity of this case is not an impediment to the formulation and implementation of the Foundation Reorganization Plan, and it is apparent that the current management of the Debtor is unable to propose anything comparable. Indeed, the fact that there is an existing roadmap for a viable plan is evidence that the Debtor should not be allowed to retain the exclusive right to file a plan. The Foundation Reorganization Plan once implemented can save the Debtor from insolvency and liquidation.

17.     Accordingly, this Court should terminate the Exclusive Periods now.

**B.      The Exclusive Periods Should be Terminated to Permit the Filing of a Plan that Preserves All of the Rights of the Community and Creditors**

18.      Although the exclusive periods are designed to allow a debtor a reasonable time to reorganize, Congress intended that creditors be allowed to file competing plans after the debtor has had a reasonable time to propose and confirm a plan. *In re Mother Hubbard, Inc.*, 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 231-32 (1977) (legislative history of section 1121 evidences Congressional intent to allow filing of competing plans, and provides that the section "recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company."). The filing of competing plans "puts a certain amount of pressure on the debtor," while still allowing the debtor to continue to formulate a plan. *In re Tony Downs Foods Co.*, 34 B.R. 405, 408 (Bankr. D. Minn. 1983). "The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended." *Id*.

19.      The Debtor has had more than nine (9) months in Chapter 11 to file a proposed plan of reorganization and has not done so. (The Debtor had years prior to filing this Chapter 11 case to formulate a plan for implementation in a Chapter 11 case.)  After no fewer than two (2) extensions of the Exclusive Periods, current management and the Chief Restructuring Officer of the Debtor has yet to propose a plan. Because the Debtor has failed to turnaround its losing operations in that time, its use of cash collateral is about to be terminated, the community will lose IMC's provision and the community's access to healthcare services and jobs, and creditors, other than DASNY, are unlikely to be paid anything. The Court should reject this result and allow the Foundation to file its Reorganization Plan. Since equity abhors a forfeiture, permitting the Foundation to file its Reorganization Plan and solicit acceptances is much more favorable than simply allowing the hospital to close and DASNY to foreclose on its assets. In addition, terminating the Exclusive Periods will permit any other party, including the Debtor, to either

adopt the Foundation Reorganization Plan or formulate their own plan with at least as favorable treatment to the Debtor's creditors and interest holders.

**C.      Current Management of the Debtor is Failing to Meet its Fiduciary Duty to Protect the Public's interest and the Rights of Creditors**

20.      As set forth above, current management of the Debtor is ignoring the public's interest in keeping the hospital open and as a provider of healthcare services, and its fiduciary duty to creditors. The decisions it has made have led to this stage of the case, where it will close the hospital and allow the liquidation of assets for the benefit of the State (DASNY), without regard to the interests of the community or the Debtor's other creditors. (**This disregard of the needs and rights of others is especially disturbing in light of the incentives built into the contracts of the principals of the Debtors' management.**)

21.      Current management of the Debtor has clearly failed in the execution of its duty to the community and the Debtor's creditors by eliminating its ability to file any plan structure that preserved their rights, all while prohibiting those same interests from doing so for the Debtor and themselves. For this reason, if no other, the Court should terminate the Exclusive Periods and allow the Foundation and other parties in interest to propose competing plans.

**Reduced and Limited Notice**

22.      IM Foundation is proceeding by Order scheduling a hearing on shortened notice rather than by notice of motion because the Debtor has obtained a hearing date on the Closure Motion of August 26, 2013. IMF believes that if the Court approves the Closure Motion on that date, it will be implemented immediately, thus jeopardizing, if not mooting the Foundation Plan of Reorganization. Accordingly, the scheduling of a hearing on this Motion must occur as soon as possible and cause exists in this case for the Motion to be heard by this Court on shortened notice.

23.     Local Bankruptcy Rule 9006-1 requires that all motion papers shall be served at least 14 days before the hearing date. Bankruptcy Rule 9006(c)(1), however, permits a court to reduce the time required for notice "for cause shown". FED. R. BANKR. P. 9006(c)(1). Bankruptcy Rule 9006(c)(2) lists particular situations in which a reduction of time is not permitted, but a motion for relief under Bankruptcy Code § 1121(d) is not among those prohibited situations. Accordingly, the Court, in its discretion, may shorten the time required for notice of the Motion.

24.     Pursuant to Local Rule 9077-1, the affidavit of Charles E. Simpson, Esq. in support of IMF's request for a hearing on shortened and limited notice is attached as **Exhibit "A"**.

25.     IMF proposes to give notice of this Motion by serving copies of the Order scheduling a hearing in the form attached to Mr. Simpson's Affidavit as Exhibit "1" (the "**Scheduling Order**"), the Motion and supporting exhibits and affidavits by overnight delivery service to the following parties, or, in lieu thereof, to their counsel, if known: (a) the Debtor, (b) the Committee, (c) DASNY, (d) DOH, (e) the Office of the United States Trustee, and (f) all entities having filed a notice of appearance and demand for notice. IMF submits that the foregoing constitutes good and sufficient notice and that no other or further notice need be given.

26.     In addition, IMF respectfully requests that the Court approve the provisions of the proposed Scheduling Order requiring that, to be considered, objections to the Motion must be in writing, filed with the Court (with a hard copy delivered to Chambers) and served so as to be received no later than 4:00 p.m. prevailing Eastern time on August 23, 2013 by (a) Charles E. Simpson, Esq., Windels Marx Lane & Mittendorf, LLP, counsel for IM Foundation, Inc., 156 West 56th Street, New York, New York 10019, (b) Martin G. Bunin, Esq., Alston & Bird, LLP, counsel to the Committee, 90 Park Avenue, New York, New York 10016, and (c) the Office of

the United States Trustee for the Eastern District of New York, 201 Varick Street, Suite 1006,

New York, New York 10014.

## No Prior Applications

27.     No prior request for the relief sought herein has been made to this or to any other

court.

## CONCLUSION

28.     For all of the foregoing reasons, this Court should terminate the Exclusive

Periods to allow competing plans of reorganization--including the Foundation Reorganization

Plan--to be filed as soon as possible.

**WHEREFORE,** IMF respectfully requests that the Court enter an order terminating the

Exclusive Periods and granting such other and further relief as is just and proper.

Dated:  New York, New York
           August 15, 2013

**WINDELS MARX LANE & MITTENDORF LLP**

By:     **/s/  Charles E. Simpson**
           **CHARLES E. SIMPSON (csimpson@windelsmarx.com)**
           156 West 56th Street
           New York, New York 10019
           Telephone: (212) 237-1000

           *Attorneys for IM Foundation, Inc.*