**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (csimpson@windelsmarx.com)

*Attorneys for IM Foundation, Inc.,*
 *Plan Proponent*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
In re:                                                       :        Chapter 11 Case
                                                             :
INTERFAITH MEDICAL CENTER, INC.,                             :        No. 12-48226 (CEC)
                                                             :
                              Debtor.                        :
                                                             :
------------------------------------------------------------x


## PLAN OF LIQUIDATION


**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000

*Attorneys for IM Foundation, Inc.,*
 *Plan Proponent*

# TABLE OF CONTENTS

**Page**

ARTICLE 1    **DEFINITIONS** ........................................................... 1
Section 1.1    Defined Terms .......................................................... 1
Section 1.2    Other Terms ............................................................. 1
Section 1.3    Rules of Construction ............................................... 2

ARTICLE 2    **CLASSIFICATION OF CLAIMS AND MEMBERSHIP INTERESTS** ......................................................... 9
Section 2.1    Classification of Allowed Claims and Membership Interests: Elimination of Classes ............................................. 9
   Class 1: Secured Claims ......................................... 10
   Class 2: Other Priority Claims ............................... 10
   Class 3: Unsecured Claims ..................................... 10
   Class 4: Membership Interests ............................... 10

ARTICLE 3    **PROVISIONS FOR TREATMENT OF PROFESSIONAL FEE CLAIMS** .......................................................... 10
Section 3.1    Professional Fee Date .............................................. 10
Section 3.2    Treatment ................................................................. 10
Section 3.3    Post Effective Date Services ................................... 11

ARTICLE 4    **PROVISIONS FOR TREATMENT OF ADMINISTRATION AND PRIORITY CLAIMS** ..................................... 11
Section 4.1    Classification ........................................................... 11
Section 4.2    Allowance ................................................................ 11
Section 4.3    Treatment ................................................................. 11

ARTICLE 5    **PROVISIONS FOR TREATMENT OF SECURED CLAIMS** ....... 12
Section 5.1(a)    Class 1(a) Secured Claims not including DASNY Claims ................... 12
   (b)    Class 1(b) DASNY Claims ..................................... 13

ARTICLE 6    **PROVISIONS FOR TREATMENT OF PRIORITY TAX CLAIMS** .......................................................... 13
Section 6.1    Classification ........................................................... 13
Section 6.2    Treatment ................................................................. 13
Section 6.3    Other Priority Claims .............................................. 14

ARTICLE 7    **TREATMENT OF PROVISIONS FOR GENERAL UNSECURED CLAIMS AND MEMBERSHIP INTERESTS** ................ 14
Section 7.1    Unsecured Claims .................................................... 14
Section 7.2    Medical Malpractice Claims ................................... 14
Section 7.3    Existing Equity ........................................................ 15

ARTICLE 8    **IMPLEMENTATION OF THE PLAN AND THE LIQUIDATION TRUSTEE** ...................................... 15
Section 8.1    Implementation of the Plan ..................................... 15
Section 8.2    Plan Funding ............................................................ 15
Section 8.3    Vesting of Assets in the Debtor ............................. 15

Section 8.4     Continuing Existence ..................................................................16
Section 8.5     Management Debtor.....................................................................16
Section 8.6     Powers and Obligations of the Liquidation Trustee...........................16
Section 8.7     Liquidation Trustee's Bond ..........................................................17
Section 8.8     Resignation, Death or Removal of the Liquidation Trustee .................18
Section 8.9     Committee...................................................................................18
Section 8.10    Rights of Action..........................................................................18
Section 8.11    Corporate Action.........................................................................18
Section 8.12    Cancellation of Existing Securities, Instruments and Agreements .......19
Section 8.13    Full and Final Satisfaction ...........................................................19
Section 8.14    Setoffs .......................................................................................19
Section 8.15    Funding of the Disputed Claims Reserve ........................................19
Section 8.16    Plan Distributions .......................................................................20
Section 8.17    Cash Distributions.......................................................................20
Section 8.18    Delivery of Plan Distributions .......................................................20
Section 8.19    Distributions to Holders as of the Confirmation Date .......................21
Section 8.20    Abandoned Estate Assets .............................................................21
Section 8.21    Windup.......................................................................................21
Section 8.22    Indefeasibility of Distributions .....................................................21
Section 8.23    Distribution of Unclaimed Property................................................21
Section 8.24    Saturday, Sunday, or Legal Holiday................................................21
Section 8.25    Final Order ................................................................................21

ARTICLE 9      VOTING .....................................................................................21
Section 9.1     Voting of Claims .........................................................................21
Section 9.2     Nonconsensual Confirmation.........................................................22

ARTICLE 10     EXECUTORY CONTRACTS AND UNEXPIRED LEASES........22
Section 10.1    Assumption or Rejection of Executory Contracts...............................22
Section 10.2    Approval of Assumption or Rejection of Executory Contracts ............22
Section 10.3    Bar Date for Filing Proofs of Claim Relating to Executory
                Contracts Rejected .......................................................................22

ARTICLE 11     INJUNCTION AND RELEASES .......................................................22
Section 11.1    Injunction ..................................................................................22
Section 11.2    Releases.....................................................................................24
Section 11.3    Exculpation .................................................................................24
Section 11.4    Release of Collateral ...................................................................25
Section 11.5    Cause of Action Injunction ...........................................................25
Section 11.6    Preservation and Application of Insurance ......................................25
Section 11.7    Limitation....................................................................................25

ARTICLE 12     PROVISIONS FOR RESOLVING AND TREATING CLAIMS ...26
Section 12.1    Prosecution of Disputed Claims.....................................................26
Section 12.2    Settlement of Disputed Claims ......................................................26
Section 12.3    No Distributions Pending Allowance ..............................................27

ARTICLE 13     CONDITIONS TO CONFIRMATION OF PLAN............................27
Section 13.1    Conditions to Confirmation ..........................................................27
Section 13.2    Conditions to Effective Date.........................................................27
Section 13.3    Waiver of Conditions ...................................................................28
Section 13.4    Notices to Court ..........................................................................28

**ARTICLE 14**  **MODIFICATION REVOCATION OR WITHDRAWAL OF THE PLAN** ......................................................... 28
Section 14.1    Modification of Plan: Generally ..................................... 28
Section 14.2    Revocation or Withdrawal of Plan .................................. 28

**ARTICLE 15**  **MISCELLANEOUS PROVISIONS** ............................. 28
Section 15.1    Payment of Statutory Fees ............................................ 28
Section 15.2    Reports ........................................................................ 28
Section 15.3    Governing Law ............................................................ 28
Section 15.4    Withholding and Reporting Requirements ..................... 28
Section 15.5    Section 1146 Exemption ............................................... 29
Section 15.6    Severability .................................................................. 29
Section 15.7    Reservation of Rights ................................................... 29
Section 15.8    Binding Effect: Counterparts ........................................ 29
Section 15.9    Notices ......................................................................... 29

**ARTICLE 16**  **RETENTION OF JURISDICTION** ............................ 30
Section 16.1    Exclusive Jurisdiction of the Court ................................ 30
Section 16.2    Non-Exclusive Jurisdiction of the Court ........................ 31
Section 16.3    Failure of the Court to Exercise Jurisdiction ................. 32

**ARTICLE 17**  **SUBSTANTIAL CONSUMMATION** ........................... 32

**ARTICLE 18**  **RESERVATION OF RIGHTS** ................................... 38

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (csimpson@windelsmarx.com)

*Attorneys for IM Foundation, Inc.,*
 *Plan Proponent*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                       :

In re:                    :      Chapter 11 Case
                       :

INTERFAITH MEDICAL CENTER, INC.,   :      No. 12-48226 (CEC)
                       :

             Debtor.   :
                       :
-------------------------------------------------------------x

## PLAN OF LIQUIDATION

      IM Foundation, Inc. ("IMF"), a creditor of the above-captioned chapter 11 estate, hereby proposes this Chapter 11 Plan of Liquidation (the "Plan") pursuant to section 1121(c) *et seq.* of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE 1

## DEFINITIONS

      1.1    Defined Terms.  For the purpose of this Plan, each of the terms set forth in this Article 1 shall have the meaning ascribed thereto below and such meaning shall be equally applicable to the singular and plural forms of the terms defined. All of the definitions and provisions contained in this Article 1 are and shall be regarded as integral, substantive and operative provisions of this Plan.

      1.2    Other Terms.  A term that is used in the Plan and not defined herein, but that is defined in the Disclosure Statement, the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure, shall have the meaning set forth therein. Any reference contained in this Plan to a particular exhibit, paragraph or article shall be deemed to be a reference to an exhibit, paragraph or article of this Plan.

    1.3   <u>Rules of Construction</u>. The rules of construction set forth in section 102 of the Bankruptcy Code shall be applicable to all of the provisions of this Plan, without in any way limiting the foregoing, as used in this Plan, the words "includes" and "including" are without limitation.

    "<u>Administrative Claim</u>" shall mean any cost or expense of administration of the Case allowed under sections 503(b) and 507(a)(1)and (b) of the Bankruptcy Code, including all allowances of compensation or reimbursement of expenses to the extent Allowed by the Bankruptcy Court upon entry of a Final Order under section 330 of the Bankruptcy Code and the Bankruptcy Rules, and any fees or charges assessed against the Debtor's estate under 28 U.S.C. §1930.

    "<u>Administrative Claims Bar Date</u>" shall mean the Initial Administrative Bar Date or Final Administrative Claims Bar Date as applicable.

    "<u>Allowed</u>" when used as an adjective preceding the word "Claim" or "Membership Interest", shall mean any Claim against or Membership Interest in the Debtor:

        a. in respect of which a proof of Claim or interest has been filed with the Court on or before the Bar Date and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Final Order or this Plan;

        b. which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent as to amount, as to which no objection to the allowance thereof has been interposed within any applicable period of limitation;

        c. as to which any such objection has been interposed, to the extent such Claim or Membership Interest has been allowed by a Final Order; or,

        d. any Claim or Equity Interest specifically identified in this Plan as an Allowed Claim or an Allowed Equity Interest; and or in respect of Medical Malpractice Claims estimated, by a Final Order. An *"Allowed Claim"* shall be net of any valid setoff or recoupment amount based on a valid setoff or recoupment right. Except as otherwise expressly provided herein, the term *"Allowed Claim"* shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damages, or any other Claims or obligations that do not compensate for actual losses incurred or (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

    "<u>Assets</u>" shall mean the property and all other property (real or personal, tangible or intangible), rights and interests of the Debtor to be transferred pursuant to the terms of this Plan.

"<u>Avoidance Action</u>" shall mean any Claims, rights, defenses, or other Causes of Action arising under any Section of Chapter 5 of the Bankruptcy Code, including, without limitation, Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date.

"<u>Ballot</u>" shall mean the form distributed to each holder of an Impaired Claim against the Debtors that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan.

"<u>Bankruptcy Code</u>" shall mean the Bankruptcy Reform Act of 1978, as amended, and in effect on the Petition Date and as set forth in Title 11 of the United States Code.

"<u>Bar Date</u>" shall mean the last date fixed by Final Order of the Bankruptcy Court for filing proofs of claim or interests in this Chapter 11 case.

"<u>Business Day</u>" shall mean any day on which commercial lenders are open for business in New York, New York.

"<u>Case</u>" shall mean the Debtor's case under chapter 11 of the Bankruptcy Code, Chapter 11 Case No. 12-48226 (CEC), which was commenced by the filing of a voluntary petition with the Court on the Petition Date.

"<u>Cash</u>", shall mean with respect to payment under the Plan, lawful currency of the United States of America, regular check, certified check, bank check or wire transfer from a domestic bank.

"<u>Causes of Action</u>" shall mean any and all Claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party Claims, counterclaims and cross-claims against any Person, whether arising under the Bankruptcy Code or federal, state, common, or other law, regardless of whether such Cause of Action is the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including, without limitation, as to Causes of Action of the Debtor: (a) all Avoidance Actions; (b) all other Claims in avoidance, recovery, and/or subordination; and (c) all other actions described in the Disclosure Statement, the Schedules, or the Plan.

"<u>Claim</u>" shall mean the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean a Class of Claims against the Debtor or Interests described in Article 2 of the Plan.

"Committee" shall mean the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Case, as constituted from time to time, in its official capacity and as representative of holders of Unsecured Claims with respect to the Case, but does not mean the members of the Committee in their individual capacities.

"Confirmation Date" shall mean the date on which conditions to confirmation are either satisfied or waived in accordance with the terms of this Plan and the Confirmation Order.

"Confirmation Order" shall mean the Final Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Consummation Date" shall mean the date when all payments under the Plan have been made and all of the Debtor's assets have been administered.

"Contested Claim" shall mean a Claim that is not an Allowed Claim.

"Covered Person" shall mean any physician, resident, fellow, nurse or other employee of the Debtors to the extent that such Person has a right of indemnification, or another Claim, against or from any Debtor with respect to claims of alleged medical malpractice.

"Court" or "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York, and any appellate or other court that is competent to exercise jurisdiction over any matter or proceeding arising in or relating to this Chapter 11 case.

"Creditor" shall mean "creditor" as defined in Section 101(10) of the Bankruptcy Code and shall refer to any holder of a Claim against the Debtor or holder of any Claim against Assets of the Debtor as defined in Section 102(2) of the Bankruptcy Code.

"DASNY" shall mean The Dormitory Authority of the State of New York.

"DASNY Claims" shall mean DASNY's right to payment, whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, undisputed, legal, equitable, secured or unsecured, as a result of loans or advances made by DASNY to the Debtor.

"Debtor" or "Debtors" shall mean Interfaith Medical Center, Inc., the Debtor-in-Possession in this Chapter 11 case, as the context dictates.

"Deficiency Claims" shall mean any portion of a Claim(s) to the extent the value of the holder's interest in Estate Assets is secured as determined by the Bankruptcy Court under 11 U.S.C. §506(a).

"DIP Loan" shall mean the $15,000,000 Senior Secured Priming Priority, Super Priority DIP Facility, dated August 12, 2013, between the Debtors and DASNY, including any amendment thereof.

"Disallowed" shall mean with reference to any Claim, a Claim against the Debtor or any portion thereof that: (i) has been disallowed or expunged by a Final Order; (ii) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Debtor; (iii) is scheduled at zero or as contingent, disputed or unliquidated and as to which no proof of Claim has been filed by the applicable Bar Date or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order; or (iv) is not listed in the Schedules and as to which no proof of Claim has been timely filed by the applicable Bar Date or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order.

"Disclosure Statement" shall mean the disclosure statement filed with the Court by the Plan Proponent pursuant to Section 1125 of the Bankruptcy Code with respect to the Plan, including all exhibits and schedules thereto, which was approved by the Court pursuant to Section 1125 of the Bankruptcy Code, as it may be altered, amended, supplemented or modified from time to time.

"Disputed" shall mean with reference to any Claim, a Claim against the Debtor that is not an Allowed Claim or a Disallowed Claim.

"Disputed Claims Reserve" shall mean the account maintained by the Liquidation Trustee for the Debtors described in Section 8.16 of the Plan.

"DOH" shall mean the New York State Department of Health.

"Effective Date" shall mean the first Business Day upon which each of the conditions in Article 14 of the Plan has been satisfied or waived pursuant to Section 14.3 of the Plan.

"Enjoined Entities" shall mean each holder of a Claim, each party in interest, and each entity acting or purporting to act by, through, under or on behalf of any of the foregoing.

"Estate Assets" shall mean any and all property of the Estate, of every kind and character, wherever located, whether real or personal, tangible or intangible, and all proceeds therefrom including, without limitation: (i) any and all Claims or Causes of Action of the Debtor or the Estate against third parties; (ii) any unencumbered Assets of the Estate not otherwise identified in this definition; (iii) the Remaining Cash; and (iv) all files, books and records relating to the Debtor's business or the administration of the Plan.

"Estate" shall mean the Chapter 11 estate of the Debtor created by Section 541 of the Bankruptcy Code.

"Executory Contract" shall mean the type of agreement contemplated by the like term found in section 365 of the Bankruptcy Code.

"Federal Rules of Bankruptcy Procedure", defined herein as the "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as in effect on the date of this Plan.

"Final Administration Claims Bar Date" shall mean the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline established by an Order of the Bankruptcy Court.

"Final Order" shall mean an order of the Court which shall not have been reversed, stayed, modified or amended and:

    a.   the time to appeal from or to seek review or rehearing of same shall have expired;

    b.   no appeal, review, certiorari or rehearing is pending; and,

    c.   the order has become conclusive of all matters adjudicated and is in full force and effect; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Impaired" shall mean "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

"Indemnification Claim" shall mean any Claim by a Covered Person against the Debtor for indemnification, subrogation, contribution or reimbursement arising from any and all liabilities, loss, damage, costs and expenses of whatever kind, including attorneys fees, arising from any professional liability claim or lawsuit which may arise by reason of negligent acts committed or performed within the scope of such Covered Person's employment, studies, administrative or committee functions or responsibilities with the Debtors.

"Initial Administration Claims Bar Date" shall mean the last date fixed by Final Order of the Bankruptcy Court for filing proofs of Administration Claims in these Chapter 11 cases.

"Interests" shall mean all legal, equitable, contractual and other ownership rights or interests in the Debtor, including, without limitation, common and preferred stock, membership interests, options to purchase such stock or interests, or any unpaid dividends or distributions thereon or any agreements or contracts to purchase or acquire the same.

"Liens" shall mean any and all liens, security interests, encumbrances, mortgages, pledges, restrictions, licenses, interests, state and local taxes with respect to real estate secured, filed or scheduled, noticed, recorded, non-contingent or liquidated.

"Liquidation Trust" shall mean the grantor trust created by the Debtor into which it shall deposit all Estate Assets, other than assets to be transferred to DASNY, free and clear of claims, liens, encumbrances, charges, interests and other rights and interests of creditors arising on or before the Effective Date.

"Liquidation Trustee" shall mean Lori Lapin Jones, Esq. and any successor thereafter appointed by a Final Order for the purpose of making distributions under the Plan.

"Mediation Order" shall mean that certain Order of the Bankruptcy Court, which Order, among other things: will (a) establish the Mediation Procedures; and (b) enjoin the commencement or continuation of medical malpractice actions against, among others, certain Covered Employees.

"Mediation Procedures" shall mean procedures established to resolve Medical Malpractice Claims pursuant to the Mediation Order.

"Medical Malpractice Claim" shall mean any prepetition Claim asserted or which can be asserted against the Debtor on account of or related to the Debtor's purported liability resulting from the provision of medical services including personal injury or wrongful death claims, net of the proceeds of any third party insurance available to pay the holder of such Claim.

"Net Proceeds" shall mean the Remaining Cash together with the aggregate Cash proceeds (i) of all Assets disposed of by the Estate prior to the Effective Date and (ii) from the liquidation of the Assets thereafter, minus Cash necessary to fund pending or future obligations in respect of Administrative/Priority and Secured Claims, the costs of collection and the payment of any amounts necessary to fund the Causes of Action or expenses of the Liquidation Trustee or the Post Effective Date Committee (and related interest, fees, and expenses related to each), the Medical Malpractice Reserve and the Disputed Claims Reserve, as applicable, in connection therewith.

"Nurse" shall mean a licensed and/or registered nurse who was employed as such by the Debtor.

"Other Priority Claim" shall mean a Claim against the Debtor entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code other than a Claim entitled to priority in payment pursuant to Section 507(a)(l), 507(a)(2), or 507(a)(8) of the Bankruptcy Code.

"PBGC" shall mean the wholly owned United States Government corporation that guarantees the payment of certain benefits upon termination of a pension plan covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2006 & Supp. III 2009).

"Pension Plan" shall mean the Interfaith Medical Center Pension Plan, Employer Identification No./Plan No. _____, a single-employer pension plan covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2006 & Supp. III 2009).

"Person" shall mean an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, government (or agency or political subdivision thereof), or other entity.

"Petition Date" shall mean December 2, 2012, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"Plan" shall mean this Plan of Reorganization (Liquidation) of the Debtor, including any exhibits hereto (which exhibits are hereby expressly incorporated in this Plan by reference as if set forth herein in their entirety), and any amendments, modifications or corrections to this Plan.

"Plan Proponent" shall mean IM Foundation, Inc., in its capacity as proponent of the Plan; *provided, however,* that after the Effective Date, such term shall mean the Liquidation Trustee.

"Pre-Petition Cash" shall mean any and all sums in the possession, custody or control of the Debtor that are attributable to the Debtor's operations prior to the Petition Date.

"Priority Claim" shall mean any Claim entitled to priority in accordance with section 507 of the Bankruptcy Code other than an Administrative claim

"Priority Tax Claim" shall mean any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

"Professional Fees" shall mean all fees, costs and reimbursement of expenses incurred in the Case by any professional person (within the meaning of sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise), retained by an order of the Bankruptcy Court, which fees, costs, and expenses shall have been awarded by Final Order of the Bankruptcy Court pursuant to sections 330 or 503 (b) of the Bankruptcy Code, and shall include post confirmation fees and/or expenses of professional persons.

"Professional Fee Claims Bar Date" shall mean 4:00 p.m. (prevailing Eastern time) on the date that is forty-five (45) days after the Effective Date.

"Pro Rata" shall mean with respect to any monetary distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum allowable amount of all Disputed Claims in such Class for which any reserve must be established under the Plan.

"Remaining Cash" shall mean all Cash held by or for the benefit of the Estate upon the Effective Date.

"Retained Professional" shall mean the professional entity which may be employed with the approval of the Bankruptcy Court under sections 327, 328, 330, 331, 363, 503(b) and 1103 of the Bankruptcy Code.

"Scheduled" shall mean with respect to any Claim, that such Claim is listed on the Schedules.

"Schedules" shall mean the Schedules of Assets and Liabilities filed with the Court on January 17, 2013 in the Case, as amended from time to time in accordance with Bankruptcy Rule 1009.

"Secured Claim" shall mean a Claim (a) which the holder has the right to look to certain specified collateral for satisfaction of its Claim, and (b) against the Debtor to the extent such Claim is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest, that has been perfected properly as required by applicable law and is not otherwise avoidable by the Debtor as debtor-in-possession or any other Person, but only to the extent of the value of the Debtor's interests in such property determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

"Unclaimed Property" shall have the meaning ascribed to that term in Section 8.19 of the Plan.

"Unimpaired" shall mean, with respect to a Class of Claims, that such Class is not Impaired.

"Unsecured Claim" shall mean a claim which is not secured by collateral and which is not entitled to a priority under section 507(a) of the Bankruptcy Code.

"U.S. Trustee" shall mean the Office of the United States Trustee for the Eastern District of New York.

"U.S. Trustee Fees" shall mean all fees and charges assessed against the Estate under Section 1930 of Title 28 of the United States Code, and interest, if any, for delinquent quarterly fees pursuant to Section 3717 of Title 31 of the United States Code.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND MEMBERSHIP INTERESTS

2.1     Classification of Allowed Claims and Membership Interests; Elimination of Classes.  A Claim is in a particular Class only to the extent that the Claim falls within the description of that Class and is in a different Class to the extent that the remainder of the Claim falls within the description of such different Class. In addition, a Claim in a particular Class is entitled to a distribution under the Plan only to the extent that the Claim or Membership Interest is Allowed.  Any Class of Claims that is not occupied as of the date of the Confirmation Hearing by an Allowed Claim, or a Claim temporarily Allowed under Rule 3018 of the Bankruptcy Rules, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes. Claims treated by this Plan fall within the following categories or Classes:

|         |    |                                      |
|---------|----|--------------------------------------|
|         | -- | Administration and Priority Claims   |
| Class 1 | -- | Secured Claims                       |
| Class 2 | -- | Priority Tax Claims                  |
| Class 3 | -- | General Unsecured Claims             |
| Class 4 | -- | Membership Interests                 |

Class 1: Secured Claims. Class 1 consists of Allowed Secured Claims against the Debtor.  For convenience of identification, the Plan describes Allowed Secured Claims in Class 1 as two (2) separate subclasses, each based on the underlying property securing such Allowed Secured Claim, and each subclass is treated hereunder as a distinct Class for treatment and distribution purposes and for all other purposes under the Bankruptcy Code.  Class 1(a) is not Impaired by the Plan and, therefore, each holder of an Allowed Claim 1(a) is deemed to have accepted the Plan and is not entitled to vote, to accept or reject the Plan.  Class 1(b) is Impaired by the Plan and, therefore, each holder of an Allowed Class 1(b) Claim is entitled to vote to accept or reject the Plan.

Class 2: Priority Tax Claims. Class 2 consists of Priority Tax Claims against the Debtor. Class 2 is not Impaired by the Plan and, therefore, each holder of an Allowed Class 2 Claim is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

Class 3: General Unsecured Claims. Class 3 consists of Allowed Unsecured Claims against the Debtor. The Plan describes General Unsecured Claims in Class 3 as two (2) separate subclasses, with medical malpractice claims placed into a separate subclass. Class 3(a) and Class 3(b) are both Impaired by the Plan and, therefore, each holder of an Allowed Class 3(a) or Class 3(b) Claim is entitled to vote to accept or reject the Plan.

Class 4: Membership Interests. Class 4 consists of all Membership Interests. Each holder of Interests in Class 4 shall not receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan and, therefore, each holder of Interests in Class 4 is not entitled to vote to accept or reject the Plan.

## ARTICLE 3

## PROVISIONS FOR TREATMENT OF PROFESSIONAL FEE CLAIMS

3.1    Professional Fee Claims Bar Date.  All final applications for payment of Professional Fee Claims for the period through and including the Effective Date shall be filed with the Court and served on the Liquidation Trustee and the other parties entitled to notice pursuant to the Interim Compensation and Reimbursement Procedures Order [Docket No. 124] on or before the Professional Fee Claims Bar Date, or such later date as may be agreed to by the Liquidation Trustee.  Any Professional Fee Claim that is not asserted in accordance with this Section 3.1 shall be deemed Disallowed under the Plan and the holder thereof shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset, recoup or recover such Claim against the Estate or the Estate's Assets or property.

3.2    Treatment. Each holder of an Allowed Professional Fee Claim shall be paid in Cash from the Remaining Cash in an amount equal to such Allowed Professional Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes Allowed by Final Order, unless such holder shall agree to a different treatment of such Claim.

3.3    Post Effective Date Services. The fees and expenses of professionals retained by the Liquidation Trustee and the Post Effective Date Committee on and after the Effective Date, shall be paid by the Liquidation Trustee upon receipt of invoice(s) therefor, or on such other terms as the Liquidation Trustee may agree to, without the need for further Court authorization or entry of a Final Order, but subject to the approval of the Post Effective Date Committee, which approval shall not unreasonably be withheld. If the Liquidation Trustee and the professional cannot agree on the amount of post Effective Date fees and expenses to be paid to such professional, such amount shall be determined by the Court.

## ARTICLE 4

## PROVISIONS FOR TREATMENT OF ADMINISTRATION AND PRIORITY CLAIMS

4.1    Classification.  Administration and Priority Claims shall not be Impaired under the Plan.

4.2    Allowance.   An application for allowance or request to the Court for payment of an Administration Claim incurred on, or prior to, the Effective Date shall be served on the appropriate parties in the Case and filed with the Court on or before the Initial Administration Claims Bar Date.  All Administration Claims that could have been asserted as of the Initial Administration Claims Bar Date but were not properly and timely asserted shall be barred, disallowed and expunged.  All other Administration Claims must be filed on or prior to the Final Administration Claims Date.  All Administration Claims that are not timely and properly asserted on or prior to the Final Administration Claims Bar Date shall be barred, disallowed and expunged.

4.3    Treatment. Each Allowed Administration and Priority Claim shall be satisfied and discharged, as follows:

a.    With respect to the holder of an Allowed Administration Claim (other than non-ordinary course of business Claims, the Claims for Professional Fees, or costs to cure defaults under executory contracts assumed by the Debtor) or an Allowed Priority Claim, by paying the holder thereof the Allowed amount of such Claim in Cash in full from Remaining Cash, on the later of the Effective Date or the date such claim becomes an Allowed Administration Claim or Priority Claim, unless paid prior thereto and except to the extent the holder of an Allowed Administrative and Allowed Priority Claim and the Debtor agrees to a different treatment, which treatment shall be acceptable to DASNY, each Allowed Administrative and Priority Claim shall be paid in full in Cash on the Effective Date or as otherwise provided in the Bankruptcy Code; and

b.    With respect to an Allowed Administration Claim for Professional Fees, by paying the holder thereof the Allowed amount of such Claim in Cash in full, on or before the Effective Date, except to the extent such holder has agreed to accept a lesser amount.

c.    With respect to the payment of statutory fees to the U.S. Trustee, by paying all outstanding fees payable pursuant to Section 1930 of Title 28 of the United States Code on or before the Effective Date.

## ARTICLE 5

## PROVISIONS FOR TREATMENT OF SECURED CLAIMS

5.1    (a)    Class 1(a) Secured Claims not including DASNY Claims. (a) Payment in full in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date the Claim becomes due and payable by its terms; (b) the legal, equitable and contractual rights to which such Claim entitles the holder, unaltered by the Plan; (c) the treatment described in Section 1124(2) of the Bankruptcy Code; (d) all collateral securing such Claim, without representation or warranty by or recourse against the Debtor or (e) such other treatment agreed to with the Holder of such Claims, which treatment shall be reasonably acceptable to DASNY. Class 1(a) Secured Claims consists of the first lien for any unpaid water and sewer charges and rents held by the New York City Water Board (the "Water Board") and the PBGC's claim for unfunded benefit liabilities of the Interfaith Medical Center, Inc. Pension Plan.

The Water Board filed a secured proof of claim under the Public Authorities Law New §1045(j)(5) and the York City Administrative Code §11-301 in the amount of $_____, plus statutory interest at 9% accruing thereon until fully paid (the "Water Board Lien"). The Water Board Lien allegedly primes all other liens and secured interests, including DASNY's secured claims against the Debtor. The Water Board Lien is secured and unimpaired under the Plan and shall remain a first lien on the Real Property after such property is conveyed to DASNY, subject to such liens, until the Real Property is sold. The Water Board Lien shall be satisfied by the Debtor and/or DASNY from the proceeds of the sale of the Real Property free and clear of the Water Board Lien.

The Debtor is a contributing sponsor, or a member of a contributing sponsor's controlled group (as determined pursuant to 29 U.S.C. § 1301(a)(14)) with respect to the Pension Plan. On _____, the PBGC issued to the Plan Administrator of the Pension Plan under 29 U.S.C. § 1002(16) and 1301(a)(1), a notice of determination stating that the PBGC has determined, under 29 U.S.C. § 1342(a)(1) and (2), that (i) the Pension Plan has not met the minimum funding standard required under section 412 of the Internal Revenue Code and will be unable to pay benefits when due; (ii) under 29 U.S.C. § 1342(c), the Pension Plan must be terminated to protect the interests of the Pension Plan's participants; and, (iii) that the PBGC intends to proceed to have the Pension Plan terminated and the PBGC appointed as the statutory trustee, with _____, being established as the Pension Plan's termination date. On _____, the Debtor moved for an order authorizing to enter into an agreement with the PBGC that, inter alia, terminates the Pension Plan pursuant to 29 U.S.C. § 1342(c), names the PBGC as the Pension Plan's statutory trustee pursuant to 29 U.S.C. § 1342(c), and establishes the Pension Plan's termination date as _____ (the "Trusteeship Agreement"). Upon the Court's entry of such an order, _____ will promptly execute and deliver two signed originals of the Trusteeship Agreement to the PBGC.

The PBGC has filed one (1) contingent unliquidated proof of claim against Interfaith Medical Center, Inc. for statutory liability to the Pension Plan for unpaid minimum funding contributions under 26 U.S.C. §§ 412, 430 and 29 U.S.C. § 1082.  PBGC alleges that this proof of claim is secured by statutory liens filed by the PBGC, on behalf of the Pension Plan, against Interfaith Medical Center's property and rights to property in the aggregate amount of $_____ plus interest.  In the Disclosure Statement accompanying this Plan, the Committee reserved its right to challenge the PBGC's assertion of secured status for their claim.  However, the value of the Debtor's assets to which these liens would otherwise attach is less than the amount of the Secured Claims with a priority over these lien claims.  Therefore, the deficiency amounts of these claims are unsecured and shall be treated and classified as an Unsecured Claim.

(b)  <u>Class 1(b) DASNY Claims</u>.  In satisfaction of the secured portion of DASNY's DIP, Superpriority, Administrative Priority, and Secured Claims, which are valued at $_____, DASNY (or its designee) shall receive subject to approval of the Bankruptcy Court in the Confirmation Order, (i) subject to the Water Board Lien, Lease, fee simple title to the Real Property located at 1545 Atlantic Avenue, New York, New York, (ii) any equipment and other assets that DASNY in its sole discretion believes is necessary for the continuing healthcare mission at the Facility, and (iii) the assignment of any grants or other funding, that the Debtor may receive from the United States and/or New York State, which grants and other funding may be used as a source of payment of the Debtor's Administration, Priority and other Secured claims, and (iv) a full and general release of any and all claims in respect to the Debtor.  The remaining amount of DASNY's claims shall be a Deficiency Claim and shall be treated as a Class 3(a) General Unsecured Claim.  Class 1(b) is Impaired and entitled to vote.

In addition, in respect of this settlement of DASNY's Class 1(b) Secured Claim, and the releases granted hereunder, DASNY agrees to fund the Liquidation Trust with not less than $500,000.00 from remaining DIP Loan proceeds or otherwise.

## ARTICLE 6

## PROVISIONS FOR TREATMENT OF PRIORITY TAX CLAIMS

6.1    <u>Classification</u>.  Class 2 shall consist of Claims of a State, Federal or Municipal taxing authority.  Class 2 is not Impaired.

6.2    <u>Treatment</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agrees to a different treatment, which treatment shall be reasonably acceptable to DASNY, each holder of an Allowed Priority Tax Claim shall receive Cash on the Effective Date in an amount equal to such Allowed Priority Tax Claim from Remaining Cash.  Any Claim or demand for a penalty relating to any Priority Tax Claim (other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code) shall be Disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor's Estate or any of the Debtor's Assets, provided however that the foregoing provision shall not apply to the United States Internal Revenue Service.

6.3    Other Priority Claims.  Each holder of an Allowed Other Priority Claim, in full and complete satisfaction of such Claim, shall be paid in full in Cash in an amount equal to its Allowed Other Priority Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in the documentation governing such Claim or in a prior agreement with such holder).

# ARTICLE  7

## TREATMENT OF PROVISIONS FOR GENERAL UNSECURED CLAIMS AND MEMBERSHIP INTERESTS

7.1    Unsecured Claims.  After the payment of all Allowed, or reserving in full for all Disputed, Administrative Claims, Professional Fee Claims, Priority Tax Claims and Other Priority Claims, each in accordance with the provisions of the Plan, each holder of an allowed Class 3(a) General Unsecured Claim shall receive, in full and final satisfaction of its claims, its *pro rata* share of proceeds from the Liquidation Trust.  Class 3(a) is Impaired and entitled to vote.

7.2    Medical Malpractice Claims.  Pursuant to the Mediation Procedures:

(a)    Each holder of a timely or deemed timely Class 3(b) Medical Malpractice Claim may elect to be granted relief from the automatic stay imposed under section 362(a) of the Bankruptcy Code to litigate such holder's Medical Malpractice Claim in state court provided that, if such election is made, any recovery on account of such Medical Malpractice Claim shall be limited to available insurance, if any. Each holder of a Class 3(b) Medical Malpractice Claim that asserts a claim against any Covered Person for Claims that would entitle such Covered Persons to an Indemnification Claim may not make this election unless such holder affirmatively elects to either release such Covered Person from any liability or look only to available insurance with respect to such Covered Person prior to pursuing such election.

(b)    Any holder of a Class 3(b) Medical Malpractice Claim, for which a proof of claim was timely filed (or deemed timely filed), that does not elect the treatment under Section 7.2(a) of the Plan, shall have such holder's Medical Malpractice Claim Allowed or Disallowed pursuant to the Mediation Procedures. If the Mediation Procedures do not result in an Allowed Medical Malpractice Claim, such Claim shall be estimated by the District Court pursuant to section 502(c) of the Bankruptcy Code together with any vicarious or other liability the Debtors may have related to such Claim.

(c)    The holders of Allowed Class 3(b) Medical Malpractice Claims, whether estimated by the District Court or liquidated through the Mediation Procedures, in full and complete satisfaction of such Allowed Claims, shall receive a *pro rata* distribution from the Liquidation Trust equal to the *pro rata* percentage received by Class 3(a) Claims.

(d)    If the holder of a Class 3(b) Medical Malpractice Claim elects the treatment under Section 7.2(a) to have the automatic stay lifted, such election will be binding on such holder regardless of whether Class 3 accepts the Plan, provided that the Plan is confirmed and the Effective Date occurs. In addition, nothing contained in the Plan shall alter, modify, limit or impair the provisions of those "So Ordered" stipulations and orders lifting the automatic stay, resolving litigation claims and limiting recoveries to available insurance; such stipulations will remain in full force and effect and control the disposition of the Medical Malpractice Claims subject to those stipulations.

7.3    Existing Equity. No distribution. To the extent necessary existing Membership Interests in the Debtors shall be cancelled.

## ARTICLE 8

## IMPLEMENTATION OF THE PLAN AND THE LIQUIDATION TRUSTEE

8.1    Implementation of the Plan. The Plan will be implemented by the Liquidation Trustee in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

8.2    Plan Funding. The funds to be utilized to make Cash payments under the Plan have been and/or will be generated from, among other things, the not less than $500,000.00 contribution from DASNY, collections of patient and accounts receivable, the proceeds of sale of substantially all of the Debtor's assets to date in the Cases, other than the assets to be conveyed to DASNY and the proceeds of the liquidation of the remaining Assets of the Debtor. As these funds are realized by the Debtor, the Debtor shall deposit the funds in a segregated account at TD Bank N.A. (the "Liquidation Trust") subject to administration and disbursement by the Liquidation Trustee as set forth below.

8.3    Vesting of Assets in the Debtor. Except as expressly provided herein, on the Effective Date, all Estate Assets shall pass to and vest in the Debtor as provided herein free and clear of all Claims, Liens, encumbrances, charges, Interests and other rights and interests of Creditors and equity holders arising on or before the Effective Date, but subject to the terms and conditions of the Plan and the Confirmation Order. However, nothing in the Plan or Confirmation Order shall serve to extinguish or limit any federal interest which, pursuant to 45 CFR Part 74 exists with respect to property or equipment purchased by the Debtor with grant monies provided by the U.S. Department of Health and Human Services ("HHS"). While the Debtor's position is that any transfer of property or equipment is subject to prior approval of the Bankruptcy Court, HHS disagrees with the Debtor and asserts that it may exercise without seeking prior court approval (i) its right, pursuant to 45 CFR §74.34(h), to direct the transfer of any such property or equipment (including title) to the Federal government or to an eligible non-Federal party named by the granting agency, or (ii) its right, pursuant to CFR §74.34(g), to direct the Debtor to dispose of such property or equipment in accordance with the applicable regulations. Nothing in the Plan or Confirmation Order shall affect the reimbursement, if any, that HHS may be entitled to from any sales proceeds of such property or equipment under applicable regulations. HHS reserves the right to assert that no Bankruptcy Court approval is required prior to HHS exercising its rights with respect to property or equipment purchased by Debtor with federal grant monies pursuant to 45 CFR Part 74 or other applicable law.

8.4     Continuing Existence. From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, of any remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting Causes of Action, interests, rights and privileges of the Debtor, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns and (vii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan.

8.5     Management Debtors.  On the Effective Date, the operation of the Debtor shall become the general responsibility of the Liquidation Trustee in accordance with the Liquidation Trustee agreement and applicable law.

8.6     Powers and Obligations of the Liquidation Trustee

(a)     The Confirmation Order shall provide for the appointment of the Liquidation Trustee. The compensation for the Liquidation Trustee shall be established on or prior to the Confirmation Date and shall be subject to Court approval. The Liquidation Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)     The Liquidation Trustee will act for the Debtor in a fiduciary capacity as applicable to a board of directors, subject to the provisions of the Plan. On the Effective Date, the Liquidation Trustee shall succeed to all of the rights of the Debtor with respect to the Estate Assets necessary to protect, conserve, and liquidate all Estate Assets as quickly as reasonably practicable, including, without limitation, control over (including the right to waive) all attorney/client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Estate Assets that, prior to the Effective Date, belonged to, but are not limited to the Debtor pursuant to applicable law. The powers and duties of the Liquidation Trustee shall include:

(i)     to invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make Distributions of Cash to holders of Allowed Claims and pay taxes and other obligations owed by the Debtors or incurred by the Liquidation Trustee in connection with the wind-down of the Estates in accordance with the Plan;

(ii)     to receive, manage, invest, supervise, and protect the Estate Assets, including paying taxes or other obligations incurred in connection with the Estate Assets;

(iii)     subject to the approval of the Bankruptcy Court, to engage attorneys, consultants, agents, employees and all professional persons, to assist the Liquidation Trustee with respect to the Liquidation Trustee's responsibilities;

(iv)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Liquidation Trustee and to pay all other expenses for winding down the affairs of the Debtor in accordance with a wind-down budget, or as otherwise agreed to by the Liquidation Trustee or determined by the Bankruptcy Court;

(v)    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's business;

(vi)    to dispose of, and deliver title to others, or otherwise realize the value of all the remaining Estate Assets;

( vii)    to coordinate the collection of outstanding accounts receivable;

(viii)    to coordinate the storage and maintenance of the Debtor's books and records;

(ix)    to oversee compliance with the Debtor's accounting, finance and reporting obligations;

(x)    to prepare monthly operating reports and financial statements and U.S. Trustee quarterly reports;

(xi)    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

(xii)    to perform any additional corporate actions as necessary to carry out the wind-down and liquidation of the Debtor;

(xiii)    to communicate regularly with and respond to inquiries from DASNY and the U.S. Trustee and their professionals, including providing regular cash budgets, information on all disbursements on a weekly basis, and copies of bank statements on a monthly basis;

(xiv)    to object to, compromise and settle Claims;

(xv) to act on behalf of the Debtor in all adversary proceeding and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, to settle, retain, enforce, dispute or adjust and Claim and otherwise pursue actions involving Assets of the Debtors that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(xvi)    to implement and/or enforce all provisions of the Plan; and

(xvii)    such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the Plan.

8.7    <u>Liquidation Trustee Exempt from Giving Bond</u>. The Liquidation Trustee shall be exempt from giving any bond or other security unless otherwise ordered by the Court.

8.8    Resignation, Death or Removal of the Liquidation Trustee. The Liquidation Trustee may resign at any time upon not less than 30 days' written notice to the U.S. Trustee's Office. The Liquidation Trustee may be removed at any time by the Bankruptcy Court for cause upon application to the Court on five (5) days' written notice to the U.S. Trustee and the Liquidation Trustee and his or her counsel. In the event of the resignation, removal, death or incapacity of the Liquidation Trustee, the United States Trustee shall designate another Person to become the Liquidation Trustee, and thereupon the successor Liquidation Trustee, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor. No successor Liquidation Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

8.9    Committee.

(a)    On the Effective Date, the Committee shall cease to function and shall be disbanded.

8.10    Rights of Action. In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidation Trustee may pursue all reserved rights of action for the benefit of the holders of Class 3 Claims, including, without limitation, Causes of Action of the Debtor. Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Liquidation Trustee to pursue and prosecute any reserved rights of action. Except as otherwise set forth in the Plan, all Causes of Action of the Debtor shall survive confirmation of the Plan and the commencement and prosecution of Causes of Action of the Debtor shall not be barred or limited by any estoppel or *res-judicata*, whether judicial, equitable or otherwise. In reviewing the Plan and the Disclosure Statement, and in determining whether to vote for or against the Plan, Creditors (including Creditors who received payments or transfers from the Debtor within ninety (90) days prior to the Petition Date and insiders who received payments from the Debtor within one (1) year before the Petition Date) and other parties should consider that Causes of Action of the Debtor may exist against them, that, except as otherwise set forth in the Plan, the Plan preserves all Causes of Action of the Debtors, and that the Plan authorizes the Liquidation Trustee to prosecute all Causes of Action of the Debtor.

8.11    Corporate Action. Subject to the consummation of the transfers of the Real Property to DASNY, _____ and _____, as the case may be, prior to the Effective Date, on the Effective Date, the appointment of the Liquidation Trustee, and any and all other matters provided for under the Plan involving corporate action by the Debtor, its directors, their trustees or their shareholders, including, without limitation, the transfer of management responsibilities of the Debtor to the Liquidation Trustee, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable law, without any requirement of further action by the Debtor's directors, officers, trustees or shareholders. Upon the distribution of all Estate Assets pursuant to the Plan and the filing by the Liquidation Trustee of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; *provided, however,* that the Debtor may only take appropriate action to dissolve under applicable law after the aforesaid transfer of the Real Property. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw their business operations from where the Debtor previously conducted business.

8.12    Cancellation of Existing Securities, Instruments and Agreements. On the Effective Date, except as otherwise provided herein, all securities, instruments, and agreements governing any Impaired Claim or Interest shall be deemed cancelled and terminated, and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed released and/or satisfied as to the Debtor.

8.13    Full and Final Satisfaction. All payments and all distributions under the Plan shall be in full and final satisfaction, settlement and release of all Claims and Interests, except as otherwise provided in the Plan.

8.14    Setoffs. The Liquidation Trustee may, pursuant to and to the extent permitted by applicable law, setoff against any Claim asserted against the Estate Assets, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtor or the Estate may have against the holder of such Claim, provided that the Liquidation Trustee shall give the holders of such Claim notice of the proposed setoff and the holder of such Claim does not object to the proposed setoff within thirty (30) days; provided further that if an objection is timely raised to a proposed setoff, the Liquidation Trustee may seek relief from the Court to effectuate the setoff; and provided further that neither the failure to effect a setoff, nor the allowance of any Claim against the Debtor hereunder, shall constitute a waiver or release of any such Claim the Debtor or the Estate may have against such holder.

8.15    Funding of the Disputed Claims Reserve.

(a)    The portion of the Estate Assets attributable to Disputed Administrative, Priority Tax, Other Priority Claims and Unsecured Claims shall be held by the Liquidation Trustee in the *"Disputed Claims Reserve"*. Any Cash including, without limitation, the Disputed Claims Reserve, shall be held in an interest-bearing account. As Disputed Claims are resolved, excess Cash in the Disputed Claims Reserve shall be made available for distribution to the holders of Allowed Claims in accordance with the Plan, provided that there is sufficient Cash to administer the Plan and pay Plan expenses. The Liquidation Trustee may set aside from the Estate Assets an amount of Cash that the Liquidation Trustee determines is necessary to pay ongoing expenses of administering the Plan.

(b)    For the purposes of effectuating the distributions to the holders of Allowed Claims, the Court shall set, fix or liquidate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the Disputed Claims for purposes of distribution under the Plan. In lieu of fixing or liquidating the amount of any Disputed Claim, the Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by agreement in writing by and between the Liquidation Trustee and the holder of a Disputed Claim. In the event that the Bankruptcy Court (or the District Court with respect to Medical Malpractice Claims) estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court with respect to Medical Malpractice Claims). If the estimated amount constitutes a maximum limitation on such Claim, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. Claims may be estimated by the Bankruptcy Court (or the District Court with respect to Medical Malpractice Claims) and subsequently compromised,

settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or the District Court, as applicable.

8.16    Plan Distributions. The Liquidation Trustee shall make distributions to holders of Allowed Claims in accordance with Article 8 of the Plan on or as soon as reasonably practicable after the Effective Date. From time to time, the Liquidation Trustee shall make subsequent Pro Rata distributions to holders of Allowed Claims, other than Allowed Medical Malpractice Claims, including to the holders of Allowed Class 3 Unsecured Claims in accordance with Article 6 of the Plan; *provided, however,* that the Liquidation Trustee may retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims) and to maintain the value of the assets of the Estates during liquidation, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Liquidation Trustee and the fees, costs and expenses of all professionals retained by the Liquidation Trustee, and any taxes imposed in respect of the Estate Assets), (iii) to satisfy other liabilities to which the Estate Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve. The Liquidation Trustee shall make distributions to holders of Allowed Medical Malpractice Claims in Class 3 only in accordance with Section 7.2 at such time as all Medical Malpractice Claims are Allowed or Disallowed. Any amounts remaining in the Medical Malpractice Claims Reserve after distributions are made to all holders of Allowed Medical Malpractice Claims shall become available for distribution to holders of Allowed Unsecured Claims in Class 3. All such distributions to the holders of Allowed Claims shall be made in accordance with the Plan. The Liquidation Trustee may withhold from amounts distributable to any Person any and all amounts determined in the Liquidation Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving distributions, provide such information and take such steps as the Liquidation Trustee may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Liquidation Trustee to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

8.17    Cash Distributions. The Liquidation Trustee shall not be required to make interim or final Cash distributions in an amount less than $5.00. Any funds so withheld and not distributed on an interim basis shall be held in reserve and distributed in subsequent distributions to the extent the aggregate distribution exceeds $10,000. Should a final distribution to any holder of a Claim not equal or exceed $5.00, that sum shall be distributed to other holders of Allowed Claims.

8.18    Delivery of Plan Distributions. All distributions under the Plan on account of any Allowed Claims shall be made at the address of the holder of such Allowed Claim as set forth on the register on which the Liquidation Trustee records the name and address of such holders or at such other address as such holder shall have specified for payment purposes in a written notice to the Liquidation Trustee at least fifteen (15) days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Liquidation Trustee shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Liquidation Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such undeliverable or unclaimed distributions shall be deemed Unclaimed Property. The Liquidation Trustee shall reallocate the undeliverable and unclaimed distributions for the benefit of all other holders of Allowed Claims in accordance with the Plan.

8.19    <u>Distributions to Holders as of the Confirmation Date.</u> As of the close of business on the Confirmation Date, the Claims register shall be closed, and there shall be no further changes in the record holders of any Claims. Neither the Debtor nor the Liquidation Trustee, as applicable, shall have any obligation to recognize any transfer of any Claims or Interests occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan pursuant to Section 9.1 of the Plan) with only those holders of record as of the close of business on the Confirmation Date.

8.20    <u>Abandoned Estate Assets.</u> Upon the election of the Liquidation Trustee, with the approval of the Post Effective Date Committee, the Liquidation Trustee may abandon any Assets included among the Estate Assets, without the need for additional approval of the Court, and upon such abandonment, such Assets shall cease to be Estate Assets.

8.21    <u>Windup.</u> After (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, (c) all Causes of Action have been resolved, and (d) all Estate Assets have been reduced to Cash or abandoned, the Liquidation Trustee shall effect a final distribution of all Cash remaining (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to holders of Allowed Claims in accordance with the Plan.

8.22    <u>Indefeasibility of Distributions.</u> All distributions provided for under the Plan shall be indefeasible.

8.23    <u>Distribution of Unclaimed Property.</u> Any distribution of Unclaimed Property shall irrevocably revert to the Estate for re-distribution in accordance with the Plan.

8.24    <u>Saturday, Sunday, or Legal Holiday.</u> If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

8.25    <u>Final Order.</u> Any requirement in the Plan for a Final Order may be waived by the Plan Proponent.

**ARTICLE 9**

**VOTING**

9.1    <u>Voting of Claims.</u> Each holder of an Allowed Claim in an Impaired Class which receives or retains property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other controlling Order or Orders of the Court.

9.2    Nonconsensual Confirmation. If any Impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired Class is deemed to have rejected the Plan, the Plan Proponent reserves the right (a) to undertake to have the Court confirm the Plan under Section 1129(b) of the Bankruptcy Code and (b) subject to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, to modify the Plan to the extent necessary to obtain entry of the Confirmation Order, provided such modifications are consistent with Section 12.1 of the Plan. At the Confirmation Hearing, the Plan Proponent will seek a ruling that if no holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan will be deemed accepted by the holders of such Claims or Interests in such Class for the purposes of Section 1129(b).

## ARTICLE 10

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1    Assumption or Rejection of Executory Contracts. Effective on and as of the Confirmation Date, all Executory Contracts are hereby specifically deemed rejected, except for any Executory Contract (a) that has been specifically assumed or assumed and assigned by the Debtor on or before the Confirmation Date with the approval of the Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to the Plan, which schedule, if any, shall be filed with the Court on or prior to the Confirmation Hearing.

10.2    Approval of Assumption or Rejection of Executory Contracts. Entry of the Confirmation Order by the Clerk of the Court, but subject to the condition that the Effective Date occur, shall constitute (a) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or assumption and assignment of the Executory Contracts assumed or assumed and assigned pursuant to Section 11.1 of the Plan, and (b) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts rejected pursuant to Section 8.1 of the Plan.

10.3    Bar Date for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Plan. Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than thirty (30) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract, and (b) notice of occurrence of the Effective Date. Any such Claims not filed within such time shall be forever barred from assertion against the Debtor and any and all of its respective properties and Assets.

## ARTICLE 11

## INJUNCTION AND RELEASES

11.1    **Injunction.**

(a)    **Except as otherwise expressly provided herein including, without limitation, the treatment of Claims against the Debtor and its Interests, the entry of the**

Confirmation Order shall, provided that the Effective Date shall have occurred, operate to enjoin permanently all Persons that have held, currently hold or may hold a Claim against the Debtor, or who have held, currently hold or may hold an Interest that is terminated pursuant to the Plan, from taking any of the following actions against the Debtor, the Liquidation Trustee, the Committee or members thereof, present and former directors, officers, trustees, agents, attorneys, advisors, members or employees of the Debtor, the Committee or members thereof, or the Liquidation Trustee, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim against the Debtor or any Interests: (a) commencing, conducting or continuing in any manner, directly or indirectly, any Cause of Action with respect to a Claim against the Debtor or any Interests; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim against the Debtor or any Interests; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind with respect to a Claim against the Debtor or any Interests; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor or their property or Assets with respect to a Claim against the Debtor or any Interests; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with or is inconsistent with the provisions of the Plan; *provided, however,* nothing in this injunction shall preclude the holder of a Claim against the Debtor from pursuing any applicable insurance after the Case is closed, from seeking discovery in actions against third parties or from pursuing third-party insurance that does not cover Claims against the Debtor; *provided further, however,* nothing in this injunction shall limit the rights of a holder of a Claim against the Debtor to enforce the terms of the Plan. As to the United States, its agencies, departments or agents (collectively the "United States"), nothing in the Plan or Confirmation Order shall discharge, extinguish, release or otherwise preclude any valid right of setoff or recoupment including but not limited to any right of setoff or recoupment with respect to any Medicare overpayments. Nothing herein shall enjoin the United States from initiating or continuing any criminal, police or regulatory action against the Debtor.

       (b)    Covered Persons Injunction. Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all Persons are permanently enjoined from commencing or continuing any medical malpractice action against any Covered Person and/or from enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a claim that would entitle a Covered Person to an Indemnification Claim, *provided however,* that such injunction shall not extend to recoveries against any available insurance. In exchange for this injunction, each Covered Person shall be deemed to waive any Indemnification Claim against the Debtor and its Estate, provided that the waiver of the Indemnification Claims shall not impair the injunction in this Section of the Plan and neither the waiver of the Indemnification Claims, nor this injunction shall release the obligations of any other insurance company to defend a Covered Person under an otherwise applicable insurance policy. As additional consideration for this Injunction for the benefit of its bargaining unit, The Committee of Interns and Residents/SEIU will also withdraw the CIR Claim.

11.2   Releases.  Upon the Effective Date, (a) (i) Each Person that receives and retains a distribution under the Plan, (ii) each Person who obtains a release under the Plan or obtains the benefit of an injunction provided pursuant to the Plan, and (iii) each Person who received any benefit from any third party insurance providers on account of a claim against the Debtor or a Covered Person, in consideration therefor, conclusively, absolutely, unconditionally, irrevocably and forever releases and discharges the Debtor and its present and former directors, officers, trustees, agents, attorneys, advisors, or members (solely in their capacity as such), and (b) the Debtor conclusively, absolutely, unconditionally, irrevocably and forever releases and discharges each member of the Interfaith Medical Center Board of Trustees and the officers (solely in their capacity as such): of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtor and its present and former directors, officers, trustees, agents, attorneys, advisors, or members (solely in their capacity as such) occurring from the beginning of time to and including the Effective Date related in any way, directly or indirectly, arising out of, and/or connected with the Debtor and its Estate, the Case, the Debtor's pre-petition financing arrangements, the DIP Loan and the failure of any person or entity, to maintain malpractice insurance, provide funding for a self-insurance trust for medical malpractice claims, or cause the Debtor to cease operations (including any such claims based on theories of alleged negligence, misrepresentation, nondisclosure or breach of fiduciary duty); *provided, however,* that this Section 12.2 shall not limit the Debtor's obligations under the Plan. Except as provided in Subsection (b) of this Section 12.2, nothing contained in this Section 12.2 shall be a release by the Debtor of any claim or Cause of Action, including, without limitation, those arising under Chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law, or a release by any Professional Persons of any Professional Fee Claims. Nothing in the Plan or Confirmation Order discharges, releases, or precludes: (i) any liability that is not Claim (as that term is defined in the Bankruptcy Code); (ii) any Allowed Claim of a government unit that is not fully satisfied; or (iii) any liability to a governmental unit on the part of any Persons other than the Debtor.

11.3   Exculpation. None of (i) Wilkie Farr & Gallagher, LLP, in its capacity as counsel to the Debtor, (ii) the Debtor's trustees, in-house counsel, officers and directors (in their capacities as such); (iii) the Liquidation Trustee and its representatives (in their capacities as such); (iv) the Committee, (v) the members of the Committee, in their individual capacities as members of the Committee, (vi) Alston & Bird LLP, in its capacity as counsel to the Committee, (vii) NHB Advisors, in its capacity as financial advisor for the Committee, and (viii) DASNY and its attorneys and advisors, shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the Case, the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the administration of the Plan or the property to be distributed under the Plan,

24

or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; *provided, however,* that the foregoing provisions shall not affect the liability of any Person that would result from any such act or omission to the extent that act or omission is determined by a Final Order of the Court to have constituted willful misconduct or gross negligence; and in all respects, such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be fully protected from liability in acting or refraining to act in accordance with such advice; *provided further, however,* that this Section 12.3 shall not limit the Debtors' obligations under the Plan.

11.4    Release of Collateral. Except as expressly provided otherwise in the Plan, (including without limitation, with respect to DASNY) as for example with the Water Board Lien, which shall continue to encumber the Debtors' Real Property after such property is conveyed to DASNY and until such lien is fully satisfied prior to the Effective Date, unless a holder of a Secured Claim receives a return of its collateral in respect of such Claim under the Plan: (i) each holder of; (A) an Allowed Secured Claim; and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Liquidation Trustee requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all Claims, rights, title and interest in such property shall revert to the Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances and/or security interests of any kind. No Distribution hereunder shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Liquidation Trustee such release of Liens. Any such holder that fails to execute and deliver such release of Liens within sixty (60) days of any demand thereof shall be deemed to have no further Claim and shall not participate in any distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or Disallowed.

**11.5    Cause of Action Injunction. On and after the Effective Date, all Persons other than the Liquidation Trustee will be permanently enjoined from commencing or continuing in any manner any Cause of Action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any, claim, debt, right or Cause of Action that the Liquidation Trustee retains authority to pursue in accordance with the Plan.**

11.6    Preservation and Application of Insurance. The provisions of the Plan shall not diminish or impair in any manner the enforceability and/or coverage of any insurance.

11.7    Limitation. Nothing in the Disclosure Statement, the Plan of Liquidation, or any order confirming the Plan of Liquidation shall be construed as discharging, exculpating, releasing, or relieving the Debtor or any of its officers, directors, or other representatives, in any capacity, from any liability with respect to the Pension Plan under any law, government policy, or regulatory provision. The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any person as a result of confirmation of the Plan of Liquidation.

## ARTICLE 12

## PROVISIONS FOR RESOLVING AND TREATING CLAIMS

12.1    Prosecution of Disputed Claims. Except as otherwise provided herein, the Liquidation Trustee shall have the right to object to all Claims on any basis, including those Claims that are not listed in the Schedules, that are listed therein as disputed, contingent, and/or unliquidated, that are listed therein at a lesser amount than asserted by the respective Creditor, or that are listed therein at for a different category of claim than asserted by the respective Creditor. Subject to further extension by the Court for cause with or without notice, the Liquidation Trustee may object to the allowance of Class 3 Unsecured and Medical Malpractice Claims up to one hundred eighty (180) days after the Effective Date, the allowance of Administrative/Priority Claims and Secured Claims up to the later of (i) sixty (60) days after the Effective Date or (ii) the deadline for filing an objection established by Order of the Court; *provided, however,* that an objection to a Claim based on Section 502( d) of the Bankruptcy Code may be made at any time in any adversary proceeding against the holder of any relevant Claim. The filing of a motion to extend the deadline to object to any Claims shall automatically extend such deadline until a Final Order is entered on such motion. In the event that such motion to extend the deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an Order denying the motion to extend such deadline. From and after the Effective Date, the Liquidation Trustee shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtor and the Committee in respect of all Claims, and in that capacity shall have the power to prosecute, defend, compromise, settle, and otherwise deal with all such objections, subject to the terms of the Plan.

12.2    Settlement of Disputed Claims.

(a)    Pursuant to Bankruptcy Rule 9019(b), subject to paragraphs 8.3, 8.7(a)(xiv) and any Final Order approving Mediation Procedures, the Liquidation Trustee may settle any Disputed Claim (or aggregate of Claims if held by a single Creditor), respectively, without notice, a Court hearing or Court approval.

(b)    The Liquidation Trustee shall give notice to the Post Effective Date Committee of (i) a settlement of any Disputed Class 3 Unsecured Claim (or aggregate of Claims if held by a single Creditor) that results in the disputed portion of such Disputed Class 3 Unsecured Claim(s) being Allowed in an amount in excess of $10,000.00, (ii) a settlement of any Disputed Administrative/Priority Claims, or (iii) settlement of any Disputed Secured Claims. The Post Effective Date Committee shall have ten (10) days after service of such notice to object to such settlement. Any such objection shall be in writing and sent to the Liquidation Trustee and the settling party. If no written objection is received by the Liquidation Trustee and the settling party prior to the expiration of such ten (10) day period, the Liquidation Trustee and the settling party shall be authorized to enter into the proposed settlement without a hearing or Court approval. If a written objection is timely received, the Liquidation Trustee, the settling party and the objecting party shall use good-faith efforts to resolve the objection. If the objection is resolved, the Liquidation Trustee and the settling party may enter into the proposed settlement (as and to the extent modified by the resolution of the objection) without further notice or Court approval, provided that the Claim of the settling party against the Estate shall not be greater under the proposed settlement than that disclosed

26

in the notice. Alternatively, the Liquidation Trustee may seek Court approval of the proposed settlement upon expedited notice and a hearing.

      12.3    No Distributions Pending Allowance. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions shall be made by the Liquidation Trustee with respect to any portion of any Claim against the Debtor if such Claim or any portion thereof is a Disputed Claim. In the event and to the extent that a Claim against the Debtor becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

## ARTICLE 13

## CONDITIONS TO CONFIRMATION OF PLAN

      13.1    Conditions to Confirmation. The following conditions are conditions precedent to Confirmation of the Plan unless waived by the Plan Proponent pursuant to Section 14.3 of the Plan: (i) the Confirmation Order must be in a form and substance reasonably acceptable to the Plan Proponent and the Committee; and (ii) the Confirmation Order shall:

      (a)    authorize the appointment of all parties appointed under or in accordance with the Plan, including, without limitation, the Liquidation Trustee, and direct such parties to perform their obligations under such documents;

      (b)    approve in all respects the transactions, agreements, and documents to be effected pursuant to the Plan;

      (c)    authorize the Liquidation Trustee and the Post Effective Date Committee to assume the rights and responsibilities fixed in the Plan;

      (d)    approve the releases and injunctions granted and created by the Plan;

      (e)    order, find, and decree that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith; and

      (f)    except as specifically provided in the Plan, order that nothing herein operates as a discharge, release, exculpation, or waiver of, or establishes any defense or limitation of damages to, any Claim or Cause of Action belonging to the Estates.

      13.2    Conditions to Effective Date. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived pursuant to Section 13.3 of the Plan:

      (a)    the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with the requirements of Section 14.1of the Plan, shall have become a Final Order;

      (b)    the Liquidation Trustee shall have been appointed;

      (c)    all actions, documents and agreements necessary to implement the provisions of the Plan shall be reasonably satisfactory to the Plan Proponents, and such actions, documents, and agreements shall have been effected or executed and delivered;

(d)    all other actions required by the Plan to occur on or before the Effective Date shall have occurred.

13.3    <u>Waiver of Conditions</u>. Any of the conditions set forth in this Article may be waived by the Plan Proponent and the Committee to the extent such waiver does not affect the distributions hereunder.

13.4    <u>Notices to Court</u>. The Plan Proponent shall notify the Court in writing promptly after the Effective Date that the Effective Date has occurred.

## ARTICLE 14

## MODIFICATION. REVOCATION OR WITHDRAWAL OF THE PLAN

14.1    <u>Modification of Plan: Generally</u>. The Plan Proponent may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After such time and prior to substantial consummation of the Plan, the Plan Proponent may, so long as the treatment of holders of Claims against the Debtor or Interests under the Plan is not adversely affected, institute proceedings in Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; *provided, however,* notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or as the Court shall otherwise order.

14.2    <u>Revocation or Withdrawal of Plan</u>. The Plan Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Plan Proponent revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE 15

## MISCELLANEOUS PROVISIONS

15.1    <u>Payment of Statutory Fees</u>. All outstanding fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date.

15.2    <u>Reports</u>. Until a final decree closing the Case is entered, the Liquidation Trustee shall comply with any requisite reporting requirements established pursuant to the guidelines of the U.S. Trustee.

15.3    <u>Governing Law</u>. Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of New York shall govern the construction and implementation of the Plan and all rights and obligations arising under the Plan.

15.4    <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Liquidation Trustee shall comply with all withholding, reporting, certification and information requirements

imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements. Persons entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as the Liquidation Trustee may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable the Liquidation Trustee to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

      15.5   <u>Section 1146 Exemption</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan; or the vesting, transfer, or sale of any real property of the Debtor pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

      15.6   <u>Severability</u>. In the event that any provision of the Plan is determine to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan. To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Court from entering the Confirmation Order, the Court, on the request of the Plan Proponent, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the Confirmation of the Plan existing by reason of such provision; <i>provided, however,</i> that such modification shall not be effected except in compliance with Section 14.1 of the Plan.

      15.7   <u>Reservation of Rights</u>. If the Plan is not confirmed for any reason, the rights of all parties in interest in the Case are and shall be reserved in full. Any concession reflected or provision contained herein, if any, is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by such concession.

      15.8   <u>Binding Effect: Counterparts.</u> The provisions of the Plan shall bind all holders of Claims against the Debtors and Interests, whether or not they have accepted the Plan. The Plan may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Plan.

      15.9   <u>Notices</u>. All notices, requests, and demands to or upon the Plan Proponents, the Liquidation Trustee or the Committee must be in writing (including by facsimile transmission or electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or by electronic mail, when received and telephonically confirmed, addressed as follows:

If to the Plan Proponent, to:
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, NY 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Attn: Charles E. Simpson
Email: csimpson@windelsmarx.com


If to the Committee, to:
**ALSTON & BIRD LLP**
90 Park Ave.
New York, NY 10016-1387
Tel: (212) 210-9400
Fax: (212) 922-9444
Attn: Martin G. Bunin
         Craig E. Freeman
Email: marty.bunin@alston.com
         craig.freeman@alston.com


If to the Liquidation Trustee, to:
John P. Maher, MPH
North General Hospital
1879 Madison Avenue
New York, NY 10035


# ARTICLE 16

## RETENTION OF JURISDICTION

16.1    Exclusive Jurisdiction of the Court. Except as provided in Sections 12.2 and 12.3 of the Plan, following the Effective Date, the Court will retain exclusive jurisdiction over these Cases for the following purposes:

(a)      to hear and determine any pending applications for the assumption or rejection of Executory Contracts, and the resulting allowance of Claims against the Debtors;

(b)      to determine any adversary proceedings, applications, contested matters and other litigated matters pending on the Effective Date;

(c)      to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)      to hear and determine objections to or requests for estimation of Claims against the Debtors, including any objections to the classification of any Claims, and to allow, disallow and/or estimate Claims, in whole or in part;

(a)    to hear and determine any pending applications for the assumption or rejection of Executory Contracts, and the resulting allowance of Claims against the Debtor;

(b)    to determine any adversary proceedings, applications, contested matters and other litigated matters pending on the Effective Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)    to hear and determine objections to or requests for estimation of Claims against the Debtor, including any objections to the classification of any Claims, and to allow, disallow and/or estimate Claims, in whole or in part;

(e)    to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)    to issue any appropriate Orders in aid of execution of the Plan or to enforce the Confirmation Order and/or the discharge, or the effect of such discharge, provided to the Debtor;

(g)    to hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan or in any Order of the Court, including, without limitation, the Confirmation Order;

(h)    to hear and determine all applications for compensation and reimbursement of expenses of professionals under Sections 327, 328, 330, 331, 363 and 503(b) of the Bankruptcy Code;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(j)    to hear and determine other issues presented or arising under the Plan;

(k)    to hear and determine other issues related to the Plan to the extent not inconsistent with the Bankruptcy Code; and

(l)    to enter a final decree closing the Cases.

16.2    <u>Non-Exclusive Jurisdiction of the Court</u>. Following the Effective Date, the Court will retain non-exclusive jurisdiction over this Case for the following purposes:

(a)    to recover all Assets of the Debtor and Estate Assets, wherever located;

(b)    to hear and determine any actions commenced on or after the Effective Date by the Liquidation Trustee, including, but not limited to, Avoidance Actions or other Causes of Action;

31

(c)    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or the Estate arising prior to the Effective Date or relating to the period of administration of the Case, including, without limitation, matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

(d)    to hear and determine any other matters to the extent not inconsistent with the Bankruptcy Code.

16.3    <u>Failure of the Court to Exercise Jurisdiction</u>. If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Case, including with respect to the matters set forth above in this Article, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

# ARTICLE 17

## SUBSTANTIAL CONSUMMATION

The Plan shall be "substantially consummated", within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code on the Consummation Date, it hereby being understood and agreed that substantial consummations shall not occur and shall not be deemed to have occurred unless and until all distributions under this Plan shall have been made.

**[SIGNATURE PAGE FOLLOWS]**

# ARTICLE 18

## RESERVATIONS OF RIGHTS

In the event that this Plan is not confirmed, the rights of all parties-in-interest in the Case shall be reserved in full.


Dated:  New York, New York
August 16, 2013


IM FOUNDATION, INC.,
Plan Proponent

By: **/s/ Diane Porter**
Name:  Canon Diane Porter
Title:   President and CEO

Submitted by:

**WINDELS MARX LANE & MITTENDORF, LLP**

By:  **/s/ Charles E. Simpson**
     **A Member of the Firm**
     156 West 56th Street
     New York, NY 10019
     Tel:  (212) 237-1000
     Fax: (212) 262-1215
     Email: csimpson@windelsmarx.com