UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re                                  :    Chapter 11
                                       :
Interfaith Medical Center, Inc.,[1]    :    Case No. 12-48226 (CEC)
                                       :
                           Debtor.     :    Re: Docket Nos. 7, 38, 149, 231, 344, 394,
                                       :        475, 551 and 631
-------------------------------------------------------- x

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364, 503(b) AND 507(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (III) PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 362, AND 363 OF THE BANKRUPTCY CODE; (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE; (V) AUTHORIZING AND APPROVING A RELATED COMPROMISE AND SETTLEMENT PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019; AND (VI) PROVIDING RELATED RELIEF

THIS MATTER came before the Court on September 11, 2013, on the motion (the "**Motion**") of Interfaith Medical Center, a New York not-for-profit corporation, as chapter 11 debtor and debtor in possession ("**IMC**" or the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), for the entry of this Final Order (this "**Final Order**") authorizing the Debtor, pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), including sections 105(a), 361, 362, 363, 364, 503(b) and 507(b) thereof, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), including Rules 2002, 4001, 9014, and 9019, and Rule 4001-5 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Local Rules**"), to: (i) obtain postpetition financing (the "**DIP Facility**") and enter into a senior secured priming and superpriority debtor in possession credit agreement (together

---

[1]    The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

with all schedules and exhibits thereto, the "**DIP Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "**DIP Loan Documents**"),[2] substantially in the form annexed hereto as <u>Exhibit 2</u>, by and among the Debtor and the Dormitory Authority of the State of New York (the "**Authority**" and, in such capacity, the "**DIP Lender**"), all in respect of the obligations set forth in the DIP Loan Documents and herein (the "**DIP Obligations**"); (ii) grant mortgages, security interests, liens and superpriority claims for the benefit of the DIP Lender in respect of the DIP Obligations as provided herein and in the DIP Loan Documents; (iii) continue to use Cash Collateral (as defined below); (iv) provide Adequate Protection (as defined below) to the Authority (in such capacity, the "**Prepetition Lender**"); (v) provide Adequate Protection Payments (as defined below) to the Prepetition Lender; (vi) modify the automatic stay pursuant to section 362 of the Bankruptcy Code; (vii) fund postpetition allowed fees and expenses of Retained Professionals (as defined below) ("**Retained Professional Fees**") and the Carve-Out (as defined below); and (viii) grant related relief, including, without limitation, a compromise and settlement of the claims of the Authority as Prepetition Lender and DIP Lender; and, upon all of the pleadings filed with the Court; and the Court, having considered the Motion and the exhibits attached thereto, including the DIP Credit Agreement; and in accordance with Bankruptcy Rule 4001, due and proper notice of the Motion having been given; and a final hearing to consider approval of the DIP Facility having been held and concluded (the "**Hearing**") and evidence presented in support of the Motion; and the Court having noted the appearances of parties in interest at the Hearing on the record; and all of the proceedings held before the Court; and any objections to the

---

[2]      Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Motion and DIP Loan Documents, as applicable.

Motion having been resolved or overruled by the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate (the "**Estate**"), its community, and its creditors; and after due deliberation and consideration, and sufficient cause appearing therefor;

THE COURT HEREBY FINDS:[3]

A.    <u>Notice and Hearing</u>.    Due and appropriate notice of the Motion, the relief requested therein and the Hearing has been given and served by the Debtor on the parties (collectively, the "**Notice Parties**") pursuant to the *Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates*, dated as of December 4, 2012 [Docket No. 35] (the "**Notice Procedures Order**"), and all applicable rules and guidelines, including section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 2002-2, and such notice was appropriate under the circumstances and sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules.

B.    <u>Chapter 11 Filed</u>.    The Debtor filed its petition under chapter 11 of the Bankruptcy Code on December 2, 2012 (the "**Petition Date**"), and is presently operating as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On December 13, 2012, an Official Committee of Unsecured Creditors was appointed in the Chapter 11 Case (the "**Committee**").

C.    <u>Prepetition Loans</u>.    Subject to Challenge (as defined below) as set forth in Paragraph 19 of this Final Order, pursuant to the following agreements, the Prepetition Lender made loans and extended other financial accommodations to IMC prior to the Petition Date and loaned the proceeds thereof to IMC (the "**Prepetition Loans**"):

---

[3]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

(1)    that certain secured Loan Agreement by and between the Prepetition Lender and IMC, dated as of January 24, 2007 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Prepetition Loan Agreement**"), relating to the Secured Hospital Revenue Refunding Bonds, Interfaith Medical Center, Series 2007 (the "**Series 2007 Bonds**");

(2)    that certain unsecured Reimbursement Agreement between the Authority and IMC, dated as of March 29, 2005, (as amended on June 14, 2011, and as further amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Fund B Loan Agreement**"); and

(3)    that certain secured Reimbursement Agreement between the Authority and IMC, dated as of November 21, 2011 (as amended, restated, supplemented or otherwise modified from time to time, and together with all agreements, documents, notes and instruments in respect thereof, the "**Pool Loan Agreement**" and together with the Prepetition Loan Agreement, the Fund B Loan Agreement and all security, pledge, guaranty, and other lien and loan agreements and documents in connection therewith, each as may be amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Secured Loan Documents**" and such obligations thereunder the "**Prepetition Secured Obligations**").  One or more Events of Default under the Prepetition Secured Loan Documents and the Fund B Loan Agreement has occurred and is continuing, has not been waived by the Authority, and the Authority expressly reserves all of its rights and remedies under the Prepetition Secured Loan Documents and the Fund B Loan Agreement with respect thereto.

D.      Necessity and Best Interest.

(1)      Good cause has been shown for the entry of this Final Order.

(2)      The Debtor does not have sufficient Cash Collateral, unencumbered cash or other available sources of working capital and financing to implement the Closure Plan (as defined below) while, among other things, continuing to provide proper care to its patients in advance of their transfer to other facilities, and, pending the shut-down of the hospital, finance the ordinary costs of its operations, maintain business relationships with vendors, suppliers and customers, pay certain salaries and claims of its employees, utilities, and other short-term costs, and to otherwise pay the costs attendant to the Chapter 11 Case.  Accordingly, the Debtor needs access to the DIP Facility and use of the Cash Collateral.

(3)      The priming of certain liens on the Prepetition Collateral (as defined below) will enable the Debtor to obtain the DIP Facility and continue to operate its business for the benefit of its Estate, its community, and its creditors.  The Debtor is unable to obtain adequate required funds:  (i) in the forms of (w) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (y) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code or (z) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code; or (ii) on terms more favorable than those offered by the DIP Lender under the DIP Budget (as defined below), the other DIP Loan Documents and this Final Order, unless granted pursuant to sections 364(c)(1), (2), (3) and ~~(4)~~*(d)(1) (cec)* of the Bankruptcy Code.

(4)      The Debtor has requested that, pursuant to the terms of the DIP Loan Documents, the DIP Lender make loans and advances and provide other financial accommodations to the Debtor.  The ability of the Debtor to implement the Closure Plan (as

defined in Paragraph 23 hereof) (without premature closure, which could jeopardize patients remaining at the hospital) and, pending shut-down of the hospital, operate its business, including to care for its patients and serve its community, while also preserving and maximizing the value of its Estate for the benefit of all creditors, the community served by IMC and other parties in interest, depends upon the Debtor obtaining such financing. The DIP Lender is willing to make such loans and advances and provide such other financial accommodations on a secured basis, as more particularly described herein, pursuant to the terms and conditions of the DIP Loan Documents. Accordingly, the relief requested in the Motion is necessary, essential and appropriate and is in the best interests of the Debtor, its Estate, all creditors and other parties in interest.

(5)     The DIP Facility, the provisions of this Final Order and the DIP Loan Documents have been negotiated at arm's-length and in "good faith," as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its Estate and creditors. The DIP Lender is extending financing to the Debtor in good faith and in express reliance upon the protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code and the DIP Lender is entitled to the benefits of the provisions of sections 363(m) and 364(e) of the Bankruptcy Code.

(6)     The Debtor (in consultation with its advisors) has determined, subject, *inter alia*, to the assumptions and limitations identified in the DIP Budget (as defined in Paragraph 4(a) below), that (i) the DIP Budget is reasonable and should allow the Debtor to operate in the Chapter 11 Case without the accrual of unpaid allowed administrative expenses, except in the ordinary course, and (ii) the DIP Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the DIP Budget in connection with

6

the closure of the hospital pursuant to the Closure Plan during the pendency of the Chapter 11 Case.

(7)     The Debtor has requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b), 4001(c) and 4001(d).  Absent entry of this Final Order, the Debtor's Estate will be immediately and irreparably harmed.

(8)     The Debtor and the Authority also have agreed to resolve certain other claims and issues between the Debtor and the Authority, including, without limitation, resolution of the Authority's prepetition and postpetition claims as part of the consideration for the Authority providing DIP financing to the Debtor.  The negotiation and settlement of such claims and issues is fair and equitable to the Debtor and in the best interests of the Debtor's Estate.

(9)     It is in the best interests of the Debtor, its creditors, patients, Estate, community, and other parties in interest that the Debtor be allowed to finance its operations and the Closure Plan under the terms and conditions set forth herein.  The relief requested by the Motion is necessary to avoid harm to the Debtor's creditors, patients, Estate, community, and other parties in interest while the Closure Plan is being implemented, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the entry of this Final Order.  The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

The Court, having determined that good cause exists for the relief requested in the Motion,

IT IS HEREBY ORDERED as follows:

1.    <u>Jurisdiction</u>.    This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and Administrative Order No. 264, titled "The Referral of Matters to the Bankruptcy Judges, incorporating Referral Order of August 28, 1986," by the District Court of the Eastern District of New York (Weinstein, C.J.).    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    <u>Notice</u>.    Under the circumstances, notice of the Motion and the Hearing pursuant to the Notice Procedures Order constitutes due and sufficient notice thereof and complies with all applicable Bankruptcy Rules, including Rules 2002, 4001(b), (c) and (d), 5003(e) and 9014 and the local rules of this Court, including Local Rule 4001-5, and no other notice need be given.

3.    <u>Approval of Motion</u>.    The Motion is approved on the terms and conditions set forth in this Final Order.    This Final Order shall become effective immediately upon its entry.

4.    <u>The DIP Budget</u>.

(a)    The amount of the DIP Facility and Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the budget prepared by the Debtor (as amended, supplemented, extended or otherwise modified from time to time in accordance with Paragraph 4(c) below, the "**DIP Budget**"), a copy of which is annexed hereto as <u>Exhibit 1</u> (provided that the Debtor may take appropriate actions with respect to confidentiality of any portion of the DIP Budget), which DIP Budget shall:

      (i)    include a separate line reflecting the reserves by the Authority as set forth herein;

      (ii)    be supplemented by the fourth business day of each week with a variance report showing the variances between the projected amounts and the actual amounts for the preceding weekly period for each line item (except for Retained Professionals (as defined

below) and the Patient Care Ombudsman (as defined below)), together with an updated projection for the following weekly period;

(iii)    with respect to Retained Professionals and the Patient Care Ombudsman, be supplemented the fourth business day following the twentieth (20th) day of each month with a variance report showing the variances between the fees and expenses projected for the preceding month and the actual fees and expenses requested to be paid pursuant to the Monthly Fee Statement prepared by each Retained Professional and the Patient Care Ombudsman pursuant to the Administrative Order, Pursuant to Sections 105(A) and 331 of Bankruptcy Code and Local Bankruptcy Rule 2016-1, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 150]; and

(iv)    include variances permitted by the Authority, which shall in no event be less than, from the date of this Final Order, (w) a ten (10%) percent aggregate variance for all line items (except for the fees and expenses of Retained Professionals and the Patient Care Ombudsman) in the aggregate measured weekly on a weekly basis; (x) the sum of receipts and disbursements shall be subject to a five (5%) percent variance measured weekly on a cumulative basis; and (y) a five (5%) percent aggregate variance for all line items (except for the fees and expenses of Retained Professionals and the Patient Care Ombudsman) in the aggregate measured on a cumulative basis.

(b)    No payments are permitted (and it shall be an Event of Default if any payments are made) other than as expressly set forth in the DIP Budget and permitted variances, including if the permitted variances are exceeded; provided, however, for the avoidance of doubt, it shall not be an Event of Default if Retained Professional and Patient Care Ombudsman fees and expenses exceed the disbursement variances set forth above. With respect to payments for Retained Professional and Patient Care Ombudsman fees and expenses, no payments are permitted (and it shall be an Event of Default if any payments are made) in excess of those permitted under the cumulative DIP Budget.

(c)    The DIP Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which the Debtor and the DIP Lender mutually

agree without further order of this Court or advance notice to any Person; <u>provided</u>, <u>however</u>, the Committee shall have five (5) business days to object from the date that counsel for the Committee receives notice from the Debtor of any modification to the DIP Budget.  The Debtor shall promptly provide any modified DIP Budget to the Office of the United States Trustee (the "**U.S. Trustee**") and counsel for the Committee, and the Debtor shall promptly file any modified DIP Budget with the Court; provided that the Debtor may take appropriate actions with respect to confidentiality of any portion of the DIP Budget.  If the Committee objects to any modification to the DIP Budget, the Committee shall seek an expedited hearing before this Court to resolve the objection, and until the hearing on that objection, the Debtor shall be permitted to operate under the DIP Budget as modified only to the extent necessary.

(d)     With respect to certain items in the DIP Budget that are defined in the DIP Budget as "Restructuring Items" that require approval by this Court prior to payment, the Debtor shall provide the DIP Lender notice at the same time and in the same fashion as the Committee.

(e)     The Debtor shall not make any capital expenditures that are in excess of $10,000 per week from the date of this Final Order unless the Authority approves such capital expenditures in writing.

(f)     The amounts set forth in the DIP Budget annexed hereto as <u>Exhibit 1</u> for the line item entitled "Restructuring fees" shall be placed in a reserve or escrow account (the "**Retained Professionals Fund**") established by the Debtor for the fees and expenses of the Retained Professionals (as defined below).  Funds may only be disbursed by the Debtor from the Retained Professionals Fund pursuant to an order of this Court, including, without limitation, any order entered with respect to the Debtor's Application For Administrative Order, Pursuant To Sections 105(A) And 331 of Bankruptcy Code And Local Bankruptcy Rule 2016-1, Establishing

Procedures For The Interim Compensation And Reimbursement of Expenses of Professionals dated December 10, 2012 [Docket No. 55].  No other funds other than funds from the Retained Professionals Fund shall be used to compensate Retained Professionals unless otherwise ordered by this Court.  The funds in the Retained Professionals Fund shall not constitute loan proceeds of the DIP Facility or Cash Collateral; provided, however, the DIP Lender shall have a residual security interest in any funds remaining in the Retained Professionals Fund after payment of all Retained Professionals pursuant to an order of this Court (the "**Residual Interest**"), and any amounts in excess of all invoices and accrued but unbilled amounts for Retained Professionals in the Retained Professionals Fund shall on the Carve-Out Trigger Date (as defined below) be used to fund in whole or in part the Carve-Out.  For the avoidance of doubt, nothing in this Final Order waives any Retained Professional's right to assert and seek payment of an administrative expense claim for any allowed fees and expenses that are not paid from the Retained Professionals Fund,and the rights of the Debtor, the Authority and other parties-in-interest to object to such relief are fully preserved.

5.    Reports.    The Debtor shall deliver to the Authority such reports (including variance reports), data and other information required to be delivered pursuant to the Prepetition Secured Loan Documents, the Fund B Loan Agreement and the DIP Loan Documents.  Among such reports shall be a report which includes a separate line item for the fees and expenses for each Retained Professional and the Patient Care Ombudsman showing the amount that is expected to accrue each week (without any deduction for any holdback) pursuant to the DIP Budget.  The Debtor shall deliver to counsel to the Committee such reports, data and other information required to be delivered pursuant to the Prepetition Secured Loan Documents, the Fund B Loan Agreement and the DIP Loan Documents at the same time and in the same form

delivered to the Authority.  Notwithstanding the foregoing, the Debtor may take appropriate actions with respect to confidentiality of such reports, data and other information.

6.    <u>Authorization to Use Cash Collateral and the Prepetition Collateral</u>.  The Debtor is authorized to use Cash Collateral and the Prepetition Collateral to fund working capital requirements, operating expenses and capital expenditures of the Debtor during the Chapter 11 Case and other line items, subject to and as set forth in this Final Order, the DIP Budget, and the DIP Loan Documents.  For purposes of this Final Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral shall specifically include all of the cash proceeds of Prepetition Collateral in which the Prepetition Lender has an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Final Order, any other order of this Court, applicable law or otherwise; <u>provided</u>, <u>however</u>, Cash Collateral of the Prepetition Lender shall not include: (a) Avoidance Action Proceeds[4] (subject to the right of the Authority to seek inclusion of same); (b) funds advanced to the Debtor by the I M Foundation, Inc. (subject to the right of the Authority to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the right of the Authority to seek inclusion of same); and (d) the Retained Professionals Fund (except for any Residual Interest).  In no event shall the Debtor be authorized to use Cash Collateral and Prepetition Collateral for any purpose or under any terms other than those set forth in the DIP Budget, the Eighth Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral of Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105, 361 and 363, (II)

---

[4]        "**Avoidance Actions**" means all claims and causes of actions under chapter 5 of the Bankruptcy Code, including, without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.  "**Avoidance Action Proceeds**" means the proceeds of all Avoidance Actions.

Granting a Superpriority Claim, (III) Granting Adequate Protection, (IV) Providing Related Relief and (V) Scheduling a Final Hearing [Docket No. 631] (or any prior interim cash collateral order of the Court), this Final Order or the DIP Loan Documents.

7.    Borrowing Authorization under DIP Facility.

(a)    The Debtor is authorized to enter into and perform the transactions contemplated in this Final Order and the DIP Loan Documents and to borrow under the DIP Credit Agreement on a final basis, subject to the terms and conditions of the DIP Budget, this Final Order and the DIP Loan Documents.  The DIP Credit Agreement and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtor and its Estate, enforceable against the Debtor and its Estate in accordance with the terms hereof and the DIP Loan Documents and any successor of the Debtor or any representative of the Estate (including a trustee, responsible person, or examiner with expanded powers).  The Debtor is authorized to obtain financial accommodations pursuant to the terms of the DIP Budget, this Final Order, the DIP Credit Agreement, and the other DIP Loan Documents; and

(b)    The Debtor is authorized and directed to use the DIP Facility and Cash Collateral to fund working capital requirements and operating expenses of the Debtor during the Chapter 11 Case and other line items subject to and in accordance with the terms of this Final Order, the DIP Budget, and the DIP Loan Documents, including among other things, to implement the Closure Plan.

8.    Due Authorization.  The Debtor acknowledges, represents, stipulates and agrees, and the Court hereby finds and orders, that:

(a)    subject to the entry of this Final Order, the Debtor has obtained all authorizations, consents and approvals necessary, if any, from, and has made all filings with and

given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required, if any, to be obtained, made or given by the Debtor in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents;

(b)    in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lender reflected herein and in the DIP Loan Documents, the Debtor hereby agrees that until such time as all of the DIP Obligations are indefeasibly paid in full, in cash,[5] and the DIP Credit Agreement and other DIP Loan Documents are terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claim provided to the DIP Lender under this Final Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto; and

(c)    in no event shall the DIP Lender be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, operation or management of the Debtor or its businesses, so long as the actions of the DIP Lender do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by the Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable

---

[5]    A reference herein to payment "in final," "in full," or "indefeasibly," or use of words of similar import shall include the cash collateralization of, at a minimum, 102% of the amount of any DIP Obligations or Prepetition Secured Obligations that are contingent obligations, including any contingent indemnification obligations, and the establishment of any reserves in the discretion of the DIP Lender or the Prepetition Lender, as applicable, including, without limitation, for attorneys' fees and expenses. This section shall not be in limitation of any rights or remedies of the DIP Lender under the DIP Loan Documents with respect to contingent DIP Obligations or of the Prepetition Lender under the Prepetition Secured Loan Documents with respect to contingent Prepetition Secured Obligations.

law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of Title 42, United States Code, as may be amended from time to time, or any similar federal or state statute, at law), in equity or otherwise.

9.     DIP Facility Interest, Fees, and Expenses.

(a)     The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Loan Documents, and be due and payable in accordance with this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

(b)     The Debtor shall pay the reasonable fees and expenses of the attorneys and advisors for the DIP Lender on the Closing Date and thereafter as provided under the DIP Budget, whether or not incurred prepetition or postpetition.  Invoices supporting such fees and expenses shall be submitted to counsel for the Debtor, with copies to the U.S. Trustee and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).  No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. The U.S. Trustee, the Debtor, and the Committee shall have ten (10) business days in which to raise an objection to the fees and expenses of such attorneys and advisors.  In the event any such payment would be required to be repaid to the Debtor as a result of application of section 506(b)

15

of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and instead shall be applied as follows: first, to the DIP Obligations until such indebtedness is indefeasibly paid in full, in cash; second, to the Prepetition Secured Obligations until such indebtedness is indefeasibly paid in full, in cash; and third, to the Debtor and its Estate.

10. <u>Authorization to Act</u>. The Debtor is expressly authorized and empowered to perform, and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the Debtor to perform under, make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages, financing statements and other DIP Loan Documents), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtor's performance under and compliance with the terms of the DIP Loan Documents and this Final Order, including, <u>inter alia</u>: to (i) enter into and deliver the DIP Loan Documents; (ii) perform all of its obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents or as provided for in this Final Order; (iii) pay the fees and expenses set forth in the DIP Loan Documents or this Final Order, including the reasonable fees and expenses of attorneys and other professionals as provided for in the DIP Loan Documents and this Final Order; and (iv) to perform all other acts that may be required in connection with the DIP Loan Documents and this Final Order. In addition, the automatic stay, to the extent applicable, is modified to permit the Indenture Trustee and the Authority to take any action authorized in the Bond Resolutions with respect to the Series 2007 Bonds, including, without limitation, the use of funds held by the Indenture Trustee for payment of the Series 2007 Bonds.

11. <u>Continuation of Prepetition Liens</u>. Except as set forth in Paragraphs 19 and 36 of this Final Order, until the indefeasible payment in full, in cash, by the Debtor of all the

Prepetition Secured Obligations and termination of the Prepetition Secured Obligations by the Prepetition Lender under the Prepetition Secured Loan Documents, all liens and security interests of the Prepetition Lender (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable and with the same continuing priority as described herein and in the Prepetition Secured Loan Documents.  Except as set forth in Paragraphs 19 and 36 of this Final Order, and notwithstanding any payment of all or any portion of the Prepetition Secured Obligations, the Prepetition Liens (as defined below) shall continue in full force and effect and shall be deemed to secure the full and timely indefeasible payment in cash of the Prepetition Secured Obligations (separate from and in addition to the liens granted pursuant to this Final Order).

12.    <u>Amendments</u>.  The Debtor is expressly authorized and empowered to enter into amendments or other modifications of the DIP Credit Agreement or any other DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Lender may agree with the Debtor in writing; <u>provided</u>, that notice of any modification or amendment shall be provided to the U.S. Trustee, counsel to the Committee and any affected holder of a Permitted Prior Senior Lien (as defined below) and/or counsel to any affected holder of a Permitted Prior Senior Lien, which parties may object to such modification or amendment, in writing, within three (3) business days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtor, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); <u>further</u> <u>provided</u>, that, notwithstanding the foregoing, any material modification of the DIP Loan Documents that materially increases the burden on the Debtor shall require Court approval (for purposes of this proviso, a material increase of the burden on the Debtor shall be deemed to refer to an increase in the obligations of the Debtor

exceeding $500,000); and <u>further</u> <u>provided</u>, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

13.    <u>Superpriority Claims and DIP Liens</u>.  In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Loan Documents and this Final Order, the DIP Lender is granted the following with respect to the Debtor, its Estate and all DIP Collateral:

(a)    subject only to the Carve-Out, an allowed administrative claim pursuant to section 364(b) of the Bankruptcy Code and an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (collectively, the "**<u>DIP Superpriority Claim</u>**") with priority over any and all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provisions of the Bankruptcy Code and of any kind or nature whatsoever, which DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor except for (a) Avoidance Actions and Avoidance Action Proceeds (subject to the DIP Lender's rights being fully reserved to seek payment from and recourse to same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the DIP Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the right of the DIP Lender to seek inclusion of same), and (d) the Retained Professionals Fund (except for any Residual Interest).  Other than payments described below in Paragraph 15 below, no cost or expense of administration under sections 105, 503(b) or 507(b) of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of

the Chapter 11 Case under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claim granted hereunder.

(b)     a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all encumbered property of the Debtor and its Estate (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out, and (ii) liens on property of a Debtor (including the proceeds of such property) that are in existence on the Petition Date, but only, subject to Paragraph 22 of this Final Order, (A) to the extent a lien on any property is valid, perfected, and not avoidable, and (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date was senior in priority to the Prepetition Liens (each of the items referenced in the foregoing clause (ii) being referred to as a "**Permitted Prior Senior Lien**");

(c)     subject only to the Carve-Out, a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered property of the Debtor and the Estate except for (i) Avoidance Actions and Avoidance Action Proceeds (subject to the DIP Lender's rights being fully reserved to seek payment from and recourse to same), (ii) funds advanced by the I M Foundation, Inc. (subject to the right of the DIP Lender to seek inclusion of same), (iii) any restricted contributions, grants, gifts and bequests, other than any VAP Award,  held or received by IMC (subject to the right of the DIP Lender to seek inclusion of same), and (iv) the Retained Professionals Fund (except for any Residual Interest) (the "**Section 364(c)(2) Lien**"); and

(d)     subject only to the Carve-Out a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all property of the Debtor and the Estate that is

subject to a Permitted Prior Senior Lien (the "**Section 364(c)(3) Lien**" and, collectively with the Section 364(d)(1) Lien and Section 364(c)(2) Lien, the "**DIP Liens**").

(e)     Nothing in this Final Order shall serve to extinguish or limit federal interests or rights, if any, which exist pursuant to 45 C.F.R. Part 74 with respect to property or equipment purchased by the Debtor with grant money provided by the U.S. Department of Health and Human Services; provided, however, that the rights of all parties in interest to contest whether any such federal interests or rights of the U.S. Department of Health and Human Services exist, and their extent, priority and validity, are hereby preserved.

14.     DIP Collateral.  The DIP Liens of the DIP Lender under the DIP Loan Documents and as approved and perfected by this Final Order include, inter alia, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority (if appropriate), any leasehold or other real property interests, and commercial tort claims of the Debtor, (iii) any and all other DIP Collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing; provided, however, that the DIP Liens shall not attach to and the DIP Superpriority Claim and the DIP Obligations shall not be payable from (i) Avoidance Actions and Avoidance Action Proceeds (subject to the DIP Lender's rights being full reserved to seek payment from and recourse to same), (ii) funds advanced by the I M Foundation, Inc. (subject to the right of the DIP Lender to seek inclusion of same), (iii) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the right of the DIP Lender to seek inclusion of same), and (iv) the Retained Professionals Fund (except for

the any Residual Interest).  None of the DIP Obligations, DIP Liens or DIP Superpriority Claim shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of the Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Final Order.

15.    Carve-Out.

(a)    Generally.    Upon the occurrence of the Carve-Out Trigger Date (as defined below), the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens (as defined below), the Section 507(b) Claim of the Prepetition Lender (as defined below), and the Prepetition Liens of the Prepetition Lender shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**") from proceeds of the DIP Facility being reserved by the Authority (and, for the avoidance of doubt, not from either Cash Collateral or proceeds resulting from the liquidation of any DIP Collateral, Prepetition Collateral or collateral of any holder of a Prior Permitted Senior Lien):

(i)    (A) the reasonable fee and expense claims of the respective retained professionals of the Debtor, the Committee, and any appointed ombudsman (the "**Patient Care Ombudsman**") that have been approved by this Court during the Chapter 11 Case pursuant to sections 327, 328, and/or 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtor, the Committee and the Patient Care Ombudsman are

collectively referred to as the "**Retained Professionals**"), (B) the reasonable expense claims of members of the Committee, and (C) the reasonable fee and expense claims of the Patient Care Ombudsman, in each case, for unpaid fees and expenses, as applicable, which were incurred on and after the Petition Date and, in the case of any Retained Professional, which remain outstanding after application of (i) any retainer held by such Retained Professional, (ii) any payments from the Retained Professionals Fund, and (iii) any payments to Retained Professionals from any other assets of the Debtor's Estate including, without limitation, Avoidance Action Proceeds, funds advanced by the I M Foundation, Inc., and any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC, in an aggregate amount not exceeding $1,500,000 for fees and expenses incurred after the Carve-Out Trigger Date for all Retained Professionals, expenses of members of the Committee and the Patient Care Ombudsman, which shall be fully reserved by the Authority from proceeds of the DIP Facility; provided that, in each case, such fees and expenses, as applicable of the Retained Professionals, members of the Committee and Patient Care Ombudsman are in accordance with, and not in excess of the amounts set forth in, the DIP Budget, and in each case, such fees and expenses are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 20 of this Final Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and further provided, that (x) nothing herein shall prevent the Bankruptcy Court from determining the allocation of the Carve-Out amongst the fees and expenses of the various Retained Professionals, members of the Committee and the Patient Care Ombudsman so long as such allocation does not increase the Carve-Out, and (y) the Carve-Out shall not include any bonus, transaction, success or completion fees or any other fees of

similar import for Retained Professionals without the prior written approval of the DIP Lender in its sole discretion;

(ii) $250,000 (which, for the avoidance of doubt, is in addition to the $1,500,000 referred to in sub-paragraph (i) above) for preservation and maintenance of the Prepetition Collateral, which shall be fully reserved by the Authority from proceeds of the DIP Facility; and

(iii) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code and section 3717 of Title 31 of the United States Code. For the avoidance of doubt, notwithstanding subparagraph (c) of this Paragraph, there is no limitation on the obligations of the Debtor and its Estate with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b) Carve-Out Trigger Date. As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Lender provides written notice to the Debtor, the U.S. Trustee and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents or upon the Loan Maturity Date.

(c) Reduction of Amounts. Although the Carve-Out shall not be paid until payments to Retained Professionals are made in accordance with subsection (a) of this Paragraph, the fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date shall only be reduced, dollar-for-dollar, by the aggregate amount of payments made from collateral that is subject to the liens and claims of the DIP Lender to applicable Retained Professionals, members of the Committee and the Patient Care Ombudsman

23

on and after the Carve-Out Trigger Date for fees and expenses incurred after the Carve-Out Trigger Date, but, for the avoidance of doubt, the fixed dollar amount of the Carve-Out shall not be reduced by any payments from:  (a) Avoidance Action Proceeds (subject to the right of the Authority to seek inclusion of same); (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Authority to seek inclusion of same); (c) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the Authority's right to seek inclusion of all of such excluded amounts); (d) the Retained Professionals Fund (except for any Residual Interest); or (e) any payments from any retainers held by any Retained Professionals.

(d)    <u>Reservation of Rights</u>.    Allowed fees and expenses of Retained Professionals, members of the Committee, and the Patient Care Ombudsman incurred in excess of the amounts provided therefor under the DIP Budget, including after the occurrence of the Carve-Out Trigger Date, shall, subject to approval of the Court, constitute allowed administrative expenses of the Debtor's Estate pursuant to, <u>inter alia</u>, sections 328, 330(a), 331, and 503(b) of the Bankruptcy Code; <u>provided, however</u>, the Carve-Out shall be limited to the amount set forth in Paragraph 15(a) of this Final Order, and the Authority reserves its right to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the DIP Budget.  The payment of any fees or expenses of the Retained Professionals, expenses of members of the Committee and the Patient Care Ombudsman pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce the Debtor's obligations owed to the DIP Lender, the Prepetition Lender or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or the Prepetition Collateral (or their respective claims against the

Debtor).   The DIP Lender and the Prepetition Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Retained Professionals, members of the Committee, the Patient Care Ombudsman, or any fees of the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Case or any successor case, and nothing in this Final Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

16.    <u>Waiver of Right to Surcharge</u>.   In light of the consent of the DIP Lender to the current payment of administrative expenses of the Debtor's Estate in accordance with the DIP Budget and (i) the agreement of the DIP Lender to subordinate its DIP Superpriority Claim to the Carve-Out, (ii) the agreement of the DIP Lender to subordinate its DIP Liens to the Carve-Out and Permitted Prior Senior Liens, and (iii) the agreement of the DIP Lender and the Prepetition Lender to permit the Debtor to use Cash Collateral, the DIP Lender and the Prepetition Lender are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Accordingly, subject to the entry of this Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by the Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Lender, the Prepetition Collateral, or the Prepetition Lender or their respective claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtor, on behalf of its Estate, waives any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Final Order and the DIP Loan Documents, the DIP Lender and the Prepetition Lender have each relied on the

foregoing provisions of this Paragraph.  Notwithstanding any approval of or consent to the DIP Budget, nothing in this Final Order shall constitute or be deemed to constitute the consent by any of the DIP Lender or Prepetition Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

17.    <u>Automatic Perfection</u>.

(a)    The (i) DIP Liens granted to the DIP Lender pursuant to this Final Order and the DIP Loan Documents, and (ii) the Adequate Protection Liens granted pursuant to this Final Order to the Prepetition Lender, shall not be subject to challenge and shall attach and become valid, enforceable, and perfected by operation of law upon entry of this Final Order by the Court as of the Petition Date without any further action by any party.  The DIP Lender in respect of the DIP Liens, and the Prepetition Lender in respect of the Adequate Protection Liens, shall each not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**<u>Perfection Documents</u>**"), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens granted under the DIP Loan Documents and this Final Order and the

Adequate Protection Liens granted under this Final Order and approved hereby, all of which are automatically perfected by the entry of this Final Order.  If the DIP Lender and/or Prepetition Lender, independently or collectively, in each of their sole discretion respectively, chooses to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of recording or filing any Perfection Documents, the DIP Lender and the Prepetition Lender may, in each of their sole discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Lender or the Prepetition Lender shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.

(b)    Until the indefeasible payment in full, in cash, of the DIP Obligations, with respect to DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Lender (or in the possession, custody or control of agents or bailees of the Prepetition Lender), the Prepetition Lender (and any agents or bailees of the Prepetition Lender) shall be deemed to be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Lender for the purposes of perfecting the security interests granted in such DIP Collateral.  Upon an Event of Default and the request of the DIP Lender, the Prepetition Lender (or its agents or bailees, as applicable) shall transfer,

27

assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody or control to the DIP Lender for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full, in cash, of all DIP Obligations, the DIP Lender (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Lender. For the avoidance of doubt, the grant, perfection, scope and vesting of the DIP Liens, DIP Superpriority Claim and DIP Obligations are fully effectuated by this Final Order and any security agreements, collateral agreements or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the grant, perfection, scope and vesting set forth herein as well as the powers and protections accorded to the DIP Lender, but in no event shall any such security agreement, collateral agreement or other Perfection Document be interpreted as a limitation of such provisions of this Final Order.

18.    _Stipulations and Waivers_.    After consultation with its attorneys and financial advisors, subject to and without prejudice to the rights of the Committee and any other party-in-interest as set forth in Paragraph 19 of this Final Order, the Debtor admits, stipulates and agrees to the following, and makes the releases and waivers set forth below, on and as of the Petition Date:

(a)    _Prepetition Secured Loan Documents_.    Prior to the Petition Date, the Debtor entered into the Prepetition Loan Agreement and other Prepetition Secured Loan Documents with the Prepetition Lender, as set forth more fully above and in the DIP Credit Agreement.    Pursuant to the Prepetition Secured Loan Documents, the Prepetition Lender was granted liens on, and security interests in (the "**Prepetition Liens**"), certain property and assets

of IMC under the Prepetition Secured Loan Documents (all as more fully set forth in the Prepetition Secured Loan Documents, the "**Prepetition Collateral**"); and

        (b)    <u>Prepetition Loans</u>.

        (i)    As of the Petition Date, the Debtor was indebted and liable to the Prepetition Lender under the Prepetition Secured Loan Documents, without defense, counterclaim or offset of any kind, in the approximate aggregate principal amount of not less than $117,784,158.32 in respect of the Prepetition Loan Agreement, not less than $2,000,000.00 in respect of the Pool Loan Agreement (for a total of not less than $119,784,158.32 in respect of the Prepetition Secured Obligations) and not less than $12,181,775.25 in respect of the unsecured Fund B Loan Agreement (for a total of not less than $131,508,051.55 in respect of the Prepetition Loans), plus accrued but unpaid interest thereon and other fees, expenses and other obligations incurred in connection therewith as provided in the Prepetition Secured Loan Documents and the Fund B Loan Agreement;

        (ii)    To the extent set forth in the Prepetition Secured Loan Documents, the Prepetition Liens are (x) valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral, (y) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) subject only to (A) after giving effect to this Final Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, and the Carve-Out, and (B) Permitted Prior Senior Liens;

        (iii)    The Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization,

disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    The Debtor does not have, and hereby forever releases and waives, any claims, objections, challenges, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Lender, or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time (and for the avoidance of doubt, as set forth above, all such releases are expressly subject to Challenge under Paragraph 19 of this Final Order);

(v)    All of the Debtor's cash existing as of the Petition Date, except for proceeds of the DIP Facility, including without limitation, all cash and other amounts on deposit or maintained by the Debtor in any account or accounts with the Prepetition Lender, but excluding (a) funds advanced by the I M Foundation, Inc. and (b) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the Prepetition Lender's right to seek inclusion of (a) and (b)), constitutes Cash Collateral of the Prepetition Lender; and

(vi)    The Debtor is in default with respect to its Prepetition Secured Obligations and one or more Events of Default has occurred under the Prepetition Secured Loan Documents and the Fund B Loan Agreement.

19.    <u>Effect of Stipulations on Third Parties</u>.

(a)    <u>Generally</u>.    The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph 18 of this Final Order (collectively, the "**<u>Prepetition Lien and Claim Matters</u>**") are and shall be binding on the Debtor, any subsequent trustee, responsible

person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, <u>unless</u>, and solely to the extent that, the Committee or another party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Paragraph 19 and Paragraph 20 of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**<u>Challenge</u>**") by (w) no later than the DIP Transaction Deadline (as defined below), (x) as such date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court, (y) as such date may be extended by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period, or (z) upon conversion of a chapter 11 case to chapter 7 in which case to the extent that any relevant Challenge period has not expired such period shall be automatically extended for 75 days from the date a chapter 7 trustee is appointed, as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Lender without the need for any further order of this Court or by this Court for good cause shown pursuant to an application filed by the Committee or any other party-in-interest prior to the expiration of such period (collectively, the "**<u>Challenge Deadline</u>**").  The Challenge Deadline shall not expire if this Court rules in favor of the plaintiff or movant in any timely and properly commenced Challenge proceeding and any such ruling is not reversed on appeal by an order or judgment that is not subject to further review or appeal.

(b)    Binding Effect.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order or judgment of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement of the Prepetition Lender to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive and final on the Committee and any other person, entity or party-in-interest in the Chapter 11 Case, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Estate.    Notwithstanding anything to the contrary herein, if any such Challenge is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge.    To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Lender shall be entitled to include the related costs and expenses in its Prepetition Secured Obligations, including but not limited to reasonable attorneys' fees, incurred in defending itself in any such proceeding pursuant to, and to the extent permitted by, the Prepetition Secured Loan Documents and section 506(b) of the Bankruptcy Code.

(c)    Standing.    The Committee is hereby granted standing to assert any Challenge on behalf of the Debtor or its Estate with respect to any Prepetition Lien and Claim Matters.    Nothing in this Final Order confers or vests standing on any other party-in-interest to

assert any claim on behalf of the Debtor or its Estate, or relieves any other party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of the Debtor or its Estate.

20.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Secured Loan Documents or any security interests, liens or claims granted under this Final Order, the DIP Loan Documents, or the Prepetition Secured Loan Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Lender or the Prepetition Lender or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral; or (d) seeking to amend or modify any of the rights granted to the DIP Lender or the Prepetition Lender under this Final Order, the DIP Loan Documents or the Prepetition Secured Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; <u>provided</u>, <u>however</u>, that no more than $60,000 in the aggregate of the proceeds of the DIP Facility, Cash Collateral and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

21.    <u>Avoidance Action Proceeds</u>.  Notwithstanding anything in this Final Order or any other DIP Loan Document to the contrary, Avoidance Action Proceeds shall not be DIP

Collateral or Cash Collateral and shall not be subject to the DIP Liens, DIP Superpriority Claim, the Adequate Protection Liens and the Section 507(b) Claim of the Prepetition Lender; provided, however, the Authority reserves its right to seek such relief hereafter.

22.    Adequate Protection.  This Court finds that the Adequate Protection provided in this Final Order, including, without limitation, in this Paragraph, is reasonable and sufficient to protect the interests of the Prepetition Lender.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Lender pursuant hereto is without prejudice to the right of the Prepetition Lender, or any other party-in-interest, to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party-in-interest to contest any such modification.

(a)    Adequate Protection Liens.  As adequate protection of the Prepetition Liens of the Prepetition Lender under the applicable Prepetition Secured Loan Documents, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Lender shall be granted valid, binding, enforceable and perfected security interests and replacement liens (the "**Adequate Protection Liens**") upon all property of the Debtor whether arising prepetition or postpetition of any nature whatsoever, wherever located, except for (a) Avoidance Actions and Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), and (d) the Retained Professionals Fund (except for any Residual Interest) (the "**Adequate Protection Obligations**") in each case to secure the

34

Prepetition Secured Obligations of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) the reduction in Prepetition Collateral available to satisfy Prepetition Secured Obligations as a consequence of the priming of the Prepetition Secured Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtor other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, the DIP Liens and the DIP Superpriority Claim, and (C) the Permitted Prior Senior Liens.  None of the Adequate Protection Liens or Adequate Protection Obligations shall (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code, (y) be subject to any intercompany claim, whether secured or unsecured, of the Debtor or any domestic or foreign subsidiary or affiliate of the Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Final Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, the Permitted Prior Senior Liens, the DIP Obligations, the DIP Liens and the DIP Superpriority Claim.

(b)     Section 507(b) Claim.   To the extent that the Prepetition Lender holds claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Lender is hereby granted an

administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "**Section 507(b) Claim**") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, Permitted Prior Senior Liens, Existing Obligations, Prepetition Liens, the DIP Obligations, the DIP Liens and the DIP Superpriority Claim; provided, however, that such priority shall not apply to (a) Avoidance Action Proceeds (subject to the right of the Prepetition Lender to seek inclusion of same), (b) funds advanced by the I M Foundation, Inc. (subject to the right of the Prepetition Lender to seek inclusion of same), (c) any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC (subject to the right of the Prepetition Lender to seek inclusion of same), and (d) the Retained Professionals Fund (except for any Residual Interest after indefeasible payment in full, in cash, of the DIP Obligations).

(c)    Adequate Protection Payments.    Subject to Section 506(b) of the Bankruptcy Code, the Debtor shall, in accordance with the DIP Budget, with respect to the Prepetition Lender promptly pay all reasonable fees and expenses under the Prepetition Secured Loan Documents incurred by the Prepetition Lender whether incurred prior to or following the Petition Date.    The payments under this Paragraph shall be referred to collectively as the "**Adequate Protection Payments**."    Invoices supporting fees and expenses being charged to the Debtor shall be submitted to counsel for the Debtor, with copies to the U.S. Trustee, counsel for the Prepetition Lender and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).    No attorney or advisor to the Prepetition Lender shall be

required to file an application seeking compensation for services or reimbursement of expenses with the Court. The U.S. Trustee, the Debtor, and Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors. In the event any Adequate Protection Payment would be required to be repaid to the Debtor as a result of application of section 506(b) of the Bankruptcy Code or otherwise, any such amounts shall not be repaid and instead shall be applied as follows: first, to the DIP Obligations until such obligations are indefeasibly paid in full, in cash; second, to the Prepetition Secured Obligations until such obligations are indefeasibly paid in full, in cash; and third, to the Debtor and its Estate.

23.    <u>Restructuring/Wind-Down Advisors; Closure Plan</u>.    It is a condition of the Debtor's access to the DIP Facility and Authority's consent to use of the Cash Collateral that (i) the Debtor shall continue to employ John D. Leech as its chief restructuring officer (the "**<u>CRO</u>**") and Gordian-Dynamis Solutions LLC as its restructuring consultant ("**<u>Gordian-Dynamis</u>**"), or in each case such other chief restructuring officer, other restructuring consultant(s) or other wind-down officer that is/are acceptable to the Authority on terms acceptable to the Authority (collectively, together with the CRO and Gordian-Dynamis, the "**<u>Restructuring/Wind-Down Advisors</u>**"), (ii) the Restructuring/Wind-Down Advisors shall continue to provide assistance to the Debtor on that certain closure plan submitted to the New York State Department of Health ("**<u>DOH</u>**") by the Debtor in accordance with existing regulations set forth in the New York Codes, Rules and Regulations, including 10 N.Y.C.R.R. §401.3 thereof  (the "**<u>Closure Plan</u>**"), including identifying programs of great community need, assisting in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority,

and identifying and implementing strategies and methods for repurposing of the Debtor's facilities, (iii) the Debtor and the Restructuring/Wind-Down Advisors shall continue to work with DOH and its sister agencies the Office of Mental Health (OMH) and the Office of Alcoholism and Substance Abuse Services (OASAS), as well as the Authority, with respect to obtaining approval of the Closure Plan, and (iv) the Debtor shall continue to cooperate with DOH and the Authority as same may request in their sole discretion with respect to the Closure Plan, including, without limitation, (a) by providing reasonable access to (x) the Debtor's facilities as well as all reasonably available records pertaining thereto, and (y) the Debtor's financial books and records, and (z) the Restructuring/Wind-Down Advisors to report to DOH and the Authority on the Debtor's operations, the Closure Plan and any other facet of their engagement with the Debtor, at such times and in such form as DOH and the Authority shall reasonably request, and (b) by working with DOH and the Authority to identify programs of great community need, assist in identifying potential partners to carry on those programs who is/are acceptable to DOH and the Authority and who would operate on terms acceptable to DOH and the Authority, and by working with DOH and the Authority to identify and implement strategies and methods for repurposing of the Debtor's facilities.

24.    [Reserved]

25.    <u>Indemnification</u>.  The Debtor shall indemnify the DIP Lender and its affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "**<u>Indemnified Person</u>**") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified

Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtor or any of its affiliates or shareholders) that relates to the DIP Facility or this Final Order, including the financing contemplated hereby, the Chapter 11 Case, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct.  Nothing herein is meant to limit the scope of, or otherwise affect, any indemnification rights or obligations provided for the benefit of the Prepetition Lender under the Prepetition Secured Loan Documents and the DIP Lender in the DIP Loan Documents.

26.    <u>Remedies</u>.  Upon the occurrence of an Event of Default or upon the Loan Maturity Date, after providing not less than seven (7) days prior notice pursuant to the Notice Procedures Order, the DIP Lender shall be entitled to exercise all of its rights and remedies under this Final Order, including, without limitation, foreclose upon the DIP Collateral, including Cash Collateral, or otherwise enforce the DIP Obligations, DIP Liens and DIP Superpriority Claim on any or all of the DIP Collateral, including Cash Collateral, and/or to exercise any other default-related remedies under the DIP Loan Documents, this Final Order or applicable law in seeking to recover payment of the DIP Obligations.  For the avoidance of doubt, with respect to Permitted Prior Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law in respect of Permitted Prior Senior Liens.  During the not less than seven (7) day notice period, the Debtor, the Committee or any other party-in-interest may seek an order of the Court staying the DIP Lender's exercise of such remedies against the DIP Collateral, including with respect to Cash Collateral, and, if no such stay is obtained, then the

DIP Lender may exercise any and all such rights and remedies without further order of the Court or notice to any party, and during the seven (7) day notice period, the Debtor shall be entitled to continue to use Cash Collateral in accordance with the DIP Budget.  In addition to the foregoing remedies set forth in this Paragraph, if the Debtor fails to comply with Paragraph 23 of this Final Order, the Authority may file a motion for an order of this Court directing the appointment of a Restructuring/Wind-Down Officer to implement the Closure Plan and/or directing the U.S. Trustee to appoint a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code, and the Court shall schedule an expedited hearing on the matter, and the Debtor and any other party-in-interest reserves all rights to oppose such a motion.

27.    <u>Access to DIP Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Loan Maturity Date has occurred and is continuing under the DIP Loan Documents, and repayment under the DIP Loan Document is immediately due and payable in full, the DIP Lender may, subject to the applicable notice provisions, if any, in this Final Order and any separate agreement by and between such landlord and the DIP Lender, enter upon any leased premises of the Debtor or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder, <u>provided</u> <u>that</u> the DIP Lender shall only be obligated to pay rent of the Debtor that first accrues after the DIP Lender's written notice referenced above and that is payable during the period of such occupancy by the DIP Lender, calculated daily on a per diem

basis.  Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this Paragraph.  Furthermore, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtor located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claim.

28.    <u>Insurance Policies</u>.  Effective as of entry of this Final Order, the DIP Lender and the Prepetition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtor that in any way relates to DIP Collateral or Prepetition Collateral, as applicable.

29.    <u>Successors and Assigns</u>.  This Final Order, the DIP Credit Agreement and the other DIP Loan Documents shall be binding upon all parties in interest in the Chapter 11 Case, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

30.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order, and the rights, remedies, powers, privileges, liens and priorities of the DIP Lender and the Prepetition Lender provided for in this Final Order and in any DIP Loan Document shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in the Chapter 11 Case (and, to the extent not indefeasibly paid in full, in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor having hereby waived such discharge), (ii) converting the Chapter 11 Case to a Chapter 7 case, (iii) dismissing the Chapter 11 Case, or

(iv) any superseding case(s) under the Bankruptcy Code.  The terms and provisions of this Final Order as well as the DIP Obligations, DIP Liens, DIP Superpriority Claim, DIP Loan Documents, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Final Order and the DIP Loan Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

31.    <u>Good Faith</u>.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Final Order, the DIP Credit Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtor, the DIP Lender and the Prepetition Lender, and the extension of the financial accommodations to the Debtor by the DIP Lender and the Prepetition Lender pursuant to this Final Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  The DIP Lender and the Prepetition Lender are entitled to, and are hereby granted, the full protections of sections 363(m) and 364(e) of the Bankruptcy Code.

32.    <u>Subsequent Reversal or Modification</u>.  Subject to Paragraph 19 of this Final Order, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Final Order and the DIP Loan Documents by the Debtor prior to the date of receipt of written notice to the DIP Lender and the Prepetition Lender of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Final Order and the DIP Loan Documents, including, without limitation, the DIP Obligations, the DIP Liens and the DIP Superpriority

Claim, the Prepetition Secured Obligations, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Payments and the Section 507(b) Claim. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender and the Prepetition Lender prior to written notice to the DIP Lender and the Prepetition Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order and the DIP Loan Documents, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant to this Final Order and the DIP Loan Documents.

33.    <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender or Prepetition Lender may have to bring or be heard on any matter brought before the Court.  Any consent, modification, declaration of default, or exercise of remedies under or in connection with this Final Order or the DIP Loan Documents shall require the approval of the DIP Lender and any non-exercise of remedies under or in connection with the DIP Facility and/or this Final Order, shall not be deemed a waiver or relinquishment of any of the rights of the DIP Lender.  Nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the DIP Lender or the Prepetition Lender, including, without limitation, the right to (a) request conversion of the Chapter 11 Case to chapter 7 (to the extent applicable for charitable entities), (b) seek to terminate the exclusive rights of the Debtor to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay.  All such

rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.  In the event that the DIP Lender and/or the Prepetition Lender in the future seek relief from this Court to encumber or otherwise have the claims of the DIP Lender and/or the Prepetition Lender payable from Avoidance Actions, Avoidance Action Proceeds, funds advanced to the Debtor by the I M Foundation, Inc. and/or any restricted contributions, grants, gifts and bequests, other than any VAP Award, held or received by IMC, the rights of the Debtor and other parties-in-interest to object to such relief are fully preserved.

34.     _Additional Defaults_.  In addition, and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents or this Final Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Loan Documents) if

(a)     the Debtor uses the Prepetition Collateral, including Cash Collateral, other than as set forth herein and in the DIP Budget,

(b)     the Debtor shall not have in place the Restructuring/Wind-Down Advisors,

(c)     except as otherwise permitted by the DIP Credit Agreement, without the written consent of the DIP Lender, the Debtor proposes any of the following that would not indefeasibly pay the DIP Obligations in full, in cash:  (i) a sale, or transfer, of all or substantially all of the equity or assets of the Debtor; (ii) the Debtor is reorganized with another entity as its majority or sole member; or (iii) the Debtor's assets are transferred to a successor,

(d)     without the written consent of the Prepetition Lender, the Debtor applies to the Court for an order:

(i)     authorizing the use of the DIP Collateral, including Cash Collateral or that seeks approval of a priming, senior or _pari passu_ security interest in or lien upon Cash Collateral or the DIP Collateral;

(ii)     seeking to challenge the Prepetition Lender's liens upon the Cash Collateral or the Collateral or otherwise asserting rights, claims or causes of action against the Prepetition Lender with respect to the Prepetition Secured Obligations;

(iii)     seeking to sell or transfer all or substantially all of the equity or assets of the Debtor while not agreeing to, at the same time,

indefeasibly pay the DIP Obligations and Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby;

(iv)    seeking to reorganize the Debtor with another entity as its controlling, majority or sole member while not agreeing to, at the same time, indefeasibly pay the DIP Obligations and Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby; or

(v)    seeking to transfer the Debtor's assets to a successor while not agreeing to, at the same time, indefeasibly pay the DIP Obligations and Prepetition Secured Obligations in full, in cash, and completely satisfy same upon consummation of the transaction contemplated thereby.

(e)    any other motion is filed by the Debtor for any relief directly or indirectly affecting the DIP Collateral in a material manner unless all DIP Obligations have been indefeasibly paid in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby,

(f)    the Debtor fails to comply with any of the material terms of this Final Order, including the DIP Budget, or any stipulation, representation or covenant by the Debtor stated herein is materially false or misleading,

(g)    any of relief listed above in this Paragraph (a-f) is granted upon a motion of a party other than the Debtor; provided, however, for the avoidance of doubt, the mere filing (as opposed to granting) of a motion by a party other than the Debtor, including the Committee, for any of relief listed in this Paragraph shall not be an Event of Default, and/or

(h)    the Debtor fails to meet any of the following milestones (except to the extent such deadlines or milestones are extended in writing by the Authority in its sole discretion):

(i)    on or before September 26, 2013, file a VAP Application in form and substance acceptable to DOH;

(ii)    on or before October 16, 2013, not obtain approval of the Debtor's motion seeking authorization to implement the Closure Plan; provided, however, that if the Court does not rule on the Debtor's motion for approval of the Closure Plan at the hearing commencing on October, 15, 2013, then such date shall be extended until the earlier of the date the Court so rules and October 18, 2013; and

(iii)    complete implementation of the Closure Plan on or before: (a) December 2, 2013, for inpatient operations; and (b) January 30, 2014, for all other patient and healthcare operations, except as

otherwise permitted in writing by the Authority in consultation with DOH.

35.    <u>Effect of Dismissal or Conversion</u>.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Lender and Prepetition Lender under this Final Order and shall preserve the Carve-Out.  Unless the Authority agrees in writing otherwise, no order providing for the sale of substantially all of the assets of the Debtor under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the DIP Obligations and Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale and such proceeds (but solely to the extent such proceeds are DIP Collateral or Prepetition Collateral and not the collateral of any other holder of a Permitted Prior Senior Lien) are applied to permanently and indefeasibly repay the DIP Obligations or Prepetition Secured Obligations, as applicable, in full, in cash.  If an order dismissing the Chapter 11 Case under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that the DIP Liens and the DIP Superpriority Claim granted to the DIP Lender hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Final Order until all DIP Obligations and indebtedness owing to the DIP Lender under the DIP Loan Documents shall have been indefeasibly paid in full, in cash and the DIP Lender's obligations and commitments under the DIP Loan Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Payment and 507(b) Claims.

36.  <u>Settlement of Claims and Related Matters Between the Debtor and the Authority</u>. As a condition of the Debtor's access to the DIP Facility and the Authority's consent to use of Cash Collateral, the following resolutions of prepetition and postpetition claims and related matters between the Debtor and the Authority are hereby authorized and approved (collectively, the "<u>DIP Transaction</u>"):

    (a)  The Debtor shall fully implement the Closure Plan;

    (b)  On or before the earlier of entry of an order confirming a chapter 11 plan for the Debtor consistent with the DIP Transaction (a "<u>Plan</u>") and January 31, 2014 (the "<u>DIP Transaction Deadline</u>"), unless the DIP Lender agrees in writing in its sole discretion to extend that deadline, the DIP Lender (and/or a subsidiary of the DIP Lender and/or another party or parties as designated by the DIP Lender) shall receive, without the need to seek further relief from the Court, at the DIP Lender's option:  (i) all real property owned by the Debtor, or designation rights ("<u>Designation Rights</u>") for all such property; <u>provided</u>, <u>however</u>, that any real property not acquired by the DIP Lender or its designee shall be retained by or returned to the Debtor; (ii) Designation Rights or assignment of all of the Debtor's real property leases and executory contracts (any related cure costs for such assignments to be resolved between the DIP Lender and the Debtor with the intent of the Debtor and the DIP Lender being that any cure costs would be paid by the DIP Lender or the assignee of any assigned lease or contract; <u>provided</u>, <u>however</u>, to the extent that the Debtor will be required to pay a cure cost, the Committee will be given notice of such cure cost with an opportunity to object within 7 days of receipt of such notice, with any objection that is not resolved consensually to be ruled upon by the Court); (iii) Designation Rights or transfer of all of the Debtor's clinic operations and assets; (iv) Designation Rights or transfer of all of the Debtor's inventory, furniture, fixtures, and equipment needed for future services at clinic operations, real property and leases; <u>provided</u>, <u>however</u>, the Committee shall be given notice of any equipment that will be taken or designated by the DIP Lender with an opportunity to object within 7 days of receipt of such notice on the grounds that such equipment is not needed for future services at clinic operations, real property and leases, with any objection not resolved consensually to be ruled upon by the Court; and (v) $3.5 million of cash; <u>provided</u>, <u>however</u>, that if the DIP Transaction occurs after January 31, 2014, then such amount shall be reduced by the aggregate amounts paid thereafter by IMC for the DIP Lender's professional fees and costs plus an amount agreed upon by the DIP Lender and the Debtor to reflect the post-January 31, 2014 carrying costs borne by the Debtor for the assets to be transferred to the DIP Lender

under this paragraph; and further provided, however, that to the extent, if any, any asset sale proceeds are paid to the DIP Lender pursuant to the DIP Credit Agreement, such payments shall result in a dollar for dollar decrease in such $3.5 million payment.

With respect to the foregoing:

(i)     while the final decision will be the Authority's in its sole discretion, the Authority agrees to consult with the Debtor (or with the Debtor's consent, a committee comprised of representatives of the Debtor and the IM Foundation, Inc.) regarding any designation for the transfer of any clinic or other asset as well as regarding the leasing or repurposing of any real estate now owned or leased by the Debtor;

(ii)    in making its decisions on designations, leasing, and repurposing of the collateral of the DIP/Prepetition Lender, the Authority's goal shall be to prioritize uses that would enhance the provision of health care services in the Debtor's community; and

(iii)   to the extent, if any, clinics or other operations now being operated by the Debtor are transferred or otherwise disposed of, any amounts paid by such transferee that are allocable to such business income operations and related cash flow or receivables, as opposed to being allocable to the physical collateral to be transferred to the DIP Lender pursuant to the DIP Transaction, shall be paid to the Debtor.  To the extent, if any, the Debtor and the DIP Lender cannot resolve any such allocation consensually, the Bankruptcy Court shall resolve any remaining dispute;

(c)     On the DIP Transaction Deadline, subject to the rights of the DIP Lender set forth in the preceding sub-paragraph (b) and sub-paragraph (e) below, the Debtor shall hold any Estate assets that are not being transferred to the DIP Lender (or its designee) and are no longer subject to the Designation Rights free and clear of any of the DIP Lender's and/or the Prepetition Lender's liens, including, without limitation, the following:  (i) remaining cash on hand; (ii) accounts receivable; (iii) grant receivables; (iv) restricted cash; (v) any rights concerning the I M Foundation, Inc.; (vi) any interests in HealthFirst; (vii) inventory, furniture, fixtures, and equipment not designated by the DIP Lender; and (viii) Avoidance Actions and Avoidance Action Proceeds and other causes of action (collectively, the "Retained Assets");

(d)     If the Debtor does not otherwise have sufficient cash to pay the DIP Lender the $3.5 million cash payment due to the DIP Lender on the DIP Transaction Deadline, then such amount shall be paid from the DIP Loan proceeds and/or from monetization of certain of the Debtor's Retained

Assets, with the exact assets and procedure to be agreed upon between the Debtor and the DIP Lender;

(e)      On the DIP Transaction Deadline, the DIP Lender and Prepetition Lender on one hand and the Debtor and its estate, on the other hand, shall receive mutual releases from all claims and obligations (including, for the avoidance of doubt, (i) from any claims by the DIP Lender for repayment of the DIP Facility; (ii) from any Challenge with respect to any Prepetition Lien and Claim Matters); (iii) from any such claim on behalf of the Debtor's estate that could be asserted by any party-in-interest with standing and requisite authority on behalf of the Debtor's estate, including, without limitation, the Committee; and (iv) from any obligations of the Authority with respect to the DIP Financing, including the Carve-Out (i.e., including all amounts set forth in paragraph 15(a)(i)-(iii) above)); provided, however, nothing in this paragraph 36 shall be deemed to release any claims, rights and causes of action to enforce the terms of the DIP Transaction; and further provided, however, that if a Plan has not been confirmed on or before the DIP Transaction Deadline, then the DIP Transaction shall nevertheless be consummated, except that until a Plan is confirmed, the DIP Lender shall retain an allowed $25 million secured prepetition claim and an allowed postpetition claim in accordance with the priority set forth in this Final Order for any amounts borrowed under the DIP Facility, in each case, without the need to seek further relief from this Court, provided that, for the avoidance of doubt, once a Plan is confirmed, there shall be no distributions or payments on account of the foregoing allowed claims of the DIP Lender and such claims shall be extinguished. In the event that the DIP Transaction is not consummated, all parties-in-interest retain all of their rights;

(f)      Any Plan shall incorporate the releases provided for in the immediately preceding sub-paragraph (e);

(g)      After the DIP Transaction Deadline, the Debtor shall have free use of and access to space in IMC's hospital building for records storage and administrative purposes until December 31, 2014: provided, however, that after reasonable notice, the DIP Lender or its designee shall be able to move or evict the Debtor from any such space to the extent, if any, the DIP Lender or its designee is able to dispose of the relevant property or negotiate a new use that precludes the Debtor from continuing to use such space; and

(h)      The DIP Loan Documents and this Final Order shall be binding on a subsequent chapter 7 trustee for Debtor in the event the Chapter 11 Case is converted to chapter 7.

37.    Order Governs.  In the event of any conflict between the provisions of this Final Order, the DIP Loan Documents and any other agreement, the provisions of this Final Order shall control and govern to the extent of such conflict.

38.    Right to Credit Bid.  Pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Lender shall have the exclusive right to use the DIP Obligations, the DIP Liens and the DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; and (ii) subject to the indefeasible payment in full, in cash of the DIP Obligations, the Prepetition Lender shall have the exclusive right to use the Prepetition Secured Obligations, the Adequate Protection Obligations, the Adequate Protection Liens and the Section 507(b) Claim of the Prepetition Lender to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.  For the avoidance of doubt, the rights of the DIP Lender and the Prepetition Lender to credit bid with respect to their collateral do not permit the DIP Lender and the Prepetition Lender to credit bid collateral of any holder of a Prior Permitted Senior Lien.

39.    No Marshaling.  None of the DIP Lender, DIP Collateral, Prepetition Lender, or Prepetition Collateral shall be subject to the doctrine of marshaling.

40.    United States Departments and Agencies.  As to the United States, its agencies, departments or agents, nothing in this Final Order or the DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

41.    28 U.S.C. §959(b).  Nothing in this Final Order or the DIP Documents shall permit the Debtor to violate 28 U.S.C. §959(b).

42.    Headings.  The headings in this Final Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Final Order.

43. <u>Immediate Docketing and Effect of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of this Court maintained in regard to the Chapter 11 Case.  This Final Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Final Order.  All objections to the entry of this Final Order have been withdrawn or overruled and the Motion is approved on a final basis on the terms and conditions set forth herein.

44. <u>Notice of Entry</u>.  The Debtor shall promptly mail copies of this Final Order to the Notice Parties.



**Dated: Brooklyn, New York**
**September 30, 2013**

**Carla E. Craig**
**United States Bankruptcy Judge**