**Hearing Date and Time:  January 27, 2014 at 2:00 p.m. (Eastern Time)**
**Objection Deadline:  January 20, 2014 at 4:00 p.m. (Eastern Time)**

Alan J. Lipkin
Shaunna D. Jones
Anna C. Burns
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re                                                  :        Chapter 11
                                                       :
Interfaith Medical Center, Inc.,[1]                    :        Case No. 12-48226 (CEC)
                                                       :
                    Debtor.                            :
------------------------------------------------------x

## NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDER GRANTING SIXTH EXTENSION OF EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that annexed hereto is the Debtor's Motion for Order

Granting Sixth Extension of Exclusive Periods to File Plan of Reorganization and Solicit

Acceptances Thereof Pursuant to Section 1121(d) of the Bankruptcy Code (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") on the

Motion has been scheduled for **January 27, 2014 at 2:00 p.m. (prevailing Eastern Time)**

before the Honorable Carla E. Craig, Chief United States Bankruptcy Judge, in Courtroom 3529

of the United States Bankruptcy Court, 271 Cadman Plaza East - Suite 1595, Brooklyn, New

York 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to

entry of the order requested in the Motion must be made in writing, state with particularity the

---

[1]     The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is
1545 Atlantic Avenue, Brooklyn, New York 11213.

grounds therefore, conform to the Federal Rules of Bankruptcy Procedure and the Local

Bankruptcy Rules for the Eastern District of New York, be filed electronically in text searchable

portable document format (PDF) with the Court by registered users of the Court's case filing

system and by all other parties in interest (with a hard-copy delivered directly to the Judge's

Chambers), and be served upon:  (i) Interfaith Medical Center, 1545 Atlantic Avenue, Brooklyn,

NY 11213 (Attn: Patrick Sullivan and Robert Mariani); (ii) counsel for the Debtor, Willkie Farr

& Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Alan J. Lipkin, Esq. and

Shaunna D. Jones, Esq.); (iii) the Office of the United States Trustee, 201 Varick Street, Room

1006, Brooklyn, NY 10014 (Attn: William E. Curtin, Esq.); (iv) counsel to the Dormitory

Authority of the State of New York, Winston & Strawn LLP, 200 Park Avenue, New York, NY

10166-4193 (Attn: David Neier, Esq. and Carey D. Schreiber, Esq.); and (v) counsel to the

Official Committee of Unsecured Creditors, Alston & Bird LLP, 90 Park Avenue, New York,

NY 10016 (Attn: Martin G. Bunin, Esq. and Craig Freeman, Esq.), **so as to be actually received

on or before 4:00 p.m. (prevailing Eastern Time) on January 20, 2014.**

      **PLEASE TAKE FURTHER NOTIC**E that if you wish to be heard with respect to any

of the foregoing matters, you must attend the Hearing.  The Hearing may be adjourned from time

to time in open court.

**PLEASE TAKE FURTHER NOTICE** that if you would like to receive copies of the Motion set forth above:  (a) you may access such documents online from either the Bankruptcy Court's electronic case filing system located at http://www.nyeb.uscourts.gov/ or the website of the Debtor's claims agent at http://www.donlinrecano.com/interfaithmedical; or (b) you may contact Anna C. Burns, Esq., at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, by telephone at (212) 728-8000 or by e-mail at aburns@willkie.com.

Dated: January 13, 2014

WILLKIE FARR & GALLAGHER LLP

By:   /s/ Shaunna D. Jones
     Alan J. Lipkin
     Shaunna D. Jones
     Anna C. Burns
     787 Seventh Avenue
     New York, New York 10019
     Tel:  (212) 728-8000
     Fax:  (212) 728-8111

*Attorneys for the Debtor and Debtor in Possession*

Alan J. Lipkin
Shaunna D. Jones
Anna C. Burns
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-48226 (CEC) |
| | : | |
| Debtor. | : | |

-------------------------------------------------------x

## DEBTOR'S MOTION FOR ORDER GRANTING
## SIXTH EXTENSION OF EXCLUSIVE PERIODS TO FILE
## PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES
## THEREOF PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Interfaith Medical Center, Inc., the debtor and debtor in possession in the above-captioned case (the "**Debtor**" or "**IMC**"), hereby moves for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented by Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting a sixth extension of the Debtor's exclusive periods to file a plan of reorganization and to solicit acceptances thereof for approximately sixty (60) additional days.  In support of this motion, the Debtor, by and through its undersigned counsel, respectfully represents:

---

[1]    The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

## JURISDICTION

1.        This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core matter within the meaning of 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006(b)(1).

## BACKGROUND

A.        General Background

2.        On December 2, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its property and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.        On December 13, 2012, the Office of the United States Trustee for the Eastern District of New York appointed an official committee of unsecured creditors in this case (the "**Committee**").

4.        The events leading to the Debtor's chapter 11 filing and certain facts and circumstances supporting the relief requested herein are further described in the Declaration of Luis A. Hernandez, President and Chief Executive Officer of Interfaith Medical Center, Inc., In Support of Chapter 11 Petition and First Day Pleadings [Docket No. 2], which was filed with the Court on the Petition Date.

B.        Plan Related Facts

5.        Further developments of relevance are summarized in the Debtor's Motion for Order Approving Memorandum of Understanding between The Brooklyn Hospital Center and Interfaith Medical Center (the "**TBHC MOU**") [Docket No. 260], which was filed with the

Court on February 22, 2013.  Among other things, the TBHC MOU precluded IMC from soliciting alternative transactions while TBHC performed its due diligence for a significant period of time.  Ultimately, TBHC never initiated the formal due diligence process under the TBHC MOU.[2]

6.     Additional facts and developments of relevance are summarized in the Debtor's motion [Docket No. 602] (the "**Closure and Transition Motion**") for entry of an order implementing a plan of transition and closure for the Debtor's hospital and certain affiliated outpatient clinics and practices (the "**Closure and Transition Plan**").  Among other matters, the Closure and Transition Motion delineates the Debtor's efforts to pursue alternative transactions or a stand alone plan as prospects faded for a business relationship with TBHC.  Those efforts included IMC's formulation and submission to the New York State Department of Health ("**DOH**") of draft proposed business restructuring plans, including, on an expedited basis requested by DOH, a plan that addressed IMC's potential ability to operate outside of chapter 11 without future funding from the State of New York (the "**State**").  IMC provided a working draft of that restructuring plan to the Dormitory Authority of the State of New York ("**DASNY**") and DOH.[3]  Given DOH's and DASNY's responses to such submission, the Debtor understood there then was no support from either the State or DOH for IMC's reorganization, the Debtor's financial ability to independently pursue such a path would be foreclosed, and DOH and

---

[2]     IMC understands that TBHC required and had been promised $1.6 million of State financing to fund TBHC's due diligence, but that funding never materialized.

[3]     By letter, dated July 24, 2013, DASNY advised IMC that, among other things, based on correspondence from DOH, "DASNY believes that there is no viable prospect of any additional funding [for IMC] coming from the State of New York or any other source, other than in connection with a prompt closure of IMC"; (b) "DASNY's consent to continued use of cash collateral starting on Monday, July 29, 2013, is expressly conditioned on IMC's agreement to implement the Closure and Transition Plan and use cash collateral based solely on the closure budget"; (c) DASNY expects, "in connection with DASNY's consent to use cash collateral that IMC will file the closure motion prior to Monday, July 29, 2013"; and (d) DASNY believes "IMC should as soon as practicable send out WARN notices to all of its affected employees; and [DASNY is] adding that as a requirement in the proposed Cash Collateral Order."

DASNY were directing IMC to promptly begin implementing a Closure and Transition Plan. The Closure and Transition Motion was filed soon thereafter.

7.      In connection with the approval of the Closure and Transition Motion, IMC also sought approval of a Memorandum of Understanding between IMC and Kingsbrook Jewish Medical Center ("**KJMC**") negotiated by those parties.  The MOU with KJMC addresses, among other things, the transition of certain IMC operations to KJMC in connection with implementation of the Closure and Transition Plan and related issues.[4]

8.      After the November 13, 2013 evidentiary hearing on the Closure and Transition Motion was completed, the Court reserved decision and entered an order assigning the case to mediation in an attempt to resolve certain related disputes.  The parties to the mediation included the Debtor, the Committee, DASNY, DOH, 1199SEIU United Healthcare Workers East ("**1199SEIU**"), the Ad Hoc Group of Doctors, the I M Foundation, Inc. (the "**Foundation**"), the New York State Nurses Association ("**NYSNA**"), and the Committee of Interns and Residents/SEIU ("**CIR**").  The Honorable Elizabeth Stong was the mediator.  Although the mediation tentatively concluded on Friday, December 20, 2013, in light of DOH's subsequent request that IMC's hospital remain operating through approximately March 2014 and certain promised fundings, the mediation remains subject to reopening.[5]

9.      On December 19, 2013, this Court granted a portion of the relief requested in the Closure and Transition Motion by entering an order authorizing the Debtor to transfer clinic operations to KJMC in accordance with the KJMC MOU [Docket No. 840] (the "**Clinic**

---

[4]      A copy of the KJMC MOU was filed with the Court at Docket No. 774.

[5]      In connection with DOH's request, DOH has agreed to fund an increase in the Debtor's DIP loan from DASNY by an additional approximate $3.5 million in order to fund a portion of IMC's extended period of operation.  Additional funds to support IMC's hospital operations into March or perhaps longer is now being discussed.

**Transfer Order**").  The Clinic Transfer Order was entered without prejudice to any other aspect of the Closure and Transition Motion and provides that all parties' rights regarding the remainder of the relief sought in that Motion are reserved.

10.     Until a final order is entered by this Court resolving the Closure and Transition Motion, or an alternative resolution of IMC's fate is reached through mediation or otherwise, the Debtor's ability to finalize and file a chapter 11 plan is constrained.  Accordingly, the Debtor seeks to extend the Exclusive Periods (as defined below) to maintain the *status quo* with respect to IMC's path for emergence from chapter 11.

C.     Prior Exclusivity Related Court Filings

11.     On March 22, 2013, the Court entered an Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof Pursuant to Section 1121(d) of the Bankruptcy Code [Docket No. 349] extending such periods approximately ninety (90) days to July 1, 2013 and August 30, 2013, respectively.

12.     On June 26, 2013, the Court entered an Order Granting Second Extension of Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof Pursuant to Section 1121(d) of the Bankruptcy Code [Docket No. 550] extending such periods approximately ninety (90) additional days to September 30, 2013 and December 2, 2013, respectively.

13.     On September 18, 2013, the Court entered an Order Granting Third Extension of Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof to Section 1121(d) of the Bankruptcy Code [Docket No. 730] extending such periods by approximately forty (40) additional days to November 11, 2013 and January 13, 2014, respectively.

14. On November 8, 2013, the Court entered an Order Granting Fourth Extension of Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof to Section 1121(d) of the Bankruptcy Code [Docket No. 787] extending such periods approximately thirty-five (35) additional days to December 16, 2013 and February 17, 2014, respectively.

15. On December 13, 2013, the Court entered an Order Granting Fifth Extension of Exclusive Periods to File Plan of Reorganization and Solicit Acceptances Thereof to Section 1121(d) of the Bankruptcy Code [Docket No. 833] extending such periods by approximately forty-five (45) additional days to January 30, 2014 and April 3, 2014, respectively.

16. On August 16, 2013, the Foundation filed a motion for an order terminating the Debtor's Exclusive Periods (as defined below). IMC understands that motion has been withdrawn without prejudice. Regardless, as demonstrated below, further extension of the Debtor's Exclusive Periods is appropriate.

### RELIEF REQUESTED

17. Section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Section 1121(c)(3) provides that, if a debtor files a plan of reorganization within the Exclusive Filing Period, then the debtor has an initial period of 180 days after commencement of its chapter 11 case to solicit acceptances of such plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"). Section 1121(d) permits the Court to extend the Exclusive Periods for "cause." Pursuant to the Prior Extension Orders, the Court extended the Debtor's Exclusive

Periods for cause. Unless extended, the Debtor's Exclusive Filing Period will expire on January 30, 2014, and the Debtor's Exclusive Solicitation Period will expire on April 3, 2014.

18.     By this motion, the Debtor respectfully requests, pursuant to section 1121(d), a sixth extension of each of the Exclusive Periods by approximately sixty (60) days as follows: (a) the Exclusive Filing Period be extended through and including March 31, 2014; and (b) the Exclusive Solicitation Period be extended through and including June 2, 2014. The Debtor also requests that such extensions be without prejudice to the Debtor's right to request further extensions of the Exclusive Periods or to seek other appropriate relief. The Debtor submits that "cause" exists to extend the Exclusive Periods for the reasons set forth below.

## BASIS FOR RELIEF

19.     The Debtor understands the importance to IMC's community of the healthcare services IMC currently provides and IMC's constituents' strong desire to have IMC reorganize as a going concern. While the Debtor has diligently pursued all realistic avenues in pursuit of IMC's continued operation (and will continue to do so if and when realistic opportunities exist for continuing all or substantial portions of IMC's operations), in light of IMC's strained finances and a present lack of State support for a reorganization of IMC's ongoing operations, confirmation of a "liquidating" chapter 11 plan for IMC is the most likely method to maximize healthcare services and jobs in IMC's community while ensuring the estate's value is delivered to creditors. Indeed, as IMC's Closure and Transition Plan actually would preserve and transition many of IMC's operations in its community and transform other IMC facilities to providing new healthcare purposes in IMC's community, IMC's plan would preserve and create substantial healthcare services and jobs in IMC's community.

20.     Moreover, as stated most recently in connection with the mediation process, the Debtor has been and remains open to considering all feasible approaches to a viable exit of IMC from chapter 11 as a reorganized entity preserving IMC's operations in full or in part whether or not in tandem with one or more other hospitals.  In that regard, among other things, IMC has worked with all mediation parties regarding enhancements to the Closure and Transition Plan and considering potential feasible alternatives thereto.

21.     The Exclusive Periods established by section 1121(b) are intended to afford a debtor the opportunity to propose a chapter 11 plan and to solicit acceptances of such plan without the disruption to its business and finances likely to be caused by the filing of competing plans by non-debtor parties.  The Debtor is seeking an extension of the Exclusive Periods to ensure that estate assets are not dissipated by numerous creditors pursuing their own restructuring scenarios (on a varying spectrum of viability) and that resolution of this case is not unduly delayed.  Indeed, the Debtor expects to file a plan within the requested sixty-day extension, assuming the Debtor's fate is resolved within that time frame.  Nevertheless, the facts and circumstances of this case as well as the Debtor's limited financial resources necessitate a controlled, centralized process.  Therefore, the Exclusive Periods should be extended.

22.     Section 1121(d) empowers the Court to extend the Debtor's Exclusive Periods for "cause."  Specifically, section 1121(d) provides:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

> (2) (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

(B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

23.     It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the bankruptcy court and should be based upon the facts and circumstances of a particular case.   See In re Borders Group, Inc., 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.") (citation omitted); In re Adelphia Commc'ns Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific.").

24.     Although the Bankruptcy Code does not define "cause" for the purpose of extending the Exclusive Periods, courts have looked to section 1121(d)'s legislative history for guidance.   See, e.g., In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).   Based on that guidance, courts have found Congress did not intend that the 120- and 180-day periods be set in stone.   See, e.g., Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity).   Rather, Congress intended that the Exclusive Periods be of an adequate length, given the specific circumstances, for a debtor to formulate, negotiate, and draft a viable plan of reorganization, which in practical terms means one supported (or likely to be supported) by some or all of a debtor's key constituents, without the disruption that would occur from the filing of competing plans.   See Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home, Inc.), 187 B.R. 128, 133

(D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition . . . is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

25.    Notably, Congress recognized that a 120-day exclusivity period often will not afford a corporate debtor sufficient time to formulate and negotiate a plan:

> The court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case.  [T]he bill allows the flexibility for individual cases that is not available today.  For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

26.    When determining whether cause exists for an extension of the Exclusive Periods, courts have relied on multiple factors, each of which alone can provide sufficient grounds for granting an extension.  Factors courts consider in making such a determination include:  (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good-faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist.  See, e.g., Adelphia, 352 B.R. at 587; Continental Casualty Co. v. Burns & Roe Enters., Inc. (In re Burns & Roe Enters., Inc.), 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging Corp., 101 B.R. at 409-10; In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Application of such factors here demonstrates

the requested extensions are both appropriate and necessary to afford the Debtor with adequate time to propose, negotiate, and solicit acceptances of a plan of reorganization.

**(1)     Due to the Size and Complexity of the Debtor's
Case, the Debtor Requires Additional Time to Prepare
Adequate Information and Formulate a Chapter 11 Plan**

27.     While the substantial assets and liabilities of the Debtor alone would qualify this case as large and complex,[6] the Debtor's plan process is further complicated by the need to consider and address the goals of numerous constituencies — not only the  Committee and secured lenders, which typically are present in a chapter 11 case — but also multiple State entities and regulatory authorities, active unions, pension funds, and the patient care ombudsman. At the conclusion of the hearing on the Closure and Transition Motion, this Court ordered the Debtor and other parties in interest to participate in mediation in an effort to resolve certain outstanding issues between the parties related to the Closure and Transition Motion and Closure and Transition Plan.  The mediation, combined with the number of different parties that must be brought to the negotiating table, further weighs in favor of an extension of the Exclusive Periods. Further, DOH's (multiple and last minute) extensions of the time period for the Debtor's operations also supports extending the Exclusive Periods to factor in the constantly changing landscape.  The Debtor is the only entity with a duty to consider and balance the concerns of <u>all</u> of the constituents in the process.

28.     Based on the foregoing, the Debtor respectfully submits that the size and complexity of the Debtor support the relief requested.

---

[6]     The Debtor has over 1,000 creditors, operates in a highly regulated industry, has almost $130 million in outstanding secured debt, and has over $300 million of aggregate obligations.

**(2)    The Debtor Has Made Good Faith Progress In This
Case and Does Not Seek Extension of the Exclusive
Periods to Pressure Creditors or For Any Other Improper Reason**

29.    The purpose of this request for an extension of the Exclusive Periods is, among other things, to maintain the *status quo* while IMC seeks to address all stakeholders' concerns.  As noted above, it is only IMC that has the duty (and bandwidth) to consider and balance all of such constituents' concerns in the plan formulation process.  The Debtor seeks an extension of the Exclusive Periods to further its efforts in that regard, rather than for any improper purpose.

30.    Rather than attempt to lock parties out of the process, the Debtor consistently has sought to work with parties that have expressed concerns about case matters. Most recently, those efforts have included engaging with DASNY, DOH, the Foundation, NYSNA, 1199SEIU, the Ad Hoc Group of Doctors, and CIR in mediation regarding the Closure and Transition Motion and potential alternatives to the  Closure and Transition Plan.  Given the Debtor's demonstrated willingness to involve other parties in the plan formulation process, the Exclusive Periods should be extended.

31.    Further, the Debtor has made significant progress in formulating a plan that best serves the interests of all of its constituents, in light of the Debtor's financial constraints.  IMC obtained a final order [Docket No. 747] (the "**DIP Order**") authorizing the Debtor to obtain a debtor-in-possession financing facility (the "**DIP Facility**"), to help implement an orderly Closure and Transition Plan and confirm a chapter 11 plan.  Additionally, the DIP Order, among other things, provides for DASNY to make substantial claim and lien concessions that should enable IMC to propose a chapter 11 plan and navigate the chapter 11 process while maximizing healthcare as well as preserving and creating healthcare jobs in IMC's

community, and maximizing creditor recoveries.  These steps should lead to confirmation of a chapter 11 plan for IMC.  Additionally, IMC has done substantial internal work on a chapter 11 plan as well as negotiated the MOU with KJMC and, pursuant to the Clinic Transfer Order, prepared to implement certain aspects of the MOU.

32.    Nonetheless, given this Court's reservation of decision on the Closure and Transition Motion and the potential reopening of the mediation, the Debtor requires more time to complete formulation of a chapter 11 plan that meets the Debtor's goal of maximizing value for creditors and maintains the ability for many of IMC's operations to be run in the community by other entities as well as to repurpose other IMC facilities to provide healthcare services and jobs in IMC's community.  The Debtor has worked and continues to work diligently to ensure IMC's exit from chapter 11 is accomplished in a manner that best serves all constituents, given the financial and regulatory realities that IMC faces.

33.    Based on the foregoing, the Debtor respectfully submits the significant progress to date in this case supports the relief requested.

### (3)    The Debtor Has Reasonable Prospects for Filing a Viable Chapter 11 Plan

34.    The Debtor's efforts, particularly in connection with obtaining Court approval of the DIP Order (and related DIP Transaction with DASNY), signify IMC should have the financial ability to confirm a plan.  Further, after transferring the clinics and other operations that would continue in IMC's community, IMC and other parties in interest can continue to seek alternative post-emergence health care related uses for the Debtor's facilities that would benefit its community.

35.     Importantly, the Debtor's current proposed approach for exiting chapter 11, while admittedly not the optimal outcome for this case,[7] is viable and adheres to the basic framework conceptually supported by DASNY and DOH.  IMC has made significant progress in the plan process and should be afforded the opportunity to continue these efforts.  Accordingly, an extension of the Exclusive Periods is warranted.

### (4)    The Debtor Has Continued Chapter 11 Plan Discussions with Key Constituents

36.     Most recently, the Debtor participated in mediation with a number of key parties in interest, including DASNY, DOH, the Foundation, NYSNA, 1199SEIU, the Ad Hoc Group of Doctors, and CIR, regarding plan discussions.  Previously, the Debtor also engaged in significant negotiations with certain other key constituents such as DASNY (the creditor holding by far the largest secured claim against the Debtor), the Foundation, and applicable State agencies, regarding the Debtor's chapter 11 exit strategy, which led to the negotiation of the DIP Facility and other aspects of the DIP transaction.  Further, the Debtor has responded to information requests from creditors, both large and small, including creditors that have expressed concern with the pending Closure and Transition Motion.  Accordingly, this factor also weighs in favor of extending the Exclusive Periods.

---

[7]     Courts have counseled that a creditor's unhappiness with the Debtor's chosen reorganization path is an insufficient basis to warrant termination of exclusivity.  In re Adelphia Communications Corp., 336 B.R. 610, 676 (Bankr. S.D.N.Y. 2006) ("the notion that creditor constituency unhappiness, without more, constitutes cause to undermine the debtor's chances of winning final confirmation of its plan during the exclusivity period had been rejected") citing In re Geriatrics Nursing Home, Inc., 187 B.R. 128, 134 (D.N.J. 1995) (holding that bankruptcy court erred in determining that cause existed to terminate exclusivity based on a creditor constituency's displeasure with the debtor's plan).  Similarly, individual creditors' insistence that they have different proposals for the Debtor's plan does not justify denial of a request for an extension of the Exclusive Periods, given the Debtor's good faith negotiation and progress in proposing and confirming a viable plan that recognizes the lack of State support for IMC's continued operations.

    **(5)**    **Termination of the Debtor's Exclusive**
                 **Periods Would Adversely Impact This Case and Parties in Interest**

37.     Were the Debtor's request for a further extension of the Exclusive Periods to be denied, then any party in interest would be free to propose a plan for the Debtor, thereby creating a chaotic environment that would discourage, if not preclude, consensus around a single plan. Neither the Debtor nor its constituents can afford to enter into a litigious environment of competing chapter 11 plans. Such an adversarial process would be counterproductive, unduly expensive, and significantly delay resolution of this case without any corresponding benefit to the Debtor's estate or stakeholders. Therefore, it is warranted (and cost-effective) for the Debtor to maintain exclusivity so that the process is appropriately centralized.

38.     Consequently, applicable law as well as the facts and circumstances amply support granting the Debtor's request for a sixty day extension of the Exclusive Periods. Relief similar to the relief requested herein often has been granted in this circuit. See, e.g., In re Global Aviation Holdings Inc., Case No. 12-40783 (CEC) (Bankr E.D.N.Y. Sept. 25, 2012) (further extending exclusive filing and solicitation periods each by 90 days); In re The Great Atlantic & Pacific Tea Company, Inc., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Aug. 18, 2011) (extending exclusive filing and solicitation periods each by 135 days); In re St. Vincents Catholic Med. Ctrs. Of New York, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. Jan. 25, 2011) (extending exclusive filing and solicitation periods each by 120 days); In re Value City Holdings, Inc., Case No. 08-14197 (JMP) (Bankr. S.D.N.Y. June 17, 2009) (extending exclusive filing and solicitation periods each by 120 days); In re Stone Barn Manhattan LLC, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. March 10, 2009) (same).

## <u>NOTICE</u>

39.     Notice of this motion will be given in accordance with this Court's *Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates*, dated as of December 4, 2012 [Docket No. 35].  The Debtor submits that, under the circumstances, no other or further notice is required.

40.     Except for the motions seeking prior exclusivity extension orders, no previous motion for the relief sought herein has been made to this or any other court.

41.     As the authorities relied upon herein are set forth above, the Debtor respectfully submits that this motion satisfies the requirements of Local Bankruptcy Rule 9013-1(a) regarding the submission of a memorandum of law.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit A, granting the Debtor the relief requested and granting the Debtor such other and further relief as may be just and proper.

Dated: January 13, 2014

WILLKIE FARR & GALLAGHER LLP

By:   /s/ Shaunna D. Jones
      Alan J. Lipkin
      Shaunna D. Jones
      Anna C. Burns
      787 Seventh Avenue
      New York, New York 10019
      Tel:  (212) 728-8000
      Fax:  (212) 728-8111

*Attorneys for Debtor and Debtor in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                          :        Chapter 11
                                               :
Interfaith Medical Center, Inc.,[1]            :        Case No. 12-48226 (CEC)
                                               :
                     Debtor.                   :
-------------------------------------------------------x

**ORDER GRANTING SIXTH EXTENSION OF
DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF
REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF
PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE**

Upon the motion (the "**Motion**") of Interfaith Medical Center, Inc., the debtor and

debtor in possession in the above-captioned case (the "**Debtor**"), for entry of an order, pursuant

to section 1121(d) of title 11 of the United States Code, granting a sixth extension of the

Debtor's exclusive periods to file a plan of reorganization and to solicit acceptances thereof; and

notice of the Motion having been given as set forth in the Motion; and it appearing that no other

or further notice need be provided; and it appearing that the relief requested by the Motion is in

the best interests of the Debtor's estate, its creditors, and other parties in interest; and a hearing

on the Motion having been held; and after due deliberation and sufficient cause appearing

therefore, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.      The Motion is granted to the extent set forth herein.

2.      Capitalized terms used but not defined herein have the meanings ascribed

to them in the Motion.

3.      The Debtor's Exclusive Filing Period shall be extended through and

including March 31, 2014.

---

[1]      The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is
1545 Atlantic Avenue, Brooklyn, New York 11213.

4.      The Debtor's Exclusive Solicitation Period shall be extended through and including June 2, 2014.

5.      Entry of this Order shall be without prejudice to the rights of the Debtor to request further extensions of the Exclusive Periods or to seek other appropriate relief.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.