**WINSTON & STRAWN LLP**
David Neier (dneier@winston.com)
Carrie V. Hardman (chardman@winston.com)
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Counsel for the Dormitory Authority*
*of the State of New York*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re                                                                  :    Chapter 11
                                                                            :
Interfaith Medical Center, Inc.,[1]                        :    Case No. 12-48226 (CEC)
                                                                            :
                                                   Debtor.    :    Re: Docket No. 747
                                                                            :
------------------------------------------------------- x

## NOTICE OF DEFAULT

Please take notice of the attached Notice of Default dated as of the date hereof filed by the Dormitory of the State of New York.

Dated: January 16, 2014

                            WINSTON & STRAWN LLP

                            By:  /s/David Neier
                                David Neier
                                Carrie V. Hardman (chardman@winston.com)
                            200 Park Avenue
                            New York, New York 10166
                            Telephone: (212) 294-6700
                            Facsimile: (212) 294-4700

                            *Counsel for the Dormitory Authority*
                            *of the State of New York*

---

[1] The last four digits of the Debtor's federal tax identification number are 6155. The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

# WINSTON & STRAWN LLP

BEIJING
BRUSSELS
CHARLOTTE
CHICAGO
GENEVA
HONG KONG
HOUSTON
LONDON
LOS ANGELES

200 PARK AVENUE
NEW YORK, NEW YORK 10166

+1 (212) 294-6700

FACSIMILE +1 (212) 294-4700

www.winston.com

MOSCOW
NEW YORK
NEWARK
PARIS
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
WASHINGTON, D.C.

January 16, 2014

Interfaith Medical Center, Inc.
1545 Atlantic Avenue
Brooklyn, New York 11213
Attention: Robert Mariani

Alan J. Lipkin, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019

Re:    **NOTICE OF OCCURRENCE OF EVENTS OF DEFAULT**[1]

Gentlemen:

     As a result of Interfaith's actions described in detail below, Interfaith is in default of the Final DIP Order and DIP Loan Documents, which Events of Default have occurred and are continuing (collectively, the "Specified Events of Default").  The Specified Events of Default include the following:

---

[1] Capitalized terms used herein without definition shall have the meanings ascribed to them in (i) that certain Senior Secured Priming and Superpriority Debtor-In-Possession Credit Agreement dated October 16, 2013 (together with all schedules and exhibits thereto, and as it may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "DIP Loan Documents") by and among The Dormitory Authority of the State of New York, as Lender ("DASNY" or the "DIP Lender") and Interfaith Medical Center, Inc., a New York not-for-profit general hospital ("Interfaith" or the "Borrower") and (ii) the Final Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364, 503(b) and 507(b) of the Bankruptcy Code; (II) Authorizing the Debtor to Use Cash Collateral pursuant to Section 363 of the Bankruptcy Code; (III) Providing Adequate Protection Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code; (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code; (V) Authorizing and Approving a Related Compromise and Settlement Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019; and (VI) Providing Related Relief dated September 30, 2013 [Docket No. 747] (the "Final DIP Order") entered by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") in the Chapter 11 case captioned In re: Interfaith Medical Center, Inc., Case No. 12-48226 (CEC) (the "Chapter 11 Case").

1. Interfaith has refused to comply with Section 7.01(k) of the DIP Credit Agreement and Paragraphs 34(h) and 36 of the Final DIP Order requiring Interfaith to consummate the DIP Transaction with respect to the timely transfer of the clinics to Kingsbrook Jewish Medical Center ("Kingsbrook");

2. Interfaith has refused to comply with Sections 3.11, 5.17, 6.12, 7.01(q-s) of the DIP Credit Agreement to assign any VAP Award to DASNY, pay over any VAP Award to DASNY, recognize that the VAP Award constitutes DIP Collateral, or to use the VAP only in accordance with instructions from DASNY;

3. Interfaith has failed to maintain compliance with its by-laws by maintaining an adequate number of members of its board of trustees in violation of Sections 3.01, 3.02, 4.02(b) and 4.03 (with respect to Subsequent Loans), and 7.01(e) of the DIP Credit Agreement;

4. The resignation of Interfaith's CEO and COO, combined with Interfaith's behavior and actions set forth above, constitute a violation of Sections 3.06 and 7.01(m) of the DIP Credit Agreement.

Since Interfaith filed its bankruptcy petition on December 2, 2012, working with DOH, DASNY has provided Interfaith with use of over $180 million of DASNY's cash collateral and $9.85 million in postpetition financing, and DASNY has committed to provide an additional $11.25 million as part of the DIP Transaction. Notwithstanding this financial support, Interfaith has ceased working with DOH and DASNY and, in particular, has refused to transition its clinics to Kingsbrook.

Interfaith's refusal to cooperate with DOH and DASNY not only contravenes applicable court orders and the law, but also keeps DOH and DASNY from providing needed capital to the Debtor and worsens the financial footing of the institution. In addition, the Bankruptcy Court entered an order on December 19, 2013 specifically authorizing the transfer of the clinics, which the Debtor did not oppose. Moreover, some $4 million in VAP funds would be made immediately available to Interfaith to facilitate the transfer of the clinics to Kingsbrook. In addition to the $4 million in VAP funds, DOH advised Interfaith on December 23, 2013 that it would consent to an increase in the DIP Facility by DASNY for an additional $3.5 million, bringing the total in DIP financing to be provided to Interfaith by DOH and DASNY to $24.6 million, and that DOH would consent to a delay in the DIP Transaction Deadline for closure of inpatient services, assuming compliance with the DIP Loan Documents. And, since the clinics require financial support to operate and Kingsbrook agreed that any inpatient admissions from the clinics would continue to be for the benefit of Interfaith, Interfaith would have realized a savings of about $500,000 a month with no accompanying loss of inpatient revenue if the transfer had been made.

Notwithstanding all of the above, Interfaith has refused to transfer the clinics, which not only will cause Interfaith the immediate loss in of $7.5 million in badly needed funding and

$500,000 per month in savings, but jeopardizes the ability of Interfaith to continue to operate. Simply put, Interfaith has made a bad situation only worse for its patients, the community it serves and its employees.

Even though this situation demands Interfaith's attention, Interfaith appears to be wasting valuable time and resources by contending, contrary to the DIP Loan Documents, that the $4 million VAP Award received by Interfaith to consummate the DIP Transaction and transfer the clinics can be used *even though Interfaith refuses to transfer the clinics*. Since these badly needed funds cannot be used by Interfaith apart from the transfer, it is perplexing that Interfaith has refused to timely transfer the clinics to Kingsbrook.

To make matters even worse, Interfaith appears to be in chaos. Patrick Sullivan, the CEO and COO of Interfaith, has announced his intention to resign and has cited in part the trashing of his office and threats to his personal safety as some of the reasons for his resignation. A former board member continues to file a plethora of frivolous pleadings. Interfaith's board of trustees is operating in violation of its by-laws, which require a minimum of five members. DASNY, DOH, the Patient Care Ombudsman and others are concerned that Interfaith is admitting patients that do not need to be admitted and refusing to discharge patients that should be discharged in order to maintain revenue. The cash needs at Interfaith have dramatically increased so that Interfaith now requires as much as $5 million a month. Indeed, Interfaith has advised DASNY that without a cash infusion it cannot make payroll to its employees perhaps as early as next week much less operate the hospital safely and will begin diverting patients, and yet Interfaith still refuses to timely transfer the clinics to Kingsbrook that would result in $7.5 million in DIP/VAP funding being made available to Interfaith and a savings of $500,000 per month for Interfaith.

The DIP Lender reserves its rights to fully invoke any and all of its rights, remedies, powers and privileges under the DIP Credit Agreement, the other DIP Loan Documents, the Final DIP Order and applicable law, at any time as they deem appropriate in respect of any of the Specified Events of Default or any other Event of Default that may now or hereafter exist. Any waiver, if any, of any Specified Event of Default or any other Event of Default shall be granted only by the DIP Lender, in its sole and absolute discretion, by a written instrument executed and delivered in accordance with the provisions of the DIP Credit Agreement, the other DIP Loan Documents, the Final DIP Order and approval, if required, by the Bankruptcy Court. Notwithstanding the existence or content of any communication – including any verbal conversations – by or between the Debtor and DIP Lender, or any of their representatives, regarding any Event of Default, no waiver, forbearance or other action by DIP Lender with regard to any Event of Default shall be effective unless the same has been reduced to writing and executed by an authorized representative of the DIP Lender, each Debtor, and each and any other entity deemed necessary or desirable by the DIP Lender. Any failure, if any of the DIP Lender to exercise the rights, remedies, powers and privileges under the DIP Credit Agreement, the other DIP Loan Documents, the Final DIP Order and applicable law with respect to the Specified Events of Default or any other Events of Default (whether now existing or hereafter occurring), any acceptance of partial

Interfaith Medical Center, Inc.
January 16, 2014
Page 4

performance or partial payment by DIP Lender, and any future non-exercise of rights, remedies, powers and privileges by the DIP Lender with respect to the Specified Events of Default or any other Events of Default (whether now existing or hereafter occurring), shall not be, and shall not be construed as, a waiver of any rights, remedies, powers and privileges of the DIP Lender, all of which rights, remedies, powers and privileges are and shall remain expressly preserved.  In addition, nothing contained in this letter nor in any other communication or action between or among DIP Lender, the Debtor or any other party shall be deemed to constitute or be construed as (i) a course of dealing obligating DIP Lender to provide any accommodations, financial or otherwise, or any forbearance of any kind, to the Debtor or (ii) a commitment or any agreement to make a commitment with respect to any possible waiver, amendment or other modification of the terms provided in the DIP Credit Agreement, any other Loan Document or the Final DIP Order.

              Very truly yours,

              David Neier

cc: Counsel to Official Committee of Unsecured Creditors,
  Alston & Bird LLP, Attn: Martin G. Bunin
  All parties required to be provided with this Notice under the Final DIP Order