WILLKIE FARR & GALLAGHER LLP

ALAN J. LIPKIN
212 728 8240
alipkin@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

January 16, 2014

**BY HAND**

Honorable Carla E. Craig
Chief United States Bankruptcy Judge
U.S. Bankruptcy Court, Eastern District of N.Y.
271-C Cadman Plaza East, Suite 1595
Brooklyn, NY 11201

Re: Interfaith Medical Center, Inc. ("IMC") – Case No. 12-48226 (CEC)

As To: IMC'S Motion for Authority to Implement Plan of Closure and Transition [Docket No. 602] (the "Closure and Transition Motion"); and the Final DIP Order [Docket No. 747]

Dear Judge Craig:

We write as attorneys for the above-referenced debtor-in-possession, IMC, in response to today's filing by the Dormitory Authority of the State of New York ("DASNY") requesting a Court conference [Docket No. 853] and alleging various Events of Default under DASNY's DIP Credit Agreement with IMC and the related DIP Order [Docket No. 852] (the "Notice"). IMC agrees a Court conference would be useful. As discussed below, however, DASNY's Notice is inaccurate both regarding the alleged Events of Default and related circumstances. In particular, DASNY's default allegations are either incorrect or based on alleged technical defaults that could exist only because DASNY repeatedly has refused to amend the DIP Credit Agreement and DIP Order to reflect developments such as the passage of time and increased funding for IMC that occurred entirely as a result of demands and instructions of the New York State Department of Health ("DOH") and/or DASNY. Moreover, New York State's dysfunctional dealings with IMC are amply demonstrated by DOH directing IMC to keep operating into March 2014 while DASNY now seeks to cut off IMC's funding for such operations.

The background to the current situation is as follows. On December 23, 2013, after tentative conclusion of the Court ordered mediation concerning objections to IMC's Closure and Transition Motion, IMC was to submit proposed Findings of Fact, Conclusions of Law and Order Pursuant to Sections 105, 363, and 1108 of the Bankruptcy Code, authorizing the Debtor to Implement, in accordance with New York State Law, a Plan of Closure for the Debtor's Hospital and Certain Affiliated Outpatient Clinics and Practices (the "Proposed Closure and Transition Order"). Nonetheless, as the Court was advised, early on December 23, DOH, which previously had insisted that IMC then obtain the relief provided for in the proposed order: (a) instructed IMC not to submit the proposed order to the Court; (b) instructed IMC to continue to operate its hospital through approximately March 7, 2014; and (c) promised IMC $3.5 million to fund those operations (and presumably more as IMC has advised DOH that $3.5 million would not be sufficient for IMC to continue operating its hospital through March 7, 2014). Further, DASNY supported DOH's instructions to IMC and agreed to work with DOH as the

conduit for the additional $3.5 million (or greater amount) of funding for IMC through an increase in DASNY's DIP loan commitment to IMC.

Unfortunately, unless the incorrect allegations made by DASNY (and DOH) regarding this and related circumstances, including their obligations to provide promised funding to IMC, are resolved promptly, due to applicable fiduciary duties, IMC will be forced to request that the Proposed Closure and Transition Order be entered by the Court as soon as practicable. To address DASNY's allegations and so the Court and all parties can understand and, if desired, address what would prompt IMC reluctantly to request immediate entry of the Proposed Closure and Transition Order despite IMC's fervent hope its hospital could be saved, IMC notes the following recent developments, which IMC has determined would – absent prompt resolution – create too much uncertainty regarding IMC's future ability to continue to ensure patient safety or to remain administratively solvent:

1. Despite repeated requests, DOH and DASNY have refused to provide IMC with the $3.5 million increase in the DIP loan promised on December 23, 2013 to enable IMC to continue operating after January 6.

2. Despite repeated requests, DOH has refused to agree that IMC may utilize the $4 million in VAP funding already received by IMC to reimburse IMC for IMC expenditures in at least that aggregate amount that IMC already has made to prepare, seek approval of, and work to implement the closure and transition plan. Further, DASNY has advised IMC that DASNY would declare an Event of Default under IMC's DIP loan agreement if IMC utilizes any of the $4 million of VAP funding already received by IMC.

3. IMC has received neither the remaining $8.9 million of VAP funding requested by IMC (i.e., the portion of the total $12.9 million of VAP funding requested by, but not yet paid to IMC) nor any firm commitment that IMC would receive such additional funding. While DOH and DASNY had not guaranteed that IMC would receive such additional VAP funding (except that the DASNY DIP loan provides a $3.3 million backstop for an equivalent amount of the as yet unfunded VAP award request), DOH and DASNY had stated their expectations that such VAP funding would be forthcoming and had committed to make every effort to assist IMC in obtaining that VAP funding. Nonetheless, IMC understands DOH and DASNY no longer are utilizing their best efforts to assist IMC in obtaining the remainder of the VAP funding.

4. DASNY has refused to negotiate an amendment to the DIP Order to address changes necessary to prevent defaults under its DIP loan agreement due to the extensions of time requested by DOH and to provide for the increased DIP funding commitment DASNY promised to IMC. Thus, as detailed below, DASNY's Notice is disingenuous at best because DASNY relies on alleged technical defaults <u>created by DOH and DASNY</u> that DASNY had agreed in principle to waive. Indeed, enclosed are copies of a January 8, 2014 email from counsel to DASNY that attached a draft stipulation to override any such technical defaults and of a January 14, 2014 email from DASNY's counsel refusing to discuss IMC's comments on DASNY's draft stipulation.

5. While DOH told IMC to continue operating its hospital through approximately March 7, 2014, DOH has only promised IMC $3.5 million of additional funding to cover that two month period of extended operations even though DOH and DASNY understand that the $3.5 million only would provide sufficient funding for IMC to continue hospital operations into late January 2014. Moreover, as noted above, even that promised $3.5 million of funding has not yet been provided to IMC.

6. DOH has refused to tell IMC definitively whether the March 7, 2014 date is the definitive date for closure of IMC's hospital or there would be still another last minute reprieve for IMC agreed to by DOH and DASNY.

7. As of January 15, 2014, 237 of IMC's 287 beds were occupied, including nearly 100 beds in IMC's behavioral health wards.

8. DOH and DASNY's explanation for their current positions is that early this week IMC's Board of Trustees determined to delay (not cancel) the transition of IMC's clinics to Kingsbrook Jewish Medical Center, which transition previously had been scheduled for January 26, 2014, until the fate of IMC's hospital is determined with certainty. The IMC Board's view is that it only had agreed to the January 26 transition date based on the understanding that either IMC's hospital would have been closed by January 26 or there would have been an agreement reached through mediation on keeping all or a portion of IMC's hospital open. Further, the Board believes IMC's clinics are vital feeders of patients to IMC's hospital while it remains open and as long as the ultimate date, if any, of the hospital's closure remains uncertain, IMC's clinics should not be transferred. DOH and DASNY, however, have said (without explanation) they believe the January 26 date for transfer of IMC's clinics could not be deferred and did not depend on resolution of the fate of IMC's hospital. Further, despite citation to no statute, rule, or document that so provides, DOH and DASNY insist that IMC must <u>complete</u> the clinics transition <u>before</u> IMC may either: (a) utilize any of the $4 million of VAP funding received by IMC to assist IMC in preparing, seeking approval of, or working to implement the closure and transition plan; or (b) receive the $3.5 million of additional DIP financing promised to finance IMC's operations after January 6, 2014.

As to DASNY's allegations in the Notice of specific DIP Loan Agreement defaults, IMC will address them if and when necessary. At this point, it is sufficient to note that such allegations either are entirely incorrect or are based on alleged technical defaults that would exist only because of extensions of time and increased funding demanded or agreed to by DOH and/or DASNY. Hence, no such defaults would exist if DASNY agreed to amend the DIP Loan Documents as DASNY previously has said it would do. Regardless, DASNY (and DOH) should be estopped from relying on any such self-created defaults.

While IMC will not attempt to address all of DASNY's other mistaken allegations in its Notice, IMC notes the following:

a. IMC has not "ceased working with DOH and DASNY", "refused to transition its clinics to Kingsbrook", or "refus[ed] to cooperate with DOH and DASNY". As to the transition of IMC clinics to Kingsbrook, which was not even scheduled to occur until January 26, 2014, and was not required to occur until January 31, 2014 (the now outdated DIP

Transaction Deadline), all IMC has said is that the clinics transition should be delayed until DOH states with certainty the specific date, if any, on which IMC's hospital will close. As to the remainder of the dealings between IMC and DOH regarding the Closure and Transition Plan, DOH has repeatedly stated IMC has been fully cooperative.

b. Nothing IMC has done has kept "DOH and DASNY from providing needed capital to" IMC.

c. This Court's December 19, 2013 order merely authorizes the transfer of IMC's clinics to Kingsbrook; the order does not require such a transfer. Moreover, that order was submitted solely to enable Kingsbrook to make preparations for the clinics transfer that Kingsbrook said required entry of the order and was based on DOH's representation that entry of order would not prejudice the possibility that IMC's hospital would remain open. Yet now DOH has extended the time IMC's hospital will operate and refused to state categorically when, if ever, such operations will end. Hence, as IMC's clinics are primary feeders of patients to IMC's hospital, any transfer of IMC's clinics should be deferred.

d. Contrary to DASNY's Notice, DASNY had agreed to extend the DIP Transaction Deadline for addressing IMC's outpatient services as reflected in the enclosed draft stipulation from DASNY.

e. IMC is not "in chaos". Mr. Sullivan's resignation as COO (which is partly the result of DOH's constantly changing directives) would not be effective until January 31, 2014 (unless such date is extended). Further IMC is actively pursuing a qualified replacement.

f. While it is true that IMC's cash needs have increased, that is the direct result of DOH's and DASNY's actions. In particular, early in this case DOH forced IMC to change management and since June 2013, DOH has directed the closure of IMC and then at the last minute reversed its position at least six times. Meanwhile, throughout this chapter 11 case DASNY insisted on cash collateral orders covering only a one month period and reneged on earlier promises of DIP financing for IMC. Of course the uncertainty from DOH and DASNY's conduct harmed IMC's operations and, therefore, caused its cash needs to increase.

Once the Court has determined if and when a Court conference will occur, please let us know and we will communicate the relevant information to the parties. Thank you for your attention to this matter.

Respectfully,

Alan J. Lipkin

AJL:ms

cc: David Neier
Richard Zahnleuter
Enid Stuart
Joshua Pepper

Marty Bunin
Craig Freeman
Avrum Rosen
Suzanne Hepner
Paul Labov
Michael Brofman
Charles Simpson

**Lipkin, Alan**

**From:** Neier, David [DNeier@winston.com]
**Sent:** Monday, January 06, 2014 5:49 PM
**To:** Lipkin, Alan
**Subject:** IMC
**Attachments:** NY-#1605332-v1-Stipulation_and_Order_Modifying_FInal_DIP_Order.DOC

Attached is a rough draft of a stipulation. Please provide comments.

David Neier
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
T: +1 (212) 294-5318
F: +1 (212) 294-4700
mailto:dneier@winston.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Interfaith Medical Center, Inc.,[1] | : | Case No. 12-48226 (CEC) |
| | : | |
| Debtor. | : | Re: Docket Nos. 7, 38, 149, 231, 344, 394, 475, 551 and 631 |

**STIPULATION AND ORDER**
**MODIFYING FINAL DIP ORDER**

It is hereby STIPULATED AND AGREED by and among Interfaith Medical Center, a New York not-for-profit corporation, as chapter 11 debtor and debtor in possession ("**IMC**" or the "**Debtor**") and the Dormitory Authority of the State of New York ("**DASNY**," or, in such capacity, the "**DIP Lender**"), as follows:

1. Upon Bankruptcy Court approval hereof, the Final Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364, 503(b) and 507(b) of the Bankruptcy Code; (II) Authorizing the Debtor to Use Cash Collateral pursuant to Section 363 of the Bankruptcy Code; (III) Providing Adequate Protection Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code; (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code; (V) Authorizing and Approving a Related Compromise and Settlement Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019; and (VI) Providing Related Relief dated September 30, 2013 [Docket No. 747],[2] the

[1] The last four digits of the Debtor's federal tax identification number are 6155. The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Final Order and DIP Loan Documents, as applicable.

DIP Credit Agreement and other DIP Loan Documents are hereby modified pursuant to the terms of this Stipulation and Order.

2. The terms and conditions of the Final Order, the DIP Credit Agreement and the other DIP Loan Documents are incorporated herein by reference as if fully set forth herein, except as expressly modified herein.

3. The revised DIP Budget is annexed hereto as Exhibit 1.

4. The date in Paragraph __(h) (ii) of the Final Order for the Debtor to obtain approval of the Debtor's motion seeking authorization to implement the Closure Plan shall be extended to____________ __, 2014, except as otherwise permitted in writing by DASNY in consultation with DOH.

5. The dates in Paragraph __(h)(iii) of the Final Order for the Debtor to complete implementation of the Closure Plan shall be extended to (a) __________ __, 2014, for inpatient operations; and (b) ___________ __, 2014, for all other patient and healthcare operations, except as otherwise permitted in writing by DASNY in consultation with DOH.

6. The DIP Transaction Deadline set forth in Paragraph __ of the Final Order shall be extended to ________________ __, 2014.

7. The Commitment Schedule annexed to the DIP Credit Agreement is hereby modified to increase the Initial Loan Commitment to $_________________ and the Subsequent Loan Commitments to $__________________. Accordingly, the last sentence of the Definition of "Commitment(s)" in the DIP Credit Agreement is hereby increased to

$________________________.

**Lipkin, Alan**

**From:** Neier, David [DNeier@winston.com]
**Sent:** Tuesday, January 14, 2014 10:42 AM
**To:** Burns, Anna
**Cc:** Lipkin, Alan
**Subject:** RE: DIP Stipulation

This is of course DOA

David Neier
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
T: +1 (212) 294-5318
F: +1 (212) 294-4700
mailto:dneier@winston.com

---

**From:** Burns, Anna [mailto:ABurns@willkie.com]
**Sent:** Tuesday, January 14, 2014 10:36 AM
**To:** Neier, David
**Cc:** Lipkin, Alan
**Subject:** IMC: DIP Stipulation

David,

Attached please find our comments to the stipulation and order modifying the final DIP order. The draft remains a work in progress. Please let us know if you'd like to discuss.

Thanks,
Anna

Anna C. Burns
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8119 (phone)
(212) 728-9119 (fax)

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*************************************************************************