Presentment Date and Time: January 27, 2014 at 2:00 p.m. (Eastern Time)
Objection Deadline: January 27, 2014 at 2:00p.m. (Eastern Time)

Alan J. Lipkin
Shaunna D. Jones
Anna C. Burns
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Interfaith Medical Center, Inc.,[1] | Case No. 12-48226 (CEC) |
| Debtor. | |

-------------------------------------------------------x

## NOTICE OF PRESENTMENT OF
## STIPULATION AND ORDER MODIFYING FINAL DIP ORDER

**PLEASE TAKE NOTICE** that Interfaith Medical Center, Inc., the debtor and

debtor in possession in the above-captioned case (the "**Debtor**"), will present in the form

annexed hereto or in substantively that form a proposed Stipulation and Order Modifying Final

DIP Order for signature to the Honorable Carla E. Craig, United States Bankruptcy Judge, at the

United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East,

Courtroom 3529, Brooklyn, New York 11201-1800 on **January 27, 2014 at 2:00 p.m.**

**(prevailing Eastern Time)** (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that neither the proposed Stipulation and

Order nor the annexed Term Sheet are necessarily in final form and any further changes will be

announced at or before the Hearing.

---

[1] The last four digits of the Debtor's federal tax identification number are 6155. The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to entry of the proposed Stipulation and Order Modifying Final DIP Order must be made at or before the Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you want to receive copies of the proposed Stipulation and Order Modifying Final DIP Order:  (a) you may access such documents online from either the Bankruptcy Court's electronic case filing system located at http://www.nyeb.uscourts.gov/ or the website of the Debtor's claims agent at http://www.donlinrecano.com/interfaithmedical; or (b) you may contact Anna C. Burns, Esq., at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, by telephone at (212) 728-8000 or by e-mail at aburns@willkie.com.

Dated: January 26, 2014

WILLKIE FARR & GALLAGHER LLP

By: _____

Alan J. Lipkin
Shaunna D. Jones
Anna C. Burns
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

*Attorneys for the  Debtor and Debtor in Possession*

- 2 -

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------- x
In re                                                    :    Chapter 11
                                                         :
Interfaith Medical Center, Inc.,[1]                      :    Case No. 12-48226 (CEC)
                                                         :
                                        Debtor.    :    Re:  Docket No. 747
                                                         :
------------------------------------------------------- x

## STIPULATION AND ORDER
## MODIFYING FINAL DIP ORDER

WHEREAS, the New York State Department of Health ("**DOH**"), Interfaith Medical

Center, a New York not-for-profit corporation, as chapter 11 debtor and debtor in possession

("**IMC**" or the "**Debtor**"), and the Dormitory Authority of the State of New York ("**DASNY**,"

or, in such capacity, the "**DIP Lender**") have engaged in discussions and negotiations leading up

to this Stipulation and Order, and such parties, and DOH, will continue to take part in

negotiations related to the term sheet annexed hereto;

It is hereby STIPULATED AND AGREED by IMC and DASNY as follows:

1.      Upon Bankruptcy Court approval hereof, the Final Order (I) Authorizing the

Debtor to Obtain Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364,

503(b) and 507(b) of the Bankruptcy Code; (II) Authorizing the Debtor to Use Cash Collateral

pursuant to Section 363 of the Bankruptcy Code; (III) Providing Adequate Protection Pursuant to

Sections 361, 362, and 363 of the Bankruptcy Code; (IV) Modifying the Automatic Stay

Pursuant to Section 362(d) of the Bankruptcy Code; (V) Authorizing and Approving a Related

Compromise and Settlement Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy

---

[1] The last four digits of the Debtor's federal tax identification number are 6155.  The Debtor's mailing address is 1545 Atlantic Avenue, Brooklyn, New York 11213.

Rule 9019; and (VI) Providing Related Relief dated September 30, 2013 [Docket No. 747] (the "**Final DIP Order**"),[2] the DIP Credit Agreement and other DIP Loan Documents are hereby modified pursuant to the terms of this Stipulation and Order.

2.      The terms and conditions of the Final DIP Order, the DIP Credit Agreement and the other DIP Loan Documents are incorporated herein by reference as if fully set forth herein, except as expressly modified herein.

3.      Paragraph 19(a) of the Final DIP Order is hereby modified to replace the words "DIP Transaction Deadline" with "March 14, 2014".

4.      The revised DIP Budget referenced in Paragraph 4(a) of the Final DIP Order through and including March 14, 2014, is annexed hereto as Exhibit 1.  The DIP Budget may be subsequently amended in accordance with Paragraph 4(a) of the Final DIP Order.  The DIP Budget shall be subject in all respects to the approval of the DIP Lender; provided, however, after the DIP Transaction (as defined in the Term Sheet (defined below)) is consummated, the DIP Budget shall no longer be subject to the approval of the DIP Lender with respect to the Estate (as defined in the Term Sheet).

5.      The date in Paragraph 34(h) (ii) of the Final DIP Order for the Debtor to obtain approval of the Debtor's motion seeking authorization to implement the Closure Plan shall be extended to fourteen (14) days after the DIP Transaction Deadline (as such deadline is modified by the Term sheet attached hereto as Exhibit 2 (the "**Term Sheet**"), assuming it is approved by the Bankruptcy Court), or such later date as otherwise permitted in writing by DASNY in its sole discretion after consultation with DOH.

---

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Final DIP Order and DIP Loan Documents, as applicable.

6.     Pending approval of the DIP Transaction, there shall be no Event of Default as a result of the expiration of the dates in Paragraph 34(h)(iii) of the Final DIP Order for Events of Default.  In the event that:  (i) the DIP Transaction set forth in the Term Sheet is not approved by the Bankruptcy Court substantially in the form described in Exhibit 2; or (ii) the DIP Transaction is not consummated on or before the DIP Transaction Deadline, all dates in Paragraph 34(h)(iii) of the Final DIP Order for Events of Default shall be extended to dates that are fourteen (14) days after the DIP Transaction Deadline, or such later date(s) as otherwise permitted in writing by DASNY in its sole discretion after consultation with DOH.

7.     The DIP Transaction Deadline set forth in Paragraph 36(b) of the Final DIP Order shall be extended to March 14, 2014, except as otherwise permitted in writing by DASNY in its sole discretion after consultation with DOH.

8.     The Commitment Schedule annexed to the DIP Credit Agreement is hereby modified to increase the Initial Loan Commitment (inclusive of $4 million of VAP funding held by the Debtor) to $17,350,000.  Accordingly, the last sentence of the Definition of "Commitment(s)" in the DIP Credit Agreement is hereby increased (inclusive of $4 million of VAP funding held by the Debtor) to $25,100,000 (after netting what otherwise would have been a $3.5 million repayment of the DIP Facility by the Debtor).  If this Stipulation and Order is approved and entered by the Bankruptcy Court on January 27, 2014, $3.5 million of the Initial Loan Commitment shall be wire transferred to the Debtor on or before January 28, 2014 by 12 noon (EST); and if this Stipulation and order is subsequently approved and entered by the Bankruptcy Court, then such $3.5 million shall be wire transferred to the Debtor within one business day of the date of entry.  In addition, pursuant to the DIP Budget and the DIP Loan Documents, within one business day of entry of this Stipulation and Order, DASNY shall

provide written authorization to the Debtor to allow use of the $4 million of VAP funds now held by the Debtor.

9.    The Debtor and the DIP Lender have agreed in principle, subject to Bankruptcy Court approval thereof, to the terms set forth in the Term Sheet; provided, however, that the Debtor's agreement to such Term Sheet is subject, inter alia, to a $10 million increase of the Initial Loan Commitment and the last sentence of the Definition of "Commitment(s)" in the DIP Credit Agreement above what is set forth for each in Paragraph 8 of this Stipulation and Order. The attachment of the Term Sheet to this Stipulation and Order in no way constitutes the Court's approval of such Term Sheet, as to which all parties' rights shall be reserved.  For the avoidance of doubt, assuming the agreement in principle embodied in the Term Sheet is in fact consummated, pursuant to the Final DIP Order, the DIP Loan Documents, this Stipulation and Order and the Term Sheet, the DIP Facility shall consist of the following:

| Amount | Remarks |
| --- | --- |
| $9.85 million | Initial Loan Commitment previously loaned to Debtor.  HCRP loans (with $3.3 million of such amount backstopped by HEAL grant to be assigned or paid by Debtor to DASNY as provided in the Term Sheet). |
| $4 million | Initial Loan Commitment.  VAP Award (previously awarded and in the possession of Debtor). |
| $3.5 million | Initial Loan Commitment.  HCRP loan pursuant to this Stipulation and Order. |
| $10 million | Initial Loan Commitment.  HCRP loan and other sources pursuant to the Term Sheet to provide funding until DIP Transaction Deadline. |
| $7.75 million | Subsequent Loan Commitment (with prior obligation for Debtor to repay $3.5 million to DIP Lender eliminated as provided in the Term Sheet).  HRCP loan to be funded upon consummation of DIP Transaction. |
| $35.1 million | Total DIP Facility (net of $3.5 million de facto repayment of DIP Loan to DASNY). |

10.    The DIP Lender hereby withdraws without prejudice the Notices of DIP Defaults filed by the DIP Lender on January 16, 2014 [Docket Nos. 852, 853].

11.    So long as the Debtor complies with the terms of the Term Sheet, the DIP Lender and DOH shall be precluded from seeking the appointment of a trustee, a responsible person, or any similar relief for the Debtor or the Estate (as defined in the Term Sheet) pursuant to section 1104 of the Bankruptcy Code or otherwise based on conduct or events occurring prior to the date of this Stipulation and Order; provided, however, DOH may seek the appointment of a trustee or responsible person or otherwise at any time based on patient health and safety issues.  Upon consummation of the DIP Transaction set forth in the Term Sheet, the DIP Lender and DOH shall be precluded from seeking the appointment of a trustee, a responsible person, or any similar relief for the Debtor under section 1104 of the Bankruptcy Code or otherwise; provided,

however, DOH may seek the appointment of a trustee or responsible person or otherwise at any time based on patient health and safety issues.

12.　　Each of the undersigned attorneys are authorized by each of their respective clients to enter into the terms of this Stipulation and Order.

13.　　Prior to consummation of the DIP Transaction as set forth in the Term Sheet, the Debtor shall have no further obligation to utilize the services of Gordian Dynamis Solutions LLC (including the Chief Restructuring Officer) unless otherwise directed in writing by the DIP Lender in which case (i) any related fees and expenses shall be at the DIP Lender's expense, and (ii) the Debtor hereby waives any conflict of interest with respect to any such retention.  Upon consummation of the DIP Transaction set forth in the Term Sheet, Debtor shall have no further obligation to utilize the services of Gordian Dynamis Solutions LLC, but shall not object to its retention by the DIP Lender or Temporary Operator (as defined in the Term Sheet).

14.　　The Debtor shall file a motion seeking approval of the Term Sheet no later than January 31, 2014, on an expedited basis.

Dated:  January 27, 2014

WILLKIE FARR & GALLAGHER LLP

By:_____
      Alan J. Lipkin
      Shaunna D. Jones
      Anna C Burns
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

*Attorneys for the Debtor and Debtor in Possession*

WINSTON & STRAWN LLP

By: _____
      David Neier (dneier@winston.com)
      Carrie V. Hardman (chardman@winston.com)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for the Dormitory Authority*
*of the State of New York*

## **EXHIBIT 1**

**DIP Budget**

## Interfaith Medical Center, Inc.
## DIP Budget

*($ in thousands)*

| Week Ending | 1/24/14 | 1/31/14 | 2/7/14 | 2/14/14 | 2/21/14 | 2/28/14 | 3/7/14 | 3/14/14 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | | | | | |
| Total Patient receipts (excl. PIP) | $1,864 | $2,151 | $1,751 | 1,751 | 1,864 | 2,151 | 1,751 | 1,751 | $15,034 |
| PIP | 0 | 343 | 0 | 343 | 0 | 343 | 0 | 343 | 1,372 |
| Less: PIP recoupments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Grants | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 184 |
| Medical student receipts | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Cash Receipts** | 1,887 | 2,517 | 1,774 | 2,117 | 1,887 | 2,517 | 1,774 | 2,117 | 16,590 |
| **Cash Disbursements:** | | | | | | | | | |
| Salaries and wages | 1,753 | 2,237 | 1,753 | 2,137 | 1,753 | 2,237 | 1,753 | 2,137 | 15,760 |
| Taxes | 118 | 160 | 118 | 153 | 118 | 160 | 118 | 153 | 1,098 |
| Union benefits | 0 | 1,360 | 0 | 0 | 0 | 1,360 | 0 | 0 | 2,720 |
| Other payroll and benefits | 0 | 0 | 0 | 325 | 0 | 0 | 0 | 325 | 650 |
| Temporary labor | 52 | 52 | 52 | 52 | 52 | 52 | 52 | 52 | 416 |
| Medical supplies | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 1,436 |
| Other | 62 | 62 | 240 | 62 | 62 | 62 | 240 | 62 | 852 |
| Patient transportation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Purchased services | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 360 | 2,880 |
| Utilities | 0 | 0 | 0 | 315 | 0 | 0 | 0 | 315 | 630 |
| Insurance | 0 | 0 | 5 | 0 | 0 | 0 | 5 | 0 | 10 |
| Physicians | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 160 |
| Deferred bills | 0 | 1,900 | 0 | 0 | 0 | 0 | 0 | 0 | 1,900 |
| Capital expenditures | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 80 |
| **Total Operating Disbursements** | 2,555 | 6,341 | 2,738 | 3,613 | 2,555 | 4,441 | 2,738 | 3,613 | 28,592 |
| **Cash Flow from Operations** | **-668** | **-3,824** | **-964** | **-1,496** | **-668** | **-1,924** | **-964** | **-1,496** | **-12,002** |
| **Restructuring Items** | | | | | | | | | |
| DIP loan interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Restructuring fees * | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 1,600 |
| **Total Restructuring Items** | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 1,600 |
| **Net Cash Flow** | **-868** | **-4,024** | **-1,164** | **-1,696** | **-868** | **-2,124** | **-1,164** | **-1,696** | **-13,602** |
| Cash, beginning | 1,500 | 633 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| **Cash, ending before proposed DIP loan** | 633 | -3,391 | 337 | -196 | 633 | -624 | 337 | -196 | -12,102 |
| Proposed DIP loan/VAP Funding** | 0 | 4,891 | 1,164 | 1,696 | 868 | 2,124 | 1,164 | 1,696 | 13,602 |
| **Cash Ending** | $633 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| DIP loan balance/VAP funding, beginning | $9,850 | $9,850 | $14,741 | $15,905 | $17,601 | $18,468 | $20,592 | $21,755 | $9,850 |
| Drawings | 0 | 4,891 | 1,164 | 1,696 | 868 | 2,124 | 1,164 | 1,696 | 13,602 |
| DIP loan balance/VAP funding, ending | $9,850 | $14,741 | $15,905 | $17,601 | $18,468 | $20,592 | $21,755 | $23,452 | $23,452 |

\* Represents monies paid into a professional fee escrow account, which will only be disbursed to professionals pursuant to the Interim Compensation Order or other applicable Court Order.

\*\* A VAP grant application has been submitted to the Department of Health to cover the costs of transitioning hospital services to a third party. Until such monies are made available, DASNY has consented to the use of the DIP loan to cover transition costs up to $13.35 million.

\*\*\* Does not reflect monies needed to pay for operations post March 14, 2014.

## EXHIBIT 2

**Term Sheet**

## **TERM SHEET**

This term sheet (the "Term Sheet") describes the principal terms agreed to (the "DIP Transaction") by Interfaith Medical Center, Inc. ("IMC" or the "Debtor") and the Dormitory Authority of the State of New York ("DASNY" or the "DIP Lender") in the chapter 11 case of the Debtor, Case No. 12-48226 (CEC) (the "Bankruptcy Case").  The transactions described in this Term Sheet are subject in all respects to approval of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Final Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364, 503(b) and 507(b) of the Bankruptcy Code; (II) Authorizing the Debtor to Use Cash Collateral pursuant to Section 363 of the Bankruptcy Code; (III) Providing Adequate Protection Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code; (IV) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code; (V) Authorizing and Approving a Related Compromise and Settlement Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019; and (VI) Providing Related Relief dated September 30, 2013 [Docket No. 747] as modified by the Bankruptcy Court (the "Final DIP Order") and the DIP Loan Documents (as defined in the Final DIP Order).

1.      As more fully described in the motion of the Debtor [Docket No. 602, as amended and supplemented by Docket Nos. 606, 627, 700, and 774] seeking authority to implement a plan that includes the transition and transfer of the operations of certain outpatient clinics and practices (collectively, the "Clinics") to Kingsbrook Jewish Medical Center ("KJMC"), the Debtor shall promptly take all actions reasonably necessary to transfer operation of the Clinics, and the Debtor shall cooperate with DASNY, DOH, and KJMC

with respect to such transfer and transition, including, without limitation, allowing reasonable access to the Debtor's property, employees, operations and systems. Notwithstanding the foregoing, the Debtor shall not be under any obligation to actually consummate the transfer of the Clinics to KJMC.

2.    The DIP Lender shall provide or cause to be provided an additional $25.25 million in DIP financing to the Debtor pursuant to the DIP Final Order and the DIP Loan Documents, of which: (i) if the Bankruptcy Court enters the Stipulation and Order Modifying the Final DIP Order on January 27, 2014, then $3.5 million shall be advanced by wire transfer to the Debtor no later than January 28, 2014 at 12 noon (EST) and if such Stipulation and Order is entered later, then such $3.5 million shall be advanced within one business day of entry of such Order; (ii) if the Bankruptcy Court enters the Stipulation and Order Modifying the Final DIP Order, then within one business day of such entry, DASNY shall provide written authorization to IMC to allow use of the $4 million of VAP funds now held by the Debtor pursuant to the DIP Budget and the DIP Loan Documents; (iii) upon Bankruptcy Court approval of the DIP Transaction, $10 million will be advanced to the Debtor pursuant to the procedures in the DIP Loan Documents; and (iv) upon consummation of the DIP Transaction, $7.75 million shall be provided to the Estate (reflecting, for the avoidance of doubt, that the Debtor shall no longer have any obligation to repay $3.5 million of the DIP Facility upon consummation of the DIP Transaction).  Notwithstanding anything to the contrary herein, the DIP financing set forth herein may be provided in the form of HEAL, VAP or other grants and awards, and although such may be provided directly by the granting authority to the Debtor and not through DASNY, such funds shall nevertheless constitute DIP Collateral and shall be

subject to the Final DIP Order, the terms of this Term Sheet and the other DIP Loan

Documents.  Notwithstanding anything to the contrary herein, the $3.3 million HEAL

Award to be paid to the Debtor that is intended to repay the DIP Lender for previously

providing an additional $3.3 million DIP financing as part of the DIP Lender's Initial

Loan Commitment and that was originally supposed to be repaid by a $3.3 million VAP

Award, shall be assigned by the Debtor to the DIP Lender or, if actually received by the

Debtor, paid over by the Debtor to the DIP Lender within one business day after the

Debtor's receipt of the $3.3 million HEAL award.  For the avoidance of doubt, assuming

the agreement in principle in this Term Sheet is in fact consummated, from its inception

and through and including consummation of the DIP Transaction, pursuant to the Final

DIP Order, the DIP Loan Documents, the Stipulation and Order and this Term Sheet, the

DIP Facility shall consist of the following:

| Amount | Remarks |
|--------|---------|
| $9.85 million | Initial Loan Commitment previously loaned to Debtor.  HCRP loans (with $3.3 million of such amount backstopped by HEAL grant to be assigned or paid by Debtor to DASNY as provided herein). |
| $4 million | Initial Loan Commitment.  VAP Award (previously awarded and in the possession of Debtor). |
| $3.5 million | Initial Loan Commitment.  HCRP loan pursuant to this Stipulation and Order. |
| $10 million | Initial Loan Commitment.  HCRP loan and other sources pursuant to the Term Sheet to provide funding until DIP Transaction Deadline. |
| $7.75 million | Subsequent Loan Commitment (with prior obligation for Debtor to repay $3.5 million to DIP Lender eliminated as provided herein).  HCRP loan to be funded upon consummation of DIP Transaction. |
| $35.1 million | Total DIP Facility (net of $3.5 million de facto repayment of DIP Loan to DASNY). |

3.    On March 14, 2014 (the "DIP Transaction Deadline"), except as provided below, the

Debtor shall transfer control and operation of and full financial responsibility for all of its

operating assets together with related real property and personal assets (collectively, the

"Hospital and Clinics" or the "Business"), to a temporary operator appointed by DOH

pursuant to N.Y. Public Health Law §2806-a (the "Temporary Operator") (for the

avoidance of doubt, DOH shall select the Temporary Operator in its sole discretion) until

the disposition or reorganization of the Business pursuant to a chapter 11 plan for the

Debtor (a "Plan") or otherwise if no Plan is confirmed and consummated.  IMC,

including its officers and board of trustees, shall take all actions reasonably necessary to

consent to the appointment of a Temporary Operator (without regard to the identity of the

Temporary Operator appointed by DOH in its sole discretion).  The Business shall

include: (i) all real property owned by the Debtor; (ii) all of the Debtor's real property leases and executory contracts (including, for the avoidance of doubt, the Debtor's collective bargaining agreements) related to the Business that are designated in writing by the Temporary Operator following his appointment; (iii) all of the Debtor's inventory, furniture, fixtures, and equipment that are designated in writing by the Temporary Operator following his appointment, provided, however, that after designation of use of any such item by the Temporary Operator is provided to the Estate and the Committee, the Estate and/or the Committee may, solely at the expense of the Estate, object to the Temporary Operator's determination (provided, however, the Business shall at all times include all real property assets constituting Prepetition Collateral); (iv) all of the Debtor's medical records, provided, however, the Estate shall continue to have reasonable access to such records as needed; and (v) the Debtor's provider number agreements. Immediately following consummation of the DIP Transaction, the Temporary Operator shall have the sole authority to make all determinations with respect to the Business, including, without limitation, disposition of Business assets and assumption or rejection of executory contracts, with the Business to be responsible for any related cure costs and the Estate to be responsible for any allowed rejection claims. Any liens and interests, including, without limitation, those of the DIP Lender, shall continue to attach in their respective order of priority to the Business assets and Estate assets until consummation of the Plan or otherwise if no Plan is confirmed and consummated. Any administrative expenses and liabilities incurred by or respecting the Business following consummation of the DIP Transaction shall be the responsibility of the Business. Following consummation of the DIP Transaction, the Debtor's Board of Trustees, management, and

professionals, shall have no responsibility over and no liability regarding the Temporary

Operator's determinations, actions, or failure to act regarding the Business.

4.      Following consummation of the DIP Transaction, the Debtor shall remain in control and

possession of all of its assets that are not part of the Business (collectively, the "Estate").

Any administrative expenses incurred: (i) by the Debtor prior to consummation of the

DIP Transaction; and (ii) by the Estate after the DIP Transaction Deadline (including,

without limitation, all fees and expenses of the Retained Professionals, but not any

professionals retained by the Temporary Operator) shall be the responsibility of the

Estate.

5.      As soon as practicable following consummation of the DIP Transaction, the Estate shall

receive any inventory, furniture, fixtures, equipment, real property and leases deemed not

necessary for the Business in the business judgment of the Temporary Operator (provided,

however, the Estate shall not include real property assets constituting Prepetition

Collateral and the parties also will discuss the impact on the Estate if the Business retains

substantially all of the inventory, furniture, fixtures and equipment).  Following

consummation of the DIP Transaction, the Estate also shall receive the following assets

of the Debtor:  (i) pre-DIP Transaction remaining cash on hand; (ii) pre-DIP Transaction

accounts receivable; (iii) pre-DIP Transaction grant receivables (except as provided

herein with respect to DIP financing); (iv) pre-DIP Transaction restricted cash; (v) pre-

DIP Transaction rights concerning the I M Foundation, Inc.; (vi) pre-DIP Transaction

equity interests in HealthFirst (with the parties to agree on the timing for liquidation of

such interests or absent such a liquidation or a liquidation by a date early enough to

provide the Estate with the liquidation proceeds in connection with the Estate's

liquidation, agreement on an alternative form of payment to the Estate); and (vii) Avoidance Actions, Avoidance Action Proceeds and other pre-DIP Transaction causes of action (collectively, the "Retained Assets").  In addition, following consummation of the DIP Transaction set forth in the Term Sheet, the Estate shall have reasonable and free use of and access to reasonable space in the Hospital and Clinics for administrative purposes until the first anniversary of consummation of the DIP Transaction subject to the ability of Temporary Operator to operate the Business and bearing in mind any operations of the Hospital and Clinics in that space; provided, however, that after reasonable notice, the Temporary Operator (or any successors and assigns of the Business) shall be able to move or evict the Estate from any such space to the extent necessary in the business judgment of the Temporary Operator (or any successors and assigns).

6.      A goal of the Temporary Operator shall be to enhance the provision of healthcare services in the Debtor's community.

7.      On the DIP Transaction Deadline, a Community Advisory Board ("CAB") may be formed by the Estate to advise the Temporary Operator regarding:  (a) any proposal to close, transfer, or substantially diminish the Business; and (b) any decision for the transfer of any of the Clinics or the Debtor's other Business assets.  Members of the CAB shall be designated by the Estate and be reasonably acceptable to the Temporary Operator.  None of the Debtor, the Estate, the Business, DOH, the Temporary Operator or the DIP Lender shall have any obligation to provide any funding to the CAB or to any advisor(s) it might retain.  Nothing herein contravenes, diminishes, or supersedes the powers, authority, or rights granted to the Temporary Operator pursuant to the provisions of N.Y. Pub. Health Law §2806-a.

8.      Following consummation of the DIP Transaction, except as otherwise provided herein for expenses that are solely the responsibility of either the Business or the Estate, any joint financial obligations of both the Estate and Business shall be prorated between the Estate and the Business as they agree in writing, or absent such an agreement, as determined by the Bankruptcy Court, including without limitation, use of employees or advisors of the Estate or Business, as applicable.  Services of employees shall be made reasonably available to the Estate and Business, as applicable, and the costs of such employees or advisors shall be allocated between the Debtor and the Business as they agree in writing, or absent such an agreement, as determined by the Bankruptcy Court.  Following consummation of the DIP Transaction, the DIP Budget or some alternative form of reconciliation of financial records between the Business and the Estate shall be prepared jointly by the Business and the Estate, and shall, to the extent practicable, track all financial receipts, disbursements of the Business and Estate; provided, however, after the DIP Transaction is consummated, the DIP Budget shall no longer be subject to the approval of the DIP Lender with respect to the Estate.

9.      Following consummation of the DIP Transaction, except to the extent agreed in writing by the Estate and the Temporary Operator or as determined by the Bankruptcy Court: (i)  employees and advisors of the Business shall be the financial responsibility of the Business, including, without limitation, any related obligations (whether or not preexisting) for severance for employees terminated post-DIP Transaction, unemployment insurance related payments for employees terminated post-DIP Transaction, post-DIP Transaction paid time off for employees (with the parties to continue to discuss the appropriate party to be responsible for the obligation to pay

accrued pre-DIP Transaction paid time off), post-DIP Transaction pension obligations,

and post-DIP Transaction collective bargaining agreement liabilities; and (ii)  employees

and advisors of the Estate, including, without limitation, all Retained Professionals, shall

be the financial responsibility of the Estate, including, without limitation, any related

obligations (whether or not preexisting) for severance for employees terminated pre-DIP

Transaction, unemployment insurance related payments for employees terminated pre-

DIP Transaction, and paid time off for employees terminated pre-DIP Transaction (with

the parties to continue to discuss the appropriate party to be responsible for the obligation

to pay accrued pre-DIP Transaction paid time off).

10.    For the avoidance of doubt, this Term Sheet shall constitute a DIP Loan Document.

11.    The terms set forth herein shall be incorporated in any Plan.  The Plan shall be consistent

with this Term Sheet and acceptable to the DIP Lender in accordance with the Final DIP

Order and DIP Loan Documents.  On the effective date (the "Effective Date") of any Plan,

the Temporary Operator, DIP Lender and Prepetition Lender and Business, on one hand,

and the Estate, on the other hand, shall receive mutual releases from all claims and

obligations (including, for the avoidance of doubt:  (i) from any claims by the DIP Lender

for repayment of the DIP Facility; (ii) from any Challenge with respect to any Prepetition

Lien and Claim Matters; (iii) from any such claim on behalf of the Debtor's estate that

could be asserted by any party-in-interest with standing and requisite authority on behalf

of the Debtor's estate, including, without limitation, the Committee; (iv) from any

obligations of DASNY with respect to the DIP Financing, including the Carve-Out; and

(v) any claims, rights, and causes of action related to the Debtor's transfer of control of

the Business to the Temporary Operator or the transfer of control of any Estate assets to

any representatives of the Estate; provided, however, nothing herein shall be deemed to release any claims, rights and causes of action to enforce the terms of the DIP Transaction and any documents memorializing the DIP Transaction.  If the DIP Transaction is not consummated, then all parties-in-interest shall retain all of their rights.

12.     Pursuant to the Plan, there shall be a liquidating trust comprised of any remaining assets of the Business that are not utilized in a reorganization (provided, however, the reorganized Business or the liquidating trust with respect to the Business shall at all times include all real property assets constituting Prepetition Collateral).  The liquidating trustee of the Business shall liquidate any remaining assets of the Business, resolve all applicable claims against the Business, pursue any post-DIP Transaction actions retained by the Business, and make the distributions provided for under the Plan with respect to the Business.  The DIP Lender shall select the liquidating trustee of the Business.

13.     Pursuant to the Plan, there shall be a liquidating trust comprised of the assets of the Estate. The liquidating trustee of the Estate shall liquidate the Estate's assets, resolve all applicable claims against the Estate, pursue any Avoidance Actions or other pre-DIP Transaction actions retained by the Estate, and make the distributions provided for under the Plan with respect to the Estate.  The Estate shall select the Liquidating Trustee.

14.     The terms set forth herein shall be binding on any successor or assign of the Debtor, the Estate or the Business, including, without limitation, any subsequent chapter 7 or chapter 11 trustee.

The terms set forth in this Term Sheet are part of a comprehensive compromise, each element of which is an integral aspect and, as such, is non-severable.